**IN THE UNITED STATE DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VAHAN KELERCHIAN** | : | |
| | : | |
| **Plaintiff** | : | Civil Action No. _____ |
| | : | |
| **v.** | : | |
| | : | |
| **BUREAU OF ALCOHOL, TOBACCO,** | : | |
| **FIREARMS AND EXPLOSIVES,** an agency | : | |
| of the Department of Justice | : | |
| | : | |
| **REGINA LOMBARDO,** Acting Director | : | |
| Bureau of Alcohol, Tobacco, Firearms, and | : | |
| Explosives | : | |
| | : | Complaint – Violations of the |
| **WILLIAM BARR,** Attorney General of the | : | 18 U.S.C. § 925 and the APA |
| United States | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Defendants** | : | |

## Exhibit List to Complaint

**Exhibit A**:  March 2, 2018 letter enclosing Mr. Kelerchian's Application for Restoration of Firearms Privileges, pursuant to 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144, and requisite documentation.

**Exhibit B**:  Mailing certificate to then-ATF Acting Director Thomas Brandon

**Exhibit C**:  Mailing certificate to Philadelphia Director of Operations Orellana

**Exhibit D**:  Mailing certificate to ATF NCETR

**Exhibit E**:  March 27, 2018 letter from ATF re: Mr. Kelerchian's Application for Restoration of Firearms Privileges

**Exhibit F**:  April 9, 2018 letter in response to ATF's March 27, 2018 letter

**Exhibit G**:  Mailing certificate to ATF Chief John Day

# Exhibit A

# PRINCE LAW OFFICES, P.C.



Warren H. Prince
Karl P. Voigt IV
Joshua Prince
Eric E. Winter
Thomas H. Odom
Stanley J. Kuter
Jeffrey A Franklin
Adam J. Kraut
Jorge Pereira

| | |
|---|---|
| Bechtelsville | 1-610-845-3803 |
| Allentown | 1-610-770-1151 |
| Bethlehem | 1-610-814-0838 |
| Camp Hill | 1-717-731-0100 |
| Lancaster | 1-717-393-7002 |
| Lebanon | 1-717-274-9250 |
| North Wales | 1-215-412-0800 |
| Pottstown | 1-610-326-4200 |
| Pottsville | 1-570-621-8828 |
| Reading | 1-610-375-8425 |
| Toll Free | 1-888-313-0416 |
| Fax | 1-610-845-3903 |

March 02, 2018

U.S. Department of Justice - Bureau of Alcohol, Tobacco, Firearms and Explosives
Attention Bureau of Alcohol, Tobacco, Firearms and Explosives NCETR - Relief of Disabilities
Section
Corporal Road, Building 3750, Redstone Arsenal
Huntsville, AL 35898

RE:   Vahan Kelerchian Application for Restoration of Firearms Privileges
      FFL # 8-23-017-01-5A-02276

Dear Acting Director Brandon, DIO Orellana and ladies and gentlemen of the NCETR,

   Please be advised that I have been retained by Vahan Kelerchian, FFL no. 8-23-017-01-5A-02276, in relation to his timely Application for Restoration of Firearms Privileges, pursuant to 18 U.S.C. § 925(c) and 27 C.F.R. 478.144. As there is conflicting information between the information contained in the enclosed executed Applications and 27 C.F.R. 478.144, Mr. Kelerchian is filing this form in compliance with both the instructions on the application and Section 478.144.

   Specifically, as Section 478.144 requires three copies of the application to be filed with the Director, as defined in 27 C.F.R. § 478.11, but the application instructions only require one copy to be filed with NCETR, please find enclosed three copies of the executed Applications, which are being served on Acting Director Brandon, NCETR, and Phialdelphia Director of Industry Operations Juan Orellana. Please also find enclosed one copy of (1) an Authority for Release of Information, (2) Mr. Kelerchian's court documents, including the Indictment and Amended Judgement, (3) four letters of recommendation from references, who are not related to Mr. Kelerchian by blood or marriage and have known him for at least 3 years, and (4) a completed FD 258 fingerprint card.

   Pursuant to Sections 925(c) and 478.144(i), as Mr. Kelerchian is an FFL holder, who has continually and timely renewed his FFL, he shall not be "barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section."

Thanking you for your time and consideration in Mr. Kelerchian's request, I am

Yours truly,
Prince Law Offices, P.C.

Joshua Prince
joshua@princelaw.com
Extension: 81114

jp/web
Matter no. 37012
Enclosure

*Distribution*

**U.S. Department of Justice - Bureau of Alcohol, Tobacco, Firearms and Explosives**
Thomas E. Brandon
Mr. Juan F. Orellana

# PRINCE LAW OFFICES, P.C.



Warren H. Prince
Karl P. Voigt IV
Joshua Prince
Eric E. Winter
Thomas H. Odom
Stanley J. Kuter
Jeffrey A Franklin
Adam J. Kraut
Jorge Pereira

| | |
|---|---|
| Bechtelsville | 1-610-845-3803 |
| Allentown | 1-610-770-1151 |
| Bethlehem | 1-610-814-0838 |
| Camp Hill | 1-717-731-0100 |
| Lancaster | 1-717-393-7002 |
| Lebanon | 1-717-274-9250 |
| North Wales | 1-215-412-0800 |
| Pottstown | 1-610-326-4200 |
| Pottsville | 1-570-621-8828 |
| Reading | 1-610-375-8425 |
| Toll Free | 1-888-313-0416 |
| Fax | 1-610-845-3903 |

March 02, 2018

Thomas E. Brandon
Bureau of Alcohol, Tobacco, Firearms and Explosives
99 New York Avenue, N.E.,
Washington, DC 20226

RE:   Vahan Kelerchian Application for Restoration of Firearms Privileges
        FFL # 8-23-017-01-5A-02276

Dear Acting Director Brandon, DIO Orellana and ladies and gentlemen of the NCETR,

Please be advised that I have been retained by Vahan Kelerchian, FFL no. 8-23-017-01-5A-02276, in relation to his timely Application for Restoration of Firearms Privileges, pursuant to 18 U.S.C. § 925(c) and 27 C.F.R. 478.144. As there is conflicting information between the information contained in the enclosed executed Applications and 27 C.F.R. 478.144, Mr. Kelerchian is filing this form in compliance with both the instructions on the application and Section 478.144.

Specifically, as Section 478.144 requires three copies of the application to be filed with the Director, as defined in 27 C.F.R. § 478.11, but the application instructions only require one copy to be filed with NCETR, please find enclosed three copies of the executed Applications, which are being served on Acting Director Brandon, NCETR, and Phialdelphia Director of Industry Operations Juan Orellana. Please also find enclosed one copy of (1) an Authority for Release of Information, (2) Mr. Kelerchian's court documents, including the Indictment and Amended Judgement, (3) four letters of recommendation from references, who are not related to Mr. Kelerchian by blood or marriage and have known him for at least 3 years, and (4) a completed FD 258 fingerprint card.

Pursuant to Sections 925(c) and 478.144(i), as Mr. Kelerchian is an FFL holder, who has continually and timely renewed his FFL, he shall not be "barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section."

Thanking you for your time and consideration in Mr. Kelerchian's request, I am

Yours truly,
Prince Law Offices, P.C.

Joshua Prince
joshua@princelaw.com
Extension: 81114

jp/web
Matter no. 37012
Enclosure

*Distribution*

U.S. Department of Justice - Bureau of Alcohol, Tobacco, Firearms and Explosives
**Thomas E. Brandon**
Mr. Juan F. Orellana

# PRINCE LAW OFFICES, P.C.



Warren H. Prince
Karl P. Voigt IV
Joshua Prince
Eric E. Winter
Thomas H. Odom
Stanley J. Kuter
Jeffrey A Franklin
Adam J. Kraut
Jorge Pereira

| | |
|---|---|
| Bechtelsville | 1-610-845-3803 |
| Allentown | 1-610-770-1151 |
| Bethlehem | 1-610-814-0838 |
| Camp Hill | 1-717-731-0100 |
| Lancaster | 1-717-393-7002 |
| Lebanon | 1-717-274-9250 |
| North Wales | 1-215-412-0800 |
| Pottstown | 1-610-326-4200 |
| Pottsville | 1-570-621-8828 |
| Reading | 1-610-375-8425 |
| Toll Free | 1-888-313-0416 |
| Fax | 1-610-845-3903 |

March 02, 2018

Mr. Juan F. Orellana
Curtis Center
Suite 1000E
601 Walnut Street
Philadelphia, PA 19106

RE:   Vahan Kelerchian Application for Restoration of Firearms Privileges
       FFL # 8-23-017-01-5A-02276

Dear Acting Director Brandon, DIO Orellana and ladies and gentlemen of the NCETR,

   Please be advised that I have been retained by Vahan Kelerchian, FFL no. 8-23-017-01-5A-02276, in relation to his timely Application for Restoration of Firearms Privileges, pursuant to 18 U.S.C. § 925(c) and 27 C.F.R. 478.144. As there is conflicting information between the information contained in the enclosed executed Applications and 27 C.F.R. 478.144, Mr. Kelerchian is filing this form in compliance with both the instructions on the application and Section 478.144.

   Specifically, as Section 478.144 requires three copies of the application to be filed with the Director, as defined in 27 C.F.R. § 478.11, but the application instructions only require one copy to be filed with NCETR, please find enclosed three copies of the executed Applications, which are being served on Acting Director Brandon, NCETR, and Phialdelphia Director of Industry Operations Juan Orellana. Please also find enclosed one copy of (1) an Authority for Release of Information, (2) Mr. Kelerchian's court documents, including the Indictment and Amended Judgement, (3) four letters of recommendation from references, who are not related to Mr. Kelerchian by blood or marriage and have known him for at least 3 years, and (4) a completed FD 258 fingerprint card.

   Pursuant to Sections 925(c) and 478.144(i), as Mr. Kelerchian is an FFL holder, who has continually and timely renewed his FFL, he shall not be "barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section."

Thanking you for your time and consideration in Mr. Kelerchian's request, I am

Yours truly,
Prince Law Offices, P.C.

Joshua Prince
joshua@princelaw.com
Extension: 81114

jp/web
Matter no. 37012
Enclosure

*Distribution*

U.S. Department of Justice - Bureau of Alcohol, Tobacco, Firearms and Explosives
Thomas E. Brandon
**Mr. Juan F. Orellana**

OMB No. 1140-0002

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

## Application for Restoration of Firearms Privileges

| | |
|---|---|
| 1. Name *(Last, First, Middle)* | Kelerchian, Vahan, Steven |

| 2. Birthplace *(City & State)* New York City, NY | 3. Date of Birth | 4. Aliases N/A | 5. Social Security Number *(Voluntary)* |
|---|---|---|---|

| 6. Present Address *(No., Street, City, State, Zip Code)* | 7. Telephone Number |
|---|---|

**8. Description**

| Sex M | Height 6'2" | Weight 280 | Hair Brown | Eyes Brown |
|---|---|---|---|---|

| Ethnicity | Race *(Check one or more boxes)* | | |
|---|---|---|---|
| ☐ Hispanic or Latino | ☐ American Indian or Alaska Native | ☐ Black or African American | ■ White |
| ■ Not Hispanic or Latino | ☐ Asian | ☐ Native Hawaiian or Other Pacific Islander | |

9. If you are not a citizen of the United States, what is your INS-issued alien number or admission number? _____

10. Residences During Past Ten Years *(In columns (b) and (c) enter the months and years of residence.)*

| Address *(Number, Street, City, State and Zip Code)* (a) | From (b) | To (c) |
|---|---|---|
| | 1997 | Present |
| | | |
| | | |
| | | |

11. Employment Record *(List present and prior employers and show month and year of employment.)*

| Name and Address of Employer (a) | Position (b) | From (c) | To (d) |
|---|---|---|---|
| Armament Services, Inc. 103 Camars Dr. Warminster PA 18974 | President | 2000 | 2013 |
| | | | |

12. Convictions *(If pardoned for a conviction, write "yes" in column (e) and attach a copy of the pardon.)*

| Specific Crime (a) | Name and Location of Court (b) | Sentence Received (c) | Conviction Date (d) | Pardoned (e) |
|---|---|---|---|---|
| See attached court records | | | | |
| | | | | |
| | | | | |
| | | | | |

13. Other Arrests

| Charge (a) | Date and Place of Arrest (b) | Disposition (c) |
|---|---|---|
| None | | |
| | | |
| | | |
| | | |

| 14. Probation Officer's Name, Address and Telephone Number N/A | 15. Parole Officer's Name, Address and Telephone Number N/A |
|---|---|

ATF Form 3210.1
Revised September 2014

16. Character References *(Three references are required.  Please include a written statement from each of 3 references, who are not related to the applicant by blood or marriage and have known applicant for at least 3 years, recommending the granting of relief.)*

| Name and Address (a) | Occupation (b) | Telephone Number (c) |
|---|---|---|
| John T. Conway, ███████████ | Funeral Director | ███████ |
| Anthony Baiamonte III, ███████ | Attorney | ███████ |
| Christopher J. McLoughlin, ██████ | Retired | ███████ |

17. **Applicant Data** *(All questions must be answered by a "Yes" or "No")*

| | Yes | No |
|---|---|---|
| a. Are you a fugitive from justice? | | X |
| b. Are you an unlawful user of or addicted to marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled substance? | | X |
| c. Have you ever been convicted in any court of a felony, or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence, including probation? *(If "yes," see Additional Information Request 1.)* | X | |
| d. Are you now on probation or parole? | | X |
| e. Are you under indictment or information in any court for a felony, or any other crime, for which the judge could imprison you for more than one year? *(An information is a formal accusation of a crime by a prosecutor.) (If "yes," see Additional Information Request 2.)* | X | |
| f. Have you ever been adjudicated mentally defective *(which includes having been adjudicated incompetent to manage your own affairs)* or have you been committed to a mental institution? *(If "yes," see Additional Information Request 3.)* | | X |
| g. Have you ever been discharged from the armed forces under dishonorable conditions? *(If "yes," see Additional Information Request 4.)* | | X |

| | Yes | No |
|---|---|---|
| h. Have you served on active duty in the armed Forces? *(If "yes" check Branch and complete following)* ☐ Army ☐ Navy ☐ Marines ☐ Air Force ☐ Coast Guard | | X |

Service Serial Number

Date Entered Active Duty

Kind of Discharge

Date of Discharge

| | Yes | No |
|---|---|---|
| i. Are you subject to a court order restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner? *(If "yes," see Additional Information Request 5.)* | | X |
| j. Have you been convicted in any court of a misdemeanor crime of domestic violence? *(If "yes," see Additional Information Request 6.)* | | X |
| k. Have you ever renounced your United States citizenship? *(If "yes," see Additional Information Request 7.)* | | X |
| l. Are you an alien in the United States? *(If "yes," see Additional Information Request 8.)* | | X |
| m. Have you ever applied for a federal firearms license or a federal explosives license or Permit? *(If "yes" show date and with whom filed.)* | X | |

18. COMPLETE THIS ITEM ONLY IF APPLICANT WAS EVER ISSUED A FEDERAL FIREARMS LICENSE OR A FEDERAL EXPLOSIVES LICENSE OR PERMIT.

| Business Name and Address *(License/Permit Issued Under)* | License or Permit Number | Expiration Date of Latest License or Permit |
|---|---|---|
| **Vahan S. Kelerchian** | 8-23-017-01-5A-02276 | *LOA Exp. 08/07/2018* |

The Business is *(Check one)*
☒ Individually Owned  ☐ A Partnership  ☐ A Corporation  ☐ Other *(Specify)* _____

19a. I believe I should be granted relief because:

I am a good person, who has never acted nor will act in a manner dangerous to public safety and the granting of the relief to me would not be contrary to the public interest. Moreover, I am not a threat to the public in purchasing, possessing, transferring or selling firearms and ammunition. Furthermore, my FFL records have always been maintained meticulously and even the IOIs commented on my recordkeeping compliance.

19b. **Important:** Applicants filing for restoration privileges *(Relief From Disabilities)* under Chapter 44, Title 18 U.S.C. 925(c) must complete this item.

No application for restoration under 18 U.S.C. Chapter 44 will be considered unless the applicant acknowledges and agrees that a notice of approval will appear in the Federal Register, an official U.S. Government publication available to the general public, if and when the application is approved. The notice of approval will give all essential details including the applicant's name, address, the court and date of conviction.

IN THE EVENT THIS APPLICATION IS APPROVED:

☒ I understand that a notice of approval will appear in the Federal Register immediately following the issuance of the approval, and

☒ I hereby agree to publication of the notice of approval giving my name, address and the date of my conviction.

Under penalties imposed by 18 U.S.C. 924, I declare under penalties of perjury, that the answers in this application are true, correct, and complete.

| 20. Signature of Applicant *Vahan S. Kelerchian* | 21. Date 3/2/18 |
|---|---|

Note: A Completed FD 258 (Fingerprint Identification Card) Must Accompany This Application.

Mail Application Form To:   **Bureau of Alcohol, Tobacco, Firearms and Explosives
NCETR - Relief of Disabilities Section
Corporal Road, Building 3750
Redstone Arsenal
Huntsville, AL 35898**

ATF Form 3210.1
Revised September 2014

OMB No. 1140-0002

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

## Application for Restoration of Firearms Privileges

| 1. Name *(Last, First, Middle)* | Kelerchian, Vahan, Steven |
|---|---|

| 2. Birthplace *(City & State)* New York City, NY | 3. Date of Birth ████ | 4. Aliases N/A | 5. Social Security Number *(Voluntary)* |
|---|---|---|---|

| 6. Present Address *(No., Street, City, State, Zip Code)* ████████ | 7. Telephone Number ████ |
|---|---|

**8. Description**

| Sex M | Height 6'2" | Weight 280 | Hair Brown | Eyes Brown |
|---|---|---|---|---|

| Ethnicity | Race *(Check one or more boxes)* | | |
|---|---|---|---|
| ☐ Hispanic or Latino | ☐ American Indian or Alaska Native | ☐ Black or African American | ☑ White |
| ☑ Not Hispanic or Latino | ☐ Asian | ☐ Native Hawaiian or Other Pacific Islander | |

9. If you are not a citizen of the United States, what is your INS-issued alien number or admission number? _____

**10. Residences During Past Ten Years** *(In columns (b) and (c) enter the months and years of residence.)*

| Address *(Number, Street, City, State and Zip Code)* (a) | From (b) | To (c) |
|---|---|---|
| ████████ | 1997 | Present |
| | | |
| | | |
| | | |

**11. Employment Record** *(List present and prior employers and show month and year of employment.)*

| Name and Address of Employer (a) | Position (b) | From (c) | To (d) |
|---|---|---|---|
| Armament Services, Inc. 103 Camars Dr. Warminster PA 18974 | President | 2000 | 2013 |
| | | | |

**12. Convictions** *(If pardoned for a conviction, write "yes" in column (e) and attach a copy of the pardon.)*

| Specific Crime (a) | Name and Location of Court (b) | Sentence Received (c) | Conviction Date (d) | Pardoned (e) |
|---|---|---|---|---|
| See attached court records | | | | |
| | | | | |
| | | | | |
| | | | | |

**13. Other Arrests**

| Charge (a) | Date and Place of Arrest (b) | Disposition (c) |
|---|---|---|
| None | | |
| | | |
| | | |

| 14. Probation Officer's Name, Address and Telephone Number N/A | 15. Parole Officer's Name, Address and Telephone Number N/A |
|---|---|

ATF Form 3210.1
Revised September 2014

16. Character References *(Three references are required. Please include a written statement from each of 3 references, who are not related to the applicant by blood or marriage and have known applicant for at least 3 years, recommending the granting of relief.)*

| Name and Address *(a)* | Occupation *(b)* | Telephone Number *(c)* |
|---|---|---|
| John T. Conway, ██████████ | Funeral Director | ████████ |
| Anthony Baiamonte III, ██████████ | Attorney | ████████ |
| Christopher J. McLoughlin, ██████████ | Retired | ████████ |

17. Applicant Data *(All questions must be answered by a "Yes" or "No")*

| | Yes | No | | | Yes | No |
|---|---|---|---|---|---|---|
| a. Are you a fugitive from justice? | | X | h. Have you served on active duty in the armed Forces? *(If "yes" check Branch and complete following)* ☐ Army ☐ Navy ☐ Marines ☐ Air Force ☐ Coast Guard | | | X |
| b. Are you an unlawful user of or addicted to marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled substance? | | X | Service Serial Number | | | |
| c. Have you ever been convicted in any court of a felony, or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence, including probation? *(If "yes," see Additional Information Request 1.)* | X | | Date Entered Active Duty ___ Kind of Discharge ___ Date of Discharge ___ | | | |
| d. Are you now on probation or parole? | | X | i. Are you subject to a court order restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner? *(If "yes," see Additional Information Request 5.)* | | | X |
| e. Are you under indictment or information in any court for a felony, or any other crime, for which the judge could imprison you for more than one year? *(An information is a formal accusation of a crime by a prosecutor.) (If "yes," see Additional Information Request 2.)* | X | | j. Have you been convicted in any court of a misdemeanor crime of domestic violence? *(If "yes," see Additional Information Request 6.)* | | | X |
| f. Have you ever been adjudicated mentally defective *(which includes having been adjudicated incompetent to manage your own affairs)* or have you been committed to a mental institution? *(If "yes," see Additional Information Request 3.)* | | X | k. Have you ever renounced your United States citizenship? *(If "yes," see Additional Information Request 7.)* | | | X |
| | | | l. Are you an alien in the United States? *(If "yes," see Additional Information Request 8.)* | | | X |
| g. Have you ever been discharged from the armed forces under dishonorable conditions? *(If "yes," see Additional Information Request 4.)* | | X | m. Have you ever applied for a federal firearms license or a federal explosives license or Permit? *(If "yes" show date and with whom filed.)* | | X | |

18. COMPLETE THIS ITEM ONLY IF APPLICANT WAS EVER ISSUED A FEDERAL FIREARMS LICENSE OR A FEDERAL EXPLOSIVES LICENSE OR PERMIT.

| Business Name and Address *(License/Permit Issued Under)* | License or Permit Number | Expiration Date of Latest License or Permit |
|---|---|---|
| **Vahan S. Kelerchian** | 8-23-017-01-5A-02276 | LOA Exp. 08/07/2018 |

The Business is *(Check one)*
■ Individually Owned   ☐ A Partnership   ☐ A Corporation   ☐ Other *(Specify)* _____

19a. I believe I should be granted relief because:

I am a good person, who has never acted nor will act in a manner dangerous to public safety and the granting of the relief to me would not be contrary to the public interest. Moreover, I am not a threat to the public in purchasing, possessing, transferring or selling firearms and ammunition. Furthermore, my FFL records have always been maintained meticulously and even the IOIs commented on my recordkeeping compliance.

19b. **Important:** Applicants filing for restoration privileges *(Relief From Disabilities)* under Chapter 44, Title 18 U.S.C. 925(c) must complete this item.

No application for restoration under 18 U.S.C. Chapter 44 will be considered unless the applicant acknowledges and agrees that a notice of approval will appear in the Federal Register, an official U.S. Government publication available to the general public, if and when the application is approved. The notice of approval will give all essential details including the applicant's name, address, the court and date of conviction.

IN THE EVENT THIS APPLICATION IS APPROVED:

■ I understand that a notice of approval will appear in the Federal Register immediately following the issuance of the approval, and

■ I hereby agree to publication of the notice of approval giving my name, address and the date of my conviction.

Under penalties imposed by 18 U.S.C. 924, I declare under penalties of perjury, that the answers in this application are true, correct, and complete.

| 20. Signature of Applicant *Vahan S. Kelerchian* | 21. Date 3/2/18 |
|---|---|

Note: A Completed FD 258 (Fingerprint Identification Card) Must Accompany This Application.

Mail Application Form To:   Bureau of Alcohol, Tobacco, Firearms and Explosives
NCETR - Relief of Disabilities Section
Corporal Road, Building 3750
Redstone Arsenal
Huntsville, AL 35898

ATF Form 3210.1
Revised September 2014

OMB No. 1140-0002

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

## Application for Restoration of Firearms Privileges

1. Name *(Last, First, Middle)*  **Kelerchian, Vahan, Steven**

2. Birthplace *(City & State)*  **New York City, NY**    3. Date of Birth ███    4. Aliases  **N/A**    5. Social Security Number *(Voluntary)*

6. Present Address *(No., Street, City, State, Zip Code)* ███    7. Telephone Number ███

8. Description

| Sex **M** | Height **6'2"** | Weight **280** | Hair **Brown** | Eyes **Brown** |
|---|---|---|---|---|

Ethnicity
- ☐ Hispanic or Latino
- ☒ Not Hispanic or Latino

Race *(Check one or more boxes)*
- ☐ American Indian or Alaska Native
- ☐ Asian
- ☐ Black or African American
- ☐ Native Hawaiian or Other Pacific Islander
- ☒ White

9. If you are not a citizen of the United States, what is your INS-issued alien number or admission number? _____

10. Residences During Past Ten Years *(In columns (b) and (c) enter the months and years of residence.)*

| Address *(Number, Street, City, State and Zip Code)* (a) | From (b) | To (c) |
|---|---|---|
| ███ | 1997 | Present |
| | | |
| | | |
| | | |

11. Employment Record *(List present and prior employers and show month and year of employment.)*

| Name and Address of Employer (a) | Position (b) | From (c) | To (d) |
|---|---|---|---|
| Armament Services, Inc. 103 Camars Dr. Warminster PA 18974 | President | 2000 | 2013 |
| | | | |

12. Convictions *(If pardoned for a conviction, write "yes" in column (e) and attach a copy of the pardon.)*

| Specific Crime (a) | Name and Location of Court (b) | Sentence Received (c) | Conviction Date (d) | Pardoned (e) |
|---|---|---|---|---|
| See attached court records | | | | |
| | | | | |
| | | | | |
| | | | | |

13. Other Arrests

| Charge (a) | Date and Place of Arrest (b) | Disposition (c) |
|---|---|---|
| None | | |
| | | |
| | | |
| | | |

14. Probation Officer's Name, Address and Telephone Number
**N/A**

15. Parole Officer's Name, Address and Telephone Number
**N/A**

ATF Form 3210.1
Revised September 2014

16. Character References *(Three references are required. Please include a written statement from each of 3 references, who are not related to the applicant by blood or marriage and have known applicant for at least 3 years, recommending the granting of relief.)*

| Name and Address *(a)* | Occupation *(b)* | Telephone Number *(c)* |
|---|---|---|
| John T. Conway, ████████████████ | Funeral Director | ████████████ |
| Anthony Baiamonte III, ███████████ | Attorney | ████████████ |
| Christopher J. McLoughlin, ████████ | Retired | ████████████ |

17. **Applicant Data** *(All questions must be answered by a "Yes" or "No")*

| | Yes | No |
|---|---|---|
| a. Are you a fugitive from justice? | | X |
| b. Are you an unlawful user of or addicted to marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled substance? | | X |
| c. Have you ever been convicted in any court of a felony, or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence, including probation? *(If "yes," see Additional Information Request 1.)* | X | |
| d. Are you now on probation or parole? | | X |
| e. Are you under indictment or information in any court for a felony, or any other crime, for which the judge could imprison you for more than one year? *(An information is a formal accusation of a crime by a prosecutor.) (If "yes," see Additional Information Request 2.)* | X | |
| f. Have you ever been adjudicated mentally defective *(which includes having been adjudicated incompetent to manage your own affairs)* or have you been committed to a mental institution? *(If "yes," see Additional Information Request 3.)* | | X |
| g. Have you ever been discharged from the armed forces under dishonorable conditions? *(If "yes," see Additional Information Request 4.)* | | X |

h. Have you served on active duty in the armed Forces? *(If "yes" check Branch and complete following)*

| | Yes | No |
|---|---|---|
| | | X |

☐ Army   ☐ Navy   ☐ Marines   ☐ Air Force   ☐ Coast Guard

| Service Serial Number | Date Entered Active Duty |
|---|---|
| Kind of Discharge | Date of Discharge |

| | Yes | No |
|---|---|---|
| i. Are you subject to a court order restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner? *(If "yes," see Additional Information Request 5.)* | | X |
| j. Have you been convicted in any court of a misdemeanor crime of domestic violence? *(If "yes," see Additional Information Request 6.)* | | X |
| k. Have you ever renounced your United States citizenship? *(If "yes," see Additional Information Request 7.)* | | X |
| l. Are you an alien in the United States? *(If "yes," see Additional Information Request 8.)* | | X |
| m. Have you ever applied for a federal firearms license or a federal explosives license or Permit? *(If "yes" show date and with whom filed.)* | X | |

18. COMPLETE THIS ITEM ONLY IF APPLICANT WAS EVER ISSUED A FEDERAL FIREARMS LICENSE OR A FEDERAL EXPLOSIVES LICENSE OR PERMIT.

| Business Name and Address *(License/Permit Issued Under)* | License or Permit Number | Expiration Date of Latest License or Permit |
|---|---|---|
| **Vahan S. Kelerchian** | 8-23-017-01-5A-02276 | LOA Exp. 08/07/2018 |

The Business is *(Check one)*

☒ Individually Owned   ☐ A Partnership   ☐ A Corporation   ☐ Other *(Specify)* _____

19a. I believe I should be granted relief because:

I am a good person, who has never acted nor will act in a manner dangerous to public safety and the granting of the relief to me would not be contrary to the public interest. Moreover, I am not a threat to the public in purchasing, possessing, transferring or selling firearms and ammunition. Furthermore, my FFL records have always been maintained meticulously and even the IOIs commented on my recordkeeping compliance.

19b. **Important:** Applicants filing for restoration privileges *(Relief From Disabilities)* under Chapter 44, Title 18 U.S.C. 925(c) must complete this item.

No application for restoration under 18 U.S.C. Chapter 44 will be considered unless the applicant acknowledges and agrees that a notice of approval will appear in the Federal Register, an official U.S. Government publication available to the general public, if and when the application is approved. The notice of approval will give all essential details including the applicant's name, address, the court and date of conviction.

**IN THE EVENT THIS APPLICATION IS APPROVED:**

☒ I understand that a notice of approval will appear in the Federal Register immediately following the issuance of the approval, and

☒ I hereby agree to publication of the notice of approval giving my name, address and the date of my conviction.

Under penalties imposed by 18 U.S.C. 924, I declare under penalties of perjury, that the answers in this application are true, correct, and complete.

| 20. Signature of Applicant *Vahan S. Kelerchian* | 21. Date 3/2/18 |
|---|---|

Note: A Completed FD 258 (Fingerprint Identification Card) Must Accompany This Application.

Mail Application Form To:
Bureau of Alcohol, Tobacco, Firearms and Explosives
NCETR - Relief of Disabilities Section
Corporal Road, Building 3750
Redstone Arsenal
Huntsville, AL 35898

ATF Form 3210.1
Revised September 2014

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Authority for Release of Information

## Authority for Release of Information

THIS SHEET MUST ACCOMPANY ALL COPIES OF ATF FORM 3210.1, APPLICATION FOR RESTORATION OF FIREARMS PRIVILEGES

1. **Authority.** The authority to solicit information is stated in ATF Form 3210.1, Application for Restoration of Firearms Privileges. This form is in compliance with the Privacy Act of 1974.

2. **Purpose and Use.** The information you supply by signing this release of information form will be used principally to aid in the completion of a background investigation conducted by the Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), pursuant to 18 U.S.C. § 925(c), in conjunction with your Application for Restoration of Firearms Privileges.

3. **Effects of Nondisclosure.** Your signature on this Authority for Release of Information form is voluntary; however, your failure to complete this form may mean that the required information cannot be obtained to complete your investigation, and may result in the termination of your application.

| Name of Applicant (Include Last, First, and Middle Name and all aliases used) | Date of Birth |
|---|---|
| Kelerchian, Vahan, Steven | |
| Present Address (Number, Street, City, State, Zip Code) | Telephone Number (Include Area Code) |
| | |

This release, when presented by a duly authorized representative of the Department of Justice, will constitute my consent and authority to examine and obtain copies and abstracts of records and to receive statements and information regarding my background. Specifically, I hereby authorize the release of the following data or records to the Department of Justice (ATF):

**Employment Information, Military Information/Records, Police and Criminal Records, Medical History**

**Medical Information Records**
*If You Answered "Yes" to Items 17(b) or (f) on ATF Form 3210.1, Complete the Following Section.*

| Name of Attending Physicians, Alcohol or Drug Abuse Rehabilitation Centers, or Mental Health Institutions | Address (Including City, State and Zip Code) | Area Code and Telephone Number |
|---|---|---|
| | | |
| | | |
| | | |

| Signature of Applicant | Date | Special Agent (Signature) | Date |
|---|---|---|---|
| | 3/2/18 | | |

ATF Form 3210.1
Revised September 2014

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**VAHAN KELERCHIAN**<br><br>**Defendant.** | **CASE NUMBER: 2:13CR66-001**<br><br>**USM Number: 12810-027**<br><br><br>**KERRY C CONNOR**<br>**P. JEFFREY SCHLESINGER**<br>**DEFENDANT'S ATTORNEYS** |

### AMENDED JUDGMENT IN A CRIMINAL CASE

**Date of Original Judgment Order: 2/7/2018.**
**Amended on 2/12/2018 to correct administrative error** on page 3, under C.R. 35(a):  2-7 is replaced by 3-7.
**THE DEFENDANT** was found guilty by Jury on counts 1, 2, 3, 4, 5, 6, 7, and 9 of the Indictment on October 15, 2015.

**ACCORDINGLY,** the court has adjudicated that the defendant is guilty of the following offenses:

| Title, Section & Nature of Offense | Date Offense Ended | Count Number(s) |
|---|---|---|
| 18: 371 CONSPIRACY TO PROVIDE FALSE INFORMATION TO A FEDERAL FIREARMS LICENSEE | January 2010 | 1 |
| 18:371 CONSPIRACY TO DEFRAUD FOOD AND DRUG ADMINISTRATION | September 2010 | 2 |
| 18:371 CONSPIRACY TO MAKE  FALSE STATEMENTS - DEMONSTRATION LETTERS | March 28, 2010 | 3 |
| 18:1001 MAKING FALSE STATEMENTS  TO A FEDERAL AGENCY | March 28, 2010 | 4-7 |
| 18:1956(h) CONSPIRACY TO LAUNDER MONETARY INSTRUMENTS AND FORFEITURE | January 2010 | 9 |

The defendant is sentenced as provided in pages 2 through 8 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.
The defendant has been found not guilty on count 8.

**IT IS ORDERED** that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States Attorney of any material change in economic circumstances.

February 5, 2018
Date of Imposition of Judgment

Case Number: 2:13CR66-001                                                    Page 2 of 8
Defendant: VAHAN KELERCHIAN

s/ Joseph S. Van Bokkelen
-------------------------------------------------------
Signature of Judge

Joseph S. Van Bokkelen, United States District Judge
-------------------------------------------------------
Name and Title of Judge

February 12, 2018
-------------------------------------------------------
Date

Case Number: 2:13CR66-001
Defendant: VAHAN KELERCHIAN

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **100 months.**

*        60-month term as to each of the following counts: Count 1, Count 3, Count 4, Count 5, Count 6, and Count 7. Each 60-month term for this group of counts is to be served concurrently with the other counts in this group.

*        A 60-month term as to Count 2: 40 of those months are to be served consecutively as to Count 1 and Counts 3–7, and 20 of those months are to be served concurrently with Count 1 and Counts 3–7.

*        A 40-month sentence as to Count 9, to be served consecutively as to Count 1 and Counts 3–7, but concurrently with Count 2.

The Court makes the following recommendations to the Bureau of Prisons:

        That the defendant be designated to serve his sentence at Fort Dix, NJ.

        That the defendant be given credit for time served while awaiting sentencing.


The defendant is placed into the custody of the United States Marshal.


## RETURN

I have executed this judgment as follows:

        Defendant delivered _____ to _____ at _____,
with a certified copy of this judgment.


_____
                                        UNITED STATES MARSHAL

By: _____
                DEPUTY UNITED STATES MARSHAL

## SUPERVISED RELEASE

After Mr. Kelerchian's incarceration is over, Mr. Kelerchian will be placed on supervised release for a period of **1 year**. His supervised release will have conditions of supervision as stated below, except that conditions 19, 20, 21 and 22 will cease to be in effect once all of Mr. Kelerchian's financial obligations as related to this case are fulfilled.

1. Mr. Kelerchian may not commit another federal, state, or local crime.

2. Mr. Kelerchian may not unlawfully use, possess, or distribute a controlled substance.

3. There's no evidence that Mr. Kelerchian is in danger of drug abuse. Accordingly, the mandatory drug testing condition is suspended.

4. Mr. Kelerchian must cooperate in the collection of his DNA sample as directed by the probation officer if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000.

5. Within 72 hours of release from the custody of the Bureau of Prisons, Mr. Kelerchian must report between the hours of 8:00 a.m. and 4:30 p.m. to the probation office in the district to which he is released.

6. Mr. Kelerchian may not knowingly be outside the judicial district between the hours of 10:00 p.m. and 6:00 a.m. without the Court's or probation officer's permission. In any case, Mr. Kelerchian may not knowingly travel more than 50 miles outside the judicial district without the Court's or probation officer's permission. The probation office will provide Mr. Kelerchian a map describing the boundaries of the judicial district at the start of supervision. After 12 months of Mr. Kelerchian being placed on supervision, the probation office must submit a report to the Court indicating whether the travel restrictions should be lifted or modified.

7. Mr. Kelerchian must report to the probation officer in the manner and frequency as reasonably directed by the probation officer. However, he may be required to report in person at the probation office only between 8:00 a.m. and 4:30 p.m. on the days the probation office is open for business.

8. In all matters relating to his conditions of supervision, Mr. Kelerchian must truthfully answer the probation officer's questions. This condition does not prevent Mr. Kelerchian from invoking his Fifth Amendment privilege against self-incrimination.

9. Mr. Kelerchian must follow the instructions of the probation officer as they relate to the conditions of supervision. Mr. Kelerchian may petition the Court for relief or clarification regarding a condition he believes has become unreasonable.

10. Mr. Kelerchian must live at a location approved by the probation officer.
11. If Mr. Kelerchian plans to change where he lives or anything about his living

arrangements (for example, the people he lives with), he must inform the probation officer at least 14 days before the change. If informing the probation officer in advance is not possible due to unexpected circumstances, Mr. Kelerchian must inform the probation officer as soon as possible, and no later than 72 hours after the change.

12. If Mr. Kelerchian plans to change where he works or anything about his work (for example, his position or his job responsibilities), Mr. Kelerchian must inform the probation officer at least 14 days before the change. If informing the probation officer in advance is not possible due to unexpected circumstances, Mr. Kelerchian must inform the probation officer within 72 hours after the change.

13. Mr. Kelerchian must notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer.

14. Mr. Kelerchian may not own or possess a firearm, ammunition, destructive device, or any other dangerous weapon. A dangerous weapon is an instrument that is specially designed as a weapon.

15. Mr. Kelerchian may not knowingly meet, communicate, or otherwise interact with a person whom he knows to be engaged, or planning to be engaged, in criminal activity.
16. Between the hours of 8:00 a.m. and 9:00 p.m., Mr. Kelerchian must permit a probation officer to visit him at home or any other reasonable location and must permit confiscation of any contraband observed in plain view by the probation officer. A visit between the hours of 9:00 p.m. and 8:00 a.m. may be conducted only when the probation officer has a reasonable belief that Mr. Kelerchian has violated a condition of supervision and that a visit during those hours would reveal information or contraband that would not be revealed by a visit at any other time.

17. If any portion of the special assessment remains unpaid when Mr. Kelerchian is released from prison, he must pay it within 12 weeks of his release, or, if financially unable to fulfill this requirement, he must arrange a payment schedule with the probation office.

18. If a fine is imposed, and if any portion of the fine remains unpaid when Mr. Kelerchian is released from prison, he must pay the fine in monthly installments of $1,000 until it is paid in full.

19. Mr. Kelerchian may not incur new credit charges or open additional lines of credit without the approval of the probation officer.

20. Upon the probation officer's request, Mr. Kelerchian must provide the officer with any financial information regarding Mr. Kelerchian's ability to pay a fine, and must authorize the release of any financial information. The request must be in writing and prompted by Mr. Kelerchian's failure to comply with a payment schedule ordered for a period of 60 consecutive days, and the request must describe the specific financial information needed for determining Mr. Kelerchian's current ability to pay. The probation office will share Mr. Kelerchian's financial information with the U.S. Attorney's Office.

Case Number: 2:13CR66-001
Defendant: VAHAN KELERCHIAN

Page 6 of 8

21. Mr. Kelerchian must notify the probation officer within 72 hours of any material change in his economic circumstances that might affect his ability to pay any Court-ordered financial obligation.

22. Mr. Kelerchian may not transfer, give away, sell, or otherwise convey any asset $500 without the approval of the probation officer.

Case Number: 2:13CR66-001
Defendant: VAHAN KELERCHIAN                                                          Page 7 of 8

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth in this judgment.

| Total Assessment | Total Fine | Total Restitution |
|------------------|------------|-------------------|
| $800             | $100,000   | NONE              |

The defendant shall make the special assessment payment payable to Clerk, U.S. District Court, 5400 Federal Plaza, Suite 2300, Hammond, IN 46320. The special assessment payment shall be due immediately.

## FINE

A fine in the amount of $100,000 is imposed.

## RESTITUTION

No restitution imposed.

Payments shall be applied in the following order:  (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

## FORFEITURE

The defendant shall forfeit **$28,200.00 in United States Currency.**

Case Number: 2:13CR66-001
Defendant: VAHAN KELERCHIAN

Name: <u>VAHAN KELERCHIAN</u>
Docket No.:<u>2:13CR66-001</u>

## ACKNOWLEDGMENT OF SUPERVISION CONDITIONS

Upon a finding of a violation of probation or supervised release, I understand that the Court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

I have reviewed the Judgment and Commitment Order in my case and the supervision conditions therein. These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed)

_____     _____
Defendant                                              Date


_____     _____
U.S. Probation Officer/Designated Witness       Date

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CAUSE NO: |
| v. | ) | |
| | ) | 18 U.S.C. § 2 |
| VAHAN KELERCHIAN | ) | 18 U.S.C. § 371 |
| | ) | 18 U.S.C. § 666(a)(2) |
| | ) | 18 U.S.C. § 924(a)(1)(A) |
| | ) | 18 U.S.C. § 924(d) |
| | ) | 18 U.S.C. § 1001 |
| | ) | 18 U.S.C. § 1956(h) |

2 : 1 3 C R     6 6

## I N D I C T M E N T

**THE GRAND JURY CHARGES:**

### COUNT 1
### (Conspiring to Provide False Information to a Federal Firearms Licensee)

At all times material to this indictment:

### BACKGROUND

1. VAHAN KELERCHAIN (KELERCHIAN) was the principal owner and operator Armament Services International Inc., (ASI).  ASI is engaged in the sale of firearms and related items primarily through internet sales.

2. ASI principal place of business is located in Warminster, Pennsylvania.

3. KELERCHIAN holds a Class 3 Federal Firearms License (FFL) allowing him to deal in fully automatic weapons. KELERCHIAN also holds licenses to manufacture firearms and sell destructive devices, (i.e. grenade launchers)

4. The Lake County Sheriff's Department was a law enforcement agency operating in Lake County, Indiana.

1

5. JOSEPH R. KUMSTAR was employed for approximately 17 years as a sworn law enforcement officer with the Lake County Sheriff's Department, and served as the Deputy Chief for the Lake County Sheriff's Department.

6. RONALD D. SLUSSER was employed for approximately ten (10) years as a sworn law enforcement officer with the Lake County Sheriff's Department, was a member of the Lake County Sheriff's Department Special Weapons and Tactics (SWAT) unit and a firearms instructor.

7. E & R Law Enforcement Sales was a Federal Firearms Licensee (FFL) based in Crown Point, Indiana, owned and operated in part by RONALD D. SLUSSER. RONALD D. SLUSSER previously held a Federal Firearms License while operating individually as "Ron's Gun Sales."

8. R & D Law Enforcement Sales was another Federal Firearms Licensee (FFL), based in Merrillville, Indiana, and owned and operated in part by RONALD D. SLUSSER.

9. PF Custom Guns was a Federal Firearms Licensee (FFL).

10. Heckler and Koch (hereinafter H&K) was a well know German based firearms manufacturer producing a wide assortment of handguns, rifles, machineguns, and submachineguns for both military and civilian use. H&K had numerous subsidiaries operating within the United States in Virginia, New Hampshire, and Georgia. H&K had served as a United States government contractor for the both the United States Military and United States civilian law enforcement agencies. H&K was a Federal Firearms Licensee (FFL).

2

10. Insight Technology Inc., (hereinafter Insight) located in Londonderry, New Hampshire, was a manufacturer of highly sophisticated laser aiming and illumination devices, night vision devices, laser range finding systems, computerized fire control systems, thermal imaging systems, and sensor fusion systems. Insight's products were, and are still are, used by the United States military, Federal law enforcement agencies, and allied nations. In addition, Insight Technology Inc. developed and maintained a line of tactical illuminators (laser aiming devices) restricted for use only by the military and Law Enforcement agencies, as well as products for sale to the general public.

11. Federal law restricted to law enforcement agencies or the military the sale and ownership of fully automatic machineguns manufactured after 1986. No individual law enforcement officer could purchase a post-1986 fully automatic machinegun. Possession of post-1986 fully automatic machineguns by a law enforcement officer could only be authorized by the officer's law enforcement agency and only for the law enforcement duties of that officer.

## OBJECT OF THE CONSPIRACY

12. Between on or about November 2008, and continuing through on or about January of 2010, in the Northern District of Indiana and elsewhere:

### VAHAN KELERCHIAN

defendant herein, together with Joseph Kumstar, and Ronald Slusser, did knowingly combine, conspire, confederate, and agree with each other, and with others known and unknown to the grand jury, to commit an offense against the United States, that is, to knowingly make false statements and representations with respect to information under Chapter 44, of Title 18 of the United States Code, required to be kept in the records of

3

individuals licensed under Chapter 44, relating to the acquisition of firearms, in violation of Title 18 United States Code, Section 924(a)(1)(A).

## HOW THE CONSPIRACY OPERATED

13. It was part of the conspiracy that JOSEPH R. KUMSTAR, and RONALD D. SLUSSER used their position as sworn law enforcement officers, and VAHAN KELERCHAIN used his position as a Class 3 firearms dealer to acquire approximately 71 (Seventy-One) fully automatic H&K machineguns in the name of the Lake County Sheriff's Department knowing that the Lake County Sheriff's Department was not the true owner of these machineguns.

14. It was further part of the conspiracy that when acquiring these machineguns, VAHAN KELERCHAIN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER knew these H&K machineguns were manufactured after 1986, and therefore could only be acquired by law enforcement agencies and not individual law enforcement officers.

15. It was further part of the conspiracy that when acquiring the H&K machineguns, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER caused false entries listing the Lake County Sheriff's Department as the owner of these machineguns, to be made by individuals and companies required to keep such records under Chapter 44, of Title 18 of the United States Code.

16. It was further part of the conspiracy that when acquiring these machineguns, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER, used Lake County Sheriff's Department letterhead to create letters which falsely represented that the

4

H&K machineguns were being purchased by and were going to be used by, the Lake

County Sheriff's Department in carrying out its law enforcement responsibilities.

17. It was further part of the conspiracy that when acquiring these machineguns, VAHAN

KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER used the Lake

County Sheriff's Department letterhead to create documents which falsely represented the

H&K machineguns were to be used by the Lake County Sheriff's Department.

18. It was further part of the conspiracy that when acquiring these machineguns, VAHAN

KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER created false and

fictitious Lake County Sheriff's Department purchase orders to convince the suppliers of

the H&K machineguns that the Lake County Sheriff's Department was the true purchaser

of the H&K machineguns even though the defendants themselves provided the funds for

the purchase of these H&K machineguns.

19. It was further part of the conspiracy that VAHAN KELERCHIAN, JOSEPH R.

KUMSTAR, and RONALD D. SLUSSER acquired these H&K machineguns for a cost of

between approximately $1200 and $1600 each.

20. It was further part of the conspiracy that when acquiring these machineguns, VAHAN

KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER had all of the

H&K machineguns shipped to the Lake County Sheriff's Department.

21. It was further part of the conspiracy that after acquiring these machineguns, all of the

H&K machineguns were removed from the Lake County Sheriff's Department to the

personal residence of RONALD D. SLUSSER.

22. It was further part of the conspiracy that after the H&K machineguns were at the personal

residence of RONALD D. SLUSSER, he would remove the upper receivers (the barrel)

5

and any other additional parts that could be removed from the lower receiver (the firing mechanism of the H&K machinegun).

23. It was further part of the conspiracy that after removing the upper receivers and any other additional parts that could be removed from the lower receiver, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER would sell on the internet to any willing purchaser, all of these upper receivers and additional parts. The sale of these upper receivers and parts would range from approximately $2,500 to $3800 each.

24. It was further part of the conspiracy that after removing the upper receivers, RONALD D. SLUSSER would return some of the upper receivers to VAHAN KELERCHIAN.

25. At no time did VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER have proper authority from the Lake County Sheriff's Department to engage in any of the above mentioned purchases or sales of the H&K machineguns or their parts.

26. At no time were any of the H&K machineguns obtained by VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER listed in the property inventory of the Lake County Sheriff's Department.

27. In furtherance of the conspiracy and to effect its objects:

**VAHAN KELERCHIAN,**

Defendant herein, together with JOSEPH R. KUMSTAR, and RONALD D. SLUSSER, and others known and unknown to the grand jury performed the following:

<u>OVERT ACTS</u>

*First Machinegun Purchase*

a. On or about December 22, 2008, JOSEPH R. KUMSTAR issued a "Letter of Intent" on Lake County Sheriff's Department letterhead to H&K for (50)

6

additional H&K model 416 fully automatic machineguns. This letter of intent

stated these machineguns were for the "exclusive law enforcement use of the

Lake County Sheriff's Department" and that the "point of contact for all inquiries

in this matter will be Warrant Officer Ron Slusser." The letter then listed

RONALD D. SLUSSER'S home phone number. This letter was signed "Joseph

Kumstar, Chief of Police."

b.  VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLSSER

used their personal funds to obtain these machineguns and did not have proper

authorization of the Lake County Sheriff's Department to purchase these

machineguns. These (50) machineguns were purchased for approximately $1650

each.

c.  For this purchase, VAHAN KELERCHIAN provided payment to a third party

gun dealer in the amount of approximately $83,026.

d.  Shortly after obtaining these (50) H&K fully automatic machineguns, RONALD

D. SLUSSER did cut up and remove the upper receiver barrels from these (50)

H&K fully automatic machineguns.  Some of these upper barrels were sold on the

internet to any willing buyer with VAHAN KELERCHIAN, JOSEPH R.

KUMSTAR, and RONALD D. SLUSSER retaining the proceeds from this sale.

Some of the upper barrels were returned to KELERCHIAN.

e.  In or about May of 2011, during the execution of an organized crime search

warrant by Montreal, Canada, gun and gang law enforcement officials, recovered

four upper barrels from this (50) H&K fully automatic machinegun purchase by

VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER.

The serial numbers on these upper receivers (barrels) listed the Lake County
Sheriff's Department as the registered owner.

*Second Machinegun Purchase*

f.   In or about February of 2009, JOSEPH R. KUMSTAR issued another "Letter of
Intent" on Lake County Sheriff's Department letterhead to H&K for (9) H&K
model MP5KN fully automatic machineguns. This letter of intent stated these
machineguns were for the exclusive use of the Lake County Police Department.

g.   In or about February of 2009, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR
and RONALD D. SLUSSER did cause a false and fictitious Lake County
Sheriff's Department purchase order to be mailed or faxed, which represented the
Lake County Sheriff's Department to be the purchaser of these machineguns even
though it was not the true purchaser as required by law.

h.   For this purchase, VAHAN KELERCHIAN provided payment to H&K, the gun
manufacturer /distributer in the amount of approximately $11,664.

i.   Shortly after obtaining these (9) H&K fully automatic machineguns, RONALD D.
SLUSSER did cut up and remove the upper receiver barrels from these fully
automatic machineguns. These upper barrels were sold to Person A in Utah.
Person A paid Slusser $18,900 for these H&K parts. Slusser then paid $9450 to
Kumstar and $9450 to Kelerchian. These payments to Kelerchian and Kumstar
were paid because Kelerchain and Kumstar had fronted money for this purchase.

*Third Machinegun Purchase*

j.   In or about October 2009, JOSEPH R. KUMSTAR issued another "Letter of
Intent" on Lake County Sheriff's Department letterhead for (12) H&K model

53A3 fully automatic sub-machineguns. This letter of intent stated these sub-machineguns would be the property of the Lake County Sheriff's Department and would not be resold or transferred, and would be used to carry out the official duties of the Lake County Sheriff's Department.

k.  In or about October of 2009, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR and RONALD D. SLUSSER did cause another false and fictitious Lake County Sheriff's Department purchase order to be mailed or faxed, which represented the Lake County Sheriff's Department to be the purchaser of these sub-machineguns even though it was not the true purchaser as required by law.

l.  Shortly after obtaining these (12) H&K fully automatic sub-machineguns, RONALD D. SLUSSER did cut up and remove the upper receiver barrels from these fully automatic machineguns.  These upper barrels were sold to Person A in Utah.  Person A paid Slusser $31,200 for these H&K parts.  Slusser then paid Kelerchian $28,200.  This payment to Kelerchain was made because Kelerchian had fronted the money for this purchase.

m.  For this purchase, VAHAN KELERCHIAN provided payment to the H&K, the gun manufacturer/distributer, in the amount of approximately $16,800.

n.  At no time did VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER have the proper permission of the Lake County Sheriff's Department to engage in any of the above three purchases or subsequent sales of these H&K sub-machineguns.

28. In the purchasing each of these (71) machineguns and sub-machineguns, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER knowingly caused

9

false entries to be made in the books and records of the companies supplying these firearms, in that these records reflected the Lake County Sheriff's Department as the registered owner of these (71) firearms when in fact, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER knew that to be false.

All in violation of Title 18, United States Code 371 and 924(a)(1)(A).

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 2

### (Conspiring to Defraud the Food and Drug Administration)

1. The Grand Jury realleges and reincorporates by reference paragraphs 1-11, of Count 1 as though fully set forth herein;

### OBJECT OF THE CONSPIRACY

2. Between on or about December 2008, and continuing through on or about September 2010, in the Northern District of Indiana and elsewhere:

### VAHAN KELERCHIAN,

defendants herein, did knowingly combine, conspire, confederate, and agree with JOSEPH KUMSTAR, RONALD D. SLUSSER, and with others known and unknown to the grand jury, to defraud the Food and Drug Administration (FDA), an agency of the United States, by interfering with and obstructing the lawful government functions of the FDA to:

   a. Limit the sale of various restricted laser aiming sight devices to the military and law enforcement agencies only;

   b. Correctly identify first line purchasers of various laser aiming sight devices which were restricted to military or law enforcement agency purchasers only.

All in violation of Title 18 United States Code, Section 371.

## HOW THE CONSPIRACY OPERATED

3. It was part of the conspiracy that JOSEPH R. KUMSTAR, and RONALD D. SLUSSER used their position as sworn law enforcement officers, along with VAHAN KELERCHIAN, to acquire approximately 74 (Seventy-Four) restricted laser aiming sight devices by fraudulently using the name of the Lake County Sheriff's Department and The Lowell, Indiana, Police Department, knowing that the Lake County Sheriff's Department and the Lowell Police Department were not the true owners of these restricted laser aiming devices.

4. It was further part of the conspiracy that when acquiring these restricted laser aiming sights, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER knew they could only be acquired by law enforcement agencies and not individual law enforcement officers.

5. It was further part of the conspiracy that when acquiring these (74) restricted laser aiming sight devices, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER caused false information to be recorded in the books and records of the Insight Technology, Inc., regarding who was the true first purchaser of these laser aiming sight devices.   Furthermore, by causing false information to be recorded in the books records of the Insight Technology, Inc., VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER interfered with and obstructed the lawful government functions of the FDA to (a) limit the sale of various restricted laser aiming sight devices to only the military and law enforcement agencies and (b) correctly identify first line purchasers of these (74) various laser aiming sight devices, the sale of which was restricted to military or law enforcement agency purchases only.

12

6. It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER caused to be submitted to Insight Technology, Inc., a false and fictitious Lake County Sheriff's Department purchase order for the purpose of inducing Insight Technology, Inc., to believe that these restricted laser sights were being purchased by the Lake County Sheriff's Department, when in fact the defendants were acquiring these restricted laser sights with their own personal funds and for their personal use and resale.

7. It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER caused to be submitted to Insight Technology, Inc., a false and fictitious Lowell Police Department documents for the purpose of inducing Insight Technology, Inc., to believe that these restricted laser sights were being purchased by the Lowell Police Department, when in fact the defendants were acquiring these restricted laser sights with their own personal funds and for their personal use and resale.

8. It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER would submit to Insight Technology, Inc., a "IR Product Disclosure Agreement" signed by JOSPEH R. KUMSTAR which falsely represented that the restricted laser sights being purchased would "not be sold or transferred to individual law enforcement or civilian personnel."

9. It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER would submit to Insight Technology, Inc., a "IR Product Disclosure Agreement" which purported

13

to be signed by the proper authorities at the Lowell Police Department but in fact, falsely

represented that the restricted laser sights being purchased would "not be sold or

transferred to individual law enforcement or civilian personnel."

10. It was further part of the conspiracy that when acquiring these restricted laser sights

VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER caused

false and fictitious Lake County Sheriff's Department purchase orders to be created which

falsely represented that the restricted laser sights were being purchased by the Lake

County Sheriff's Department.

11. It was further part of the conspiracy that when acquiring these restricted laser sights

VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER would

cause these restricted laser sights to be delivered to the Lake County Sheriff's Department

or the Lowell Police Department rather than to their personal residences.

12. It was further part of the conspiracy that after acquiring these restricted laser sights, all of

them were removed from the Lake County Sheriff's Department and the Lowell Police

Department to the personal residence of either KUMSTAR or SLUSSER.

13. It was further part of the conspiracy that after these restricted laser sights were at the either

KUMSTAR or SLUSSER's residence, RONALD D. SLUSSER would sell some these

restricted laser sights on the internet to any willing purchaser. The sale of these restricted

laser sights ranged from approximately $2,800 to $3000 each. Some of the restricted lasers

aiming sights were retained by each of the defendants.

14. At no time did VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D.

SLUSSER have proper authority from the Lake County Sheriff's Department or the

Lowell Police Department to engage in any of the above mentioned purchases or sales of the restricted laser sights.

15. At no time were any of the restricted laser sights obtained by VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER listed in the property inventory of the Lake County Sheriff's Department or the Lowell Police Department.

16. In furtherance of the conspiracy and to effect its objects:

## VAHAN KELERCHIAN,

Defendant herein, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER, and other conspirators, known and unknown to the grand jury performed the following:

### OVERT ACTS

*First Laser Sight Purchase*

a. In or about December 6, 2008, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER ordered from Insight Technology Inc., approximately 25 various restricted laser sights having a value of approximately $27,000.

b. On or about December 6, 2008, JOSEPH R. KUMSTAR, submitted to Insight Technology, Inc., a "IR Product Disclosure Agreement" signed by JOSPEH R. KUMSTAR which represented that the restricted laser sights being purchased would "not be sold or transferred to individual law enforcement or civilian personnel."

c. In or about December of 2008, JOSEPH R. KUMSTAR signed a false and fictitious Lake County Sheriff's Department purchase order inducing Insight Technology, Inc., to believe that the Lake County Sheriff's Department was the

15

true purchaser of these restricted laser sights even though the defendants themselves provided the funds for the purchase of these restricted laser sights.

d. In or about January of 2009, Insight Technology, Inc. shipped these restricted laser sights to the Lake County Sheriff's Department.

e. For this purchase, VAHAN KELERCHIAN provided payment to Insight Technologies Inc., in excess of $17,000.

f. After obtaining these restricted laser sights, RONALD D. SLUSSER sent back to VAHAN KELERCHIAN approximately 12 of these restricted laser sights.

g. After obtaining these restricted laser sights, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER sold via the internet some these restricted laser sights to any and all willing purchasers, including Keith Mitts.

h. On or about August 21, 2009, the Department of Defense Criminal Investigative Service (DCIS) engaged in a successful undercover purchase of a restricted laser sight being offered for sale on E-Bay by a Keith Mitts. DCIS undercover agents paid $4,200 for a restricted laser aiming sight which was traced back to the December 6, 2008, laser sight order from Insight Technology, Inc., which was sent to the Lake County Sheriff's Department. Subsequent to this undercover purchase, two additional restricted laser sights of the same model and type that were part of the December 6, 2008, laser sight order from Insight Technology, Inc., which was sent to the Lake County Sheriff's Department, were recovered from Mitt's Mississippi residence during Mitt's shooting and standoff with local police officers.

16

*Second Laser Sight Purchase*

    i.  In or about December 2009, the defendants ordered from Insight Technology Inc., approximately 12 restricted laser sights having a value of approximately $15,000.

    j.  On or about December 2009, RONALD R. SLUSSER submitted to Insight Technology Inc., an "IR Product Disclosure Agreement" which represented that the restricted laser sights being purchased would "not be sold or transferred to individual law enforcement or civilian personnel."

    k.  In or about January of 2010, Insight Technology, Inc. shipped these restricted laser sights and RONALD D. SLUSSER obtained these restricted laser sights.

    l.  For this purchase, VAHAN KELERCHIAN provided several payments to Insight Technologies Inc., totaling more than $15,000.

    m.  After obtaining these restricted laser sights, RONALD D. SLUSSER sold via the internet these restricted laser sights to any willing purchaser.

*Third Laser Sight Purchase*

    n.  In or about February 2010, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER ordered from Insight Technology Inc., approximately 22 various restricted laser sights having value of approximately $30,000.

    o.  On or about February 23, 2010, JOSEPH R. KUMSTAR submitted to Insight Technology Inc., an "IR Product Disclosure Agreement" signed by JOSPEH R. KUMSTAR which represented that the restricted laser sights being purchased

17

would "not be sold or transferred to individual law enforcement or civilian personnel."

p.  In or about February 2010, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR and RONALD SLUSSER created a false and fictitious Lake County Sheriff's Department purchase order inducing Insight Technology, Inc., to believe that the Lake County Sheriff's Department was the true purchaser of these restricted laser sights even though the defendants themselves provided the funds for the purchase of these the restricted laser sights.

q.  In or about March 2010, Insight Technology, Inc. shipped these restricted laser sights to the Lake County Sheriff's Department.

r.  For this purchase, VAHAN KELERCHIAN provided several payments to Insight Technologies Inc., totaling more than $25,000.

s.  After obtaining these restricted laser sights, RONALD D. SLUSSER sold via the internet some of these restricted laser sights to any willing purchaser.

t.  Approximately 20 of these restricted laser sights were returned to VAHAN KELERCHIAN by RONALD D. SLUSSER.

*Fourth Laser Sight Purchase*

u.  In or about July 2010, RONALD D. SLUSSER ordered from Insight Technology, Inc., approximately 15 restricted laser sights from Insight Technology Inc., having a value of approximately $18,000.

v.  On or about July 6, 2010, RONALD R. SLUSSER submitted to Insight Technology, Inc., an "IR Product Disclosure Agreement" which represented that

the restricted laser sights being purchased would "not be sold or transferred to individual law enforcement or civilian personnel."

w.  In or about August 2010, Insight Technology, Inc. shipped these restricted laser sights and RONALD D. SLUSSER subsequently retrieved them.

x.  For this purchase, VAHAN KELERCHIAN provided payment to Insight Technologies Inc., in excess of $16,000.

y.  After obtaining these restricted laser sights, RONALD D. SLUSSER sold via the internet these restricted laser sights to any willing purchaser and sent two of the sights back to VAHAN KELERCHIAN.

z.  On August of 2010, a Special Agent of the FDA engaged in an undercover purchase of a restricted laser sight from RONDAL D. SLUSSER.  This restricted laser sight was purchased by RONALD D. SLUSSER from Insight Technology, Inc., for approximately $1250.00 and sold to the FDA undercover agent for approximately $2900.00.  An examination of the serial number for this sight revealed that it was part of the July 2010 order of 15 restricted laser sights that had been ordered by RONALD D. SLUSSER and paid for by VAHAN KELERCHIAN.

All in violation of Title 18 United States Code, Section 371.

**THE GRAND JURY FURTHER CHARGES:**

<u>COUNT 3</u>

**(Conspiracy to Make False Statements - Demonstration Letters)**

From on or about October 2007, and continuing to in or about March 28, 2010, both dates

being approximate and inclusive, in the Northern District of Indiana and elsewhere,

**VAHAN KELERCHIAN**

defendant herein, and Joseph Kumstar, knowingly combined, conspired, confederated and agreed

together and with each other, and with other persons known and unknown to the Grand Jury, to

commit the following offenses against the United States: to willfully and knowingly make and

cause to be made, and use and cause to be used, in a matter within the jurisdiction of a

department or agency of the United States, to wit: the Bureau of Alcohol, Tobacco, Firearms,

and Explosives, false writings and documents to wit: approximately (7) letters on Lake County

Sheriff's Department letterhead requesting firearm demonstrations of machine guns

(demonstration letters) from VAHAN KELERCHIAN, knowing the same to contain a materially

false, fictitious, and fraudulent statement because VAHAN KELERCHIAN very well knew that

in fact no demonstration was going to occur.

In furtherance of this scheme, false demonstration letters were sent from Lake County

Indiana, VAHAN KELERCHIAN and to the National Firearms Branch of the Bureau of

Alcohol, Tobacco, and Firearms located in Martinsburg, WV., on the following approximate

days: October 4, 2007, February 13, 2009, February 16, 2009, June 29, 2009, March 28, 2010.

All in violation of Title 18, United States Code Section 1001, and 371.

20

**THE GRAND JURY FURTHER CHARGES:**

### COUNTS 4-7

**(False Statements - Demonstration Letters)**

On or about the following dates in the Northern District of Indiana and elsewhere,

### VAHAN KELERCHIAN

defendant herein, and Joseph Kumstar did willfully and knowingly make and cause to be made, and use and cause to be used, in a matter within the jurisdiction of a department or agency of the United States, to wit: the Bureau of Alcohol, Tobacco, Firearms, and Explosives, false writings and documents to wit: approximately (4) letters on Lake County Sheriff's Department letterhead requesting firearm demonstrations of various machine guns (demonstration letters) from VAHAN KELERCHIAN, knowing the same to contain a materially false, fictitious, and fraudulent statement because VAHAN KELERCHIAN very well knew that in fact no demonstration was going to occur, said letters being mailed from Lake County Indiana, to VAHAN KELERCHIAN in Pennsylvania and the the National Firearms Branch of the Bureau of Alcohol, Tobacco, and Firearms located in Martinsburg, WV., on the following approximate days:

| COUNT | DATE |
| --- | --- |
| 4 | February 13, 2009 |
| 5 | February 16, 2009 |
| 6 | June 29, 2009 |
| 7 | March 28, 2010 |

All in violation of Title 18, United States Code, Section 1001 and 2.

21

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 8

### (Bribery)

1. At all times material to this indictment, the Lake County Sheriff's Department was an agency of a local government entity to wit: Lake County, Indiana, that received federal assistance in excess of $10,000 during the one-year period beginning January 2, 2008 and ending December 31, 2008.

2. Joseph Kumstar was an agent of Lake County Sheriff's Department acting as its Deputy Chief, in charge of operations, whose duties included overseeing and managing the Lake County Sheriff's Department.

3. On or about July 31, 2008, in the District of Indiana, and elsewhere,

## VAHAN KELERCHIAN

defendant herein, did corruptly give, offer, and agree to give a thing of value to wit: a Remington .12 Gauge short-barrel shotgun, to Joseph Kumstar, intending to influence and reward Joseph Kumstar in connection with a transaction and series of transactions of the Lake County Sheriff's Department  involving $5,000 or more.

All in violation of Title 18, United States Code, Section 666(a)(2) and 2.

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 9

**(Conspiracy to Launder Monetary Instruments: 1956 and 1957)**

Beginning in or about February 2009 and continuing through in or about January 2010, both dates being approximate and inclusive, in the District of Indiana and elsewhere,

### VAHAN KELECHIAN

Defendant herein, Joseph Kumstar, and Ronald Slusser, willfully and knowingly conspired and agreed together and with each other, and with others known and unknown to the Grand Jury, to commit certain offenses:

1) Under Title 18, United States Code § 1956, to conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved proceeds of specified unlawful activity, that is mail and wire fraud, in violation of title 18  United States Code § 1341 and 1343: (1) with the intent to promote the carrying on of such specified unlawful activity and (2) knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and while conducting or attempting to conduct such financial transactions knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity,  and

2) Under Title 18, United States Code § 1957, to conduct and attempt to conduct monetary transactions affecting interstate commerce, in criminally derived property of a value greater than

$10,000, such property having been derived from a specified unlawful activity, that is, mail and wire fraud, in violation of Title 18 United States Code § 1341 and 1343.

All in violation of Title 18 United States Code 1956(h), 1956(a)(1)(B)(i), 1957, and 2.

## FIRST FORFEITURE ALLEGATION

1.  The allegations of Count One of the Indictment are realleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America pursuant to the provisions of Title 18 United States Code, Section 924(d), and Title 28 United States Code, Section 2461(c).

2.  Upon conviction of Count One of the Indictment, **Vahan Kelerchian**, defendant herein, shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 924(d), and Title 28, United States Code, Section 2461(c), any and all firearms involved in the commission of such offenses:

## SECOND FORFEITURE ALLEGATION

1.      The allegations contained in Count 9 of this Indictment are hereby re-alleged and

incorporated by reference for the purpose of alleging forfeiture  pursuant to Title 18, United

States Code, Sections 982(a)(1).

2.      Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an

offense in violation of Title 18, United States Code, Sections 1956 and 1957 , the defendant,

VAHAN KELERCHIAN, shall forfeit to the United States of America any property, real or

personal, involved in such offense, and any property traceable to such property.

3.      If any of the property described above, as a result of any act or omission

of the defendant:

a.      cannot be located upon the exercise of due diligence;
b.      has been transferred or sold to, or deposited with, a third party;
c.      has been placed beyond the jurisdiction of the court;
d.      has been substantially diminished in value; or
e.      has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section

982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

S/Foreperson
FOREPERSON

DAVID CAPP
UNITED STATES ATTORNEY

By:   S/Philip C. Benson
Philip C. Benson
Assistant United States Attorney

26

# Anthony Baiamonte III

February 28, 2018

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

RE:   **Character Reference for Vahan Steven Kelerchian** ███████████

**Application for Restoration of Firearms Privileges**
**License or Permit number 8-23-017-01-5A-02276**

Dear Sir/Madam:

I submit this Character Reference in support of, and granting relief to, Vahan Steven Kelerchian's Application for Restoration of Firearms Privileges.

I have personally known Mr. Kelerchian for more than ten (10) years as a personal friend. He is of high moral character and has proven to be a trustworthy and honorable man. I am proud to call Mr. Kelerchian my friend.

If you need any additional information, or have any questions of me in my support of Mr. Kelerchian, please contact me directly.

Thank you for your considerations. I remain,

Sincerely,

By: */s/ Anthony Baiamonte III*

# CHRISTOPHER J. McLOUGHLIN, PC

27 February 2018

Joshua Prince, Esq.
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505

RE: Vahan Kelerchian

Mr. Prince:

This letter is addressed to you in support of Vahan Kelerchian's request to
BATF regarding his application for Federal Firearms relief, and I authorize you
to make it available to anyone appropriate to this use. As a retired security
consultant, I was self-employed in the varied aspects of that field for more than
a quarter of a century, and I supported myself without incident or reprimand of
any sort for my professional career.

My association and friendship with Mr. Kelerchian goes back a decade,
probably more. During these years his expertise with acquisition and
disposition of firearms has been invaluable to me and to my own friends and
clients. He has with authority given advice on investment grade firearms and
guided us through a maze of rules and regulations in order to insure that no
paperwork was returned for further attention due to an omission or
misstatement of description or condition. Perhaps presenting an aggravation to
buyers or sellers, I've known him to strictly avoid any transaction that might
bend rules effecting administrative procedure or record keeping. His advice has
been given and taken in matters ranging from simple transfers to elaborate
evaluations of inventory distributions in the dissolutions of estate assets.

Over time I have come to know Mr. Kelerchian on a personal level as well as a
professional one. Apart from knowing firearms and the business of them, he is
comfortable with the history of U.S. military hardware, and not only that, he
knows more about the colonial geography of his part of the country than I do
about the Confederate history of mine. He's shared this knowledge with his
wife and their two daughters on weekend outings and summer vacations away

Mr. Prince
27 February
Page 02.

from his business. I know so because he's told me about them – in detail. He is a family man and takes pride in talking to me about his eldest daughter's passing her bar exam and her first date, just as he does about his youngest daughter's birthday party stories and the things that hold her interests. And when the time is right he and Maura take time together for a quick trip to New York, and I hear about that too. Vahan and I have become more than just business friends.

The business is operated meticulously and with an enviable sense of responsibility and attention to detail. Recently the business records underwent an intense scrutiny audit, and I understand that the books passed with praise and not the usual criticisms of form, content, or carelessness.

His business is the support of himself, his wife and their two daughters. I know of nothing that he might have knowingly done to put that in jeopardy and while he does not now operate the business himself, there should be no impediment to letting the business continue to function for their livelihood and well-being by granting him Federal Firearms relief.

Sincerely,
CHRISTOPHER J. McLOUGHLIN, PC

Chris McLoughlin
(...\CJMcL LTR 2018\VK:ASI 27-02-18\CJMcL,PC)

# JOHN T. CONWAY



February 25, 2018

RE: Vahan S. Kelerchian, Applicant

To Whom This May Concern,

My name is John T. Conway. I am a New York State Licensed Funeral
Director. I am a United States Coast Guard Licensed Captain. I am 68 years
old and am a college graduate. I have known Vahan Kelerchian since 1975,
both on a personal level as well as on a professional level. I feel that I am a
good judge of one's character and I can speak of Mr. Kelerchian in an honest and
objective manner.

 For many years my wife's family and his wife's family lived across the street from each
other and both families were very close to each other. Coincidentally, when my wife and
I bought our first house, it was two houses away from Mr. Kelerchian's family home. We
could not have had better neighbors than the Kelerchians. Vahan and I saw each other
almost on a daily basis. I know him well. I know him to be a straight and honest man,
one who could be depended upon as a neighbor. He looked out for his family as well as
his neighbors. He was definitely an asset to the neighborhood.

I know him to be a very good businessman and an even better family man. There is
nothing more important to him than his family. I know him to be honest, perhaps to a
fault. He is dependable and his word is as good as gold.

It is my sincere hope that his application be given a fair and objective review.

Thank you for your time and consideration.

John T. Conway

Mr. Anthony DiGiovanni                                    February 23, 2018



U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

Re: Kelerchian, Vahan, Steven

To Whom It May Concern:

I am writing this letter on behalf of my dear friend, Vahan Steven Kelerchian. I am a small business owner in Jackson Heights, NY. My family has owned and operated a delicatessen for more than 58 years. It's the quintessential neighborhood deli that everyone who went to school nearby patronized year after year, and many of our friends still live in the community. I grew up in the neighborhood, along with Vahan and his wife Maura, and we have been friends for more than 46 years. This is the place where we forged many of our lifelong friendships. During the many years that I have known Vahan, I can attest to the fact that he has always conducted himself with both honor and integrity, and he has always been very well respected in the community.

Vahan formerly operated a car repair shop not too far away from my business, and everyone with whom he came into contact had nothing but praise for him. He has always been kind, courteous, and willing to help anyone in need. Whether it was family members, friends, customers, or even strangers that were in need of assistance, he always offered help and never turned his back on anyone, no matter the circumstance. I can personally attest to this because I have witnessed his kindness on many occasions over the years. It is because of these attributes that Vahan was very successful in the auto repair business for many years. He ultimately moved to Pennsylvania in order to follow his lifelong passion of becoming a Federal Firearms dealer. There, along with Maura, he built another successful business with an impeccable record. For as long as I have known Vahan, he has always been driven to be the best at whatever pursuit he follows. Vahan is a man who values honesty, morality, and strong principles, and he has been a man of the utmost character in all the years that we have been friends. He is also a man who knows the importance of family, whereby he and Maura have raised two beautiful daughters and instilled within them the same core values. I have always held Vahan in the highest regard; I never had a brother, but he is as close to one that I could have ever found. We will always be friends and nothing can or will ever change that fact.

I am thankful for the opportunity to provide a testament on behalf of Vahan Kelerchian. I hope that my words have served to paint a clear picture of the man and friend that I have had the privilege to know and admire for almost the entirety of my life.

Sincerely,

Anthony DiGiovanni

# APPLICANT
*See Privacy Act Notice on Back

FD-258 (REV.3-1-10)   1110-0046

SIGNATURE OF PERSON FINGERPRINTED

RESIDENCE OF PERSON FINGERPRINTED

275 WORTHINGTON MILL RD
RICHBORO
PA          18954

SIGNATURE OF OFFICIAL TAKING FINGERPRINTS

DATE
01-02-2018   ASHARP-ALEX, SHARP

EMPLOYER AND ADDRESS

FEDERAL FIREARMS LICENSING CENTER
244 NEEDY RD
MARTINSBURG
WV          25405

REASON FINGERPRINTED

OTHER

LEAVE BLANK

TYPE OR PRINT ALL INFORMATION IN BLACK

LAST NAME   FIRST NAME   MIDDLE

KELERCHIAN,VAHAN STEVEN

ALIASES  AKA

ORI  WVATF0800
ATF-NATL TRA CTR
MARTINSBURG, WV

CITIZENSHIP  CTZ

YOUR NO.  OCA

FBI NO.  FBI

ARMED FORCES NO.  MNU

SOCIAL SECURITY NO.  SOC

| SEX | RACE | HGT | WGT | EYES | HAIR |
|-----|------|-----|-----|------|------|

US - UNITED STATES O    M    W    600    290    BRO    BAL    NY - NEW YORK

CLASS

REF

FBI  LEAVE BLANK

DATE OF BIRTH   DOB
Month   Day   Year

LEAVE BLANK

1110-0046

# FEDERAL BUREAU OF INVESTIGATION
## UNITED STATES DEPARTMENT OF JUSTICE
### CJIS DIVISION/CLARKSBURG, WV  26306

# APPLICANT

**1. LOOP**



CENTER OF LOOP

DELTA

THE LINES BETWEEN CENTER OF LOOP AND DELTA MUST SHOW

**2. WHORL**



DELTAS

THESE LINES RUNNING BETWEEN DELTAS MUST BE CLEAR

**3. ARCH**

ARCHES HAVE NO DELTAS

FD-258 (REV. 3-1-10)

**U.S. GOVERNMENT PUBLISHING OFFICE:**
10/22/2015 12:51:47

**THIS CARD FOR USE BY:**

1. LAW ENFORCEMENT AGENCIES IN FINGERPRINTING APPLICANTS FOR LAW ENFORCEMENT POSITIONS.*

2. OFFICIALS OF STATE AND LOCAL GOVERNMENTS FOR PURPOSES OF EMPLOYMENT, LICENSING, AND PERMITS, AS AUTHORIZED BY STATE STATUTES AND APPROVED BY THE ATTORNEY GENERAL OF THE UNITED STATES. LOCAL AND COUNTY ORDINANCES, UNLESS SPECIFICALLY BASED ON APPLICABLE STATE STATUTES DO NOT SATISFY THIS REQUIREMENT.*

3. U.S. GOVERNMENT AGENCIES AND OTHER ENTITIES REQUIRED BY FEDERAL LAW.**

4. OFFICIALS OF FEDERALLY CHARTERED OR INSURED BANKING INSTITUTIONS TO PROMOTE OR MAINTAIN THE SECURITY OF THOSE INSTITUTIONS.

Please review this helpful information to aid in the successful processing of hard copy criminal and civil fingerprint submissions in order to prevent delays or rejections. Hard copy fingerprint submissions must meet specific criteria for processing by the Federal Bureau of Investigation.
**Ensure all information is typed or legibly printed using blue or black ink.**
**Enter data within the boundaries of the designated field or block.**
**Complete all required fields.** (If a required field is left blank, the fingerprint card may be immediately rejected without further processing.)
• The required fields for hard copy fingerprint cards are: originating agency identifier number - date of birth - place of birth - name - sex - fingerprint impressions - any applicable state stamp - Other (race, height, weight, eye color, hair color)

* criminal fingerprint cards also require an arrest charge and date of arrest.
* civil fingerprint cards also require a reason fingerprinted and date fingerprinted

**Do not use highlighters on fingerprint cards.**
**Do not enter data or labels within 'Leave Blank' areas.**
**Ensure the 'Reply Desired' field is checked when applicable** (criminal only)**.**
**Ensure fingerprint impressions are rolled completely from nail to nail.**
**Ensure fingerprint impressions are in the correct sequence.**
**Ensure notations are made for any missing fingerprint impression (i.e. amputation).**
**Do not use more than two retabs per fingerprint impression block.**
**Ensure no stray marks are within the fingerprint impression blocks.**

Training aids can be ordered online via the Internet by accessing the FBI's website at: fbi.gov, click on 'Fingerprints', then click on 'Ordering Fingerprint Cards & Training Aids'. Direct questions to the Identification and Investigative Services Section's Customer Service Group at (304) 625-5590 or by e-mail at <liaison@leo.gov>.

**PRIVACY ACT STATEMENT**

**Authority:** The FBI's acquisition, preservation, and exchange of information requested by this form is generally authorized under 28 U.S.C. 534. Depending on the nature of your application, supplemental authorities include numerous Federal statutes, hundreds of State statutes pursuant to Pub.L. 92-544, Presidential executive orders, regulations and/or orders of the Attorney General of the United States, or other authorized authorities. Examples include, but are not limited to: 5 U.S.C. 9101; Pub.L. 94-29; Pub.L. 101-604; and Executive Orders 10450 and 12968. Providing the requested information is voluntary; however, failure to furnish the information may affect timely completion or approval of your application.

**Social Security Account Number (SSAN).** Your SSAN is needed to keep records accurate because other people may have the same name and birth date. Pursuant to the Federal Privacy Act of 1974 (5 USC 552a), the requesting agency is responsible for informing you whether disclosure is mandatory or voluntary, by what statutory or other authority your SSAN is solicited, and what uses will be made of it. Executive Order 9397 also asks Federal agencies to use this number to help identify individuals in agency records.

**Principal Purpose:** Certain determinations, such as employment, security, licensing, and adoption, may be predicated on fingerprint-based checks. Your fingerprints and other information contained on (and along with) this form may be submitted to the requesting agency, the agency conducting the application investigation, and/or FBI for the purpose of comparing the submitted information to available records in order to identify other information that may be pertinent to the application. During the processing of this application, and for as long hereafter as may be relevant to the activity for which this application is being submitted, the FBI may disclose any potentially pertinent information to the requesting agency and/or to the agency conducting the investigation. The FBI may also retain the submitted information in the FBI's permanent collection of fingerprints and related information, where it will be subject to comparisons against other submissions received by the FBI. Depending on the nature of your application, the requesting agency and/or the agency conducting the application investigation may also retain the fingerprints and other submitted information for authorized purposes of such agency(ies).

**Routine Uses:** The fingerprints and information reported on this form may be disclosed pursuant to your consent, and may also be disclosed by the FBI without your consent as permitted by the Federal Privacy Act of 1974 (5 USC 552a(b)) and all applicable routine uses as may be published at any time in the Federal Register, including the routine uses for the FBI Fingerprint Identification Records System (Justice/FBI-009) and the FBI's Blanket Routine Uses (Justice/FBI-BRU). Routine uses include, but are not limited to, disclosures to: appropriate governmental authorities responsible for civil or criminal law enforcement, counterintelligence, national security or public safety matters to which the information may be relevant; to State and local governmental agencies and nongovernmental entities for application processing as authorized by Federal and State legislation, executive order, or regulation, including employment, security, licensing, and adoption checks; and as otherwise authorized by law, treaty, executive order, regulation, or other lawful authority. If other agencies are involved in processing this application, they may have additional routine uses.

**Additional Information:** The requesting agency and/or the agency conducting the application-investigation will provide you additional information pertinent to the specific circumstances of this application, which may include identification of other authorities, purposes, uses, and consequences of not providing requested information. In addition, any such agency in the Federal Executive Branch has also published notice in the Federal Register describing any system(s) of records in which that agency may also maintain your records, including the authorities, purposes, and routine uses for the system(s).

**INSTRUCTIONS:**

* 1. PRINTS MUST GENERALLY BE CHECKED THROUGH THE APPROPRIATE STATE IDENTIFICATION BUREAU, AND ONLY THOSE FINGERPRINTS FOR WHICH NO DISQUALIFYING RECORD HAS BEEN FOUND LOCALLY SHOULD BE SUBMITTED FOR FBI SEARCH.

2. IDENTITY OF PRIVATE CONTRACTORS SHOULD BE SHOWN IN SPACE "EMPLOYER AND ADDRESS". THE CONTRIBUTOR IS THE NAME OF THE AGENCY SUBMITTING THE FINGERPRINT CARD TO THE FBI.

3. FBI NUMBER, IF KNOWN, SHOULD ALWAYS BE FURNISHED IN THE APPROPRIATE SPACE.

** MISCELLANEOUS NO. - RECORD: OTHER ARMED FORCES NO. PASSPORT NO. [FP], ALIEN REGISTRATION NO. (AR), PORT SECURITY CARD NO. (PS), SELECTIVE SERVICE NO. (SS) VETERANS' ADMINISTRATION CLAIM NO. (VA).

# Exhibit B



**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)   PHONE ( 610 ) 845-3803

Joshua Prince, Esq.
Prince Law Offices
646 Lenape Rd
Bechtelsville, PA 19505

**PAYMENT BY ACCOUNT (if applicable)**

USPS Corporate Acct. No.

Federal Agency Acct. No. or Postal Service™ Acct. No.

**DELIVERY OPTIONS (Customer Use Only)**

☐ SIGNATURE REQUIRED *Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.*

Delivery Options
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)   PHONE (   )

Thomas E. Brandon
Bureau of ATF
99 New York Ave, N.E.
Washington, DC
20226

ZIP + 4® (U.S. ADDRESSES ONLY)

For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.

$100.00 insurance included.

**UNITED STATES POSTAL SERVICE ®**

**PRIORITY MAIL EXPRESS™**

JP-370012

RECD MAR 06 2018

EL 731617143 US

DHE

**ORIGIN (POSTAL SERVICE USE ONLY)**

☐ 1-Day   ☐ 2-Day   ☐ Military   ☐ DPO

PO ZIP Code: 19504

Scheduled Delivery Date (MM/DD/YY): 3/6/18

Postage: $ 24.70

Date Accepted (MM/DD/YY): 3/5/16

Scheduled Delivery Time: ☐ 10:30 AM  ☐ 12 NOON  ☐ 3:00 PM

Insurance Fee: $

COD Fee: $

Time Accepted: 3:17  ☐ AM  ☐ PM

10:30 AM Delivery Fee: $

Return Receipt Fee: $

Live Animal Transportation Fee: $

**DELIVERY (POSTAL SERVICE USE ONLY)**

Weight: ___ lbs. ___ ozs.   ☐ Flat Rate

Special Handling/Fragile: $

Sunday/Holiday Premium Fee: $

Total Postage & Fees: $ 24.70

Acceptance Employee Initials: LW

Delivery Attempt (MM/DD/YY)   Time   ☐ AM  ☐ PM

Employee Signature

Delivery Attempt (MM/DD/YY)   Time   ☐ AM  ☐ PM

Employee Signature

LABEL 11-B, OCTOBER 2016   PSN 7690-02-000-9996

**2-CUSTOMER COPY**

# USPS Tracking®

**FAQs** >

## Track Another Package  +

### Track Packages
### Anytime, Anywhere

Get the free Informed Delivery® feature to receive automated notifications on your packages

**Learn More**

**(https://reg.usps.com**

/xsell?app=UspsTools&ref=homepageBanner&appURL=https%3A%2F%2Finformeddelivery.usps.com/box/pages/intro/start.action)

---

**Tracking Number:** EL731611443US

Remove ✕

Feedback

**Scheduled Delivery by**

# TUESDAY

# 6
MARCH
2018 ⓘ

by

**12:00pm** ⓘ

 **Delivered**

March 7, 2018 at 5:38 am
Delivered
WASHINGTON, DC 20226

---

**Proof of Delivery**                                    ∧

To request a Proof of Delivery email with full details including a delivery address, **sign in to your USPS.com® account.** ❯

For a Proof of Delivery email without a delivery address, provide your name and email address below.

*Indicates a required field

**\*First Name**

First

**M.I.**

**\*Last Name**

Last

**\*Email Proof of Delivery to up to three addresses**

email123@mail.com

**Add Another Email +**

**Request Email**

---

## Tracking History ^

**March 7, 2018, 5:38 am**
Delivered
WASHINGTON, DC 20226
Your item was delivered at 5:38 am on March 7, 2018 in WASHINGTON, DC
20226 to ATF 20226 PU. The item was signed for by E ANDERSON.

**March 6, 2018, 10:46 am**
Available for Pickup
WASHINGTON, DC 20226

**March 6, 2018, 10:28 am**
Arrived at Post Office
WASHINGTON, DC 20018

**March 6, 2018, 5:30 am**
Departed USPS Regional Facility
LEHIGH VALLEY PA DISTRIBUTION CENTER

**March 5, 2018, 7:40 pm**

Feedback

Arrived at USPS Regional Origin Facility
LEHIGH VALLEY PA DISTRIBUTION CENTER

**March 5, 2018, 4:30 pm**
Departed Post Office
BARTO, PA 19504

**March 5, 2018, 3:17 pm**
USPS in possession of item
BARTO, PA 19504

**Product Information**  ⌄

**See Less** ⌃

Feedback

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs**

# Exhibit C



**CUSTOMER USE ONLY**

**FROM** (PLEASE PRINT)     PHONE ( 610 ) 845-3803

Joshua Prince, Esq.
646 Lenape Rd.
Bechtelsville, PA 19505

**PAYMENT BY ACCOUNT** (if applicable)

USPS Corporate Acct. No.

Federal Agency Acct. No. or Postal Service™ Acct. No.

**DELIVERY OPTIONS (Customer Use Only)**

☐ **SIGNATURE REQUIRED** *Note:* The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

**TO:** (PLEASE PRINT)     PHONE ( 215 ) 446-7800

Mr. Juan F. Orellana
Curtis center
Site 1000E
601 Walnut st
Miladelphia, PA
19106

For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.

$100.00 insurance included.

LABEL 11-B, OCTOBER 2016          PSN 7690-02-000-9996          **2-CUSTOMER COPY**

EL 731415 MUSR 06 2018

JP-37012   DHE

**PRIORITY MAIL EXPRESS™**

**ORIGIN (POSTAL SERVICE USE ONLY)**

☐ 1-Day     ☐ 2-Day     ☐ Military     ☐ DPO

**PO ZIP Code:** 19504

**Scheduled Delivery Date (MM/DD/YY):** 3/6/18

**Postage:** $

**Date Accepted (MM/DD/YY):** 3/5/18

**Scheduled Delivery Time:** ☐ 10:30 AM  ☐ 3:00 PM  ☐ 12 NOON

**Insurance Fee:** $ 24.70

**COD Fee:** $

**Time Accepted:** 3:15  ☐ AM  ☑ PM

**10:30 AM Delivery Fee:** $

**Return Receipt Fee:** $

**Live Animal Transportation Fee:** $

**Special Handling/Fragile:** $

**Sunday/Holiday Premium Fee:** $

**Acceptance Employee Initials:** KWP

**Total Postage & Fees:** $ 24.70

**Weight:** ___ lbs. ___ ozs.     ☐ Flat Rate

**DELIVERY (POSTAL SERVICE USE ONLY)**

**Delivery Attempt (MM/DD/YY):** ___  Time ___ ☐ AM ☐ PM

**Employee Signature**

**Delivery Attempt (MM/DD/YY):** ___  Time ___ ☐ AM ☐ PM

**Employee Signature**

# USPS Tracking®

**FAQs >**

## Track Another Package **+**

### Track Packages
### Anytime, Anywhere

Get the free Informed Delivery® feature to receive automated notifications on your packages

**Learn More**

**(https://reg.usps.com**

/xsell?app=UspsTools&ref=homepageBanner&appURL=https%3A%2F%2Finformeddelivery.usps.com/box/pages/intro/start.action)

---

**Tracking Number:** EL731611465US

Remove ✕

Feedback

### Scheduled Delivery by

## TUESDAY
## 6 MARCH 2018 ⓘ | by 12:00pm ⓘ

 **Delivered**

March 6, 2018 at 10:52 am
Delivered
PHILADELPHIA, PA 19106

---

**Proof of Delivery** ⌄

---

**Tracking History** ⌃

**March 6, 2018, 10:52 am**
Delivered

PHILADELPHIA, PA 19106
Your item was delivered at 10:52 am on March 6, 2018 in PHILADELPHIA, PA
19106. Waiver of signature was exercised at time of delivery.

**March 6, 2018, 6:00 am**
Arrived at Post Office
PHILADELPHIA, PA 19104

**March 6, 2018, 12:59 am**
Arrived at USPS Regional Facility
PHILADELPHIA PA DISTRIBUTION CENTER

**March 5, 2018, 7:40 pm**
Arrived at USPS Regional Facility
LEHIGH VALLEY PA DISTRIBUTION CENTER

**March 5, 2018, 4:30 pm**
Departed Post Office
BARTO, PA 19504

**March 5, 2018, 3:15 pm**
USPS in possession of item
BARTO, PA 19504

Feedback

**Product Information**                                  ⌄

See Less ⌃

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

# Exhibit D



**FROM** (PLEASE PRINT)

Patricia Prince
Prince Law Offices
c/o Jeremy Prince
Kleckerville, PA 19505

PHONE ( ) 845-38-03

**USPS CUSTOMER USE ONLY**

**PAYMENT BY ACCOUNT (if applicable)**
USPS® Corporate Acct. No.
Federal Agency Acct. No. or Postal Service™ Acct. No.

**DELIVERY OPTIONS (Customer Use Only)**
☐ SIGNATURE REQUIRED *Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.*

**Delivery Options**
☐ Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.*

**TO:** (PLEASE PRINT)    PHONE ( ) 202,648-70

US Dept. of Justice - Bureau of ATF
Attn: ATF NCETR - Relief E
Corporal Rd, BLDG. 3750,
Disability Hrs Section
Huntsville, AL Redstone Arsenal

ZIP + 4® (U.S. ADDRESSES ONLY)

3 5 8 9 8

For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
$100.00 insurance included.

**ORIGIN (POSTAL SERVICE USE ONLY)**

☐ PO ZIP Code
19504

☐ 1-Day   ☐ 2-Day   ☐ Military   ☐ DPO

**Date Accepted (MM/DD/YY)**
3|51|8

**Scheduled Delivery Date (MM/DD/YY)**
3|6|18

**Postage**
$ 24.70

**Time Accepted**
3:14   ☐ AM   ☒ PM

**Scheduled Delivery Time**
☐ 10:30 AM   ☐ 12 NOON   ☐ 3:00 PM

**Insurance Fee**
$

**COD Fee**
$

**10:30 AM Delivery Fee**
$

**Return Receipt Fee**
$

**Live Animal Transportation Fee**
$

**Special Handling/Fragile**
$

**Sunday/Holiday Premium Fee**
$

**Total Postage & Fees**
$ 24.70

**Weight**
___ lbs. ___ ozs.   ☐ Flat Rate

**Acceptance Employee Initials**
(AW)

**DELIVERY (POSTAL SERVICE USE ONLY)**

**Delivery Attempt (MM/DD/YY)**   **Time**   ☐ AM ☐ PM   **Employee Signature**

**Delivery Attempt (MM/DD/YY)**   **Time**   ☐ AM ☐ PM   **Employee Signature**

EL 736 671 143 US
RECD MAR 06 2018

3P-3701

**UNITED STATES POSTAL SERVICE®**

**PRIORITY MAIL EXPRESS™**

DHE

LABEL 11-B, OCTOBER 2016    PSN 7690-02-000-9996    2-CUSTOMER COPY

# USPS Tracking®

**FAQs >**

## Track Another Package  **+**

### Track Packages
### Anytime, Anywhere

Get the free Informed Delivery® feature to receive
automated notifications on your packages

**Learn More**

**(https://reg.usps.com**

/xsell?app=UspsTools&ref=homepageBanner&appURL=https%3A%2F%2Finformeddelivery.usps.com/box/pages/intro/start.action)

---

**Tracking Number:** EL731611430US

Remove **✕**

Feedback

**Scheduled Delivery by**

## TUESDAY

# 6   MARCH
   2018 ⓘ

by

## 12:00pm ⓘ

---

 **Delivered**

March 6, 2018 at 10:45 am
Delivered
HUNTSVILLE, AL 35898

---

**Proof of Delivery**                                              ∨

---

**Tracking History**                                              ∧

**March 6, 2018, 10:45 am**
Delivered

HUNTSVILLE, AL 35898
Your item was delivered at 10:45 am on March 6, 2018 in HUNTSVILLE, AL
35898 to CENTRAL MAIL. The item was signed for by B MOORE.

**March 6, 2018, 10:43 am**
Available for Pickup
HUNTSVILLE, AL 35898

**March 6, 2018, 10:43 am**
Arrived at Post Office
HUNTSVILLE, AL 35808

**March 6, 2018, 8:51 am**
Arrived at USPS Regional Destination Facility
HUNTSVILLE AL DISTRIBUTION CENTER

**March 6, 2018, 5:30 am**
Departed USPS Regional Facility
LEHIGH VALLEY PA DISTRIBUTION CENTER

**March 5, 2018, 7:40 pm**
Arrived at USPS Regional Origin Facility
LEHIGH VALLEY PA DISTRIBUTION CENTER

**March 5, 2018, 4:30 pm**
Departed Post Office
BARTO, PA 19504

**March 5, 2018, 3:14 pm**
USPS in possession of item
BARTO, PA 19504

Feedback

## Product Information ⌄

**See Less** ∧

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs**

Feedback

# Exhibit E

RFC'D APR   3 2018  37012
DH



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

_____

Washington, DC 20226

www.atf.gov

March 27, 2018

752220: NRL
3320

Joshua Prince
646 Lenape Road
Bechtelsville, Pennsylvania 19505

Dear Mr. Prince:

This is in response to your submission to the Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF) of an application for firearms relief from disabilities for Mr. Vahan
Kelerchian.

Although Federal law provides a means for the relief of firearms disabilities, since October 1992,
ATF's annual appropriation has prohibited the expending of any funds to investigate or act upon
applications for relief from Federal firearms disabilities submitted by individuals. Accordingly,
ATF cannot act upon these applications.

Since ATF cannot act upon applications for relief from Federal firearms disabilities submitted by
individuals, Mr. Kelerchian's application is being returned unprocessed. Please let us know if
we may be of further assistance.

Sincerely yours,

Digitally signed by
Kenneth C. Torres
Date: 2018.03.27 16:25:22
-05'00'

John R. Day
Chief, Explosives
Enforcement and Training Division

# PRINCE LAW OFFICES, P.C.



Warren H. Prince
Karl P. Voigt IV
Joshua Prince
Eric E. Winter
Thomas H. Odom
Stanley J. Kuter
Jeffrey A Franklin
Adam J. Kraut
Jorge Pereira

| | |
|---|---|
| Bechtelsville | 1-610-845-3803 |
| Allentown | 1-610-770-1151 |
| Bethlehem | 1-610-814-0838 |
| Camp Hill | 1-717-731-0100 |
| Lancaster | 1-717-393-7002 |
| Lebanon | 1-717-274-9250 |
| North Wales | 1-215-412-0800 |
| Pottstown | 1-610-326-4200 |
| Pottsville | 1-570-621-8828 |
| Reading | 1-610-375-8425 |
| Toll Free | 1-888-313-0416 |
| Fax | 1-610-845-3903 |

March 02, 2018

U.S. Department of Justice - Bureau of Alcohol, Tobacco, Firearms and Explosives
Attention Bureau of Alcohol, Tobacco, Firearms and Explosives NCETR - Relief of Disabilities
Section
Corporal Road, Building 3750, Redstone Arsenal
Huntsville, AL 35898

RE:   Vahan Kelerchian Application for Restoration of Firearms Privileges
      FFL # 8-23-017-01-5A-02276

Dear Acting Director Brandon, DIO Orellana and ladies and gentlemen of the NCETR,

Please be advised that I have been retained by Vahan Kelerchian, FFL no. 8-23-017-01-5A-02276, in relation to his timely Application for Restoration of Firearms Privileges, pursuant to 18 U.S.C. § 925(c) and 27 C.F.R. 478.144. As there is conflicting information between the information contained in the enclosed executed Applications and 27 C.F.R. 478.144, Mr. Kelerchian is filing this form in compliance with both the instructions on the application and Section 478.144.

Specifically, as Section 478.144 requires three copies of the application to be filed with the Director, as defined in 27 C.F.R. § 478.11, but the application instructions only require one copy to be filed with NCETR, please find enclosed three copies of the executed Applications, which are being served on Acting Director Brandon, NCETR, and Phialdelphia Director of Industry Operations Juan Orellana. Please also find enclosed one copy of (1) an Authority for Release of Information, (2) Mr. Kelerchian's court documents, including the Indictment and Amended Judgement, (3) four letters of recommendation from references, who are not related to Mr. Kelerchian by blood or marriage and have known him for at least 3 years, and (4) a completed FD 258 fingerprint card.

Pursuant to Sections 925(c) and 478.144(i), as Mr. Kelerchian is an FFL holder, who has continually and timely renewed his FFL, he shall not be "barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section."

Thanking you for your time and consideration in Mr. Kelerchian's request, I am

Yours truly,
Prince Law Offices, P.C.

Joshua Prince
joshua@princelaw.com
Extension: 81114

jp/web
Matter no. 37012
Enclosure

*Distribution*

**U.S. Department of Justice - Bureau of Alcohol, Tobacco, Firearms and Explosives**
Thomas E. Brandon
Mr. Juan F. Orellana

OMB No. 1140-0002

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

## Application for Restoration of Firearms Privileges

| 1. Name *(Last, First, Middle)* | Kelerchian, Vahan, Steven |
|---|---|

| 2. Birthplace *(City & State)* New York City, NY | 3. Date of Birth | 4. Aliases N/A | 5. Social Security Number *(Voluntary)* |
|---|---|---|---|

| 6. Present Address *(No., Street, City, State, Zip Code)* | 7. Telephone Number |
|---|---|

**8. Description**

| Sex M | Height 6'2" | Weight 280 | Hair Brown | Eyes Brown |
|---|---|---|---|---|

| Ethnicity | Race *(Check one or more boxes)* | | |
|---|---|---|---|
| ☐ Hispanic or Latino | ☐ American Indian or Alaska Native | ☐ Black or African American | ☑ White |
| ☑ Not Hispanic or Latino | ☐ Asian | ☐ Native Hawaiian or Other Pacific Islander | |

9. If you are not a citizen of the United States, what is your INS-issued alien number or admission number? _____

**10. Residences During Past Ten Years** *(In columns (b) and (c) enter the months and years of residence.)*

| Address *(Number, Street, City, State and Zip Code)* (a) | From (b) | To (c) |
|---|---|---|
| | 1997 | Present |
| | | |
| | | |
| | | |

**11. Employment Record** *(List present and prior employers and show month and year of employment.)*

| Name and Address of Employer (a) | Position (b) | From (c) | To (d) |
|---|---|---|---|
| Armament Services, Inc. 103 Camars Dr. Warminster PA 18974 | President | 2000 | 2013 |
| | | | |

**12. Convictions** *(If pardoned for a conviction, write "yes" in column (e) and attach a copy of the pardon.)*

| Specific Crime (a) | Name and Location of Court (b) | Sentence Received (c) | Conviction Date (d) | Pardoned (e) |
|---|---|---|---|---|
| See attached court records | | | | |
| | | | | |
| | | | | |

**13. Other Arrests**

| Charge (a) | Date and Place of Arrest (b) | Disposition (c) |
|---|---|---|
| None | | |
| | | |
| | | |

| 14. Probation Officer's Name, Address and Telephone Number N/A | 15. Parole Officer's Name, Address and Telephone Number N/A |
|---|---|

ATF Form 3210.1
Revised September 2014

16. Character References *(Three references are required.  Please include a written statement from each of 3 references, who are not related to the applicant by blood or marriage and have known applicant for at least 3 years, recommending the granting of relief.)*

| Name and Address (a) | Occupation (b) | Telephone Number (c) |
|---|---|---|
| John T. Conway, ▇▇▇▇▇▇▇▇▇ | Funeral Director | ▇▇▇▇▇ |
| Anthony Baiamonte III, ▇▇▇▇▇▇ | Attorney | ▇▇▇▇▇ |
| Christopher J. McLoughlin, ▇▇▇▇▇ | Retired | ▇▇▇▇▇ |

**17. Applicant Data** *(All questions must be answered by a "Yes" or "No")*

| | Yes | No | | Yes | No |
|---|---|---|---|---|---|
| a.  Are you a fugitive from justice? | | X | h.  Have you served on active duty in the armed Forces? *(If "yes" check Branch and complete following)* ☐ Army ☐ Navy ☐ Marines ☐ Air Force ☐ Coast Guard | | X |
| b.  Are you an unlawful user of or addicted  to marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled substance? | | X | | | |
| c.  Have you ever been convicted in any court of a felony, or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence, including probation?  *(If "yes," see Additional Information Request 1.)* | X | | Service Serial Number  |  Date Entered Active Duty | | |
| | | | Kind of Discharge  |  Date of Discharge | | |
| d.  Are you now on probation or parole? | | X | | Yes | No |
| e.  Are you under indictment or information in any court for a felony, or any other crime, for which the judge could imprison you for more than one year?  *(An information is a formal accusation of a crime by a prosecutor.)  (If "yes," see Additional Information Request 2.)* | X | | i.  Are you subject  to a court order restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner? *(If "yes," see Additional Information Request 5.)* | | X |
| | | | j.  Have you been convicted in any court of a misdemeanor crime of domestic violence? *(If "yes," see Additional Information Request 6.)* | | X |
| f.  Have you ever been adjudicated mentally defective *(which includes having been adjudicated incompetent to manage your own affairs)* or have you been committed to a mental institution? *(If "yes," see Additional  Information Request 3.)* | | X | k.  Have you ever renounced your United States citizenship? *(If "yes," see Additional Information Request 7.)* | | X |
| | | | l.  Are you an alien in the United States? *(If "yes," see Additional Information Request 8.)* | | X |
| g.  Have you ever been discharged from the armed forces under dishonorable conditions? *(If "yes," see Additional Information Request 4.)* | | X | m.  Have you ever applied for a federal firearms license or a federal explosives license or Permit? *(If "yes" show date and with whom filed.)* | X | |

**18.  COMPLETE THIS ITEM ONLY IF APPLICANT WAS EVER ISSUED A FEDERAL FIREARMS LICENSE OR A FEDERAL EXPLOSIVES LICENSE OR PERMIT.**

| Business Name and Address  *(License/Permit Issued Under)* | License or Permit Number | Expiration Date of Latest License or Permit |
|---|---|---|
| # Vahan S. Kelerchian | 8-23-017-01-5A-02276 | LOA Exp. 08/07/2018 |

The Business is  *(Check one)*
■ Individually Owned  ☐ A Partnership  ☐ A Corporation  ☐ Other  *(Specify)* _____

**19a.  I believe I should be granted relief because:**
I am a good person, who has never acted nor will act in a manner dangerous to public safety and the granting of the relief to me would not be contrary to the public interest. Moreover, I am not a threat to the public in purchasing, possessing, transferring or selling firearms and ammunition. Furthermore, my FFL records have always been maintained meticulously and even the IOIs commented on my recordkeeping compliance.

**19b.  Important:  Applicants filing for restoration privileges** *(Relief From Disabilities)* **under Chapter 44, Title 18 U.S.C. 925(c) must complete this item.**

No application for restoration under 18 U.S.C. Chapter 44 will be considered unless the applicant acknowledges and agrees that a notice of approval will appear in the Federal Register, an official U.S. Government publication available to the general public, if and when the application is approved.  The notice of approval will give all essential details including the applicant's name, address, the court and date of conviction.

**IN THE EVENT THIS APPLICATION IS APPROVED:**

■ I understand that a notice of approval will appear in the Federal Register immediately following the issuance of the approval, and

■ I hereby agree to publication of the notice of approval giving my name, address and the date of my conviction.

**Under penalties imposed by 18 U.S.C. 924, I declare under penalties of perjury, that the answers in this application are true, correct, and complete.**

| 20. Signature of Applicant  *Vahan S. Kelerchian* | 21. Date  3/2/18 |
|---|---|

**Note:  A Completed FD 258 (Fingerprint Identification Card) Must Accompany This Application.**

Mail Application Form To:      **Bureau of Alcohol, Tobacco, Firearms and Explosives**
**NCETR - Relief of Disabilities Section**
**Corporal Road, Building 3750**
**Redstone Arsenal**
**Huntsville, AL 35898**

ATF Form 3210.1
Revised September 2014

OMB No. 1140-0002

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Application for Restoration of Firearms Privileges**

| | |
|---|---|
| 1. Name *(Last, First, Middle)* | Kelerchian, Vahan, Steven |

| 2. Birthplace *(City & State)* | 3. Date of Birth | 4. Aliases | 5. Social Security Number *(Voluntary)* |
|---|---|---|---|
| New York City, NY | ■■■■ | N/A | |

| 6. Present Address *(No., Street, City, State, Zip Code)* | 7. Telephone Number |
|---|---|
| ■■■■ | ■■■■ |

8. Description

| Sex | Height | Weight | Hair | Eyes |
|---|---|---|---|---|
| M | 6'2" | 280 | Brown | Brown |

Ethnicity | Race *(Check one or more boxes)*

- ☐ Hispanic or Latino
- ☒ Not Hispanic or Latino

- ☐ American Indian or Alaska Native
- ☐ Asian
- ☐ Black or African American
- ☐ Native Hawaiian or Other Pacific Islander
- ☒ White

9. If you are not a citizen of the United States, what is your INS-issued alien number or admission number? _____

10. Residences During Past Ten Years  *(In columns (b) and (c) enter the months and years of residence.)*

| Address  *(Number, Street, City, State and Zip Code)* (a) | From (b) | To (c) |
|---|---|---|
| ■■■■ | 1997 | Present |
| | | |
| | | |
| | | |

11. Employment Record  *(List present and prior employers and show month and year of employment.)*

| Name and Address of Employer (a) | Position (b) | From (c) | To (d) |
|---|---|---|---|
| Armament Services, Inc. 103 Camars Dr. Warminster PA 18974 | President | 2000 | 2013 |
| | | | |

12. Convictions  *(If pardoned for a conviction, write "yes" in column (e) and attach a copy of the pardon.)*

| Specific Crime (a) | Name and Location of Court (b) | Sentence Received (c) | Conviction Date (d) | Pardoned (e) |
|---|---|---|---|---|
| See attached court records | | | | |
| | | | | |
| | | | | |
| | | | | |

13. Other Arrests

| Charge (a) | Date and Place of Arrest (b) | Disposition (c) |
|---|---|---|
| None | | |
| | | |
| | | |
| | | |

| 14. Probation Officer's Name, Address and Telephone Number | 15. Parole Officer's Name, Address and Telephone Number |
|---|---|
| N/A | N/A |

ATF Form 3210.1
Revised September 2014

16. Character References *(Three references are required. Please include a written statement from each of 3 references, who are not related to the applicant by blood or marriage and have known applicant for at least 3 years, recommending the granting of relief.)*

| Name and Address *(a)* | Occupation *(b)* | Telephone Number *(c)* |
|---|---|---|
| John T. Conway, ███████████ | Funeral Director | ████████ |
| Anthony Baiamonte III, ███████████ | Attorney | ████████ |
| Christopher J. McLoughlin, ███████████ | Retired | ████████ |

17. Applicant Data *(All questions must be answered by a "Yes" or "No")*

| | Yes | No | | Yes | No |
|---|---|---|---|---|---|
| a. Are you a fugitive from justice? | | X | h. Have you served on active duty in the armed Forces? *(If "yes" check Branch and complete following)* ☐ Army ☐ Navy ☐ Marines ☐ Air Force ☐ Coast Guard | | X |
| b. Are you an unlawful user of or addicted to marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled substance? | | X | Service Serial Number / Date Entered Active Duty / Kind of Discharge / Date of Discharge | | |
| c. Have you ever been convicted in any court of a felony, or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence, including probation? *(If "yes," see Additional Information Request 1.)* | X | | | | |
| d. Are you now on probation or parole? | | X | i. Are you subject to a court order restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner? *(If "yes," see Additional Information Request 5.)* | | X |
| e. Are you under indictment or information in any court for a felony, or any other crime, for which the judge could imprison you for more than one year? *(An information is a formal accusation of a crime by a prosecutor.) (If "yes," see Additional Information Request 2.)* | X | | j. Have you been convicted in any court of a misdemeanor crime of domestic violence? *(If "yes," see Additional Information Request 6.)* | | X |
| f. Have you ever been adjudicated mentally defective *(which includes having been adjudicated incompetent to manage your own affairs)* or have you been committed to a mental institution? *(If "yes," see Additional Information Request 3.)* | | X | k. Have you ever renounced your United States citizenship? *(If "yes," see Additional Information Request 7.)* | | X |
| | | | l. Are you an alien in the United States? *(If "yes," see Additional Information Request 8.)* | | X |
| g. Have you ever been discharged from the armed forces under dishonorable conditions? *(If "yes," see Additional Information Request 4.)* | | X | m. Have you ever applied for a federal firearms license or a federal explosives license or Permit? *(If "yes" show date and with whom filed.)* | X | |

18. COMPLETE THIS ITEM ONLY IF APPLICANT WAS EVER ISSUED A FEDERAL FIREARMS LICENSE OR A FEDERAL EXPLOSIVES LICENSE OR PERMIT.

| Business Name and Address *(License/Permit Issued Under)* | License or Permit Number | Expiration Date of Latest License or Permit |
|---|---|---|
| **Vahan S. Kelerchian** | 8-23-017-01-5A-02276 | LOA Exp. 08/07/2018 |

The Business is *(Check one)*
■ Individually Owned ☐ A Partnership ☐ A Corporation ☐ Other *(Specify)* _____

19a. I believe I should be granted relief because:
I am a good person, who has never acted nor will act in a manner dangerous to public safety and the granting of the relief to me would not be contrary to the public interest. Moreover, I am not a threat to the public in purchasing, possessing, transferring or selling firearms and ammunition. Furthermore, my FFL records have always been maintained meticulously and even the IOIs commented on my recordkeeping compliance.

19b. Important: Applicants filing for restoration privileges *(Relief From Disabilities)* under Chapter 44, Title 18 U.S.C. 925(c) must complete this item.

No application for restoration under 18 U.S.C. Chapter 44 will be considered unless the applicant acknowledges and agrees that a notice of approval will appear in the Federal Register, an official U.S. Government publication available to the general public, if and when the application is approved. The notice of approval will give all essential details including the applicant's name, address, the court and date of conviction.

IN THE EVENT THIS APPLICATION IS APPROVED:

■ I understand that a notice of approval will appear in the Federal Register immediately following the issuance of the approval, and
■ I hereby agree to publication of the notice of approval giving my name, address and the date of my conviction.

Under penalties imposed by 18 U.S.C. 924, I declare under penalties of perjury, that the answers in this application are true, correct, and complete.

| 20. Signature of Applicant *Vahan S. Kelerchian* | 21. Date 3/2/18 |
|---|---|

Note: A Completed FD 258 (Fingerprint Identification Card) Must Accompany This Application.

Mail Application Form To:  Bureau of Alcohol, Tobacco, Firearms and Explosives
NCETR - Relief of Disabilities Section
Corporal Road, Building 3750
Redstone Arsenal
Huntsville, AL 35898

ATF Form 3210.1
Revised September 2014

OMB No. 1140-0002

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Application for Restoration of Firearms Privileges

| 1. Name *(Last, First, Middle)* Kelerchian, Vahan, Steven | | | |
|---|---|---|---|

| 2. Birthplace *(City & State)* New York City, NY | 3. Date of Birth ████ | 4. Aliases N/A | 5. Social Security Number *(Voluntary)* |
|---|---|---|---|

| 6. Present Address *(No., Street, City, State, Zip Code)* ████ | 7. Telephone Number |
|---|---|

**8. Description**

| Sex M | Height 6'2" | Weight 280 | Hair Brown | Eyes Brown |
|---|---|---|---|---|

Ethnicity

☐ Hispanic or Latino
☒ Not Hispanic or Latino

Race *(Check one or more boxes)*

☐ American Indian or Alaska Native
☐ Asian
☐ Black or African American
☐ Native Hawaiian or Other Pacific Islander
☒ White

9. If you are not a citizen of the United States, what is your INS-issued alien number or admission number? _____

**10. Residences During Past Ten Years** *(In columns (b) and (c) enter the months and years of residence.)*

| Address *(Number, Street, City, State and Zip Code)* (a) | From (b) | To (c) |
|---|---|---|
| ████ | 1997 | Present |
| | | |
| | | |
| | | |

**11. Employment Record** *(List present and prior employers and show month and year of employment.)*

| Name and Address of Employer (a) | Position (b) | From (c) | To (d) |
|---|---|---|---|
| Armament Services, Inc. 103 Camars Dr. Warminster PA 18974 | President | 2000 | 2013 |
| | | | |

**12. Convictions** *(If pardoned for a conviction, write "yes" in column (e) and attach a copy of the pardon.)*

| Specific Crime (a) | Name and Location of Court (b) | Sentence Received (c) | Conviction Date (d) | Pardoned (e) |
|---|---|---|---|---|
| See attached court records | | | | |
| | | | | |
| | | | | |
| | | | | |

**13. Other Arrests**

| Charge (a) | Date and Place of Arrest (b) | Disposition (c) |
|---|---|---|
| None | | |
| | | |
| | | |
| | | |

| 14. Probation Officer's Name, Address and Telephone Number N/A | 15. Parole Officer's Name, Address and Telephone Number N/A |
|---|---|

ATF Form 3210.1
Revised September 2014

16. Character References *(Three references are required.  Please include a written statement from each of 3 references, who are not related to the applicant by blood or marriage and have known applicant for at least 3 years, recommending the granting of relief.)*

| Name and Address *(a)* | Occupation *(b)* | Telephone Number *(c)* |
|---|---|---|
| John T. Conway, ███████████ | Funeral Director | ████████ |
| Anthony Baiamonte III, ███████ | Attorney | ████████ |
| Christopher J. McLoughlin, ███████ | Retired | ████████ |

17. **Applicant Data** *(All questions must be answered by a "Yes" or "No")*

| | Yes | No | | Yes | No |
|---|---|---|---|---|---|
| a.  Are you a fugitive from justice? | | X | h.  Have you served on active duty in the armed Forces? *(If "yes" check Branch and complete following)* ☐ Army ☐ Navy ☐ Marines ☐ Air Force ☐ Coast Guard | | X |
| b.  Are you an unlawful user of or addicted to marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled substance? | | X | Service Serial Number ___ Date Entered Active Duty ___ Kind of Discharge ___ Date of Discharge ___ | | |
| c.  Have you ever been convicted in any court of a felony, or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence, including probation? *(If "yes," see Additional Information Request 1.)* | X | | | Yes | No |
| d.  Are you now on probation or parole? | | X | i.  Are you subject to a court order restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner? *(If "yes," see Additional Information Request 5.)* | | X |
| e.  Are you under indictment or information in any court for a felony, or any other crime, for which the judge could imprison you for more than one year? *(An information is a formal accusation of a crime by a prosecutor.) (If "yes," see Additional Information Request 2.)* | X | | j.  Have you been convicted in any court of a misdemeanor crime of domestic violence? *(If "yes," see Additional Information Request 6.)* | | X |
| f.  Have you ever been adjudicated mentally defective *(which includes having been adjudicated incompetent to manage your own affairs)* or have you been committed to a mental institution? *(If "yes," see Additional Information Request 3.)* | | X | k.  Have you ever renounced your United States citizenship? *(If "yes," see Additional Information Request 7.)* | | X |
| | | | l.  Are you an alien in the United States? *(If "yes," see Additional Information Request 8.)* | | X |
| g.  Have you ever been discharged from the armed forces under dishonorable conditions? *(If "yes," see Additional Information Request 4.)* | | X | m.  Have you ever applied for a federal firearms license or a federal explosives license or Permit? *(If "yes" show date and with whom filed.)* | X | |

18.  COMPLETE THIS ITEM ONLY IF APPLICANT WAS EVER ISSUED A FEDERAL FIREARMS LICENSE OR A FEDERAL EXPLOSIVES LICENSE OR PERMIT.

| Business Name and Address *(License/Permit Issued Under)* | License or Permit Number | Expiration Date of Latest License or Permit |
|---|---|---|
| **Vahan S. Kelerchian** | 8-23-017-01-5A-02276 | LOA Exp. 08/07/2018 |

The Business is *(Check one)*
☑ Individually Owned   ☐ A Partnership   ☐ A Corporation   ☐ Other *(Specify)* _____

19a.  I believe I should be granted relief because:

I am a good person, who has never acted nor will act in a manner dangerous to public safety and the granting of the relief to me would not be contrary to the public interest. Moreover, I am not a threat to the public in purchasing, possessing, transferring or selling firearms and ammunition. Furthermore, my FFL records have always been maintained meticulously and even the IOIs commented on my recordkeeping compliance.

19b.  **Important:  Applicants filing for restoration privileges** *(Relief From Disabilities)* **under Chapter 44, Title 18 U.S.C. 925(c) must complete this item.**

No application for restoration under 18 U.S.C. Chapter 44 will be considered unless the applicant acknowledges and agrees that a notice of approval will appear in the Federal Register, an official U.S. Government publication available to the general public, if and when the application is approved.  The notice of approval will give all essential details including the applicant's name, address, the court and date of conviction.

**IN THE EVENT THIS APPLICATION IS APPROVED:**

☑ I understand that a notice of approval will appear in the Federal Register immediately following the issuance of the approval, and

☑ I hereby agree to publication of the notice of approval giving my name, address and the date of my conviction.

Under penalties imposed by 18 U.S.C. 924, I declare under penalties of perjury, that the answers in this application are true, correct, and complete.

| 20.  Signature of Applicant *Vahan S. Kelerchian* | 21.  Date 3/2/18 |
|---|---|

Note:  A Completed FD 258 (Fingerprint Identification Card) Must Accompany This Application.

Mail Application Form To:       Bureau of Alcohol, Tobacco, Firearms and Explosives
                               NCETR - Relief of Disabilities Section
                               Corporal Road, Building 3750
                               Redstone Arsenal
                               Huntsville, AL 35898

ATF Form 3210.1
Revised September 2014

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

## Authority for Release of Information

---

**Authority for Release of Information**

THIS SHEET MUST ACCOMPANY ALL COPIES OF ATF FORM 3210.1, APPLICATION FOR RESTORATION OF FIREARMS PRIVILEGES

1. **Authority.** The authority to solicit information is stated in ATF Form 3210.1, Application for Restoration of Firearms Privileges. This form is in compliance with the Privacy Act of 1974.

2. **Purpose and Use.** The information you supply by signing this release of information form will be used principally to aid in the completion of a background investigation conducted by the Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), pursuant to 18 U.S.C. § 925(c), in conjunction with your Application for Restoration of Firearms Privileges.

3. **Effects of Nondisclosure.** Your signature on this Authority for Release of Information form is voluntary; however, your failure to complete this form may mean that the required information cannot be obtained to complete your investigation, and may result in the termination of your application.

| Name of Applicant *(Include Last, First, and Middle Name and all aliases used)* | Date of Birth |
|---|---|
| **Kelerchian, Vahan, Steven** | |
| Present Address *(Number, Street, City, State, Zip Code)* | Telephone Number *(Include Area Code)* |
| | |

This release, when presented by a duly authorized representative of the Department of Justice, will constitute my consent and authority to examine and obtain copies and abstracts of records and to receive statements and information regarding my background.  Specifically, I hereby authorize the release of the following data or records to the Department of Justice (ATF):

**Employment Information, Military Information/Records, Police and Criminal Records, Medical History**

**Medical Information Records**
*If You Answered "Yes" to Items 17(b) or (f) on ATF Form 3210.1, Complete the Following Section.*

| Name of Attending Physicians, Alcohol or Drug Abuse Rehabilitation Centers, or Mental Health Institutions | Address *(Including City, State and Zip Code)* | Area Code and Telephone Number |
|---|---|---|
| | | |
| | | |
| | | |

| Signature of Applicant | Date | Special Agent *(Signature)* | Date |
|---|---|---|---|
| | 3/2/18 | | |

ATF Form 3210.1
Revised September 2014

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NUMBER: 2:13CR66-001** |
| **Plaintiff,** | **USM Number: 12810-027** |
| **vs.** | |
| **VAHAN KELERCHIAN** | **KERRY C CONNOR** |
| **Defendant.** | **P. JEFFREY SCHLESINGER** |
| | **DEFENDANT'S ATTORNEYS** |

### AMENDED JUDGMENT IN A CRIMINAL CASE

**Date of Original Judgment Order: 2/7/2018.**
**Amended on 2/12/2018 to correct administrative error** on page 3, under C.R. 35(a):  2-7 is replaced by 3-7.
**THE DEFENDANT** was found guilty by Jury on counts 1, 2, 3, 4, 5, 6, 7, and 9 of the Indictment on October 15, 2015.

**ACCORDINGLY,** the court has adjudicated that the defendant is guilty of the following offenses:

| Title, Section & Nature of Offense | Date Offense Ended | Count Number(s) |
|---|---|---|
| 18: 371 CONSPIRACY TO PROVIDE FALSE INFORMATION TO A FEDERAL FIREARMS LICENSEE | January 2010 | 1 |
| 18:371 CONSPIRACY TO DEFRAUD FOOD AND DRUG ADMINISTRATION | September 2010 | 2 |
| 18:371 CONSPIRACY TO MAKE  FALSE STATEMENTS - DEMONSTRATION LETTERS | March 28, 2010 | 3 |
| 18:1001 MAKING FALSE STATEMENTS  TO A FEDERAL AGENCY | March 28, 2010 | 4-7 |
| 18:1956(h) CONSPIRACY TO LAUNDER MONETARY INSTRUMENTS AND FORFEITURE | January 2010 | 9 |

The defendant is sentenced as provided in pages 2 through 8 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.
The defendant has been found not guilty on count 8.

**IT IS ORDERED** that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States Attorney of any material change in economic circumstances.

February 5, 2018
_____
Date of Imposition of Judgment

Case Number: 2:13CR66-001
Defendant: VAHAN KELERCHIAN

s/ Joseph S. Van Bokkelen
_____
Signature of Judge

Joseph S. Van Bokkelen, United States District Judge
_____
Name and Title of Judge

February 12, 2018
_____
Date

Case Number: 2:13CR66-001                                                        Page 3 of 8
Defendant: VAHAN KELERCHIAN

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **100 months.**

*        60-month term as to each of the following counts: Count 1, Count 3, Count 4, Count 5, Count 6, and Count 7. Each 60-month term for this group of counts is to be served concurrently with the other counts in this group.

*        A 60-month term as to Count 2: 40 of those months are to be served consecutively as to Count 1 and Counts 3–7, and 20 of those months are to be served concurrently with Count 1 and Counts 3–7.

*        A 40-month sentence as to Count 9, to be served consecutively as to Count 1 and Counts 3–7, but concurrently with Count 2.

The Court makes the following recommendations to the Bureau of Prisons:

That the defendant be designated to serve his sentence at Fort Dix, NJ.

That the defendant be given credit for time served while awaiting sentencing.

The defendant is placed into the custody of the United States Marshal.

## RETURN

I have executed this judgment as follows:

Defendant delivered _____ to _____ at _____,
with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By: _____
DEPUTY UNITED STATES MARSHAL

## SUPERVISED RELEASE

After Mr. Kelerchian's incarceration is over, Mr. Kelerchian will be placed on supervised release for a period of **1 year**. His supervised release will have conditions of supervision as stated below, except that conditions 19, 20, 21 and 22 will cease to be in effect once all of Mr. Kelerchian's financial obligations as related to this case are fulfilled.

1. Mr. Kelerchian may not commit another federal, state, or local crime.

2. Mr. Kelerchian may not unlawfully use, possess, or distribute a controlled substance.

3. There's no evidence that Mr. Kelerchian is in danger of drug abuse. Accordingly, the mandatory drug testing condition is suspended.

4. Mr. Kelerchian must cooperate in the collection of his DNA sample as directed by the probation officer if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000.

5. Within 72 hours of release from the custody of the Bureau of Prisons, Mr. Kelerchian must report between the hours of 8:00 a.m. and 4:30 p.m. to the probation office in the district to which he is released.

6. Mr. Kelerchian may not knowingly be outside the judicial district between the hours of 10:00 p.m. and 6:00 a.m. without the Court's or probation officer's permission. In any case, Mr. Kelerchian may not knowingly travel more than 50 miles outside the judicial district without the Court's or probation officer's permission. The probation office will provide Mr. Kelerchian a map describing the boundaries of the judicial district at the start of supervision. After 12 months of Mr. Kelerchian being placed on supervision, the probation office must submit a report to the Court indicating whether the travel restrictions should be lifted or modified.

7. Mr. Kelerchian must report to the probation officer in the manner and frequency as reasonably directed by the probation officer. However, he may be required to report in person at the probation office only between 8:00 a.m. and 4:30 p.m. on the days the probation office is open for business.

8. In all matters relating to his conditions of supervision, Mr. Kelerchian must truthfully answer the probation officer's questions. This condition does not prevent Mr. Kelerchian from invoking his Fifth Amendment privilege against self-incrimination.

9. Mr. Kelerchian must follow the instructions of the probation officer as they relate to the conditions of supervision. Mr. Kelerchian may petition the Court for relief or clarification regarding a condition he believes has become unreasonable.

10. Mr. Kelerchian must live at a location approved by the probation officer.
11. If Mr. Kelerchian plans to change where he lives or anything about his living

Case 2:20-cv-00253-WB   Document 1-1   Filed 01/13/20   Page 86 of 127

USDC IN/ND case 2:13-cr-00066-JVB-JEM   document 251   filed 02/12/18   page 5 of 8
Case Number: 2:13CR66-001
Defendant: VAHAN KELERCHIAN                                                    Page 5 of 8

arrangements (for example, the people he lives with), he must inform the probation officer at least 14 days before the change. If informing the probation officer in advance is not possible due to unexpected circumstances, Mr. Kelerchian must inform the probation officer as soon as possible, and no later than 72 hours after the change.

12. If Mr. Kelerchian plans to change where he works or anything about his work (for example, his position or his job responsibilities), Mr. Kelerchian must inform the probation officer at least 14 days before the change. If informing the probation officer in advance is not possible due to unexpected circumstances, Mr. Kelerchian must inform the probation officer within 72 hours after the change.

13. Mr. Kelerchian must notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer.

14. Mr. Kelerchian may not own or possess a firearm, ammunition, destructive device, or any other dangerous weapon. A dangerous weapon is an instrument that is specially designed as a weapon.

15. Mr. Kelerchian may not knowingly meet, communicate, or otherwise interact with a person whom he knows to be engaged, or planning to be engaged, in criminal activity.
16. Between the hours of 8:00 a.m. and 9:00 p.m., Mr. Kelerchian must permit a probation officer to visit him at home or any other reasonable location and must permit confiscation of any contraband observed in plain view by the probation officer. A visit between the hours of 9:00 p.m. and 8:00 a.m. may be conducted only when the probation officer has a reasonable belief that Mr. Kelerchian has violated a condition of supervision and that a visit during those hours would reveal information or contraband that would not be revealed by a visit at any other time.

17. If any portion of the special assessment remains unpaid when Mr. Kelerchian is released from prison, he must pay it within 12 weeks of his release, or, if financially unable to fulfill this requirement, he must arrange a payment schedule with the probation office.

18. If a fine is imposed, and if any portion of the fine remains unpaid when Mr. Kelerchian is released from prison, he must pay the fine in monthly installments of $1,000 until it is paid in full.

19. Mr. Kelerchian may not incur new credit charges or open additional lines of credit without the approval of the probation officer.

20. Upon the probation officer's request, Mr. Kelerchian must provide the officer with any financial information regarding Mr. Kelerchian's ability to pay a fine, and must authorize the release of any financial information. The request must be in writing and prompted by Mr. Kelerchian's failure to comply with a payment schedule ordered for a period of 60 consecutive days, and the request must describe the specific financial information needed for determining Mr. Kelerchian's current ability to pay. The probation office will share Mr. Kelerchian's financial information with the U.S. Attorney's Office.

Case Number: 2:13CR66-001
Defendant: VAHAN KELERCHIAN

Page 6 of 8

21. Mr. Kelerchian must notify the probation officer within 72 hours of any material change in his economic circumstances that might affect his ability to pay any Court-ordered financial obligation.

22. Mr. Kelerchian may not transfer, give away, sell, or otherwise convey any asset $500 without the approval of the probation officer.

Case Number: 2:13CR66-001
Defendant: VAHAN KELERCHIAN

Page 7 of 8

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth in this judgment.

| Total Assessment | Total Fine | Total Restitution |
|---|---|---|
| $800 | $100,000 | NONE |

The defendant shall make the special assessment payment payable to Clerk, U.S. District Court, 5400 Federal Plaza, Suite 2300, Hammond, IN 46320. The special assessment payment shall be due immediately.

## FINE

A fine in the amount of $100,000 is imposed.

## RESTITUTION

No restitution imposed.

Payments shall be applied in the following order:  (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

## FORFEITURE

The defendant shall forfeit **$28,200.00 in United States Currency.**

Case Number: 2:13CR66-001
Defendant: VAHAN KELERCHIAN

Name: <u>VAHAN KELERCHIAN</u>
Docket No.: <u>2:13CR66-001</u>

## ACKNOWLEDGMENT OF SUPERVISION CONDITIONS

Upon a finding of a violation of probation or supervised release, I understand that the Court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

I have reviewed the Judgment and Commitment Order in my case and the supervision conditions therein. These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed)

_____       _____
Defendant                                              Date


_____       _____
U.S. Probation Officer/Designated Witness          Date

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CAUSE NO: |
| v. | ) | |
| | ) | 18 U.S.C. § 2 |
| VAHAN KELERCHIAN | ) | 18 U.S.C. § 371 |
| | ) | 18 U.S.C. § 666(a)(2) |
| | ) | 18 U.S.C. § 924(a)(1)(A) |
| | ) | 18 U.S.C. § 924(d) |
| | ) | 18 U.S.C. § 1001 |
| | ) | 18 U.S.C. § 1956(h) |

2 : 13 CR   66

## I N D I C T M E N T

**THE GRAND JURY CHARGES:**

### COUNT 1
**(Conspiring to Provide False Information to a Federal Firearms Licensee)**

At all times material to this indictment:

#### BACKGROUND

1. VAHAN KELERCHAIN (KELERCHIAN) was the principal owner and operator
   Armament Services International Inc., (ASI). ASI is engaged in the sale of firearms and
   related items primarily through internet sales.

2. ASI principal place of business is located in Warminster, Pennsylvania.

3. KELERCHIAN holds a Class 3 Federal Firearms License (FFL) allowing him to deal in
   fully automatic weapons. KELERCHIAN also holds licenses to manufacture firearms and
   sell destructive devices, (i.e. grenade launchers)

4. The Lake County Sheriff's Department was a law enforcement agency operating in Lake
   County, Indiana.

1

5. JOSEPH R. KUMSTAR was employed for approximately 17 years as a sworn law enforcement officer with the Lake County Sheriff's Department, and served as the Deputy Chief for the Lake County Sheriff's Department.

6. RONALD D. SLUSSER was employed for approximately ten (10) years as a sworn law enforcement officer with the Lake County Sheriff's Department, was a member of the Lake County Sheriff's Department Special Weapons and Tactics (SWAT) unit and a firearms instructor.

7. E & R Law Enforcement Sales was a Federal Firearms Licensee (FFL) based in Crown Point, Indiana, owned and operated in part by RONALD D. SLUSSER. RONALD D. SLUSSER previously held a Federal Firearms License while operating individually as "Ron's Gun Sales."

8. R & D Law Enforcement Sales was another Federal Firearms Licensee (FFL), based in Merrillville, Indiana, and owned and operated in part by RONALD D. SLUSSER.

9. PF Custom Guns was a Federal Firearms Licensee (FFL).

10. Heckler and Koch (hereinafter H&K) was a well know German based firearms manufacturer producing a wide assortment of handguns, rifles, machineguns, and submachineguns for both military and civilian use. H&K had numerous subsidiaries operating within the United States in Virginia, New Hampshire, and Georgia. H&K had served as a United States government contractor for the both the United States Military and United States civilian law enforcement agencies. H&K was a Federal Firearms Licensee (FFL).

2

10. Insight Technology Inc., (hereinafter Insight) located in Londonderry, New Hampshire, was a manufacturer of highly sophisticated laser aiming and illumination devices, night vision devices, laser range finding systems, computerized fire control systems, thermal imaging systems, and sensor fusion systems. Insight's products were, and are still are, used by the United States military, Federal law enforcement agencies, and allied nations. In addition, Insight Technology Inc. developed and maintained a line of tactical illuminators (laser aiming devices) restricted for use only by the military and Law Enforcement agencies, as well as products for sale to the general public.

11. Federal law restricted to law enforcement agencies or the military the sale and ownership of fully automatic machineguns manufactured after 1986. No individual law enforcement officer could purchase a post-1986 fully automatic machinegun. Possession of post-1986 fully automatic machineguns by a law enforcement officer could only be authorized by the officer's law enforcement agency and only for the law enforcement duties of that officer.

<u>OBJECT OF THE CONSPIRACY</u>

12. Between on or about November 2008, and continuing through on or about January of 2010, in the Northern District of Indiana and elsewhere:

**VAHAN KELERCHIAN**

defendant herein, together with Joseph Kumstar, and Ronald Slusser, did knowingly combine, conspire, confederate, and agree with each other, and with others known and unknown to the grand jury, to commit an offense against the United States, that is, to knowingly make false statements and representations with respect to information under Chapter 44, of Title 18 of the United States Code, required to be kept in the records of

3

individuals licensed under Chapter 44, relating to the acquisition of firearms, in violation
of Title 18 United States Code, Section 924(a)(1)(A).

## HOW THE CONSPIRACY OPERATED

13. It was part of the conspiracy that JOSEPH R. KUMSTAR, and RONALD D. SLUSSER
used their position as sworn law enforcement officers, and VAHAN KELERCHAIN used
his position as a Class 3 firearms dealer to acquire approximately 71 (Seventy-One) fully
automatic H&K machineguns in the name of the Lake County Sheriff's Department
knowing that the Lake County Sheriff's Department was not the true owner of these
machineguns.

14. It was further part of the conspiracy that when acquiring these machineguns, VAHAN
KELERCHAIN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER knew these H&K
machineguns were manufactured after 1986, and therefore could only be acquired by law
enforcement agencies and not individual law enforcement officers.

15. It was further part of the conspiracy that when acquiring the H&K machineguns, VAHAN
KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER caused false
entries listing the Lake County Sheriff's Department as the owner of these machineguns,
to be made by individuals and companies required to keep such records under Chapter 44,
of Title 18 of the United States Code.

16. It was further part of the conspiracy that when acquiring these machineguns, VAHAN
KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER, used Lake
County Sheriff's Department letterhead to create letters which falsely represented that the

4

H&K machineguns were being purchased by and were going to be used by, the Lake County Sheriff's Department in carrying out its law enforcement responsibilities.

17. It was further part of the conspiracy that when acquiring these machineguns, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER used the Lake County Sheriff's Department letterhead to create documents which falsely represented the H&K machineguns were to be used by the Lake County Sheriff's Department.

18. It was further part of the conspiracy that when acquiring these machineguns, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER created false and fictitious Lake County Sheriff's Department purchase orders to convince the suppliers of the H&K machineguns that the Lake County Sheriff's Department was the true purchaser of the H&K machineguns even though the defendants themselves provided the funds for the purchase of these H&K machineguns.

19. It was further part of the conspiracy that VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER acquired these H&K machineguns for a cost of between approximately $1200 and $1600 each.

20. It was further part of the conspiracy that when acquiring these machineguns, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER had all of the H&K machineguns shipped to the Lake County Sheriff's Department.

21. It was further part of the conspiracy that after acquiring these machineguns, all of the H&K machineguns were removed from the Lake County Sheriff's Department to the personal residence of RONALD D. SLUSSER.

22. It was further part of the conspiracy that after the H&K machineguns were at the personal residence of RONALD D. SLUSSER, he would remove the upper receivers (the barrel)

5

and any other additional parts that could be removed from the lower receiver (the firing mechanism of the H&K machinegun).

23. It was further part of the conspiracy that after removing the upper receivers and any other additional parts that could be removed from the lower receiver, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER would sell on the internet to any willing purchaser, all of these upper receivers and additional parts. The sale of these upper receivers and parts would range from approximately $2,500 to $3800 each.

24. It was further part of the conspiracy that after removing the upper receivers, RONALD D. SLUSSER would return some of the upper receivers to VAHAN KELERCHIAN.

25. At no time did VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER have proper authority from the Lake County Sheriff's Department to engage in any of the above mentioned purchases or sales of the H&K machineguns or their parts.

26. At no time were any of the H&K machineguns obtained by VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER listed in the property inventory of the Lake County Sheriff's Department.

27. In furtherance of the conspiracy and to effect its objects:

**VAHAN KELERCHIAN,**

Defendant herein, together with JOSEPH R. KUMSTAR, and RONALD D. SLUSSER, and others known and unknown to the grand jury performed the following:

<u>OVERT ACTS</u>

*First Machinegun Purchase*

a. On or about December 22, 2008, JOSEPH R. KUMSTAR issued a "Letter of Intent" on Lake County Sheriff's Department letterhead to H&K for (50)

6

additional H&K model 416 fully automatic machineguns. This letter of intent stated these machineguns were for the "exclusive law enforcement use of the Lake County Sheriff's Department" and that the "point of contact for all inquiries in this matter will be Warrant Officer Ron Slusser." The letter then listed RONALD D. SLUSSER'S home phone number. This letter was signed "Joseph Kumstar, Chief of Police."

b.  VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLSSER used their personal funds to obtain these machineguns and did not have proper authorization of the Lake County Sheriff's Department to purchase these machineguns. These (50) machineguns were purchased for approximately $1650 each.

c.  For this purchase, VAHAN KELERCHIAN provided payment to a third party gun dealer in the amount of approximately $83,026.

d.  Shortly after obtaining these (50) H&K fully automatic machineguns, RONALD D. SLUSSER did cut up and remove the upper receiver barrels from these (50) H&K fully automatic machineguns.  Some of these upper barrels were sold on the internet to any willing buyer with VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER retaining the proceeds from this sale. Some of the upper barrels were returned to KELERCHIAN.

e.  In or about May of 2011, during the execution of an organized crime search warrant by Montreal, Canada, gun and gang law enforcement officials, recovered four upper barrels from this (50) H&K fully automatic machinegun purchase by VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER.

7

The serial numbers on these upper receivers (barrels) listed the Lake County Sheriff's Department as the registered owner.

*Second Machinegun Purchase*

f.   In or about February of 2009, JOSEPH R. KUMSTAR issued another "Letter of Intent" on Lake County Sheriff's Department letterhead to H&K for (9) H&K model MP5KN fully automatic machineguns. This letter of intent stated these machineguns were for the exclusive use of the Lake County Police Department.

g.   In or about February of 2009, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR and RONALD D. SLUSSER did cause a false and fictitious Lake County Sheriff's Department purchase order to be mailed or faxed, which represented the Lake County Sheriff's Department to be the purchaser of these machineguns even though it was not the true purchaser as required by law.

h.   For this purchase, VAHAN KELERCHIAN provided payment to H&K, the gun manufacturer /distributer in the amount of approximately $11,664.

i.   Shortly after obtaining these (9) H&K fully automatic machineguns, RONALD D. SLUSSER did cut up and remove the upper receiver barrels from these fully automatic machineguns.  These upper barrels were sold to Person A in Utah. Person A paid Slusser $18,900 for these H&K parts.  Slusser then paid $9450 to Kumstar and $9450 to Kelerchian.  These payments to Kelerchian and Kumstar were paid because Kelerchain and Kumstar had fronted money for this purchase.

*Third Machinegun Purchase*

j.   In or about October 2009, JOSEPH R. KUMSTAR issued another "Letter of Intent" on Lake County Sheriff's Department letterhead for (12) H&K model

8

53A3 fully automatic sub-machineguns. This letter of intent stated these sub-machineguns would be the property of the Lake County Sheriff's Department and would not be resold or transferred, and would be used to carry out the official duties of the Lake County Sheriff's Department.

k.  In or about October of 2009, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR and RONALD D. SLUSSER did cause another false and fictitious Lake County Sheriff's Department purchase order to be mailed or faxed, which represented the Lake County Sheriff's Department to be the purchaser of these sub-machineguns even though it was not the true purchaser as required by law.

l.  Shortly after obtaining these (12) H&K fully automatic sub-machineguns, RONALD D. SLUSSER did cut up and remove the upper receiver barrels from these fully automatic machineguns.  These upper barrels were sold to Person A in Utah.  Person A paid Slusser $31,200 for these H&K parts.  Slusser then paid Kelerchian $28,200.  This payment to Kelerchain was made because Kelerchian had fronted the money for this purchase.

m.  For this purchase, VAHAN KELERCHIAN provided payment to the H&K, the gun manufacturer/distributer, in the amount of approximately $16,800.

n.  At no time did VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER have the proper permission of the Lake County Sheriff's Department to engage in any of the above three purchases or subsequent sales of these H&K sub-machineguns.

28. In the purchasing each of these (71) machineguns and sub-machineguns, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER knowingly caused

9

false entries to be made in the books and records of the companies supplying these

firearms, in that these records reflected the Lake County Sheriff's Department as the

registered owner of these (71) firearms when in fact, VAHAN KELERCHIAN, JOSEPH

R. KUMSTAR, and RONALD D. SLUSSER knew that to be false.

All in violation of Title 18, United States Code 371 and 924(a)(1)(A).

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 2

### (Conspiring to Defraud the Food and Drug Administration)

1. The Grand Jury realleges and reincorporates by reference paragraphs 1-11, of Count 1 as though fully set forth herein;

### OBJECT OF THE CONSPIRACY

2. Between on or about December 2008, and continuing through on or about September 2010, in the Northern District of Indiana and elsewhere:

### VAHAN KELERCHIAN,

defendants herein, did knowingly combine, conspire, confederate, and agree with JOSEPH KUMSTAR, RONALD D. SLUSSER, and with others known and unknown to the grand jury, to defraud the Food and Drug Administration (FDA), an agency of the United States, by interfering with and obstructing the lawful government functions of the FDA to:

    a. Limit the sale of various restricted laser aiming sight devices to the military and law enforcement agencies only;

    b. Correctly identify first line purchasers of various laser aiming sight devices which were restricted to military or law enforcement agency purchasers only.

All in violation of Title 18 United States Code, Section 371.

11

## HOW THE CONSPIRACY OPERATED

3.  It was part of the conspiracy that JOSEPH R. KUMSTAR, and RONALD D. SLUSSER
    used their position as sworn law enforcement officers, along with VAHAN
    KELERCHIAN, to acquire approximately 74 (Seventy-Four) restricted laser aiming sight
    devices by fraudulently using the name of the Lake County Sheriff's Department and The
    Lowell, Indiana, Police Department, knowing that the Lake County Sheriff's Department
    and the Lowell Police Department were not the true owners of these restricted laser
    aiming devices.

4.  It was further part of the conspiracy that when acquiring these restricted laser aiming
    sights, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER
    knew they could only be acquired by law enforcement agencies and not individual law
    enforcement officers.

5.  It was further part of the conspiracy that when acquiring these (74) restricted laser aiming
    sight devices, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D.
    SLUSSER caused false information to be recorded in the books and records of the Insight
    Technology, Inc., regarding who was the true first purchaser of these laser aiming sight
    devices.   Furthermore, by causing false information to be recorded in the books records of
    the Insight Technology, Inc., VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and
    RONALD D. SLUSSER interfered with and obstructed the lawful government functions
    of the FDA to (a) limit the sale of various restricted laser aiming sight devices to only the
    military and law enforcement agencies and (b) correctly identify first line purchasers of
    these (74) various laser aiming sight devices, the sale of which was restricted to military
    or law enforcement agency purchases only.

6.  It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER caused to be submitted to Insight Technology, Inc., a false and fictitious Lake County Sheriff's Department purchase order for the purpose of inducing Insight Technology, Inc., to believe that these restricted laser sights were being purchased by the Lake County Sheriff's Department, when in fact the defendants were acquiring these restricted laser sights with their own personal funds and for their personal use and resale.

7.  It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER caused to be submitted to Insight Technology, Inc., a false and fictitious Lowell Police Department documents for the purpose of inducing Insight Technology, Inc., to believe that these restricted laser sights were being purchased by the Lowell Police Department, when in fact the defendants were acquiring these restricted laser sights with their own personal funds and for their personal use and resale.

8.  It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER would submit to Insight Technology, Inc., a "IR Product Disclosure Agreement" signed by JOSPEH R. KUMSTAR which falsely represented that the restricted laser sights being purchased would "not be sold or transferred to individual law enforcement or civilian personnel."

9.  It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER would submit to Insight Technology, Inc., a "IR Product Disclosure Agreement" which purported

13

to be signed by the proper authorities at the Lowell Police Department but in fact, falsely

represented that the restricted laser sights being purchased would "not be sold or

transferred to individual law enforcement or civilian personnel."

10. It was further part of the conspiracy that when acquiring these restricted laser sights

VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER caused

false and fictitious Lake County Sheriff's Department purchase orders to be created which

falsely represented that the restricted laser sights were being purchased by the Lake

County Sheriff's Department.

11. It was further part of the conspiracy that when acquiring these restricted laser sights

VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER would

cause these restricted laser sights to be delivered to the Lake County Sheriff's Department

or the Lowell Police Department rather than to their personal residences.

12. It was further part of the conspiracy that after acquiring these restricted laser sights, all of

them were removed from the Lake County Sheriff's Department and the Lowell Police

Department to the personal residence of either KUMSTAR or SLUSSER.

13. It was further part of the conspiracy that after these restricted laser sights were at the either

KUMSTAR or SLUSSER's residence, RONALD D. SLUSSER would sell some these

restricted laser sights on the internet to any willing purchaser. The sale of these restricted

laser sights ranged from approximately $2,800 to $3000 each. Some of the restricted lasers

aiming sights were retained by each of the defendants.

14. At no time did VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D.

SLUSSER have proper authority from the Lake County Sheriff's Department or the

Lowell Police Department to engage in any of the above mentioned purchases or sales of the restricted laser sights.

15. At no time were any of the restricted laser sights obtained by VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER listed in the property inventory of the Lake County Sheriff's Department or the Lowell Police Department.

16. In furtherance of the conspiracy and to effect its objects:

**VAHAN KELERCHIAN,**

Defendant herein, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER, and other conspirators, known and unknown to the grand jury performed the following:

<u>OVERT ACTS</u>

*First Laser Sight Purchase*

a. In or about December 6, 2008, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER ordered from Insight Technology Inc., approximately 25 various restricted laser sights having a value of approximately $27,000.

b. On or about December 6, 2008, JOSEPH R. KUMSTAR, submitted to Insight Technology, Inc., a "IR Product Disclosure Agreement" signed by JOSPEH R. KUMSTAR which represented that the restricted laser sights being purchased would "not be sold or transferred to individual law enforcement or civilian personnel."

c. In or about December of 2008, JOSEPH R. KUMSTAR signed a false and fictitious Lake County Sheriff's Department purchase order inducing Insight Technology, Inc., to believe that the Lake County Sheriff's Department was the

true purchaser of these restricted laser sights even though the defendants

themselves provided the funds for the purchase of these restricted laser sights.

d.   In or about January of 2009, Insight Technology, Inc. shipped these restricted

laser sights to the Lake County Sheriff's Department.

e.   For this purchase, VAHAN KELERCHIAN provided payment to Insight

Technologies Inc., in excess of $17,000.

f.   After obtaining these restricted laser sights, RONALD D. SLUSSER sent back to

VAHAN KELERCHIAN approximately 12 of these restricted laser sights.

g.   After obtaining these restricted laser sights, VAHAN KELERCHIAN, JOSEPH

R. KUMSTAR, and RONALD D. SLUSSER sold via the internet some these

restricted laser sights to any and all willing purchasers, including Keith Mitts.

h.   On or about August 21, 2009, the Department of Defense Criminal Investigative

Service (DCIS) engaged in a successful undercover purchase of a restricted laser

sight being offered for sale on E-Bay by a Keith Mitts.  DCIS undercover agents

paid $4,200 for a restricted laser aiming sight which was traced back to the

December 6, 2008, laser sight order from Insight Technology, Inc., which was

sent to the Lake County Sheriff's Department.  Subsequent to this undercover

purchase, two additional restricted laser sights of the same model and type that

were part of the December 6, 2008, laser sight order from Insight Technology,

Inc., which was sent to the Lake County Sheriff's Department, were recovered

from Mitt's Mississippi residence during Mitt's shooting and standoff with local

police officers.

*Second Laser Sight Purchase*

    i.   In or about December 2009, the defendants ordered from Insight Technology Inc., approximately 12 restricted laser sights having a value of approximately $15,000.

    j.   On or about December 2009, RONALD R. SLUSSER submitted to Insight Technology Inc., an "IR Product Disclosure Agreement" which represented that the restricted laser sights being purchased would "not be sold or transferred to individual law enforcement or civilian personnel."

    k.   In or about January of 2010, Insight Technology, Inc. shipped these restricted laser sights and RONALD D. SLUSSER obtained these restricted laser sights.

    l.   For this purchase, VAHAN KELERCHIAN provided several payments to Insight Technologies Inc., totaling more than $15,000.

    m.   After obtaining these restricted laser sights, RONALD D. SLUSSER sold via the internet these restricted laser sights to any willing purchaser.

*Third Laser Sight Purchase*

    n.   In or about February 2010, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER ordered from Insight Technology Inc., approximately 22 various restricted laser sights having value of approximately $30,000.

    o.   On or about February 23, 2010, JOSEPH R. KUMSTAR submitted to Insight Technology Inc., an "IR Product Disclosure Agreement" signed by JOSPEH R. KUMSTAR which represented that the restricted laser sights being purchased

would "not be sold or transferred to individual law enforcement or civilian personnel."

p.  In or about February 2010, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR and RONALD SLUSSER created a false and fictitious Lake County Sheriff's Department purchase order inducing Insight Technology, Inc., to believe that the Lake County Sheriff's Department was the true purchaser of these restricted laser sights even though the defendants themselves provided the funds for the purchase of these the restricted laser sights.

q.  In or about March 2010, Insight Technology, Inc. shipped these restricted laser sights to the Lake County Sheriff's Department.

r.  For this purchase, VAHAN KELERCHIAN provided several payments to Insight Technologies Inc., totaling more than $25,000.

s.  After obtaining these restricted laser sights, RONALD D. SLUSSER sold via the internet some of these restricted laser sights to any willing purchaser.

t.  Approximately 20 of these restricted laser sights were returned to VAHAN KELERCHIAN by RONALD D. SLUSSER.

*Fourth Laser Sight Purchase*

u.  In or about July 2010, RONALD D. SLUSSER ordered from Insight Technology, Inc., approximately 15 restricted laser sights from Insight Technology Inc., having a value of approximately $18,000.

v.  On or about July 6, 2010, RONALD R. SLUSSER submitted to Insight Technology, Inc., an "IR Product Disclosure Agreement" which represented that

the restricted laser sights being purchased would "not be sold or transferred to individual law enforcement or civilian personnel."

w.  In or about August 2010, Insight Technology, Inc. shipped these restricted laser sights and RONALD D. SLUSSER subsequently retrieved them.

x.  For this purchase, VAHAN KELERCHIAN provided payment to Insight Technologies Inc., in excess of $16,000.

y.  After obtaining these restricted laser sights, RONALD D. SLUSSER sold via the internet these restricted laser sights to any willing purchaser and sent two of the sights back to VAHAN KELERCHIAN.

z.  On August of 2010, a Special Agent of the FDA engaged in an undercover purchase of a restricted laser sight from RONDAL D. SLUSSER. This restricted laser sight was purchased by RONALD D. SLUSSER from Insight Technology, Inc., for approximately $1250.00 and sold to the FDA undercover agent for approximately $2900.00. An examination of the serial number for this sight revealed that it was part of the July 2010 order of 15 restricted laser sights that had been ordered by RONALD D. SLUSSER and paid for by VAHAN KELERCHIAN.

All in violation of Title 18 United States Code, Section 371.

**THE GRAND JURY FURTHER CHARGES:**

<u>COUNT 3</u>

**(Conspiracy to Make False Statements - Demonstration Letters)**

From on or about October 2007, and continuing to in or about March 28, 2010, both dates being approximate and inclusive, in the Northern District of Indiana and elsewhere,

**VAHAN KELERCHIAN**

defendant herein, and Joseph Kumstar, knowingly combined, conspired, confederated and agreed together and with each other, and with other persons known and unknown to the Grand Jury, to commit the following offenses against the United States: to willfully and knowingly make and cause to be made, and use and cause to be used, in a matter within the jurisdiction of a department or agency of the United States, to wit: the Bureau of Alcohol, Tobacco, Firearms, and Explosives, false writings and documents to wit: approximately (7) letters on Lake County Sheriff's Department letterhead requesting firearm demonstrations of machine guns (demonstration letters) from VAHAN KELERCHIAN, knowing the same to contain a materially false, fictitious, and fraudulent statement because VAHAN KELERCHIAN very well knew that in fact no demonstration was going to occur.

In furtherance of this scheme, false demonstration letters were sent from Lake County Indiana, VAHAN KELERCHIAN and to the National Firearms Branch of the Bureau of Alcohol, Tobacco, and Firearms located in Martinsburg, WV., on the following approximate days: October 4, 2007, February 13, 2009, February 16, 2009, June 29, 2009, March 28, 2010.

All in violation of Title 18, United States Code Section 1001, and 371.

**THE GRAND JURY FURTHER CHARGES:**

## COUNTS 4-7

### (False Statements - Demonstration Letters)

On or about the following dates in the Northern District of Indiana and elsewhere,

### VAHAN KELERCHIAN

defendant herein, and Joseph Kumstar did willfully and knowingly make and cause to be made, and use and cause to be used, in a matter within the jurisdiction of a department or agency of the United States, to wit: the Bureau of Alcohol, Tobacco, Firearms, and Explosives, false writings and documents to wit: approximately (4) letters on Lake County Sheriff's Department letterhead requesting firearm demonstrations of various machine guns (demonstration letters) from VAHAN KELERCHIAN, knowing the same to contain a materially false, fictitious, and fraudulent statement because VAHAN KELERCHIAN very well knew that in fact no demonstration was going to occur, said letters being mailed from Lake County Indiana, to VAHAN KELERCHIAN in Pennsylvania and the the National Firearms Branch of the Bureau of Alcohol, Tobacco, and Firearms located in Martinsburg, WV., on the following approximate days:

| COUNT | DATE |
|-------|------|
| 4 | February 13, 2009 |
| 5 | February 16, 2009 |
| 6 | June 29, 2009 |
| 7 | March 28, 2010 |

All in violation of Title 18, United States Code, Section 1001 and 2.

**THE GRAND JURY FURTHER CHARGES:**

## <u>COUNT 8</u>

### (Bribery)

1. At all times material to this indictment, the Lake County Sheriff's Department was an agency of a local government entity to wit: Lake County, Indiana, that received federal assistance in excess of $10,000 during the one-year period beginning January 2, 2008 and ending December 31, 2008.

2. Joseph Kumstar was an agent of Lake County Sheriff's Department acting as its Deputy Chief, in charge of operations, whose duties included overseeing and managing the Lake County Sheriff's Department.

3. On or about July 31, 2008, in the District of Indiana, and elsewhere,

### VAHAN KELERCHIAN

defendant herein, did corruptly give, offer, and agree to give a thing of value to wit: a Remington .12 Gauge short-barrel shotgun, to Joseph Kumstar, intending to influence and reward Joseph Kumstar in connection with a transaction and series of transactions of the Lake County Sheriff's Department  involving $5,000 or more.

All in violation of Title 18, United States Code, Section 666(a)(2) and 2.

22

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 9

**(Conspiracy to Launder Monetary Instruments: 1956 and 1957)**

Beginning in or about February 2009 and continuing through in or about January 2010, both dates being approximate and inclusive, in the District of Indiana and elsewhere,

**VAHAN KELECHIAN**

Defendant herein, Joseph Kumstar, and Ronald Slusser, willfully and knowingly conspired and agreed together and with each other, and with others known and unknown to the Grand Jury, to commit certain offenses:

1) Under Title 18, United States Code § 1956, to conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved proceeds of specified unlawful activity, that is mail and wire fraud, in violation of title 18  United States Code § 1341 and 1343: (1) with the intent to promote the carrying on of such specified unlawful activity and (2) knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and while conducting or attempting to conduct such financial transactions knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity,  and

2) Under Title 18, United States Code § 1957, to conduct and attempt to conduct monetary transactions affecting interstate commerce, in criminally derived property of a value greater than

$10,000, such property having been derived from a specified unlawful activity, that is, mail and wire fraud, in violation of Title 18 United States Code § 1341 and 1343.

All in violation of Title 18 United States Code 1956(h), 1956(a)(1)(B)(i), 1957, and 2.

## FIRST FORFEITURE ALLEGATION

1. The allegations of Count One of the Indictment are realleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America pursuant to the provisions of Title 18 United States Code, Section 924(d), and Title 28 United States Code, Section 2461(c).

2. Upon conviction of Count One of the Indictment, **Vahan Kelerchian**, defendant herein, shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 924(d), and Title 28, United States Code, Section 2461(c), any and all firearms involved in the commission of such offenses:

## SECOND FORFEITURE ALLEGATION

1.    The allegations contained in Count 9 of this Indictment are hereby re-alleged and

incorporated by reference for the purpose of alleging forfeiture  pursuant to Title 18, United

States Code, Sections 982(a)(1).

2.    Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an

offense in violation of Title 18, United States Code, Sections 1956 and 1957 , the defendant,

VAHAN KELERCHIAN, shall forfeit to the United States of America any property, real or

personal, involved in such offense, and any property traceable to such property.

3.    If any of the property described above, as a result of any act or omission

of the defendant:

a.    cannot be located upon the exercise of due diligence;
b.    has been transferred or sold to, or deposited with, a third party;
c.    has been placed beyond the jurisdiction of the court;
d.    has been substantially diminished in value; or
e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section

982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:


S/Foreperson
FOREPERSON


DAVID CAPP
UNITED STATES ATTORNEY


By:   S/Philip C. Benson
Philip C. Benson
Assistant United States Attorney

26

# Anthony Baiamonte III

February 28, 2018

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

RE:  **Character Reference for Vahan Steven Kelerchian** ██████████

**Application for Restoration of Firearms Privileges**
**License or Permit number 8-23-017-01-5A-02276**

Dear Sir/Madam:

I submit this Character Reference in support of, and granting relief to, Vahan Steven Kelerchian's Application for Restoration of Firearms Privileges.

I have personally known Mr. Kelerchian for more than ten (10) years as a personal friend. He is of high moral character and has proven to be a trustworthy and honorable man. I am proud to call Mr. Kelerchian my friend.

If you need any additional information, or have any questions of me in my support of Mr. Kelerchian, please contact me directly.

Thank you for your considerations. I remain,

Sincerely,

By: */s/ Anthony Baiamonte III*

# CHRISTOPHER J. McLOUGHLIN, PC

27 February 2018

Joshua Prince, Esq.
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505

RE: Vahan Kelerchian

Mr. Prince:

This letter is addressed to you in support of Vahan Kelerchian's request to BATF regarding his application for Federal Firearms relief, and I authorize you to make it available to anyone appropriate to this use. As a retired security consultant, I was self-employed in the varied aspects of that field for more than a quarter of a century, and I supported myself without incident or reprimand of any sort for my professional career.

My association and friendship with Mr. Kelerchian goes back a decade, probably more. During these years his expertise with acquisition and disposition of firearms has been invaluable to me and to my own friends and clients. He has with authority given advice on investment grade firearms and guided us through a maze of rules and regulations in order to insure that no paperwork was returned for further attention due to an omission or misstatement of description or condition. Perhaps presenting an aggravation to buyers or sellers, I've known him to strictly avoid any transaction that might bend rules effecting administrative procedure or record keeping. His advice has been given and taken in matters ranging from simple transfers to elaborate evaluations of inventory distributions in the dissolutions of estate assets.

Over time I have come to know Mr. Kelerchian on a personal level as well as a professional one. Apart from knowing firearms and the business of them, he is comfortable with the history of U.S. military hardware, and not only that, he knows more about the colonial geography of his part of the country than I do about the Confederate history of mine. He's shared this knowledge with his wife and their two daughters on weekend outings and summer vacations away

Mr. Prince
27 February
Page 02.

from his business. I know so because he's told me about them – in detail. He is a family man and takes pride in talking to me about his eldest daughter's passing her bar exam and her first date, just as he does about his youngest daughter's birthday party stories and the things that hold her interests. And when the time is right he and Maura take time together for a quick trip to New York, and I hear about that too. Vahan and I have become more than just business friends.

The business is operated meticulously and with an enviable sense of responsibility and attention to detail. Recently the business records underwent an intense scrutiny audit, and I understand that the books passed with praise and not the usual criticisms of form, content, or carelessness.

His business is the support of himself, his wife and their two daughters. I know of nothing that he might have knowingly done to put that in jeopardy and while he does not now operate the business himself, there should be no impediment to letting the business continue to function for their livelihood and well-being by granting him Federal Firearms relief.

Sincerely,
CHRISTOPHER J. McLOUGHLIN, PC

Chris McLoughlin
(...\CJMcL LTR 2018\VK:ASI 27-02-18\CJMcL,PC)

# JOHN T. CONWAY



February 25, 2018

RE: Vahan S. Kelerchian, Applicant

To Whom This May Concern,

My name is John T. Conway. I am a New York State Licensed Funeral Director. I am a United States Coast Guard Licensed Captain. I am 68 years old and am a college graduate. I have known Vahan Kelerchian since 1975, both on a personal level as well as on a professional level. I feel that I am a good judge of one's character and I can speak of Mr. Kelerchian in an honest and objective manner.

 For many years my wife's family and his wife's family lived across the street from each other and both families were very close to each other. Coincidentally, when my wife and I bought our first house, it was two houses away from Mr. Kelerchian's family home. We could not have had better neighbors than the Kelerchians. Vahan and I saw each other almost on a daily basis. I know him well. I know him to be a straight and honest man, one who could be depended upon as a neighbor. He looked out for his family as well as his neighbors. He was definitely an asset to the neighborhood.

I know him to be a very good businessman and an even better family man. There is nothing more important to him than his family. I know him to be honest, perhaps to a fault. He is dependable and his word is as good as gold.

It is my sincere hope that his application be given a fair and objective review.

Thank you for your time and consideration.

John T. Conway

Mr. Anthony DiGiovanni                                        February 23, 2018



U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

Re: Kelerchian, Vahan, Steven

To Whom It May Concern:

I am writing this letter on behalf of my dear friend, Vahan Steven Kelerchian.  I am a small business owner in Jackson Heights, NY.  My family has owned and operated a delicatessen for more than 58 years.  It's the quintessential neighborhood deli that everyone who went to school nearby patronized year after year, and many of our friends still live in the community.  I grew up in the neighborhood, along with Vahan and his wife Maura, and we have been friends for more than 46 years.  This is the place where we forged many of our lifelong friendships.  During the many years that I have known Vahan, I can attest to the fact that he has always conducted himself with both honor and integrity, and he has always been very well respected in the community.

Vahan formerly operated a car repair shop not too far away from my business, and everyone with whom he came into contact had nothing but praise for him.  He has always been kind, courteous, and willing to help anyone in need.  Whether it was family members, friends, customers, or even strangers that were in need of assistance, he always offered help and never turned his back on anyone, no matter the circumstance.  I can personally attest to this because I have witnessed his kindness on many occasions over the years.   It is because of these attributes that Vahan was very successful in the auto repair business for many years.   He ultimately moved to Pennsylvania in order to follow his lifelong passion of becoming a Federal Firearms dealer.  There, along with Maura, he built another successful business with an impeccable record.  For as long as I have known Vahan, he has always been driven to be the best at whatever pursuit he follows.  Vahan is a man who values honesty, morality, and strong principles, and he has been a man of the utmost character in all the years that we have been friends.   He is also a man who knows the importance of family, whereby he and Maura have raised two beautiful daughters and instilled within them the same core values.  I have always held Vahan in the highest regard; I never had a brother, but he is as close to one that I could have ever found.  We will always be friends and nothing can or will ever change that fact.

I am thankful for the opportunity to provide a testament on behalf of Vahan Kelerchian.  I hope that my words have served to paint a clear picture of the man and friend that I have had the privilege to know and admire for almost the entirety of my life.

                                                  Sincerely,

                                                  *Anthony DiGiovanni*

                                                  Anthony DiGiovanni



APPLICANT
* See Privacy Act Notice on Back

LEAVE BLANK

TYPE OR PRINT ALL INFORMATION IN BLACK

FBI    LEAVE BLANK

FD-258 (REV.3-1-10)    1110-0046

SIGNATURE OF PERSON FINGERPRINTED

RESIDENCE OF PERSON FINGERPRINTED

275 WORTHINGTON MILL RD
RICHBORO
PA                18954

DATE    SIGNATURE OF OFFICIAL TAKING FINGERPRINTS

01-02-2018    ASHARP-ALEX, SHARP

EMPLOYER AND ADDRESS

FEDERAL FIREARMS LICENSING CENTER
244 NEEDY RD
MARTINSBURG
WV              25405

REASON

OTHER

KELERCHIAN, VAHAN STEVEN

ALIASES   AKA

ORI    WVATF0800
ATF-NATL TRA CTR
MARTINSBURG, WV

DATE OF BIRTH    DOB
Month   Day   Year

CITIZENSHIP  CTZ

SEX  RACE  HGT.  WGT.  EYES  HAIR  PL

US - UNITED STATES O    M   W   600   290   BRO   BAL   NY - NEW YORK
LEAVE BLANK

YOUR NO.  OCA

FBI NO.  FBI

ARMED FORCES NO.  MNU

CLASS

SOCIAL SECURITY NO.  SOC

REF

CLASS

1110-0046

# FEDERAL BUREAU OF INVESTIGATION
## UNITED STATES DEPARTMENT OF JUSTICE
## CJIS DIVISION/CLARKSBURG, WV 26306

# APPLICANT

### 1. LOOP



CENTER OF LOOP

DELTA

THE LINES BETWEEN CENTER OF LOOP AND DELTA MUST SHOW

### 2. WHORL

DELTAS

THESE LINES RUNNING BETWEEN DELTAS MUST BE CLEAR

### 3. ARCH



ARCHES HAVE NO DELTAS

FD-258 (REV. 3-1-10)

U.S. GOVERNMENT PUBLISHING OFFICE:
10/22/2015 12:51:47

## THIS CARD FOR USE BY:

1. LAW ENFORCEMENT AGENCIES IN FINGERPRINTING APPLICANTS FOR LAW ENFORCEMENT POSITIONS.*
2. OFFICIALS OF STATE AND LOCAL GOVERNMENTS FOR PURPOSES OF EMPLOYMENT, LICENSING, AND PERMITS, AS AUTHORIZED BY STATE STATUTES AND APPROVED BY THE ATTORNEY GENERAL OF THE UNITED STATES. LOCAL AND COUNTY ORDINANCES, UNLESS SPECIFICALLY BASED ON APPLICABLE STATE STATUTES DO NOT SATISFY THIS REQUIREMENT.*
3. U.S. GOVERNMENT AGENCIES AND OTHER ENTITIES REQUIRED BY FEDERAL LAW.**
4. OFFICIALS OF FEDERALLY CHARTERED OR INSURED BANKING INSTITUTIONS TO PROMOTE OR MAINTAIN THE SECURITY OF THOSE INSTITUTIONS.

Please review this helpful information to aid in the successful processing of hard copy criminal and civil fingerprint submissions in order to prevent delays or rejections. Hard copy fingerprint submissions must meet specific criteria for processing by the Federal Bureau of Investigation.

**Ensure all information is typed or legibly printed using blue or black ink.**
**Enter data within the boundaries of the designated field or block.**
**Complete all required fields.** (If a required field is left blank, the fingerprint card may be immediately rejected without further processing.)
   • The required fields for hard copy fingerprint cards are: originating agency identifier number - date of birth - place of birth - name - sex - fingerprint impressions - any applicable state stamp - Other (race, height, weight, eye color, hair color)

   * criminal fingerprint cards also require an arrest charge and date of arrest.
   * civil fingerprint cards also require a reason fingerprinted and date fingerprinted

**Do not use highlighters on fingerprint cards.**
**Do not enter data or labels within 'Leave Blank' areas.**
**Ensure the 'Reply Desired' field is checked when applicable** (criminal only).
**Ensure fingerprint impressions are rolled completely from nail to nail.**
**Ensure fingerprint impressions are in the correct sequence.**
**Ensure notations are made for any missing fingerprint impression (i.e. amputation).**
**Do not use more than two retabs per fingerprint impression block.**
**Ensure no stray marks are within the fingerprint impression blocks.**

Training aids can be ordered online via the Internet by accessing the FBI's website at: fbi.gov, click on 'Fingerprints', then click on 'Ordering Fingerprint Cards & Training Aids'. Direct questions to the Identification and Investigative Services Section's Customer Service Group at (304) 625-5590 or by e-mail at <liaison@leo.gov>.

### PRIVACY ACT STATEMENT

**Authority:** The FBI's acquisition, preservation, and exchange of information requested by this form is generally authorized under 28 U.S.C. 534. Depending on the nature of your application, supplemental authorities include numerous Federal statutes, hundreds of State statutes pursuant to Pub.L. 92-544, Presidential executive orders, regulations and/or orders of the Attorney General of the United States, or other authorized authorities. Examples include, but are not limited to: 5 U.S.C. 9101; Pub.L. 94-29; Pub.L. 101-604; and Executive Orders 10450 and 12968. Providing the requested information is voluntary; however, failure to furnish the information may affect timely completion or approval of your application.

**Social Security Account Number (SSAN).** Your SSAN is needed to keep records accurate because other people may have the same name and birth date. Pursuant to the Federal Privacy Act of 1974 (5 USC 552a), the requesting agency is responsible for informing you whether disclosure is mandatory or voluntary, by what statutory or other authority your SSAN is solicited, and what uses will be made of it. Executive Order 9397 also asks Federal agencies to use this number to help identify individuals in agency records.

**Principal Purpose:** Certain determinations, such as employment, security, licensing, and adoption, may be predicated on fingerprint-based checks. Your fingerprints and other information contained on (and along with) this form may be submitted to the requesting agency, the agency conducting the application investigation, and/or FBI for the purpose of comparing the submitted information to available records in order to identify other information that may be pertinent to the application. During the processing of this application, and for as long hereafter as may be relevant to the activity for which this application is being submitted, the FBI may disclose any potentially pertinent information to the requesting agency and/or to the agency conducting the investigation. The FBI may also retain the submitted information in the FBI's permanent collection of fingerprints and related information, where it will be subject to comparisons against other submissions received by the FBI. Depending on the nature of your application, the requesting agency and/or the agency conducting the application investigation may also retain the fingerprints and other submitted information for authorized purposes of such agency(ies).

**Routine Uses:** The fingerprints and information reported on this form may be disclosed pursuant to your consent, and may also be disclosed by the FBI without your consent as permitted by the Federal Privacy Act of 1974 (5 USC 552a(b)) and all applicable routine uses as may be published at any time in the Federal Register, including the routine uses for the FBI Fingerprint Identification Records System (Justice/FBI-009) and the FBI's Blanket Routine Uses (Justice/FBI-BRU). Routine uses include, but are not limited to, disclosures to: appropriate governmental authorities responsible for civil or criminal law enforcement, counterintelligence, national security or public safety matters to which the information may be relevant; to State and local governmental agencies and nongovernmental entities for application processing as authorized by Federal and State legislation, executive order, or regulation, including employment, security, licensing, and adoption checks; and as otherwise authorized by law, treaty, executive order, regulation, or other lawful authority. If other agencies are involved in processing this application, they may have additional routine uses.

**Additional Information:** The requesting agency and/or the agency conducting the application-investigation will provide you additional information pertinent to the specific circumstances of this application, which may include identification of other authorities, purposes, uses, and consequences of not providing requested information. In addition, any such agency in the Federal Executive Branch has also published notice in the Federal Register describing any system(s) of records in which that agency may also maintain your records, including the authorities, purposes, and routine uses for the system(s).

### INSTRUCTIONS:

* 1. PRINTS MUST GENERALLY BE CHECKED THROUGH THE APPROPRIATE STATE IDENTIFICATION BUREAU, AND ONLY THOSE FINGERPRINTS FOR WHICH NO DISQUALIFYING RECORD HAS BEEN FOUND LOCALLY SHOULD BE SUBMITTED FOR FBI SEARCH.
2. IDENTITY OF PRIVATE CONTRACTORS SHOULD BE SHOWN IN SPACE "EMPLOYER AND ADDRESS". THE CONTRIBUTOR IS THE NAME OF THE AGENCY SUBMITTING THE FINGERPRINT CARD TO THE FBI.
3. FBI NUMBER, IF KNOWN, SHOULD ALWAYS BE FURNISHED IN THE APPROPRIATE SPACE.
** MISCELLANEOUS NO. - RECORD: OTHER ARMED FORCES NO. PASSPORT NO. [FP], ALIEN REGISTRATION NO. (AR), PORT SECURITY CARD NO. (PS), SELECTIVE SERVICE NO. (SS) VETERANS' ADMINISTRATION CLAIM NO. (VA).

# Exhibit F

# PRINCE LAW OFFICES, P.C.

| | | | |
|---|---|---|---|
| Warren H. Prince | | Bechtelsville | 1-610-845-3803 |
| Karl P. Voigt IV | | Allentown | 1-610-770-1151 |
| Joshua Prince | | Bethlehem | 1-610-814-0838 |
| Eric E. Winter | | Camp Hill | 1-717-731-0100 |
| Thomas H. Odom | | Lancaster | 1-717-393-7002 |
| Stanley J. Kuter | | Lebanon | 1-717-274-9250 |
| Jeffrey A Franklin | | North Wales | 1-215-412-0800 |
| Adam J. Kraut | | Pottstown | 1-610-326-4200 |
| Jorge Pereira | | Pottsville | 1-570-621-8828 |
| | | Reading | 1-610-375-8425 |
| | | Toll Free | 1-888-313-0416 |
| | | Fax | 1-610-845-3903 |

April 09, 2018

U.S. Department of Justice - Bureau of Alcohol, Tobacco, Firearms and Explosives
Attention Bureau of Alcohol, Tobacco, Firearms and Explosives NCETR - Relief of Disabilities
Section
Corporal Road, Building 3750, Redstone Arsenal
Huntsville, AL 35898

RE:   Vahan Kelerchian Application for Restoration of Firearms Privileges
        FFL # 8-23-017-01-5A-02276

Dear Chief Day,

I am in receipt of your March 27, 2018 letter and the enclosures, wherein you returned Mr. Kelerchian's application for federal firearms relief.

As you should be aware and as I explained in my original letter of March 02, 2018, pursuant to 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144(i), as Mr. Kelerchian is an FFL holder, who has continually and timely renewed his FFL, provided he files an application for federal firearms relief, he shall not be "barred by such disability from further operations under his license **pending final action** on an application for  relief filed pursuant to this section." Although I am acutely aware that since 1992 the Congress has precluded ATF from conducting federal firearms relief determinations through the ATF's annual appropriation bill, in this situation, because Mr. Kelerchian is an FFL, ATF is required to retain the application and process it, when, if ever, the Congress appropriates money for ATF to conduct federal firearms relief determinations. It is for that reason that I am returning Mr. Kelerchian's entire application packet to you.

I also note in passing that you and other employees of ATF would seemingly be barred from issuing letters such as your March 27, 2018 letter and returning applications, as the language in the annual appropriation bill, as has existed since 1992, provides, in pertinent part, that "none of the funds appropriated herein shall be available to investigate or act upon an application for relief from Federal firearms disabilities under Section 925(c)." As all employees of ATF are paid through the annual appropriations bill and you are taking action by returning an application, including incurring printing, mailing and other costs, such action would seemingly be in violation of the

Congressional mandate.

If you have any further questions or concerns, please do not hesitate to contact me. Thanking you for your time and assistance in this matter, I am

Respectfully Yours,
Prince Law Offices, P.C.

Joshua Prince
joshua@princelaw.com
Extension: 81114

jp/web
Matter no. 37012
Enclosure

# Exhibit G

4-9

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. JD3701 2 <br> ■ Print your name and address on the reverse so that we can return the card to you. <br> ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature <br> X B Uimbrough  ☐ Agent  ☐ Addressee <br> B. Received by (Printed Name)  C. Date of Delivery  4/12/18 |

Chief John R. Day
U.S. Department of Justice - Bureau of Alcohol, Tobacco,
  Firearms and Explosives
Attention Bureau of Alcohol, Tobacco, Firearms and Explosives NCETR
  - Relief of Disabilities Section
Corporal Road, Building 3750, Redstone Arsenal
Huntsville, AL 35898

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:  ☑ No

9590 9403 0554 5173 4793 97

| 3. Service Type | |
|---|---|
| ☐ Adult Signature | ☐ Priority Mail Express® |
| ☐ Adult Signature Restricted Delivery | ☐ Registered Mail™ |
| ☑ Certified Mail® | ☐ Registered Mail Restricted Delivery |
| ☐ Certified Mail Restricted Delivery | ☐ Return Receipt for Merchandise |
| ☐ Collect on Delivery | ☐ Signature Confirmation |
| ☐ Collect on Delivery Restricted Delivery | ☐ Signature Confirmation Restricted Delivery |
| Mail | |
| 'ail Restricted Delivery | |

2. Article Number (Transfer from service label)
7016 0910 0000 6749 1887

PS Form 3811, April 2015 PSN 7530-02-000-9053          Domestic Return Receipt