**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

VAHAN KELERCHIAN,                    :
                                              :
             Plaintiff,          :
                                                :
             v.                         :           CIVIL ACTION NO. 20-253
                                                  :
BUREAU OF ALCOHOL, TOBACCO,     :
FIREARMS AND EXPLOSIVES, _et al._,    :
                                                :
             Defendants.      :

_____:

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2020, upon consideration of the United States of America's Motion to Dismiss the Complaint and any opposition thereto, it is hereby ORDERED that the motion is GRANTED.  IT IS FURTHER ORDERED that the complaint is DISMISSED with prejudice and this matter is CLOSED.

BY THE COURT:

_____
WENDY BEETLESTONE, J.
_United States District Court_

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VAHAN KELERCHIAN, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 20-253 |
| : | |
| BUREAU OF ALCOHOL, TOBACCO, : | |
| FIREARMS AND EXPLOSIVES, *et al.*, : | |
| : | |
| Defendants. : | |
| : | |

## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Defendants, by and through their counsel William M. McSwain, United

States Attorney for the Eastern District of Pennsylvania, and Lauren DeBruicker,

Assistant United States Attorney for the district, respectfully move this Honorable

Court to dismiss the Complaint pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6).

The bases for this motion are set forth fully in the accompanying

memorandum of law. A proposed form of order is enclosed.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney

*/s/ Susan R. Becker for GBD*
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

*/s/ Lauren DeBruicker*

LAUREN DeBRUICKER
Assistant United States Attorneys
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Tel: 215.861.8492
Lauren.DeBruicker@usdoj.gov

Of Counsel:

Jeffrey A. Cohen
ATF Associate Chief Counsel
John Kevin White
ATF Division Counsel
601 Walnut Street, Suite 1000E
Philadelphia, PA 19106

Dated: March 20, 2020

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VAHAN KELERCHIAN,                               :
                                                :
                     Plaintiff,                 :
                                                :
          v.                                    :          CIVIL ACTION NO. 20-253
                                                :
BUREAU OF ALCOHOL, TOBACCO,                     :
FIREARMS AND EXPLOSIVES, *et al.*,              :
                                                :
                     Defendants.                :
_____:

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Plaintiff, a federally convicted felon, asks the Court to compel the Bureau of

Alcohol, Tobacco, Firearms and Explosives ("ATF") to take action on an application

he made under 18 U.S.C. § 925(c) of the Gun Control Act to retain his federal

firearms license in spite of his convictions. Plaintiff fails to inform the Court that

Congress effectively revoked § 925(c) in 1992, and has prohibited ATF from taking

any action on such applications. Plaintiff nonetheless asks the Court to compel ATF

to acknowledge and accept his application for relief from disabilities he mailed to

ATF in 2018 pursuant to this defunct provision, and to put the application in

"pending" status, so that he may continue to operate under his federal firearms

license until such time as Congress reinstates § 925(c) and ATF is once again

authorized to consider his application – which plaintiff recognizes could be *never*.

Under the Gun Control Act, the Court's jurisdiction is limited to reviewing

ATF's denials of such applications. By plaintiff's admission, ATF has taken no

action on his application at all. More fundamentally, the provisions on which plaintiff bases his application – and his claims here – were effectively repealed by Congress nearly three decades ago. Because Congress unequivocally nullified all relief that had once been available under 18 U.S.C. § 925(c) in 1992, plaintiff's application for that relief is a legal nullity. Plaintiff has no legal basis for his claims, and under unanimous Third Circuit and Supreme Court precedent, this Court is without jurisdiction to hear them. Defendants therefore respectfully move the Court to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6).

## I. OVERVIEW OF THE GUN CONTROL ACT

### A. Automatic Prohibitions for Convicted Felons

The Gun Control Act, 18 U.S.C. § 921 *et seq.* (the "GCA"), bans certain classes of persons from possessing firearms, including felons. 18 U.S.C. § 922(g). The GCA further provides that any federal firearms license held by a convicted felon becomes void thirty (30) days from the date that the conviction becomes final. 18 U.S.C. § 925(b); *see also* 27 C.F.R. § 478.144(i)(1). This happens by operation of law; no administrative action by ATF is required to "revoke" the felon's license.

### B. The GCA's Original Provision for Relief from the Impact of Felony Convictions – Section 925(c)

The Gun Control Act once provided a mechanism for relief from the above restrictions (sometimes referred to as "prohibitions" or "disabilities"). As enacted,

the GCA authorized the Attorney General to grant relief from the prohibitions if it was established to his or her satisfaction that certain preconditions were met – including that the felon no longer posed a danger and granting the relief would be in the public's interest. *See* 18 U.S.C. § 925(c). Authority to administer the relief-from-disabilities program was delegated to the director of the ATF. 28 C.F.R. § 0.130(a)(1). Judicial review was available in the federal district court of appropriate jurisdiction to "[a]ny person whose application for relief… is denied by the [ATF]." 18 U.S.C. § 925(c). ATF's decision was reviewed under an arbitrary and capricious standard. *United States v. Bean*, 537 U.S. 71, 77-78 (2002).

In enacting this relief provision, Congress further provided that if an applicant seeking relief from disabilities holds a federal firearms license, that applicant would not be barred from further operations under the license "pending final action" on the application for relief. 18 U.S.C. § 925(c); *see also* 27 C.F.R. § 478.144(i)(1) (if application for relief under § 925(c) was timely filed, licensee could further continue licensed operations "during the pendency of the application.").

## C. Congress Revokes § 925(c) in 1992 through a Ban on Appropriations to Consider Applications for Relief

By the early 1990's, Congress determined that the relief provision of § 925(c) was unworkable, costly, and dangerous. ATF agents were spending inordinate hours and resources evaluating applications for relief, and guns were getting back into the hands of dangerous criminals.  After observing these negative impacts of the felony relief program, in 1992 Congress defunded the § 925(c) relief-from-

disabilities program, providing in its appropriations bill that year that "none of the funds appropriated herein shall be available to investigate or act upon applications for relief from Federal firearms disabilities under section 925(c) of title 18, United States Code." Treasury, Postal Service, and General Government Appropriations Act, 1993, Pub. L. 102-393, 106 Stat. 1732 (the "appropriations ban"). Congress has reaffirmed this appropriations ban every year since. *See Bean*, 537 U.S. at 75 n.3 (listing subsequent appropriations decisions); *see also, e.g.*, Consolidated Appropriations Act, 2018, Division B, P.L. 115-141 (2017-2018); Consolidated Appropriations Act, 2019, Division C, P.L. 116-6 (2019-2020); and FY 2020 Omnibus Bill (HR 1158) (applicable at the time plaintiff filed his application and thereafter).

Pursuant to this mandate, ATF is prohibited from considering – or taking any action at all regarding – applications for federal firearms relief under § 925(c).

## II.     FACTUAL AND PROCEDURAL HISTORY

### A.     Plaintiff's Criminal Conviction

Plaintiff holds a federal firearms license as a dealer, which he was issued in or around 2006. *See* Compl., Dkt. No. 1, at ¶ 19. For many years, he and his wife owned and operated Armament Services International, Inc. ("ASI"), a firearms business in Warminster, Pennsylvania.

In 2015, a jury in the Northern District of Indiana convicted plaintiff of multiple felony violations of federal gun laws, including conspiring and making false statements to illegally obtain and sell military-style, belt-fed machine guns – only legal for military and law enforcement use – to private individuals. *See U.S. v.*

*Kelerchian*, 2:13-CR-66, N.D. Ind. (the "Criminal Action") at Am. Jgt., attached to Compl., Dkt. No. 1-1, at 16.[1]

On February 5, 2018, the court in the Criminal Action sentenced plaintiff to a term of 100 months in prison, fined him $100,000, and, among other terms of his eventual release, ordered that he "may not own or possess a firearm, ammunition, destructive device, or any other dangerous weapon." Compl., Dkt. No. 1-1, at 20. The Seventh Circuit affirmed plaintiff's convictions. *United States v. Kelerchian*, 937 F.3d 895, 903-904, (7th Cir. 2019). Plaintiff has petitioned the U.S. Supreme Court for certiorari, and his petition is now pending. *Kelerchian v. United States*, (U.S. Nov. 20, 2019) (No. 19-782). Plaintiff is incarcerated at FCI Fort Dix in New Jersey, with an anticipated release date of May 2025.[2]

---

[1]     For further details of plaintiff's criminal activity and convictions, *see United States v. Kelerchian*, No. 2:13-CR-66 JVB, 2015 U.S. Dist. LEXIS 80336, at *2, 4-5 (N.D. Ind. June 22, 2015) (denying plaintiff's motion to dismiss) and 2017 U.S. Dist. LEXIS 64926, at *4 (N.D. Ind. Apr. 28, 2017) (denying his motion for acquittal).

[2]     Based on their own conduct in connection with plaintiff's criminal activity, both Mrs. Kelerchian and ASI themselves were found to have willfully violated the Gun Control Act, such that ATF did not renew ASI's federal firearms licenses and denied Mrs. Kelerchian's application for one in her own name. *See Armament Servs. Int'l v. Yates*, No. 17-mc-10, 2017 U.S. Dist. LEXIS 194554, at *1 (E.D. Pa. Nov. 27, 2017), *aff'd*, 760 Fed. App'x 114 (2019), *cert. denied*, 140 S. Ct. 52 (2019) (affirming the district court's finding that ASI and Mrs. Kelerchian willfully violated the Gun Control Act, and ATF's denial of their license and license renewal applications). ASI is currently operating under the plaintiff's license.

### B. The Impact of Plaintiff's Criminal Conviction on His License

#### 1. *Plaintiff is prohibited from possessing firearms.*

As a result of his conviction, plaintiff is prohibited from possessing firearms. 18 U.S.C. § 922(g)(1). Given plaintiff's incarceration, where he is unable to come in contact with firearms, this provision has little practical impact on plaintiff.

#### 2. *Unless his conviction is overturned, plaintiff's license will become void by operation of law.*

His eight felony convictions notwithstanding, plaintiff is able to hold his license for the time being. Pursuant to 18 U.S.C. § 925(b) and 27 C.F.R. § 478.144(i), plaintiff (and ASI) may continue to operate under his license until thirty (30) days after his conviction becomes final. In the event the Supreme Court denies his petition for certiorari, plaintiff's license will be void by operation of law thirty (30) days following that denial. 18 U.S.C. § 925(b); 27 C.F.R. § 478.144(i).

### C. Plaintiff's Application for Restoration of Firearm Privileges

On March 2, 2018, through his counsel, plaintiff mailed a petition to ATF seeking relief from his prohibiting federal convictions pursuant to 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144(i). In light of the appropriations ban, on March 27, 2018, ATF returned plaintiff's application to his counsel with the following explanation:

> Although Federal law provides a means for the relief of firearms disabilities, since October 1992, ATF's annual appropriation has prohibited the expending of any funds to investigate or act upon applications for relief from Federal firearms disabilities submitted by individuals. Accordingly, ATF cannot act upon these applications.

*See* Compl. at Ex. E.

On April 9, 2018, plaintiff re-sent his petition to ATF accompanied by a letter stating his position that the law "requires ATF to retain plaintiff's application and process it, when, *if ever*, the Congress appropriates money for ATF to conduct Federal firearms relief determinations." Compl. at ¶ 35 and Ex. F (emphasis added). ATF did not respond to this letter. On January 12, 2020, plaintiff filed the instant complaint, accusing ATF of wrongfully "ignor[ing]" his application and seeking to "eviscerate his rights" under the long-defunct § 925(c).

## III.   LEGAL STANDARDS AND OTHER APPLICABLE LAW

### A.    Lack of Subject Matter Jurisdiction – Fed. R. Civ. P. 12(b)(1)

At issue in a motion to dismiss a complaint pursuant to Rule 12(b)(1) is the Court's jurisdiction – its very power to hear the case. *See Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997). Because its jurisdiction is in dispute, the Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* In a Rule 12(b)(1) motion, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* Plaintiff bears the burden of proving that jurisdiction exists. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884 (3d Cir. 1977).

### B.    Failure to State a Claim upon which Relief May Be Granted – Fed. R. Civ. P. 12(b)(6)

The Court must grant a motion to dismiss pursuant to Rule 12(b)(6) where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim that would entitle him to relief." *Carino v. Stefan*, 376 F.3d 156, 159 (3d Cir. 2004), *quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation, citation omitted). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The extensive congressional record confirming the scope, rationale, and intended impact of the 1992 appropriations ban falls squarely within these permitted materials.

## IV.   LEGAL ARGUMENT

Plaintiff accuses ATF of wrongfully "ignor[ing]" his application and seeking to "eviscerate his rights" under the long-defunct § 925(c). Plaintiff asks the Court to find that because he mailed a petition for relief from disabilities to ATF under 18 U.S.C. § 925(c) and related portions of 27 C.F.R. § 478.144(i), these defunct provisions somehow still permit him to operate as a federal firearms licensee until such time as ATF acts on his application, *i.e.*, until Congress repeals the

appropriations ban that has been in place for decades. Such a ruling would have the perverse effect of permitting felons to operate under their licenses indefinitely *because of* the appropriations ban expressly intended to deny them from ever obtaining such relief. Setting aside their direct contravention of congressional mandate, plaintiff's claims fail to satisfy Rules 12(b)(1) and 12(b)(6) and should be dismissed.

### A. The Court is Without Jurisdiction to Hear Plaintiff's Claims.

#### 1. *As ATF has not denied plaintiff's application, the Court is without jurisdiction over claims relating to it.*

The Supreme Court has unanimously held that under the plain text of § 925(c), "the absence of an actual denial of [a] respondent's petition by ATF precludes judicial review under § 925(c)." *Bean*, 537 U.S. at 78.

> The text of § 925(c) and the procedure it lays out for seeking relief make clear that an actual decision by ATF on an application is a prerequisite for judicial review, and that mere inaction by ATF does not invest a district court with independent jurisdiction to act on an application.

*Id.* at 75-76. Plaintiff makes no allegation that ATF has denied his application. Plaintiff admits that due to the appropriations ban, ATF has not, because it cannot, even accepted his application for consideration. Plaintiff's complaint should be dismissed on this basis alone.

#### 2. *The appropriations ban stripped the Court of all jurisdiction over claims based on § 925(c).*

The appropriations ban did not create jurisdiction where there was none.

To the contrary, the unanimous Court in *Bean* confirmed that Congress's decision to defund the relief program, whereby ATF is barred from considering or

acting upon on any applications for relief, effectively stripped the federal courts of jurisdiction to review any claims arising under § 925(c). *Id*. at 75-78 (rejecting respondent's contention that the ATF's inaction on § 925(c) application by virtue of the appropriations ban invoked district court jurisdiction under the Administrative Procedure Act). As the Third Circuit has likewise confirmed, "because the appropriations ban suspends ATF's ability to issue the 'denial' that § 925(c) makes a prerequisite, *it effectively suspends that statute's jurisdictional grant*." *Pontarelli v. Dep't of Treasury*, 285 F.3d 216, 218 (3d Cir. 2002) (en banc) (emphasis added). *See also Beers v. AG United States*, 927 F.3d 150, 156 n. 39 (3d Cir. 2019) ("Congress's denial of funds to process § 925(c) restoration applications stripped the federal district courts of jurisdiction to review the Justice Department's refusal to act on those applications.").

As the Court held in *Pontarelli*, "congressional intent to prohibit any Federal relief – either through ATF or the courts – is clear[]." 285 F.3d at 230 (citation omitted).

> Section 925(c) gives district courts jurisdiction to review applications only after a "denial" by ATF. The appropriations ban renders ATF unable to deny individual felons' applications, and thus effectively suspends § 925(c)'s jurisdictional grant. The legislative history of the appropriations ban confirms that Congress intended to prevent individual felons from regaining firearms privileges. Indeed, Congress could not have meant to confer new jurisdiction on the district courts to restore those privileges because district courts are incapable of predicting accurately which felons will misuse firearms.

*Pontarelli*, 285 F.3d at 231.

As Third Circuit further observed, there has been no adverse congressional reaction to the many federal court decisions holding that the appropriations bans do not allow district courts to review applications for relief. "If Congress wanted district courts to be able to restore felons' firearms privileges, these decisions should have prompted it to give them jurisdiction to do so." *Pontarelli*, 285 F.3d at 230.

> In sum, the legislative history of the appropriations ban demonstrates that Congress wanted to suspend felons' ability to regain their firearms privileges under § 925(c). *This history refutes the claim that Congress intended to give district courts jurisdiction to review ATF 's congressionally mandated inability to restore felons' firearms privileges.*

*Id*. at 230 (emphasis added).

Courts have unanimously held that district courts simply do not have the jurisdiction to review ATF's congressionally mandated inaction on applications for relief under § 925(c).[3] The Court is thus without jurisdiction to hear plaintiff's claims that ATF is "wrongfully ignoring," or otherwise failing to consider or give appropriate legal weight to, his application. The Court should dismiss his complaint in its entirety for lack of jurisdiction.

---

[3]    *See, e.g., Mullis v. United States*, 230 F.3d 215, 221 (6th Cir. 2000) ("Congress, through its appropriations act, has chosen to at least temporarily suspend the operation of § 925(c) in its entirety, thereby removing subject matter jurisdiction from the district court."); *Black v. Snow*, 272 F. Supp. 2d 21, 24 (D.D.C. 2003); *McHugh v. Rubin*, 220 F.3d 53, 57-58 (2d Cir. 2000) (further noting Congress's ability to repeal legislation through an appropriations ban, citing cases); *United States v. McGill*, 74 F.3d 64, 67 (5th Cir. 1996); *Dreher v. United States*, 943 F. Supp. 680, 684 (W.D.La. 1996); *Owen v. Magaw*, 936 F. Supp. 1568, 1571 (D. Kan. 1996).

## B. Plaintiff Fails to State a Claim Upon Which Relief May Be Granted.

Even if the Court had jurisdiction to hear plaintiff's claims, which it does not, plaintiff fails to state a claim upon which relief may be granted.

### 1. *The provisions under which plaintiff seeks relief are void.*

Plaintiff's claims are based entirely on rights he contends are afforded him under § 925(c) and its implementing regulations. As the Supreme Court has confirmed, § 925(c) "has been rendered inoperative, …for Congress has repeatedly barred the Attorney General from using appropriated funds 'to investigate or act upon [relief] applications.'" *Logan v. United States*, 552 U.S. 23, 28 n.1 (2007), *citing Bean,* 537 U.S. at 74-75 (internal punctuation omitted). By virtue of the appropriations ban, § 925(c) "is currently a nullity." *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 682 (6th Cir. 2016) (en banc). "In enacting the restriction each year since 1992, Congress has sent a clear signal that it wished to disable the firearms relief provision." *Black*, 272 F. Supp. 2d at 27.

As the Third Circuit recently observed *en banc*, the pertinent congressional committee reports "indicate that Congress wanted to suspend § 925(c)'s relief procedure because it was concerned that dangerous felons were regaining their firearms privileges and because it believed that the resources allocated to investigating felons' applications would be better used to fight crime." *Pontarelli*, 285 F.3d at 226; *see also McGill*, 74 F.3d at 67 ("By withdrawing funds to the ATF to process these applications under these circumstances and with this explanation

by the appropriations committee, it is clear to us that Congress intended to suspend the relief provided by § 925(c).”); *see also Mullis*, 230 F.3d at 218 (“[T]hrough its appropriations measures, Congress intended to suspend all relief available through the ATF.”).

"Congress effectively wrote § 925(c) out of the statute books" because it concluded that the task of granting individual applications was “a very difficult and subjective task which could have devastating consequences for innocent citizens if the wrong decision is made.” *Beers*, 927 F.3d at 156 n.38 (citations, punctuation omitted). Congress also stated that “too many of these felons whose gun ownership rights were restored went on to commit violent crimes with firearms.” *Id.* (citing H.R. Rep. No. 104-183, at 15). “Congress therefore concluded that a system for restoring gun rights was unworkable.” *Id.*

"In practice, …both 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144 are meaningless; Congress has denied any funding ‘to investigate or act upon applications for relief from Federal firearms disabilities under 18 U.S.C. 925(c).’ … Thus, 18 U.S.C. § 925(c) *does not provide an actual avenue of relief*.” *Franklin v. Lynch*, No. 3:16-cv-36, 2016 U.S. Dist. LEXIS 160759, at *4-5 n.2 (W.D. Pa. Nov. 18, 2016) (emphasis added); *see also Williams v. Barr*, 379 F. Supp. 3d. 379, 350 (E.D. Pa. 2019) (explaining that as a result of lack of appropriated funds from Congress, "[t]his provision has been rendered inoperative since 1993") (emphasis added).

As the Third Circuit has recently noted, "to the extent such a restoration remedy was available, it was a matter of congressional grace" that has since been

withdrawn. *Beers*, 927 F.3d at 156. Even if this Court had jurisdiction over plaintiff's claims, plaintiff has no enforceable rights under § 925(c) upon which this Court can grant relief.

As Congress has nullified the relief available under § 925(c), it follows that applications for such relief are legally meaningless as well. By asking the Court to compel ATF to accept his application for processing and consider it "pending," plaintiff asks the Court to defy Congress and create both jurisdiction and a cause of action where Congress has said there is none. Under the terms of the GCA, and Supreme Court and Third Circuit precedent, the Court must decline the invitation.

> **2.    Plaintiff's application is not "pending" so as to be entitled to § 925(c)'s protections, and the Court cannot compel ATF to make it so.**

Prior to the appropriations ban, § 925(c) and its implementing regulations allowed a felon to continue operations under a license "*pending* final action" on or "during the *pendency* of a relief application." 18 U.S.C. § 925(c); 27 C.F.R. § 478.144(i)(1) (emphasis added). Based on these provisions, plaintiff asks the Court to compel ATF to accept his application and put it in "pending" status so as to enable him to operate under his license indefinitely beyond the date his conviction becomes final.

By virtue of the appropriations ban, "both 18 U.S.C. § 925(c) and 27 C.F.R. § 478.114 are meaningless." *Franklin*, 2016 U.S. Dist. LEXIS 160759, at *4-5 n.2. By continually renewing the appropriations ban every year since 1992, Congress has prohibited ATF from investigating or acting on applications for relief. ATF thus did

not and could not have accepted his application or considered it as "pending." This is not pursuant to some subversive, unpublished internal ATF policy, as plaintiff alleges – it is pursuant to congressional mandate.

### a) Plaintiff's argument is factually unsupported.

As a factual matter, plaintiff has never filed an application for relief with ATF. He mailed his application to ATF, and ATF returned it to him with the explanation that the appropriations ban prohibited ATF from taking any action on it.[4] As a result, plaintiff's application is not – and has never been – filed with ATF, much less "pending" with ATF such as to allow him to continue to conduct a firearms business "during the pendency of the application" until the appropriations restriction on relief expires.[5]  Section 925(c) thus provides plaintiff no relief.

---

[4]     As plaintiff alleges, he subsequently mailed his application to ATF again in April 2018. Compl. ¶ 35-36. Having already done the only thing it could with respect to the application – that is, return it with its standard explanation of the impact of the appropriations ban – ATF did not send the application back a second time. ATF respectfully submits that its congressionally-imposed inability to engage in paper ping-pong with plaintiff does not mean it has "accepted" his application for relief, or that it is somehow "pending." ATF is congressionally prohibited from taking any action on his application whatsoever.

[5]     The procedure ATF followed here is precisely that which it followed with the application at issue in *Bean*. *See* 537 U.S. at 75-76 (Noting the appropriations ban has prevented ATF from using funds to investigate or act upon applications for relief from Federal firearms disabilities under 18 U.S.C. § 925(c); "[a]ccordingly, ATF, upon receipt of respondent's petition, returned it."). The Court unanimously confirmed that such "mere inaction by ATF" is not judicially reviewable. 537 U.S. at 76. While the applicant there did not argue that its application was "pending" so as to require ATF to allow him to continually operate under his license, but instead asked the Court to consider ATF's inaction on his application as a denial entitling him to judicial review of that application, ATF submits the outcome is the same.

### b) Plaintiff's argument is contrary to law.

Plaintiff's claim that ATF "is required to retain the application and process it when, if ever, the Congress appropriates money for ATF to conduct federal firearms relief determinations," Compl. at ¶ 35, is without merit. The Supreme Court and courts across the country have held that ATF's action – effectively inaction – on plaintiff's application is congressionally mandated and does not create a cause of action that may be heard in the district court. *See, e.g., Bean*, 537 U.S. at 75-76; *Black*, 272 F. Supp. 2d at 24 ("Bound by this [appropriations] prohibition, ATF now simply returns any individual application that it receives with an explanation that it is permitted to do no more;" dismissing case on summary judgment); *McHugh*, 220 F.3d at 57 ("Even the simple act by the ATF of processing applications in accordance with a straightforward categorical rule (for example, 'all applications shall be denied') would involve the use of appropriated funds. The ATF has been placed in a virtual straightjacket by the plain language of Congress's appropriations statutes precluding it from acting on § 925(c) applications;" denying request for mandamus and ordering case dismissed); *Dreher*, 943 F. Supp. at 684 ("ATF no longer denies relief from firearms disabilities. Rather, the ATF is simply not authorized to act in any way regarding applications for the restoration of gun privileges;" dismissing case); *Owen*, 936 F. Supp. at 1571 ("Thus, while § 925(c) remains on the books and has not been repealed, Congress has effectively suspended its operation. Until such time as Congress reauthorizes funding, []ATF is legally prohibited from processing applications for relief under section 925(c), and

the courts are accordingly precluded from judicial review of the denial of such applications;" dismissing case).

### c) Plaintiff's argument is contrary to Congress's plain intent in enacting the appropriations ban.

Plaintiff's construction of the statute would have the absurd result of effectively granting plaintiff, a person convicted of multiple firearms-related felonies, relief from firearms disabilities indefinitely – and possibly forever if the appropriations ban remain in place.

In enacting the appropriations ban, it was not Congress's intent to allow convicted felons, such as plaintiff, to operate gun stores indefinitely. To the contrary, 18 U.S.C. § 925(b) provides that plaintiff's license becomes void by operation of law once the felony conviction becomes final. Congress has left this provision untouched. Furthermore, as the Third Circuit and every other appellate court to have consider the matter has held, it was Congress's intent in defunding § 925(c) to prevent felons from regaining their firearms privileges.

In *Pontarelli*, the Third Circuit found that the House and Senate Appropriations Committee reports to their respective chambers reflected Congress's clear intent to dismantle the § 925(c) relief program, and prohibit any activity by ATF in connection with that program, and their reasons for doing so.

These reports indicate that Congress wanted to suspend § 925(c)'s relief procedure because it was concerned that dangerous felons were regaining their firearms privileges and because it believed that the resources allocated to investigating felons' applications would be better used to fight crime. The House Appropriations Committee noted:

Under the relief procedure, ATF officials are required to guess whether a convicted felon . . . can be entrusted with a firearm. After ATF agents spend many hours investigating a particular applicant for relief, there is no way to know with any certainty whether the applicant is still a danger to public safety. Needless to say, it is a very difficult task. Thus, officials are now forced to make these decisions knowing that a mistake could have devastating consequences for innocent citizens.

Thus, the Committee believes that the $ 3.75 million and the 40 man-years annually spent investigating and acting upon these applications for relief would be better utilized by ATF in fighting violent crime. Therefore, the Committee has included language which states that no appropriated funds be used to investigate or act upon applications for relief from Federal firearms disabilities.

*Pontarelli*, 285 F.3d at 226-27; *see also id*. at 227 (reciting similar findings in Senate report, citing S. Rep. 102-353, at 19-20 (1992)).

As ATF was barred even from accepting plaintiff's application for later consideration, plaintiff's argument – that he may further continue licensed operations "pending final action" or "during the pendency of the application" pursuant to 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144(i) – fails. Plaintiff's application has never been pending before ATF. A convicted felon's application for relief of disabilities pursuant to these provisions cannot be considered as "pending" simply because an appropriations restriction is currently in place. To consider such an application as "pending" would effectively grant plaintiff relief under 925(c), indefinitely – in express contravention of Congress's appropriations ban and its clearly expressed intent, which effectively repealed these sections by operation of law, and established case law so confirming.

Just as Congress did not intend for ATF or the Courts to restore felons' firearms privileges, it surely did not intend for felons to be able to circumvent these prohibitions and maintain their licenses beyond the clear operation of § 925(b) by simply dropping a now legally meaningless § 925(c) application in the mail.

C. **Plaintiff Fails to State a Claim under the APA upon which Relief May Be Granted or which the Court Has Jurisdiction to Hear.**

Plaintiff fails to allege the fundamental prerequisites to an APA claim. His claims must be dismissed on these additional and equally dispositive bases.

A district court has jurisdiction to review an agency's determination under the APA only if the agency action (1) is final, (2) adversely affects the party seeking review of the decision, and (3) is non-discretionary. *See Pinho v. Gonzales*, 432 F.3d 193, 200 (3d Cir. 2005). Plaintiff admits that ATF has made no decision regarding his application for relief, and taken no action to revoke his license. Indeed, it does not have to: his license will become inoperative if and when his conviction becomes final. 18 U.S.C. § 925(b).[6] Moreover, even if there were a viable cause of action under § 925(c), the ultimate decision on an application for relief is left to ATF's

_____

[6] Plaintiff bases his claims on a purported fear that ATF intends to revoke his license. Aside from being factually baseless, plaintiff's claim is without legal merit. As plaintiff fails to mention, 18 U.S.C. § 923(f)(4) bars ATF from revoking his license based on the criminal acts for which he was prosecuted and convicted. Specifically, § 923(f)(4) bars ATF from instituting a revocation action against a federal firearms license based on the holder's criminal conduct more than one year after the filing of the indictment. ATF did not institute such an action against plaintiff's federal firearms license within one year of his indictment in 2013, instead allowing plaintiff his day in criminal court. Indeed, ATF does not have to take such action: if plaintiff's convictions are reversed, his license remains in effect; if his petition for certiorari is denied, his license becomes inoperative under § 925(b).

discretion. 18 U.S.C. § 925(c) ("the Attorney General *may* grant such relief if it is established *to his satisfaction* that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest.")(emphasis added).

Moreover, as plaintiff acknowledges, "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Compl. at ¶ 51, citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-843 (1984). As plaintiff notes, ATF would be subject to reversal only if its actions in returning plaintiff's application, and not considering it "pending" so as to grant him the ability to operate his license despite his felony convictions, was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

As courts considering the appropriations ban and its impact on felons' rights under § 925(c) have consistently held, "ATF's decision to comply with a congressional directive cannot be said to meet this standard." *McHugh*, 220 F.3d at 61 ("We are aware of no alchemy capable of transforming review of the ATF's decision under § 706 into the relief the plaintiff seeks – plenary adjudication of his application by the district court."). *See also Bean*, 537 U.S. at 75-78 (rejecting respondent's contention that the ATF's inaction on § 925(c) application by virtue of the appropriations ban invoked district court jurisdiction under the Administrative

Procedure Act); and *Black*, 272 F. Supp. 2d at 27 (§ 925(c) leaves the district court with no power under the APA to compel agency action). Here, Congress's intent was clear. ATF's return of plaintiff's application, and its inability to consider it "pending" such as to allow plaintiff to circumvent federal gun law and its plain prohibitions, was not an "attempt to contravene the Congress's mandate is in violation of its regulatory authority," as plaintiff asks the Court to believe. It was an act mandated by Congress itself.

While plaintiff does not ask the Court to decide his § 925(c) application, the relief he seeks is the same. He seeks injunctive relief, which is in effect a request for relief from his federal firearm disabilities – relief that Congress, in enacting the appropriations ban and reaffirming it every year since, has made clear he is not entitled to. Plaintiff asks the Court to find that the relief provisions Congress has effectively nullified somehow still entitle him to maintain his license privileges indefinitely, and avoid the black letter prohibitions preventing a felon from operating under a license 30 days after his conviction becomes final. If the Court were to grant plaintiff the injunctive relief he requests, the Court would be exercising jurisdiction it does not have and granting relief Congress has prohibited.

V. **CONCLUSION**

If the Supreme Court grants plaintiff's petition for certiorari and he succeeds in repealing his eight felony convictions, then his federal firearms license will remain in force. If the Supreme Court denies his petition for certiorari, his federal firearms license becomes inoperative within thirty (30) days of that denial. Should

Congress ever restore the relief program under § 925(c), plaintiff may apply for relief at that time. In the interim, plaintiff may also apply for a presidential pardon. *See* ATF's Federal Firearms Licensee Newsletter (Sept. 2011) at 2, available at https://www.atf.gov/firearms/docs/newsletter/federal-firearms-licensees-newsletter-september-2011/download, visited March 20, 2020.

What plaintiff cannot do is ask this Court to create jurisdiction where Congress has plainly stated there is none, or provide relief under a provision that is no longer valid law.

For the foregoing reasons, the United States respectfully requests that the Court dismiss the complaint in its entirety and with prejudice.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney

*/s/ Susan R. Becker for GBD*
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

/s/ *Lauren DeBruicker*
LAUREN DeBRUICKER
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Tel: 215.861.8492
Lauren.DeBruicker@usdoj.gov

Of Counsel:

Jeffrey A. Cohen
ATF Associate Chief Counsel
John Kevin White
ATF Division Counsel
601 Walnut Street, Suite 1000E
Philadelphia, PA 19106

Dated:  March 20, 2020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of March, 2020, I served a true and correct copy of the foregoing Motion to Dismiss the Complaint via ECF on the following counsel of record:


Joshua Prince, Esq.
Adam Kraut, Esq.
Prince Law Offices, P.C.
646 Lenape Road
Bechtelsville, PA 1950


*Attorneys for Plaintiff*


 /s/ Lauren DeBruicker
LAUREN DeBRUICKER
Assistant United States Attorney