Joshua Prince, Esq.
Attorney Id No. 306521
Prince Law Offices, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(888) 313-0416, ext 81114 (t)
(610) 845-3903 (f)
Joshua@PrinceLaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VAHAN KELERCHIAN** | : | |
| Plaintiff | : | |
| | : | |
| **v.** | : | Civil Action No. 2:20-CV-253 |
| | : | |
| **BUREAU OF ALCOHOL, TOBACCO,** | : | |
| **FIREARMS AND EXPLOSIVES**, *et al.* | : | |
| Defendants | : | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

Plaintiff Vahan Kelerchian, by and through his counsel, hereby submits this Brief in Opposition of Defendants' Motion to Dismiss.

**I.    Introduction**

Although 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144(i) explicitly provide that a licensed dealer, "who *makes* application for relief from the disabilities incurred under this chapter, shall not be barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section" (emphasis added), in direct defiance of the Congress's mandate and the Bureau of Alcohol, Tobacco, Firearms and Explosives' (hereinafter "ATF") own regulation, the Defendants take the position that Mr. Kelerchian's license will automatically be revoked, regardless

1

of the protections afforded by Section 925(c), even though there is no dispute that Mr. Kelerchian timely filed an application for relief and that ATF has failed to issue a final determination on that application. In what can only be described as interpretive jiggery-pokery, the Defendants, after admitting that Mr. Kelerchian timely filed the requisite application for relief and that they are in possession of it, contend that it is not "pending" and therefore the protections of Section 925(c) somehow, someway do not apply. Perhaps more disconcerting is the lengths the Government goes to in misleading this Court regarding the current status of Section 925(c) and ATF's recent grants of relief, pursuant thereto. Contrary to Defendants' contention, Section 925(c) has neither been revoked nor is a nullity. Even more telling as to the baselessness of the Government's motion, it does not even address four of the five violations of the APA that Mr. Kelerchian pled in his Complaint.

## II.    Factual Background

*Facts Relative to Mr. Kelerchian's Licensing*

In or about January of 2006, Mr. Kelerchian obtained an FFL, as a dealer, with a current number of 8-23-017-01-5A-02276. [1] Mr. Kelerchian's FFL no. 8-23-017-01-5A-02276 has been timely renewed, every three years, as required by 18 U.S.C. § 923 and 27 C.F.R.§ § 478.45, 478.49 and is listed as active on ATF's FFL eZCheck, available at https://fflezcheck.atf.gov/fflezcheck. [2] Although Mr. Kelerchian timely submitted a renewal of his dealer license in December of 2014 and again on or about December 21, 2017, in direct defiance of 18 U.S.C. § 923(d)(2) and 27 C.F.R. §§ 478.47(c), (d) – which require a determination approving or denying the license within 60 days – Defendants

---

[1] Compl. (Doc. 1) at ¶ 19.
[2] *Id.* at ¶ 20.

have failed to issue determinations on the renewal applications and instead have issued numerous "letters of authorization", referred to by Defendants as "LOAs",[3] purporting to extend his license for limited periods of time.[4] As of the filing of the Complaint in this matter, Defendants' most recent LOA purports to authorize Mr. Kelerchian to continue business until July 7, 2020, even though, his most recent renewal application of on or about December 21, 2017, if approved, would authorize him to continue business through on or about January 1, 2021, absent revocation of the license.[5]

*Facts Relative to Mr. Kelerchian's Chargings*

On May 17, 2013, Mr. Kelerchian was charged in a nine (9) count Indictment, primarily related to the putative transfer of machineguns and laser-aiming devices, in the U.S. District Court, Northern District of Indiana, docket no. 2:13-cr-00066.[6] On or about October 15, 2015, the jury found Mr. Kelerchian guilty of some, but not all, charges.[7] After several motions, on February 5, 2018, Mr. Kelerchian was sentenced and the matter is currently pending on a petition for certiorari before the U.S. Supreme Court, docket no. 19-782.[8]

*Facts Relative to Mr Kelerchian's Application for Relief*

As a result of the Mr. Kelerchian's sentencing on February 5, 2018, within the 30

---

[3] Neither the Gun Control Act, 18 U.S.C. § 921, *et seq.*, nor its implementing regulations mention or authorize "letters of authorization" or "LOAs."
[4] *Id*. at ¶ 21.
[5] *Id*. at ¶ 22.
[6] *Id*. at ¶ 24.
[7] *Id*. at ¶ 25.
[8] *Id*. at ¶¶ 26-27.

days as mandated by 27 C.F.R. § 478.144(i)(1), on March 2, 2018, [9] the undersigned submitted one (1) day Priority Mail letters to then-ATF Acting Director Thomas Brandon, Philadelphia Director of Industry Operations Juan Orellana, and ATF's NCETR division with three copies of Mr. Kelerchian's Application for Restoration of Firearms Privileges, pursuant to 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144, and requisite documentation.[10] As set-forth in the letter, 27 C.F.R. § 478.11 requires three copies of the application to be filed with the Director, but the application instructions only require one copy to be filed with NCETR; thus, as a matter of precaution, the undersigned submitted three copies of the executed Applications with the applicable documents (as contained in Exhibit A to the Complaint) to each: then-ATF Acting Director Thomas Brandon, Philadelphia Director of Industry Operations Juan Orellana, and ATF's NCETR division.[11]

The mailing to then-ATF Acting Director Brandon was received on March 7, 2018. [12] The mailing to Philadelphia Director of Industry Operations Orellana was received on March 6, 2018. [13] The mailing to ATF NCETR division was received on March 6, 2018. [14]

On April 3, 2018, the undersigned received a response dated March 27, 2018, from John R. Day, Chief, Explosives Enforcement and Training Division, acknowledging receipt of Mr. Kelerchian's Application for Restoration of Firearms Privileges, but stating

---

[9] The Government admits that the relief application was submitted on March 2, 2018. *See*, Def. Brief in Supp. of Mtn. to Dismiss at 6.
[10] *Id*. at ¶ 28; Exhibit A.
[11] *Id*. at ¶ 29; Exhibit A.
[12] *Id*. at ¶ 31; Exhibit B.
[13] *Id*. at ¶ 32; Exhibit C.
[14] *Id*. at ¶ 33; Exhibit D.

that since ATF cannot, currently, act on applications for relief, the application was being returned to the undersigned. [15] On April 9, 2018, the undersigned responded by explaining that as the statutory and regulatory law only requires that an FFL "make" an application for relief, ATF is required to retain the application and process it, when, if ever, the Congress appropriates money for ATF to conduct federal firearms relief determinations, and resubmitted Mr. Kelerchian's Application for Restoration of Firearms Privileges with the applicable documents (as contained in Exhibit A to the Complaint). [16] The undersigned's April 9, 2018 letter with Mr. Kelerchian's Application for Restoration of Firearms Privileges and the applicable documents (as contained in Exhibit A) was received by ATF Chief John Day on April 12, 2018. [17] Neither Chief John Day, Acting Director Brandon, Director Orellana, NCETR nor anyone else acting as an employee or agent of the Defendants has sent any further correspondences regarding Mr. Kelerchian's Application for Restoration of Firearms Privileges. [18] The Government concedes that it did not return the application for relief and that it is currently in possession of it. [19]

*Facts Relative to Defendants' Refusal to Acknowledge*
*Mr. Kelerchian's Application for Restoration of Firearms Privileges*

On November 27, 2019, ATF Philadelphia Division Counsel Kevin White inquired as to whether Mr. Kelerchian had filed an appeal with the U.S. Supreme Court in relation to his criminal chargings, as ATF is taking the position, pursuant to an internal policy (hereinafter "internal policy"), that although Mr. Kelerchian timely complied with

---

[15] *Id*. at ¶ 34; Exhibit E.
[16] *Id*. at ¶ 35; Exhibit F.
[17] *Id*. at ¶ 36; Exhibit G.
[18] *Id*. at ¶¶ 37-38.
[19] Def. Brief in Supp. of Mtn. to Dismiss at 7, 15 fn. 4.

18 U.S.C. § 925(c) and 27 C.F.R. 478.144 by making and filing the application for relief with ATF, since ATF cannot adjudicate the application that it can immediately revoke his license if the U.S. Supreme Court denies certiorari. [20] Additionally, pursuant to this "internal policy", it is apparently ATF's position that the firearms held pursuant to the license are contraband and therefore subject to forfeiture, in addition to arguably contending that Mr. Kelerchian is a prohibited person in possession of each and every firearm, for which he could be separately charged and convicted. [21] This "internal policy" has not been published anywhere, including, but not limited to, in the Federal Register, and it is unknown whether it exists in written form. [22]

As a result, Mr. Kelerchian brought the underlying action for declaratory and injunctive relief that is before the Court.

## III.    Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, when considering a motion to dismiss, the Court must "accept all of the complaint's well-pleaded facts as true…" and "…then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). *Fowler* makes it clear that while a court is under no obligation to accept legal conclusions, it is under no duty to entirely disregard them. *Id*. Dismissal pursuant to Rule 12(b)(6) is proper when the factual allegations, accepted as true, are insufficient to "state a claim to relief that is

---

[20] *Id*. at ¶ 40.
[21] *Id*. at ¶ 41.
[22] *Id*. at ¶ 42.

plausible on its face." *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d

Cir. 2009).

**IV.    Statutory and Regulatory Provisions**

The Gun Control Act ("GCA"), 18 U.S.C. § 921, *et seq*., and its implementing

regulations, 27 C.F.R. § 478.1, *et seq*., are part of the Crimes Code and have both

criminal and civil penalties associated with violations thereof. 18 U.S.C. § 925(c)

provides, in pertinent part:

> A … *licensed dealer* … conducting operations under this chapter, who *makes* application for relief from the disabilities incurred under this chapter, *shall not be barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section*. (emphasis added)

27 C.F.R. § 478.144(i)(1) provides, in pertinent part:

> A licensee who incurs disabilities under the Act (see § 478.32(a)) during the term of a current license or while the licensee has pending a license renewal application, and *who files an application for removal of such disabilities*, shall not be barred from licensed operations for 30 days following the date on which the applicant was first subject to such disabilities (or 30 days after the date upon which the conviction for a crime punishable by imprisonment for a term exceeding 1 year becomes final), and *if the licensee files the application for relief as provided by this section within such 30–day period, the licensee may further continue licensed operations during the pendency of the application*. (emphasis added)

27 C.F.R. § 478.144(i)(2) goes on to provide, in pertinent part

> In the event the term of a license of a person expires … during the pendency of the application for relief, a timely application for renewal of the license must be *filed in order to continue licensed operations*. (emphasis added)

**V.    Congressional Appropriation Rider on Section 925(c)**

In 1993, pursuant to the Treasury, Postal Service, and General Government

Appropriations Act, 1993, Pub. L. 102-393, 106 Stat. 1732, the Congress included a *limited*

appropriations rider on ATF's ability, *only* in relation to individuals, to "investigate" or "act"

upon applications for relief, but which neither precludes individuals from making an

application nor precludes ATF from receiving such applications. Specifically, it provided:

> That none of the funds appropriated herein shall be available to *investigate* or *act upon* applications for relief from Federal firearms disabilities under section 925(c) of title 18, United States Code:  Provided further, That such funds shall be available to investigate and act upon applications filed by corporations for relief from Federal firearms disabilities under section 925(c) of title 18, United States Code. (emphasis added)

This rider has been included in the enacted appropriation bill every year, including in

Consolidated Appropriations Act, 2018, Division B, P.L. 115-141 (2017-2018),

Consolidated Appropriations Act, 2019, Division C, P.L. 116-6 (2019-2020), and FY

2020 Omnibus Bill (HR 1158).

## VI.    Argument

### a.   Plaintiff seeks Declaratory and Injunctive Relief for which this Court has Jurisdiction

Although Defendants contend that this Court lacks subject matter jurisdiction,

they seemingly overlook the jurisdictional citations that Mr. Kelerchian included in the

Complaint and attempt through smoke-and-mirrors to confuse this Court as to the actual

declaratory and injunctive relief requested by Mr. Kelerchian.

#### i.   *Mr. Kelerchian's Right to Obtain Declaratory and Injunctive Relief*

As set-forth in the Complaint at ¶¶ 11-12, Mr. Kelerchian brought this action for

declaratory and injunctive relief pursuant to 5 U.S.C. §§ 552, 702, 703, 704 and 28

U.S.C. §§ 1331, 1343, 1346, 2201, 2202, and 2412; therefore, jurisdiction is founded on

5 U.S.C. §§ 702 and 704 and 28 U.S.C. § 1331, as this action arises under the

Administrative Procedure Act, as well as the Constitution and laws of the United States. As the Government contends – in direct defiance of Section 925(c) – that Mr. Kelerchian's federal firearms license will be automatically revoked 30 days after his conviction become final regardless of his timely application for relief [23], there is clearly a dispute over the application of Section 925(c) to which Mr. Kelerchian has a right to obtain declaratory and injunctive relief. In point of fact, 28 U.S.C. § 2201 explicitly provides this Court with jurisdiction to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought" and thereafter, 28 U.S.C. § 2202 provides this Court with jurisdiction to grant "[f]urther necessary or proper relief based on a declaratory judgment or decree."

### ii.   The Bean Decision is Inapplicable to Mr. Kelerchian's Claims

Instead of conceding Mr. Kelerchian's right to obtain declaratory and injunctive relief over the application of Section 925(c), the Defendants, in attempt to confuse this Court, argue that this Court lacks jurisdiction pursuant to the Supreme Court's holding in *United States v. Bean*, 537 U.S. 71, 78 (2002) [24], even though, they later admit – albeit hidden in a footnote – that *Bean* did not address the application of Section 925(c) preventing the revocation/voiding of a federal firearms license relative to a relief application having been filed with ATF. [25] Rather, the underlying issue in *Bean*, 537 U.S. at 74-75, was whether Mr. Bean could obtain review by the district court on his personal application for relief by contending that ATF's inaction was a constructive denial.

---

[23] *See*, Def. Brief in Supp. of Mtn. to Dismiss at 6.
[24] *See*, Def. Brief in Supp. of Mtn. to Dismiss at 9.
[25] *See*, Def. Brief in Supp. of Mtn. to Dismiss at 15, fn. 5.

Unlike the *Bean* case and every other case Defendants cite in support of their contention that this Court lacks jurisdiction [26], as Defendants are acutely aware, a review of the Complaint does not yield *any* support for the contention that Mr. Kelerchian is seeking judicial review of a constructive or actual denial of his application for relief. [27] Rather, as admitted by Defendants [28], Mr. Kelerchian is *only* asking this Court to declare pursuant to 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144(i), that, as a result of Section 925(c) and his timely making of the requisite application for relief, his federal firearms license will remain in operation until such time as ATF acts on his application, provided he timely renews the license, pursuant to Section 478.144(i)(2). Further lost on the Defendants is that the underlying request for declaratory and injunctive relief has been necessitated by (1) ATF Attorney Kevin White informing the undersigned of ATF's "informal policy" that regardless of Mr. Kelerchian's timely application for relief, his license will be revoked/voided upon a denial of certiorari by the Supreme Court and that the firearms held pursuant to the license are contraband and therefore subject to forfeiture, in addition to arguably contending that Mr. Kelerchian is a prohibited person in possession of each and every firearm, for which he could be separately charged and convicted, [29] and (2) Defendants' position that Mr. Kelerchian's federal firearm license will be void within 30 days of a denial of certiorari by the U.S. Supreme Court,

---

[26] *See,* Government's citation to *Logan v. United States*, 552 U.S. 23, 28, fn.1 (2007); *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 682 (6th Cir. 2016) (*en banc*); *Mullis v. United States*, 230 F.3d 215, 221 (6th Cir. 2000); *Black v. Snow*, 272 F. Supp. 2d 21, 24 (D.D.C. 2003); *Pontarelli v. Dep't of Treasury*, 285 F.3d 216, 218 (3d Cir. 2002) (en banc); *McHugh v. Rubin*, 220 F.3d 53, 57-58 (2d Cir. 2000); *United States v. McGill*, 74 F.3d 64, 67 (5th Cir. 1996); *Dreher v. United States*, 943 F. Supp. 680, 684 (W.D.La. 1996); *Owen v. Magaw*, 936 F. Supp. 1568, 1571 (D. Kan. 1996)
[27] *See*, Compl. at ¶¶ 4-5, 47-49, 53, 65-66; Prayer for Relief at (a)-(c).
[28] *See*, Def. Brief in Supp. of Mtn. to Dismiss at 8
[29] Compl. at ¶¶ 40, 41.

regardless of Section 925(c) and the fact that Mr. Kelerchian timely submitted the requisite application for relief. [30]

### iii. The Congress' Appropriation Rider is Inapplicable to Mr. Kelerchian Claims

After attempting to confuse this Court on the application of *Bean* to the present matter, the Government's next magic trick is claiming that the *limited* appropriation rider – which only precludes ATF from "investigating" or "acting" upon an application for relief – somehow, someway, presto chango, has resulted in "Congress [r]evok[ing] § 925(c)" [31] and "nullified the relief available under § 925(c)." [32]

First, as reviewed *supra*, it is important to review the actual language of both Section 925(c) and the appropriations rider. In pertinent part, Section 925(c) explicitly provides that:

> A … *licensed dealer* … conducting operations under this chapter, who *makes* application for relief from the disabilities incurred under this chapter, *shall not be barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section*.

Thus, to trigger the protections afforded by Section 925(c), Mr. Kelerchian only had to "make[] application for relief from disabilities incurred under this chapter" in order to "not be barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section."

Interestingly, the Government's brief never provides this Court with the actual, pertinent language found in Section 925(c) nor addresses that a licensee *only* need

---

[30] *See*, Def. Brief in Supp. of Mtn. to Dismiss at 6.
[31] *See*, Def. Brief in Supp. of Mtn. to Dismiss at 3.
[32] *See*, Def. Brief in Supp. of Mtn. to Dismiss at 2, 14.

"make" an application for relief. As the GCA does not define the word "make" or "makes," a review of Black's Law Dictionary, 8th ed., yields the following definition, in pertinent part, for the word "make": "1. To cause (something) to exist <to make a record>…4. To legally perform, as by executing, signing, or delivering (a document) <to make a contract>." In this matter, there is no dispute that Mr. Kelerchian timely prepared an application for relief (causing it to exist), and thereafter, executed and delivered it to the ATF. [33] Moreover, Defendants even acknowledge attempting to return the relief application to the undersigned and that thereafter, the undersigned again delivered it back to them. [34]

In anticipation that the Government will again, somehow, someway contend – in direct defiance of the statutory language only requiring a licensee to "make" an application – that their receipt of the application for relief is not sufficient and that it requires "filing," a review of Black's Law Dictionary, 8th ed., yields the following definition, in pertinent part, for the verb "file": "1. To deliver a legal document court clerk or record custodian…3 To record or deposit something in an organized retention system or container for preservation and future reference <please file my notes under the heading 'research'>. 4. *Parliamentary law*. To acknowledge and deposit (a report, communication, or other document) for information and reference only without necessarily taking any substantive action." Once again, as reviewed *supra*, the Government concedes that Mr. Kelerchian, through the undersigned, timely delivered the requisite relief application on the appropriate parties. Thus, regardless of the definition utilized, Mr. Kelerchian has complied with the requirements of Section 925(c) and

---

[33] Compl. at ¶¶ 28-33; Exhibits A-D; Def. Brief in Supp. of Mtn. to Dismiss at 6.
[34] Compl. at ¶¶ 34-39; Exhibit E-G; Def. Brief in Supp. of Mtn. to Dismiss at 7, 15 fn. 4.

therefore, "shall not be barred by such disability from further operations under his license pending final action on an application for relief filed."

In a last ditch effort, even after acknowledging that it currently has within its possession Mr. Kelerchian's relief application, the Government absurdly contends that Mr. Kelerchian's application is not "pending." [35] While once again ignoring that the statutory text only requires Mr. Kelerchian to "make" an application for relief to ATF, a review of Black's Law Dictionary, 8th ed., yields the following definition, in pertinent part, for the adjective "pending": "1. Remaining undecided; awaiting decision." In this matter, there is no dispute that the Government has Mr. Kelerchian's relief application and that it has not taken action to issue a decision on it. [36]

Second, in turning to the appropriations rider, the Congress has not "nullified the relief available under § 925(c)," [37] as it has only provided a *limited* appropriations rider – only in relation to individuals – on ATF's ability, to "investigate" or "act" upon applications for relief, while continuing to fund determinations relative to corporation and other fictitious entities. [38] Extremely disconcertingly, in another slight of hand, while Government contends that Congress "nullified the relief available under § 925(c)," [39] it fails to advise this Court that it has recently issued several relief determinations for fictitious entities, pursuant to Section 925(c), [40] and that under the Gun Control Act, an individual and fictitious entity

---

[35] *See*, Def. Brief in Supp. of Mtn. to Dismiss at 14.

[36] *See*, Brief in Supp. of Mtn. to Dismiss at 7, 15 fn. 4.

[37] *See*, Def. Brief in Supp. of Mtn. to Dismiss at 2, 14.

[38] *See*, Consolidated Appropriations Act, 2019, Division C, P.L. 116-6 (2019-2020), and FY 2020 Omnibus Bill (HR 1158).

[39] *See*, Def. Brief in Supp. of Mtn. to Dismiss at 2, 14.

[40] *See*, **77 Fed. Reg. 58150-01** (granting relief to Northrop Grumman Systems Corporation from a 1986 violation of, among other things, 18 U.S.C. §§ 287, 1001, 1341 (False, fictitious, or fraudulent claims; Statements or entries generally; and Frauds and swindles) and a 1994 violation of 18 U.S.C. §§ 371, 1343 (Conspiracy to commit offense

are the same. [41] This Court should not countenance these types of false, deceptive, and misleading statements by the Government.

Regardless of ATF's ongoing receipt, review, and grants of relief pursuant to Section 925(c), *arguendo*, the appropriation rider – *at most* – only precludes ATF from utilizing the appropriated money to "investigate" or "act" upon applications for relief from federal firearms disabilities and neither precludes an individual from "making" or "filing" an application with ATF nor ATF from receiving an application, as such does not constitute ATF investigating or acting on the relief application. Tellingly, the Government, once again, fails to analyze the terms utilized and seemingly concedes that "making" and "filing" of a relief application is not precluded by the appropriations rider as "[p]ursuant to [the appropriation] mandate, ATF is [only] prohibited from considering – or taking any action at all regarding – application for federal firearms relief under § 925(c)." [42] A review of Black's Law Dictionary, 8th ed., yields the following definition, in pertinent part, for the word "investigate": "1. To inquire into (a matter) systematically…2. To make an official inquiry…" In this matter, there is no dispute that the Defendants have not inquired into or made any official inquiry regarding Mr. Kelerchian's relief application. [43]

---

or to defraud United States; and Fraud by wire, radio, or television)); **79 F.R. 73906-01** (granting relief, *again*, to Northrop Grumman Systems Corporation from a 1987 conviction of 18 U.S.C. § 1001 (Statements or entries generally), and a 1988 conviction of 18 U.S.C. § 371 (Conspiracy to commit offense or to defraud United States)); **84 F.R. 1491-02** (granting relief to Xisico USA, Inc. from a 2011 violation of, *inter alia*, 18 U.S.C. § 541 (Entry of Goods Falsely Claimed)).

[41] *See*, 18 U.S.C. § 921(a)(1) defining the term "person" to mean "any individual, corporation, company, association, firm, partnership, society, or joint stock company."

[42] *See*, Def. Brief in Supp. of Mtn. to Dismiss at 4.

[43] *See*, Def. Brief in Supp. of Mtn. to Dismiss at 15, fn. 4, declaring that ATF has not "tak[en] any action on [Mr. Kelerchian's] application."

In turning to the word "act," a review of Black's Law Dictionary, 8th ed., yields the following definition, in pertinent part: "1. Something done or performed, esp. voluntarily;…2. The process of doing or performing; an occurrence that results from a person's will being exerted on the external world." Once again, there is no dispute that the Defendants have not "done" anything in relation to Mr. Kelerchian's relief application and consistent with the requirements of Section 925(c), the only party that has taken any action is Mr. Kelerchian, who timely made the requisite application to Defendants; thereby, contrary to Defendants' contention, resulting in him not being "barred by such disability from further operations under his license pending final action on an application for relief." [44]

iv.   *The Rule of Lenity Requires Any Ambiguity to Inure to Mr.*
      *Kelerchian's Favor*

If there is any question regarding the language in Section 925(c), the implementing regulation, or the appropriations rider, because the Gun Control Act is a criminal statute with criminal and civil applications, the ambiguity must inure to Mr. Kelerchian's favor.

The "principle of legality," the "first principle" or otherwise known as the *nulla poena sine lege* of criminal law, requires that criminal laws be explicitly and unambiguously specified in advance by statute. *Liparota v. United States*, 471 U.S. 419, 424 (1985). While "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and

---

[44] *See also*, Section 478.144(i)(1) declaring "if the licensee files the application for relief as provided by this section within such 30–day period, the licensee may further continue licensed operations during the pendency of the application."

differ as to its application violates the first essential of due process of law" (*Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926)), the rule of lenity – a compliment to the vagueness doctrine – provides that when a criminal statute is ambiguous, rather than vague, courts are to resolve the ambiguity in the challenger's favor.

The U.S. Supreme Court has long held that "when there are two rational readings of a criminal statute, one harsher than the other, [the Court is] to choose the harsher only when Congress has spoken in clear and definite language." *McNally* v. *United States*, 483 U.S. 350, 359-60 (1987); *see also*, *Yates* v. *United States*, 135 S. Ct. 1074, 1088 (2015) (declaring that any "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity."); *Skilling* v. *United States*, 561 U.S. 358, 410-11 (2010); *Scheidler* v. *NOW*, 537 U.S. 393, 409 (2003); *United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218, 221–22 (1952).

Perhaps more importantly to this matter, the rule of lenity applies equally to civil and criminal cases, where the applicable text is contained within a criminal statute. *Leocal v. Ashcroft*, 543 U.S. 1, 12 (2004)(declaring "Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies."); *FCC v. Am. Broad. Co.*, 347 U.S. 284, 296 (1954)(declaring "There cannot be one construction for the Federal Communications Commission and another for the Department of Justice."). In no better example, the U.S. Supreme Court, in addressing ATF's interpretation of the definition of "making" under the National Firearms Act, 26 U.S.C. § 5801, *et seq.*, held that the rule of lenity applied to the ambiguity in the statute because the it had "criminal applications." *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517-18 (1992).

Accordingly, if there is any question regarding the language in Section 925(c), the implementing regulation, or the appropriations rider, the ambiguity must inure to Mr. Kelerchian's favor.

\*　　　　　\*　　　　　\*　　　　　\*

For all these reasons, this Court has jurisdiction to hear Mr. Kelerchian's Complaint seeking declaratory and injunctive relief that his compliance with Section 925(c) results in him able to continue licensed operations during the pendency of his relief application.

    b.  <u>Plaintiff has Stated a Claim Pursuant to Section 925(c) Upon Which Relief May be Granted</u>

For brevity, as discussed *supra*, there is no dispute that Mr. Kelerchian timely made the requisite application for relief, as required with Section 925(c), and in direct defiance of the statutory and regulatory language, the Government contends that his license will be revoked/voided upon the U.S. Supreme Court denying certiorari. As a result, as also discussed *supra*, pursuant to 28 U.S.C. §§ 2201, 2202, Mr. Kelerchian has a right to have his rights declared and for this Court to additionally grant such "necessary or proper relief based on a declaratory judgment or decree." Moreover, if there is any question as to the protections afforded to Mr. Kelerchian by Section 925(c) and its implementing regulation, consistent with the rule of lenity, those questions must be resolved in his favor.

Accordingly, Mr. Kelerchian has not only stated, but has established, a claim

under Section 925(c) for which relief can be granted.

        c.  <u>Plaintiff has Stated a Claim Pursuant to the APA Upon Which Relief May
be Granted</u>

Noticeably devoid from the Government's brief is any reference to the factual

allegations contained in the Complaint regarding Mr. Kelerchian's APA claims.

As declared in ¶ 40 of the Complaint,

> On November 27, 2019, ATF Philadelphia Division Counsel Kevin White
> inquired as to whether Mr. Kelerchian had filed an appeal with the U.S. Supreme
> Court in relation to his criminal chargings, as ATF is taking the position, pursuant
> to an internal policy (hereinafter "internal policy"), that although Mr. Kelerchian
> timely complied with 18 U.S.C. § 925(c) and 27 C.F.R. 478.144 by making and
> filing the application for relief with ATF, since ATF cannot adjudicate the
> application that it can immediately revoke his license if the U.S. Supreme Court
> denies certiorari – in direct defiance of the enacted statutory and regulatory text.

Paragraph 41 of the Complaint continues on,

> Additionally, pursuant to this "internal policy", it is apparently ATF's position
> that the firearms held pursuant to the license are contraband and therefore subject
> to forfeiture, in addition to arguably contending that Mr. Kelerchian is a
> prohibited person in possession of each and every firearm, for which he could be
> separately charged and convicted.

Paragraph 42 declares that "[t]his 'internal policy' has not been published anywhere,

including, but not limited to, in the Federal Register, and it is unknown whether it exists

in written form" and ¶ 56 goes on to declare, "[b]ased upon the statement of ATF

Philadelphia Division Counsel Kevin White, Defendants have an 'internal policy', which

contravenes 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144(i), and for which, violates the

Administrative Procedures Act." Thereafter, Mr. Kelerchian sets forth, with specificity,

all of his APA claims in ¶¶ 58-66.

It is telling that although blackletter law requires, for purposes of a motion to dismiss, that all factual allegations in a complaint be considered true, [45] the Government's response is barren of any dispute as to ATF's "internal policy," which is directly contrary to the statutory and regulatory provisions in dispute. As the Government admits, [46] "an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." *Util. Air Regulatory Group v. EPA*, 134 S. Ct. 2427, 2446 (2014).

Instead of addressing Mr. Kelerchian's actual APA claims regarding ATF's "internal policy" – which are stated with specificity in ¶¶ 58-66 of the Complaint – once again, the Government attempts through smoke and mirrors to confuse this Court into believing that his APA challenge is one regarding a request to force ATF to investigate his relief application. Rather, a review of the ¶¶ 58-66 of the Complaint yields that Mr. Kelerchian is challenging ATF's "internal policy" on grounds that: (1) it is not available to the public, as required by 5 U.S.C. §§ 552(a)(1), (b)(2); (2) ATF failed to provide at least a 90-day public comment period, as required by 18 U.S.C. § 926(b), relative to this "internal policy;" (3) that ATF failed to consider the cost-impact relative to this "internal policy;" (4) that ATF failed, pursuant to 18 U.S.C. § 926(b), to "afford interested parties opportunity for hearing, before prescribing such rules and regulations;" and (5) ATF's "internal policy," pursuant to 5 U.S.C. § 706(2)(A), is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

The Government's brief only addresses to a limited degree – and without disputing ATF's "internal policy" – the fifth aspect of Mr. Kelerchian's APA claim that the "internal policy" is not contrary to the law (but does not seemingly challenge the

---

[45] *Fowler*, 578 F.3d at 210-211.
[46] *See*, Def. Brief in Supp. of Mtn. to Dismiss at 20.

arbitrary and capricious nature of it). Nowhere within the Government's brief does it even suggest that: (1) the "internal policy" is available to the public; (2) ATF provided a 90-day public comment period; (3) ATF considered the cost-impact of the "internal policy;" or (4) ATF afforded interested parties opportunity for hearing, before prescribing the "internal policy." [47]

Accordingly, even if the Government had not failed to address 90% of Mr. Kelerchian's APA claims and therefore waived any arguments related thereto, Mr. Kelerchian has not only stated, but has established, numerous claims under the APA for which relief can be granted.

**VII.    Conclusion**

For the foregoing reasons, the Defendant's Motion to Dismiss should be denied.

Dated: April 20, 2020

Respectfully Submitted,

Joshua Prince, Esq.
Attorney Id. No. 306521
Joshua@PrinceLaw.com

Prince Law Offices, P.C.
646 Lenape Road
Bechtelsville, PA 19505
888-313-0416
610-845-3903 (fax)

Attorney for Plaintiff

---

[47] Of course, even if the Government had, consistent with *Fowler*, all of the factual averments in the Complaint must be accepted as true.

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Brief was

filed electronically through the Eastern District of Pennsylvania Electronic Filing System.

Notice of this filing will be sent by operation of the court's Electronic Filing System to

all registered users in this case.

Joshua Prince, Esq.
Attorney Id. No. 306251

Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
610-313-0416
610-845-3903 (fax)

Attorney for Plaintiff