IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

VAHAN KELERCHIAN,                          :
                                            :
              Plaintiff,                    :
                                            :
      v.                                    :        CIVIL ACTION NO. 20-253
                                            :
BUREAU OF ALCOHOL, TOBACCO,                 :
FIREARMS AND EXPLOSIVES, *et al.*,          :
                                            :
              Defendants.                   :

---

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Plaintiff insists he is entitled to declaratory and injunctive relief under 18

U.S.C. § 925(c) – a provision of the Gun Control Act that Congress nullified for

individuals like plaintiff decades ago. In opposition to defendants' Motion to

Dismiss, plaintiff offers no legal authority supporting his claims. The contorted

statutory construction he offers in its place is insufficient to overcome undisputed,

controlling authority that district courts are without jurisdiction to hear requests

for relief under § 925(c), its protections are unavailable to plaintiff, and the path to

relief it once provided has been definitively closed by Congress.

**I.    PLAINTIFF FAILS TO MEET HIS BURDEN OF PROVING THE
        COURT HAS JURISDICTION TO HEAR HIS CLAIMS.**

Side-stepping unanimous authority that district courts are without

jurisdiction to hear claims raised under § 925(c) (*see, e.g.*, *United States v. Bean*, 537

U.S. 71 (2002); *Pontarelli v. Dep't of Treasury*, 285 F.3d 216 (3d Cir. 2002)), plaintiff

insists the Declaratory Judgment Act, 28 U.S.C. § 1331, and the Administrative Procedure Act somehow provide this Court with jurisdiction here. They don't.

While the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, increased the range of remedies a district court may award, it did not create a basis for subject matter jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950); *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1218 n.2 (3d Cir. 1989).

Similarly, the APA provides the standards for reviewing agency action when jurisdiction is established, but does not in itself confer subject matter jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 107 (1977). While a court may have jurisdiction under 28 U.S.C. § 1331 to review an agency action under section 702 of the APA, courts have no jurisdiction when "statutes preclude judicial review" or the agency action is committed to agency discretion by law. 5 U.S.C. §§ 701(a), 702; *see also Qureshi v. USCIS*, No. 1:08-CV-2281, 2009 U.S. Dist. LEXIS 58262 at *13 (M.D. Pa. Jul. 9, 2009); *Cunningham v. R.R. Ret. Bd.*, 392 F.3d 567, 578 (3d Cir. 2004) (Railroad Retirement Board decisions are unreviewable under the APA because the Railway Unemployment Insurance Act created an exclusive system of review).

As enacted, the Gun Control Act limited judicial review of ATF's action (and inaction) with respect to § 925(c) to instances where ATF denied an application for relief. *Bean*, 537 U.S. at 78 (rejecting contention that claim under § 925(c) invoked district court jurisdiction under the APA). Because the appropriations ban suspended ATF's ability to issue a denial under § 925(c), "it effectively suspend[ed] that statute's jurisdictional grant." *Pontarelli*, 285 F.3d at 218. There has been no

such denial, and unless and until Congress lifts the appropriations ban, there will be none. The APA therefore provides no basis for jurisdiction over plaintiff's claims.

## II.    PLAINTIFF STATES NO CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER THE APA.

Plaintiff's claim of improper rulemaking under the APA (Compl. ¶¶ 54-66) is based on an alleged "internal policy" expressed nowhere but in an alleged statement during a telephone call with ATF counsel. Compl. at ¶ 42. To be clear, ATF's only "internal policy" regarding relief applications from individuals such as plaintiff is to follow the law. Even accepting plaintiff's allegations as true, which – if the Court considers such allegations well-pled – the Court must on a Rule 12(b)(6) motion, plaintiff states no claim relating to ATF's alleged rulemaking under the APA.

### A.    ATF Has Undertaken No Rulemaking Subject to APA Review.

A reviewing court may invalidate agency rules that do not comport with the APA's rulemaking procedures, 5 U.S.C. § 706(2)(D), including publishing notice of a proposed rule in the Federal Register and providing interested persons with an opportunity to comment on the proposed rule. 5 U.S.C. §§ 553(b); 553(c). Mere statements of internal agency policy, however, such as those plaintiff alleges here, are not subject to APA's public notice and comment requirements. *See* 5 U.S.C. § 553(b)(A); *Reno v. Koray*, 515 U.S 50, 61 (1995) (BOP Program Statement was "an internal agency guideline" rather than a published regulation subject to APA's public notice and comment requirements); *Appalachian Low-Level Radioactive Waste Comm'n v. O'Leary*, 93 F.3d 103, 112-13 (3d Cir. 1996) (agency action that interprets regulations is exempt from APA rulemaking).

Similarly, alleged statements about an alleged "internal policy" – without more – is not a "final agency action" necessary to state a claim under the APA. *See, e,g., New Jersey v. United States HHS*, Civ. No. 07-4698 (JAP), 2008 U.S. Dist. LEXIS 93310, at *32 (D.N.J. Nov. 17, 2008) (agency letter stating policy guidelines was not final agency action; dismissing complaint). *Hormel Foods Corp. v. United States Dep't of Agric.*, 808 F. Supp. 2d 234, 246-47 (D.D.C. 2011) (where plaintiff failed to allege facts that demonstrate that agency letter is a final agency action, plaintiff failed state a claim for relief under the APA).

Plaintiff concedes there is no evidence of the alleged "internal policy" other than an alleged statement during a phone call. Compl. ¶ 42. He also concedes ATF has taken no action regarding his license or firearms. Plaintiff fails to allege any rule subject to the APA's rulemaking process or a "final" agency action to challenge. The Supreme Court has cautioned courts to avoid

> entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967). Plaintiff attempts to turn a phone call into a federal case. The law prohibits such a result.

### B.   Plaintiff Misstates the Consequences of His Felony Convictions Should They Become Final.

Plaintiff alleges that under ATF's purported "internal policy," ATF "can immediately revoke his license if the U.S. Supreme Court denies certiorari – in direct defiance of the enacted statutory and regulatory text. Compl. ¶ 40. It can't.

For reasons ATF explained in its motion, the GCA prohibits ATF from revoking plaintiff's license based on the criminal acts for which he was prosecuted and convicted. *See* Defs.' Mot. at 19, n. 6 and 18 U.S.C. § 923(f)(4). Importantly, ATF does not have to take such action: if plaintiff's convictions are reversed, his license remains in effect; if his petition for certiorari is denied, his license becomes inoperative by law under § 925(b).

Plaintiff further alleges that, pursuant to this alleged "internal policy,"

it is *apparently* ATF's position that the firearms held pursuant to the license are contraband and therefore subject to forfeiture, in addition to arguably contending that Mr. Kelerchian is a prohibited person in possession of each and every firearm, for which he could be separately charged and convicted.

Compl. ¶ 41 (emphasis added). Setting aside the vagueness of plaintiff's allegations, plaintiff's alleged dread of possible seizure of his firearms, or those items becoming "contraband," is unfounded.

The GCA prevents convicted felons from receiving or possessing firearms, 18 U.S.C. § 922(g)(1), not from having an ownership interest in those firearms or transferring that ownership interest. *See Henderson v. United States*, 135 S. Ct. 1780, 1783 (2015). With the exception of machineguns manufactured after 1986 – which are subject to certain additional restrictions and must be disposed of by plaintiff within 30 days of his felony convictions becoming final – plaintiff will remain able to own, and arrange for the lawful disposition of, his firearms even after he is prohibited from possessing firearms and no longer holds a license.[1]

---

[1]     The GCA restricts ownership of machineguns manufactured after 1986 (which, upon information and belief, constitute a fraction of plaintiff's firearms

Plaintiff's firearms would be subject to seizure only if they were used in connection with a violation of the GCA or another statute providing for forfeiture. Similarly, plaintiff would be subject to criminal prosecution in relation to his firearms only if, after his license expires, he received, possessed, shipped, or transported the firearms in violation of 18 U.S.C. § 922(g)(1). Unless plaintiff is planning further criminal conduct, his fear of future prosecution relating to – or seizure of – his firearms is unsubstantiated.

For this matter to be ripe for review, the Court must be satisfied that the issues are ready for judicial decision and that waiting further would work some hardship on the parties. *See Abbott*, 387 U.S at 149. ATF has not instituted any proceedings as to plaintiff's license or his firearms and the GCA prohibits the very conduct on which he bases his speculative allegations. His allegations regarding the alleged "internal policy" are therefore insufficient to state a claim upon which relief may be granted. *See, e.g., Rotschild v. Napolitano*, Civ. No. 10-5404, 2011 U.S. Dist. LEXIS 94084, *116-17 (D.N.J. August 22, 2011) (agency acknowledgment that allegedly threatened conduct would be unlawful nullifies allegations of possible harm; dismissing complaint seeking declaratory judgment).

---

collection) to governmental entities and certain qualified federal firearms licensees, 18 U.S.C. § 922(o), and requires such qualified licensees to transfer such machineguns in compliance with the applicable regulations prior to going out of business or their license otherwise terminating. 27 C.F.R. § 479.105(f).

### III.    PLAINTIFF HAS NO CAUSE OF ACTION UNDER § 925(c).

In opposition to defendants' motion, plaintiff doubles down on his theory that "to trigger the protections afforded by Section 925(c), [he] only had to 'make[] application for relief from disabilities incurred under this chapter' in order to 'not be barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section.'" Plf.'s Br. at 11.

In so arguing, plaintiff asks the Court to base its decision on dictionary definitions rather than plainly stated congressional intent and uncontroverted case law, and to turn the rules of statutory construction on their head.

The appropriations ban does not expressly prohibit plaintiff from applying for the relief no longer available under § 925(c). Nonetheless, to hold that plaintiff may skirt the impact of § 925(b) and § 922(g)(1), and maintain his firearms license indefinitely simply by putting a set of papers in the mail, would fly directly in the face of Congress' plain intent to ensure individual felons never get their hands on firearms again. "The legislative histories of these appropriations provisions make it clear that Congress believed that 'those who commit felonies should not be allowed to have their right to own a firearm restored.'" *Walker v. United States*, 800 F.3d 720, 729-30 (6th Cir. 2015) (rejecting broad interpretation of felon's rights that contravened the intent of the appropriations ban; affirming judgment on the pleadings). Even though the appropriations ban did not explicitly address the portion of the statute at issue in *Walker*,

> the fact that Congress broadly intended to prevent felons from possessing
> firearms and, guided by that intent, blocked implementation of § 925(c)

> without mentioning § 921(a)(20) suggests that Congress did not view §
> 921(a)(20) as a remaining avenue for non-rehabilitated felons to regain their
> right to possess firearms. If § 921(a)(20) restored firearms rights to felons
> who had lost and regained civil rights without any consideration of their
> crimes by the convicting jurisdiction, then Congress's failure to address this
> provision would be difficult to explain in light of Congress's stated general
> intent to prevent felons from possessing firearms.

*Id*. "It is well established that Congress may repeal, amend or suspend a statute by means of an appropriations bill, so long as its intention to do so is clear." *McHugh v. Rubin*, 220 F.3d 53, 57-58 (2d Cir. 2000). "Congress is not required to make an express statement in order to modify an existing statute via subsequent appropriations legislation; …repeal is implied when the earlier and later statutes are 'irreconcilable.'" *Id*. (internal citations, punctuation omitted).

Plaintiff asks the Court to rely on out-of-context dictionary definitions of the words found in § 925(c) as enacted, and ignore the literal abrogation of the statute resulting from the appropriations ban that forbids ATF from acting on his relief application. If plaintiff's interpretation were to hold, every licensee who is convicted of a felony – including those who have committed violent crimes – could retain their licenses forever, and potentially continue to commit more felonies with those firearms, simply by filing an application for relief of disabilities which ATF cannot lawfully act on. Such a result would directly defy Congress' intent, in enacting the GCA, to deny felons access to and control of firearms. *See, e.g., Huddleston v. United States*, 415 U.S. 814, 824-25 (1974) (purpose of GCA licensing system is to keep firearms out of the hands of criminals; firearms dealers must comply with GCA or face criminal penalties). It also would directly defy Congress's plainly stated intent

in further tightening those restrictions by nullifying the exemption once allowed

under § 925(c). Plaintiff's construction of what "protections" he insists "remain" of

§ 925(c) thwarts the intent of both the GCA and the repeal of § 925(c) through the

appropriations ban, and must be rejected. *See, e.g., Rowland v. California Men's

Colony*, 506 U.S.194, 200-01 (1993); *Commissioner v. Brown*, 380 U.S. 563, 571

(1965) (statutes should be interpreted in a manner that avoids absurd results).

Plaintiff attempts to seek refuge in the "rule of lenity," which applies only

when, after consulting traditional canons of statutory construction, the Court still

finds the statute to be ambiguous. *See, e.g., United States v. Shabani*, 513 U.S. 10,

17 (1994). Section § 925(c), as applied to non-corporate felons, was effectively

repealed. The Supreme Court and the Third Circuit – in unanimous opinions – have

so held, and courts across the country are in agreement. "Congressional intent to

prohibit any Federal relief [under § 925(c)] – either through ATF or the courts – is

clear[]." *Pontarelli*, 285 F.3d at 230. *See also, e.g., Logan v. United States*, 552 U.S.

23, 28 n.1 (2007) (confirming § 925(c) "has been rendered inoperative"); *Mullis v.

United States*, 230 F.3d 215, 218, (6th Cir. 2000)") ("[T]hrough its appropriations

measures, Congress intended to suspend all relief available through the ATF," and

"suspend[ed] the operation of § 925(c) in its entirety"); *Beers v. United States*, 927

F.3d 150, 156 n. 38 (3d Cir. 2019) ("Congress effectively wrote § 925(c) out of the

statute books"); *Franklin v. Lynch*, No. 3:16-cv-36, 2016 U.S. Dist. LEXIS 160759, at

*4-5 n.2 (W.D. Pa. Nov. 18, 2016) ("§ 925(c) does not provide an actual avenue of

relief"). There is no ambiguity: § 925(c) provides plaintiff no cause of action or relief.

While plaintiff correctly notes that the appropriations ban does not apply to applications for relief filed by corporations, Plf.'s Br. at 13, he offers no explanation as to how a measure applicable only to corporations should somehow be extended to apply to him. It shouldn't. While Congress has exempted corporate applications for relief from the scope of the appropriations ban, it has clearly stated its intent to preclude individual felons from retaining their firearms privileges, and consistently renewed the appropriations ban confirming that prohibition every year since 1992.

Plaintiff cites no law or other point of authority even suggesting that as an individual, he has any right under § 925(c) or is entitled to what he describes as its "protections." All authority is categorically to the contrary.

Just as Congress did not intend for ATF or the courts to restore felons' firearms privileges, it surely did not intend for felons to be able to circumvent these prohibitions, maintain their licenses, and possess firearms beyond the clear operation of §§ 925(b) and (g)(1), simply by dropping a legally meaningless § 925(c) application in the mail.

## IV.    CONCLUSION

Plaintiff has no legal basis for his claims, and under Third Circuit and Supreme Court precedent, this Court is without jurisdiction to hear them. Defendants therefore respectfully request that the Court dismiss the complaint in its entirety and with prejudice.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney

/s/ *Susan R. Becker for GBD*
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

/s/ *Lauren DeBruicker*
LAUREN DeBRUICKER
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Tel:  215.861.8492
Lauren.DeBruicker@usdoj.gov

Of Counsel:

Jeffrey A. Cohen
ATF Associate Chief Counsel
John Kevin White
ATF Division Counsel
601 Walnut Street, Suite 1000E
Philadelphia, PA 19106

Dated:  April 27, 2020

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of April, 2020, I served a true and correct copy of the foregoing Reply in Support of Defendants' Motion to Dismiss the Complaint via ECF on the following counsel of record:

Joshua Prince, Esq.
Adam Kraut, Esq.
Prince Law Offices, P.C.
646 Lenape Road
Bechtelsville, PA 1950

*Attorneys for Plaintiff*

 /s/ Lauren DeBruicker
LAUREN DeBRUICKER
Assistant United States Attorney