Joshua Prince, Esq.
Attorney Id. No. 306521
Joshua@PrinceLaw.com

Dillon Harris, Esq.
Attorney Id. No. 329266
DHarris@PrinceLaw.com

Prince Law Offices, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(888) 313-0416 (t)
(610) 845-3903 (f)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VAHAN KELERCHIAN** | : | |
| | : | |
| **Plaintiff** | : | Civil Action No. 2:20-cv-00253-WB |
| | : | |
| **v.** | : | |
| | : | |
| **BUREAU OF ALCOHOL, TOBACCO,** | : | |
| **FIREARMS AND EXPLOSIVES,** an agency | : | Complaint – Violations of the |
| of the Department of Justice | : | First and Fifth Amendments, |
| | : | and the APA |
| **MARVIN RICHARDSON,** Acting Director | : | |
| Bureau of Alcohol, Tobacco, Firearms, and | : | |
| Explosives[1] | : | |
| | : | |
| **MERRICK GARLAND,** Attorney General of | : | |
| the United States[2] | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Defendants** | : | |

---

[1] When this action was commenced, the Acting Director was Regina Lombardo. Thereafter, on June 4, 2021, as a result of the Vacancies Act, Marvin Richardson became the ATF Acting Director. *See,* https://www.atf.gov/about-atf/executive-staff. As such, he is substituted as the current acting director.

[2] When this action was commenced, the Attorney General was William Barr. Thereafter, on March 11, 2021, Attorney General Merrick Garland was sworn in to Office. As such, he is substituted as the current Attorney General. *See,* https://www.justice.gov/ag/staff-profile/meet-attorney-general

## FIRST AMENDED COMPLAINT

COMES NOW, Plaintiff Vahan Kelerchian, by and through his attorneys, Joshua Prince, Esq., and Dillon Harris of Prince Law Offices, P.C., and complain of Defendants as follows:

## INTRODUCTION

1.    This is an action challenging the Bureau of Alcohol, Tobacco, Firearms and Explosives' ("ATF") implementation and enforcement of an unwritten policy that is contrary to the statutory language found in 18 U.S.C. § 925(c) and its own promulgated regulations found in 27 C.F.R. § 478.144(i).

2.    Specifically, ATF has taken the position, and acted consistent with that position, that where a licensed dealer, incurs disabilities under the Gun Control Act ("GCA"), 18 U.S.C. § 921, *et seq*., and timely makes and files an application for relief from those disabilities, ATF may ignore it and invalidate, void, and/or revoke the license, even though the Congress explicitly declared that a "licensed dealer … conducting operations under this chapter, who makes application for relief from the disabilities incurred under this chapter, shall not be barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section." 18 U.S.C. § 925(c).

3.    Furthermore, ATF's own promulgated regulation declares that where the licensed dealer timely files an application for relief, "the licensee may further continue licensed operations during the pendency of the application" and that "[i]n the event the term of a license of a person expires … during the pendency of the application for relief, a timely application for renewal of the license must be filed in order to continue licensed operations." 27 C.F.R. § 478.144(i).

2

4.     In absolute and direct defiance of the Congress' mandate and ATF's own regulation, and regardless of the fact that Mr. Kelerchian has made and filed an application for relief of disabilities, based on an "internal policy," ATF voided, invalidated and/or otherwise revoked his license, denied him any pre- or post-deprivation hearing, and further contended that fourteen (14) certain National Firearms Act ("NFA") firearms held pursuant to the license were contraband and subject to forfeiture if he did not immediately relinquish them, all in the absence of a determination on his application for relief, simply because the U.S. Supreme Court denied his petition for certiorari.

5.     Accordingly, the declaratory, preliminary and permanent injunctive, and other relief requested herein is necessary to prevent further enforcement of ATF's defiant policy that seeks to eviscerate the rights established by the Congress for individuals like Plaintiff and to restore Plaintiff's license.

## **PARTIES**

6.     Plaintiff Vahan Kelerchian ("Kelerchian") is a natural person, whose Federal Firearms License ("FFL"), no. 8-23-017-01-5A-02276, was based out of a premise in Warminster, Pennsylvania, and who lives in Richboro, Pennsylvania.

7.     Defendant ATF is the federal government agency responsible for enforcing the statutory laws and promulgating and enforcing regulations under the GCA and the National Firearms Act, 26 U.S.C. 5801, *et seq*.

8.     Defendant Marvin Richardson ("ATF Director" or "Richardson") is the Acting Director of the Bureau of ATF, and he is sued in that official capacity. ATF is responsible for, *inter alia*, regulating and licensing the sale, possession, transfer, and transportation of firearms and ammunition in interstate commerce, and conducting federal firearm relief

determinations, pursuant to 18 U.S.C. § 925(c). As Acting Director of ATF, Defendant Richardson is responsible for the creation, implementation, execution, and administration of the laws, regulations, customs, practices, and policies of the ATF and the United States as they relate to the GCA and NFA, including implementation and enforcement of the policy complained of herein.

9.    Defendant Merrick Garland ("Attorney General" or "Garland") is the Attorney General of the United States, and he is sued in that official capacity. As Attorney General, Defendant Garland is responsible for executing and administering the laws, regulations, customs, practices, and policies of the United States including the implementation and enforcement of the policy complained of herein. As Attorney General, Defendant Garland is ultimately responsible for supervising the functions and actions of the United States Department of Justice, including the ATF, which is an arm of the Department of Justice.

10.   Defendant United States of America ("United States") is a proper party in this action pursuant to 5 U.S.C. §§ 702, 703.

## JURISDICTION AND VENUE

11.   This case concerns certain subject matter under the original and exclusive jurisdiction of the federal courts of the United States of America.

12.   This action seeks relief pursuant to 5 U.S.C. §§ 552, 702, 703, 704; and 28 U.S.C. §§ 1331, 1343, 1346, 2201, 2202, and 2412. Therefore, jurisdiction is founded on 5 U.S.C. §§ 702 and 704 and 28 U.S.C. §§ 1331 and 2201-2202, as this action arises under the Administrative Procedure Act and the Declaratory Judgment Act, as well as the Constitution and laws of the United States.

13. This Court has authority to award costs and attorney fees pursuant to 18 U.S.C. § 924, 5 U.S.C. § 552(a)(4)(E)(i), and 28 U.S.C. §§ 1920, 2412.

14. Venue is proper in this district pursuant to 5 U.S.C. § 703 and 28 U.S.C. §§ 1391(b)(2), (e)(1)(B), as a substantial part of the events and omissions giving rise to the claims occurred in the Eastern District of Pennsylvania.

## CONSTITUTIONAL PROVISIONS

15. The First Amendment to the United States Constitution provides, in the pertinent part: "The right of the people…to petition the Government for redress of grievances."

16. The Fifth Amendment to the United States Constitution provides, in the pertinent part: "No person shall be … deprived of life, liberty or property, without due process of the law."

## STATUTORY AND REGULATORY FRAMEWORK

17. The Gun Control Act ("GCA"), 18 U.S.C. § 921, *et seq*., and its implementing regulations, 27 C.F.R. § 478.1, *et seq*., are part of the Crimes Code and have both criminal and civil penalties associated with violations thereof.

18. 18 U.S.C. § 925(c) provides, in pertinent part:

> A … *licensed dealer* … conducting operations under this chapter, who *makes* application for relief from the disabilities incurred under this chapter, *shall not be barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section*. (emphasis added).

19. 27 C.F.R. § 478.144(i)(1) provides, in pertinent part:

> A licensee who incurs disabilities under the Act (see § 478.32(a)) during the term of a current license or while the licensee has pending a license renewal application, and *who files an application for removal of such disabilities*, shall not be barred from licensed operations for 30 days following the date on which the applicant was first subject to such disabilities (or 30 days after the date upon which the conviction for a crime punishable by imprisonment for a term

exceeding 1 year becomes final), and *if the licensee files the application for relief as provided by this section within such 30–day period, the licensee may further continue licensed operations during the pendency of the application.* (emphasis added).

20.     27 C.F.R. § 478.144(i)(2) goes on to provide, in pertinent part

In the event the term of a license of a person expires … during the pendency of the application for relief, a timely application for renewal of the license must be *filed in order to continue licensed operations.*

21.     The Declaratory Judgment Act, 28 U.S.C. § 2201, provides, in the pertinent part:

In a case of actual controversy within its jurisdiction…as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

22.     28 U.S.C. § 2202 provides:

Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

## STATEMENT OF FACTS

*Facts Relative to Mr. Kelerchian's Licensing*

23.     In or about January of 2006, Mr. Kelerchian obtained an FFL, as a dealer, with a last known number of 8-23-017-01-5A-02276.

24.     Mr. Kelerchian's FFL no. 8-23-017-01-5A-02276 had been timely renewed, every three years, as required by 18 U.S.C. § 923 and 27 C.F.R.§ § 478.45, 478.49.

25.     Although Mr. Kelerchian timely submitted a renewal of his dealer license in December of 2014 and again on or about December 21, 2017, in direct defiance of 18 U.S.C. § 923(d)(2) and 27 C.F.R. §§ 478.47(c), (d) – which require a determination approving or denying the license within 60 days – Defendants failed to issue determinations on the

renewal applications and instead issued numerous "letters of authorization", referred to

by Defendants as "LOAs", purporting to extend his license for limited periods of time.

26.     Defendants' most recent LOA purported to authorize Mr. Kelerchian to continue business

until July 7, 2020, even though, his most recent renewal application of on or about

December 21, 2017, if approved, would have authorized him to continue business

through on or about January 1, 2021.

27.     Neither the GCA nor its implementing regulations mention "letters of authorization" or

"LOAs."

28.     As of July 1, 2020, ATF took the position that Mr. Kelerchian's license was "void" due

to the Supreme Court's denial of his petition for certiorari in his criminal matter and

provided that all fourteen (14) post-sample machineguns were transferred by July 1,

2020, "there would be no violation of the law;" however, if Mr. Kelerchian failed to

transfer these firearms by July 1, 2020, it was Defendants' position that he could be

prosecuted for unlawful possession of these firearms, pursuant to 18 U.S.C. § 922(o) and

27 C.F.R. § 478.36, which, pursuant to 18 U.S.C. § 924(a)(2), could result in penalties of

incarceration of up to ten years in jail and fines, per violation.

29.     On July 1, 2020, the Defendants updated the FFL eZCheck system -

https://fflezcheck.atf.gov/fflezcheck/ - to reflect that Mr. Kelerchian's FFL was no longer

valid. A screenshot of ATF's FFL eZCheck system reflecting Mr. Kelerchian's FFL is no

longer valid is attached hereto and incorporated herein as Exhibit A.

30.     In further support that ATF invalidated, voided, and revoked Mr. Kelerchian's license,

the undersigned received an email from counsel for the Defendants on August 27, 2020,

which stated that "ATF considers Mr. Kelerchian's discontinuance of his firearms

business to be absolute at this time," and directing the business's records – required to be kept under the GCA and its regulations – to be submitted to the ATF's Out of Business Records Center and that his failure to comply is a "crime punishable as a felony, imprisonment for not more than 5 years and/or fine of not more than $250,000." A copy of the August 27, 2020 email and the ATF's Out of Business Records Request is attached hereto and incorporated herein as Exhibit B.

31.    On July 14, 2021, after the Third Circuit Court of Appeals issued its decision in this matter, the undersigned, on behalf of Mr. Kelerchian, reached out to counsel for the Defendants "formally requesting (1) re-issuance/activation of his FFL that ATF, over his objection, has listed as invalid and discontinued; (2) return of his acquisition and disposition records that ATF forced him to turn in to the out-of-business center under threat of charging if he failed to do so; and (3) approval of transfers back to his FFL of all previously transferred firearms that ATF forced him to transfer under threat of charging if he failed to do so."

32.    On August 2, 2021, counsel for Defendants directed the undersigned to communicate directly with ATF regarding this request.

33.    After doing so, the undersigned was informed by ATF Philadelphia Division Counsel Kevin White that the "three requests were denied." A copy of ATF Philadelphia Division Counsel Kevin White's response is attached hereto and incorporated herein as Exhibit C.

*Facts Relative to Mr. Kelerchian's Chargings*

34.    On May 17, 2013, Mr. Kelerchian was charged in a nine (9) count Indictment, primarily related to the putative transfer of machineguns and laser-aiming devices, in the U.S. District Court, Northern District of Indiana, docket no. 2:13-cr-00066.

35.   On or about October 15, 2015, the jury found Mr. Kelerchian guilty of some, but not all, charges.

36.   After several motions, on February 5, 2018, Mr. Kelerchian was sentenced.

37.   Mr. Kelerchian appealed his conviction and the filed a petition for certiorari before the U.S. Supreme Court.

38.   On June 1, 2020, the United States Supreme Court denied Mr. Kelerchian's petition for certiorari.

*Facts Relative to Mr Kelerchian's Application for Relief*

39.   As a result of the Mr. Kelerchian's sentencing on February 5, 2018, within the 30 days as mandated by 27 C.F.R. § 478.144(i)(1), on March 2, 2018, the undersigned submitted one (1) day Priority Mail letters to then-ATF Acting Director Thomas Brandon, Philadelphia Director of Industry Operations Juan Orellana, and ATF's NCETR division with three copies of Mr. Kelerchian's Application for Restoration of Firearms Privileges, pursuant to 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144, and requisite documentation. A copy of the letters to each entity and enclosed documents is attached hereto and incorporated herein as Exhibit D.

40.   As set-forth in the letter, 27 C.F.R. § 478.11 requires three copies of the application to be filed with the Director, but the application instructions only require one copy to be filed with NCETR; thus, as a matter of precaution, the undersigned submitted three copies of the executed Applications with the applicable documents (as contained in Exhibit D) to each: then-ATF Acting Director Thomas Brandon, Philadelphia Director of Industry Operations Juan Orellana, and ATF's NCETR division. *Id*.

41.  As further set-forth in the letter, the undersigned declared that "[p]ursuant to Sections

925(c) and 478.144(i), as Mr. Kelerchian is an FFL holder, who has continually and

timely renewed his FFL, he shall not be 'barred by such disability from further operations

under his license pending final action on an application for relief filed pursuant to this

section.'" *Id*.

42.  The mailing to then-ATF Acting Director Brandon was received on March 7, 2018. A

copy of the mailing certificates is attached hereto and incorporated herein as Exhibit E.

43.  The mailing to Philadelphia Director of Industry Operations Orellana was received on

March 6, 2018. A copy of the mailing certificates is attached hereto and incorporated

herein as Exhibit F.

44.  The mailing to ATF NCETR division was received on March 6, 2018. A copy of the

mailing certificates is attached hereto and incorporated herein as Exhibit G.

45.  On April 3, 2018, the undersigned received a response dated March 27, 2018, from John

R. Day, Chief, Explosives Enforcement and Training Division, acknowledging receipt of

Mr. Kelerchian's Application for Restoration of Firearms Privileges, but stating that since

ATF cannot, currently, act on applications for relief, the application was being returned to

the undersigned. A copy of ATF's March 27, 2018 letter is attached hereto and

incorporated herein as Exhibit H.

46.  On April 9, 2018, the undersigned responded by explaining that as the statutory and

regulatory law only requires that an FFL "make" and "file" an application for relief, ATF

is required to retain the application and process it, when, if ever, the Congress

appropriates money for ATF to conduct federal firearms relief determinations, and

resubmitted Mr. Kelerchian's Application for Restoration of Firearms Privileges with the

applicable documents (as contained in Exhibit D). A copy of the letter is attached hereto and incorporated herein as Exhibit I.

47. The undersigned's April 9, 2018 letter with Mr. Kelerchian's Application for Restoration of Firearms Privileges and the applicable documents (as contained in Exhibit D) was received by ATF Chief John Day on April 12, 2018. A copy of the certified return receipt reflecting receipt of the April 9, 2019 letter and enclosures is attached hereto and incorporated herein as Exhibit J.

48. Neither Chief John Day nor anyone else acting as an employee or agent of the Defendants has sent any further correspondences regarding Mr. Kelerchian's Application for Restoration of Firearms Privileges.

49. Neither then Acting Director Brandon, Director Orellana, nor NCETR returned Mr. Kelerchian's Application for Restoration of Firearms Privileges.

50. Mr. Kelerchian's timely and properly filed Application for Restoration of Firearms Privileges is currently in the possession of Defendants.

51. Defendants do not dispute that Mr. Kelerchian timely and properly filed his Application for Restoration of Firearms Privileges and that it is currently in their possession.

52. Nor could the Defendants, as the Third Circuit Court of Appeals found that "[o]n March 2, 2018—within 30 days of his sentencing—Kelerchian mailed an 'Application for Restoration of Firearms Privileges' to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)" and "ATF did not return the application again or send any other correspondence regarding the application." _Kelerchian v. ATF_, 2021 WL 2910934, at *1 (3d Cir. July 12, 2021)

53.  Furthermore, the Third Circuit declared "ATF's practice of mailing back individuals'

applications as unprocessed arguably requires ATF to recognize that an individual has

filed an application for relief." *Id*. at *3, Fn. 5.

*Facts Relative to Defendants' Refusal to Acknowledge*
*Mr. Kelerchian's Application for Restoration of Firearms Privileges*

54.  On November 27, 2019, ATF Philadelphia Division Counsel Kevin White inquired as to

whether Mr. Kelerchian had filed an appeal with the U.S. Supreme Court in relation to

his criminal chargings, as ATF is taking the position, pursuant to an internal policy

(hereinafter "internal policy"), that although Mr. Kelerchian timely complied with 18

U.S.C. § 925(c) and 27 C.F.R. 478.144 by making and filing the application for relief

with ATF, since ATF cannot adjudicate the application that it could immediately revoke

his license if the U.S. Supreme Court denied certiorari – in direct defiance of the enacted

statutory and regulatory text.

55.  This "internal policy", although a final agency action, has not been published anywhere,

including, but not limited to, in the Federal Register, and it is unknown whether it exists

in written form.

56.  This "internal policy" is the basis for Defendants' invalidation, voiding, and/or revoking

of Mr. Kelerchian's FFL.

57.  The Defendants' invalidation, voiding, and/or revoking of Mr. Kelerchian's FFL is a final

agency action, as additionally supported by ATF's threats of criminal prosecution against

Mr. Kelerchian if he did not (1) transfer his post-sample machineguns by July 1, 2020

and (2) turn in all of his business records to the ATF Out of Business Center by

September 18, 2020, because if Mr. Kelerchian's FFL remained valid and intact, his

continued possession of his firearms and business records would continue to be lawful and there would be no basis under the law for criminal prosecution related thereto.

## COUNT I: DECLARATORY RELIEF
## PURSUANT TO 28 U.S.C. §§ 2201-2202

58.     The foregoing paragraphs are hereby incorporated herein as if set forth in full.

59.     28 U.S.C. § 2201 provides "In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

60.     28 U.S.C. § 2202 provides "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

61.     Pursuant to the Declaratory Judgement Act, Mr. Kelerchian seeks a declaration of his rights from this Court, including, but not limited to a declaration that he complied with 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144 and thus may continue to operate under the previously issued license, a declaration that Defendants' actions constitute a final agency action, and a declaration that Defendants have violated his First and Fifth Amendment rights.

62.     Additionally, pursuant to 28 U.S.C. § 2202, Mr. Kelerchian seeks an order from this Court returning his previously issued license to him, an injunction preventing Defendants from invalidating, voiding, and/or revoking his license based on their purported inability to process his Application for Restoration of Firearm Privileges, and attorneys fees and costs.

63. There is no dispute that Mr. Kelerchian timely filed his Application for Restoration of Firearms Privileges, pursuant to 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144, and requisite documentation. *See*, *Kelerchian v. ATF*, 2021 WL 2910934, at *1.

64. The Third Circuit recognized that "ATF's practice of mailing back individuals' applications as unprocessed arguably requires ATF to recognize that an individual has filed an application for relief." *Id*. at *3, Fn. 5.

65. As a result, pursuant to Section 925(c), Mr. Kelerchian "shall not be barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section."

66. Furthermore, pursuant to ATF's own promulgated regulation – 27 C.F.R. § 478.144(i) – Mr. Kelerchian "shall not be barred from licensed operations … [and] may further continue licensed operations during the pendency of the application."

67. Although Mr. Kelerchian has timely made and filed his application for relief with ATF (*Id*. at *1), in direct defiance of the Congressional mandate in Section 925(c), and ATF's own promulgated regulation in 478.144(i), Defendants contend they can, and have since, invalidated, voided, and/or revoked his license despite Mr. Kelerchian's statutory and regulatory compliance.

68. Specifically, Defendants contend pursuant to ATF's "internal policy" that even if a FFL licensee timely complies with 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144 by making and filing the application for relief with ATF, since ATF cannot adjudicate the application, ATF can immediately invalidate, void, and/or revoke the license upon a final determination on the criminal charges and thereafter threaten criminal prosecution if the

licensee does not immediately (1) transfer certain firearms held pursuant to the license and (2) turn in the licensee's business record to the ATF Out of Business Center..

69.   Moreover, while Congress has passed an appropriations bill that bans ATF's ability to investigate or act upon applications for relief from federal firearms disabilities, the Third Circuit declared "ATF provides no support for a reading of 'investigate or act upon' that includes the mere recognition of the fact that an application for relief has been filed or the legal effect of such a filing." *Id*. at *3

70.   Wherefore Mr. Kelerchian is entitled to, *inter alia*, preliminary and permanent injunctive, and declaratory relief, in addition to attorney fees and costs.

## COUNT II: ATF'S INVALIDATION, VOIDING, AND/OR REVOCATION OF MR. KELERCHIAN'S LICENSE CONSTITUTES A FINAL AGENCY ACTION PURSUANT TO 5 U.S.C. § 704

71.   The foregoing paragraphs are hereby incorporated herein as if set forth in full.

72.   An agency action is considered final under 5 U.S.C. § 704 when the action "marks the 'consummation' of the agency's decision making process" and the action is "one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177 (1997) (internal citations omitted).

73.   Congress has clearly declared that if a "licensed dealer … makes application for relief from the disabilities…[he] shall not be barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section."

74.   Despite the timely filing of his Application for Restoration of Firearms Privileges, pursuant to 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144, along with the requisite documentation (Exhibit D), ATF not only has failed to acknowledge an application was

filed, but instead invalidated, voided, and/or revoked Mr. Kelerchian's license, in direct contravention to the statutory text.

75. ATF's invalidation, voiding, and revocation of Mr. Kelerchian's license can only be interpreted as the "consummation" of the agency's decision-making process and as a result of that invalidation, voiding, and/or revocation, have implicated Mr. Kelerchian's rights and created legal consequences that flow from his inability to maintain a license.

76. The Defendants' invalidation, voiding, and/or revoking of Mr. Kelerchian's FFL is a final agency action, as additionally supported by ATF's threats of criminal prosecution against Mr. Kelerchian if he did not (1) transfer his post-sample machineguns by July 1, 2020 and (2) turn in all of his business records to the ATF Out of Business Center by September 18, 2020, because if Mr. Kelerchian's FFL remained valid and intact, his continued possession of his firearms and business records would continue to be lawful and there would be no basis under the law for criminal prosecution related thereto

77. Accordingly, ATF's revocation of Mr. Kelerchian's FFL must be deemed a "final agency action," and as such, Mr. Kelerchian is entitled to this Court's review of the agency's action as well as preliminary and permanent injunctive, declaratory relief, and attorney fees and costs.

## COUNT III: DEFENDANTS VIOLATED MR. KELERCHIAN'S RIGHT TO DUE PROCESS PURSUANT TO THE FIFTH AMENDMENT

78. The foregoing paragraphs are hereby incorporated herein as if set forth in full.

79. The Fifth Amendment to the United States Constitution provides, in part, "No person shall be … deprived of life, liberty or property, without due process of the law." U.S. Const. amend. V.

80.     Mr. Kelerchian has a liberty interest in being free from prosecution and further

        incarceration from Defendant's improper and unsupportable positions, specifically,

        Defendant's decision to invalidate, void, and/or revoke his license and their subsequent

        threats of prosecution for failure to transfer certain firearms out of his possession and

        ownership and turn in business records despite Mr. Kelerchian's compliance with 18

        U.S.C. § 925(c). *See* Exhibit K ("As long as the applicable transfer forms for these

        machineguns are submitted to ATF by July 1, 2020, there would be no violation of the

        law"); Exhibit B ("***WILLFULL FAILURE TO TURN IN YOUR OUT-OF-BUSINESS***

        ***RECORDS TO ATF…IS A CRIME PUNISHABLE AS A FELONY,***

        ***IMPRISONMENT FOR NOT MORE THAN 5 YEARS AND/OR A FINE OF NOT***

        ***MORE THAN $250,000.***") (emphasis original).

81.     Furthermore, Mr. Kelerchian maintains a property interest in his issued license, firearms

        and his business records, for which he was given no hearing or other form of due process

        prior to the invalidation, voiding, and/or revocation of his license by Defendants and

        subsequent forced dispossession of certain of his firearms and all of his business records

        under threat of prosecution, incarceration, and/or fines, despite being legally required to

        maintain them and retain possession of them on the business premises. *See* 18 U.S.C. §

        923(g)(1)(A) ("Each [licensee] shall maintain such records of…receipt, sale, or other

        disposition of firearms at his place of business…") and 27 C.F.R. § 478.121(a) ("The

        records pertaining to firearms transactions prescribed by this part shall be retained on the

        licensed premises…").

82.     In an email to the undersigned, Defendants stated that 30 days after the denial of

        certiorari they would "void" Mr. Kelerchian's issued license (*see* Exhibit K) and on July

1, 2020, ATF updated the FFL eZCheck system (*see* Exhibit A) to reflect that Mr.

Kelerchian's FFL was "invalid".

83.   Notably, nothing in the GCA allows for the ATF to "void" or invalidate a licensed. 18

U.S.C. § 923 (stating procedures for *denial* or *revocation* of a license).

84.   Specifically, 18 U.S.C. § 923(f)(1) provides "Any person whose application for a license

is denied and any holder of a license which is revoked shall receive a written notice from

the Attorney General stating specifically the grounds upon which the application was

denied or upon which the license was revoked."

85.   Furthermore, Section 923(f)(2) requires the Attorney General to "promptly" hold a

hearing to review the denial or revocation upon request by the aggrieved party.

86.   The United States Supreme Court, in the context of the suspension of a horse trainer's

license, found a New York statute to violate the individual's right to due process, as it did

not provide a timeframe for which a post-deprivation hearing would occur. *Barry v.*

*Barchi*, 443 U.S. 55, 61 (1979).

87.   While the Court did find a right to suspend the license without a pre-suspension hearing,

the Court held "[I]t was necessary that Barchi be assured a prompt postsuspension

hearing, one that would proceed and be concluded without appreciable delay. Because the

statute as applied in this case was deficient in this respect, Barchi's suspension was

constitutionally infirm under the Due Process Clause of the Fourteenth Amendment."

*Barchi*, 443 U.S. at 66.

88.   In the instant matter, not only was Mr. Kelerchian not provided a pre-deprivation hearing,

but he was also not offered any form of post deprivation hearing, let alone "written notice

from the Attorney General," in direct violation of 18 U.S.C. § 923(d) and in violation of his right to due process under the Fifth Amendment.

89.    Accordingly, ATF's violations of the Fifth Amendment result in Mr. Kelerchian being entitled to, *inter alia*, preliminary and permanent injunctive, and declaratory relief, in addition to attorney fees and costs.

## COUNT IV: RIGHT TO PETITION THE GOVERNMENT FOR REDRESS OF GRIEVANCES PURSUANT TO THE FIRST AMENDMENT

90.    The foregoing paragraphs are hereby incorporated herein as if set forth in full.

91.    Article III, Section 2 of the United States Constitution states, in part, "The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States…"

92.    The First Amendment to the United States Constitution provides, in part, "The right of the people…to petition the Government for redress of grievances." U.S. Const. amend. I.

93.    The right to petition extends to all departments of the Government including "administrative agencies," *California Motor Trans. Co., v. Trucking Unlimited*, 404 U.S. 508, 510 (1972), and encompasses formal and informal complaints, *McDonald v. Smith*, 472 U.S. 479, 484 (1985), about matters of public and private concern.

94.    "[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011) (citation and quotation marks omitted).

95.    Despite the timely filing of his Application for Restoration of Firearms Privileges, pursuant to 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144, along with the requisite documentation (Exhibit D), ATF has failed to take any action on the petition and claims

one was never filed, denying Mr. Kelerchian his First Amendment right to petition the government for redress of grievances.

96.    While an appropriations ban for the processing of federal firearms relief determinations does exist, its existence does not inherently equate to constitutionality, particularly if it denies an individual the right to petition the government for grievances in violation of their First Amendment rights, nor does it alter the plain language of the statute which only requires that a licensee make application for relief in order to not be barred from operation under 18 U.S.C. § 923.

97.    Had Congress, hypothetically, chosen to defund a permitting process in National Parks that allowed people to protest or otherwise hold events, such that the process itself existed, but the National Parks had no manner in which they could process permits since funds were not appropriated for that purpose, the Courts would strike down such an affront to the First Amendment.

98.    Article III, Section 2 of the United States Constitution vests this Court with the power to hear all cases arising under the laws of the United States, which would include 18 U.S.C. § 925(c).

99.    In the event, *arguendo*, ATF's position that it cannot act on Mr. Kelerchian's application for relief from federal firearms disabilities be accepted, this Court still has the power to hear Mr. Kelerchian's complaint and in fact, must do so. *Cf. Arizona v. California*, 140 S. Ct. 684, 684 (2020) (Thomas, J. dissenting) (discussing discretion to decline review of cases.) and *Texas v. Pennsylvania, et al.*, 141 S. Ct. 1230 (2020).

100.  For each day that has passed, there has been a final agency action and a continuous ongoing injury that has occurred, further solidifying this Courts ability to hear Mr. Kelerchian's complaint.

101.  Accordingly, ATF's violations of the First Amendment result in Mr. Kelerchian being entitled to, *inter alia*, preliminary and permanent injunctive, and declaratory relief, in addition to attorney fees and costs.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Mr. Kelerchian respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, as follows:

a)  Preliminarily and permanently enjoin Defendants, their officers, agents, servants, employees and all persons in active concert or participation with them from enforcing their "internal policy" that even if a FFL licensee timely complies with 18 U.S.C. § 925(c) and 27 C.F.R. 478.144 by making and filing the application for relief with ATF, since ATF cannot adjudicate the application, that ATF can immediately invalidate, void, and/or revoke the license upon a final determination on the criminal charges;

b)  Declare that Mr. Kelerchian timely complied with 18 U.S.C. § 925(c) and 27 C.F.R. 478.144 by making and filing the application for relief with ATF and was and continues to be entitled to continue operation under that license until such time ATF had taken a final action on his application for relief;

c)  Declare that Defendants are prohibited from implementing and enforcing their "internal policy" as it violates 18 U.S.C. § 925(c), 27 C.F.R. § 478.144, and their statutory authority.

d)     Declare that Defendants act of invalidating, voiding, and/or revoking Mr. Kerlerchian's license constitutes a final agency action under the Administrative Procedures Act;

e)     Order Defendants reinstate Mr. Kelerchian's prior federal firearms license;

f)     Declare that Defendants violated Mr. Kelerchian's Fifth Amendment right to due process;

g)     Declare that Defendants violated Mr. Kelerchian's First Amendment right to petition the government for grievances;

h)     Permanently enjoin Defendants, their officers, agents, servants, employees and all persons in active concert or participation with them from enforcing their "internal policy" that even if a FFL licensee timely complies with 18 U.S.C. § 925(c) and 27 C.F.R. 478.144 by making and filing the application for relief with ATF, that ATF can immediately invalidate, void, and/or revoke the license upon a final determination on the criminal charges;

i)     Award Plaintiff costs and attorney fees and expenses to the extent permitted under 5 U.S.C. § 552(a)(4)(E)(i), 18 U.S.C. § 924, and 28 U.S.C. §§ 1920, 2202, and 2412; and

j)     Grant any and all other equitable and/or legal remedies this Court may see fit.

Respectfully Submitted,

Joshua Prince, Esq.
Joshua@PrinceLaw.com

Dillon Harris, Esq.
DHarris@PrinceLaw.com

Prince Law Offices, P.C.
646 Lenape Road
Bechtelsville, PA 19505

22

(888) 313-0416 (t)
(610) 845-3903 (f)

Attorneys for Plaintiff