Joshua Prince, Esq.
Attorney Id No. 306521
Prince Law Offices, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(888) 313-0416, ext 81114 (t)
(610) 845-3903 (f)
Joshua@PrinceLaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VAHAN KELERCHIAN** | : | |
| Plaintiff | : | |
| | : | |
| **v.** | : | Civil Action No. 2:20-CV-253 |
| | : | |
| **BUREAU OF ALCOHOL, TOBACCO,** | : | |
| **FIREARMS AND EXPLOSIVES,** *et al.* | : | |
| Defendants | : | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

Plaintiff Vahan Kelerchian, by and through his counsel, hereby submits this Brief in Opposition of Defendants' Motion to Dismiss.

# Table of Contents

**Introduction** ............................................................................................................ 1

**I.**     **Factual Background** ................................................................................... 2

**II.**    **Standard of Review** ................................................................................... 8

**III.**   **Statutory and Regulatory Provisions** ...................................................... 9

**IV.**   **Congressional Appropriation Rider on Section 925(c)** ........................ 10

**V.**     **Argument** ................................................................................................. 11

     a.   Dispelling the Government's Smoke-And-Mirrors Attempt to
         Mislead this Court .............................................................................. 11

     b.   Plaintiff has Stated a Claim Pursuant to the Declaratory Judgments
         Act Upon Which Relief May be Granted ............................................ 13

     c.   Plaintiff has Stated a Claim Pursuant to the APA Upon Which
         Relief May be Granted ....................................................................... 16

         1.   *ATF's invalidation, voiding, and/or revocation of Mr. Kelerchian's license*
             *constitutes a final agency action.* .................................................. 17

         2.   *ATF's conduct was arbitrary and capricious.* ........................... 19

     d.   Plaintiff has Stated a Claim Pursuant to the Due Process provisions
         of the Fifth Amendment ...................................................................... 21

     e.   Plaintiff has Stated a Claim Pursuant to the First Amendment by
         Which He is Entitled to Petition the Government for Redress of
         Grievances .......................................................................................... 22

     f.   The Rule of Lenity Requires Any Ambiguity to Inure to Mr.
         Kelerchian's Favor ............................................................................. 24

     g.   In the alternative, Mr. Kelerchian should be granted leave to file an
         amended complaint ............................................................................. 26

**VI.**   **Conclusion** ............................................................................................. 26

# Table of Authorities

**Cases**

*Alexander v. Sandoval*, 532 U.S. 275 (2001)............................................................. 15, 16

*Arizona v. California*, 140 S.Ct. 684 (2020).................................................................. 26

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................... 9

*Barry v. Barchi*, 443 U.S. 55 (1979) .............................................................................. 23

*Bell v. Burson*, 402 U.S. 535 (1971) ............................................................................... 23

*Bennett v. Spear*, 520 U.S. 154 (1977) ........................................................................... 19

*Black v. Snow*, 272 F.Supp. 2d 21 (D.D.C. 2003) ......................................................... 22

*Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379 (2011) .......................................... 25

*California Motor Trans. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972)..................... 25

*Connally v. Gen. Const. Co.*, 269 U.S. 385 (1926).......................................................... 27

*Evancho v. Fisher*, 423 F.3d 347 (3d Cir. 2005) ............................................................ 10

*FCC v. Am. Broad. Co.*, 347 U.S. 284 (1954) ................................................................. 28

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247
    (3d Cir. 2007)...........................................................................................................10, 28

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009)............................................... 9

*Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187 (3d Cir. 2009)........................ 10

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ...................... 10

*Kelerchian v. Bureau of Alcohol Tobacco Firearms & Explosives*, 2021
    WL 2910934 (3d Cir. July 12, 2021)................................................................. passim

*Leocal v. Ashcroft*, 543 U.S. 1 (2004)............................................................................. 27

*Liparota v. United States*, 471 U.S. 419 (1985).............................................................. 27

*McHugh v. Rubin*, 220 F.3d 53 (2d Cir 2000) ................................................................ 22

*McNally* v. *United States*, 483 U.S. 350 (1987).............................................................. 27

*Mullis v. United States*, 230 F. 3d 215 (2d Cir. 2000) ................................................... 22

*Scheidler* v. *NOW*, 537 U.S. 393 (2003) ........................................................................ 27

*Skilling* v. *United States*, 561 U.S. 358 (2010) .............................................................. 27

*Temple Univ. Hospital, Inc. v. Sec'y of the U.S. Dep't of Health & Hum. Servs.*,
    2 F.4th 121 (3d. Cir. 2021) ........................................................................................26

*Texas v. Pennsylvania, et al.*, 141 S. Ct. 1230 (2020). .................................................. 26

*United States v. Bean*, 537 U.S. 71 (2002) ..................................................................... 22

*United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505 (1992) ..................................... 28

*United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218 (1952) ........................... 27

*Yates* v. *United States*, 135 S. Ct. 1074 (2015) ................................................................. 27

## Statutes

18 U.S.C. § 921 ....................................................................................................... 3, 10

18 U.S.C. § 922 ..................................................................................................... 13, 16

18 U.S.C. § 923 ....................................................................................................... 3, 23

18 U.S.C. § 925 ..................................................................................................... passim

26 U.S.C. 5801 ............................................................................................................ 28

28 U.S.C. § 2201 ................................................................................................... 15, 18

28 U.S.C. § 2202 ................................................................................................... 15, 18

5 U.S.C. § 702 .............................................................................................................. 26

5 U.S.C. § 704 ....................................................................................................... 19, 21

5 U.S.C. § 706 .............................................................................................................. 21

## Regulations

27 C.F.R. § 478.45 ........................................................................................................ 3

27 C.F.R. § 478.1 ......................................................................................................... 10

27 C.F.R. § 478.144 .............................................................................................. passim

27 C.F.R. § 478.49 ........................................................................................................ 3

27 C.F.R. § 478.47 ........................................................................................................ 3

27 C.F.R. § 478.32 ...................................................................................................... 14

## Constitutional Provisions

U.S. Const. amend. I ................................................................................................... 25

U.S. Const. amend. V .................................................................................................. 23

U.S. Const., Art. III, Sec. 2 ........................................................................................ 25

**Other Authorities**

Consolidated Appropriations Act, 2018, Division B, P.L. 115-141 (2017-2018) ............ 12

Consolidated Appropriations Act, 2019, Division C, P.L. 116-6 (2019-2020) ................ 12

FY 2020 Omnibus Bill (HR 1158) ................................................................................... 12

Title VI, § 602 of the Civil Rights Act ............................................................................ 16

Treasury, Postal Service, and General Government Appropriations Act,
    1993, Pub. L. 102-393, 106 Stat. 1732 ........................................................................11

**Introduction**

Although 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144(i) explicitly provide that a

licensed dealer, "who *makes* application for relief from the disabilities incurred under this

chapter, shall not be barred by such disability from further operations under his license

pending final action on an application for relief filed pursuant to this section" (emphasis

added), in direct defiance of the Third Circuit's decision in this matter, the Congress's

mandate, and the Bureau of Alcohol, Tobacco, Firearms and Explosives' (hereinafter

"ATF") own regulation, the Defendants take the position that Mr. Kelerchian's license

was automatically revoked,[1] regardless of the protections afforded by Section 925(c),

even though, as the Third Circuit found, there is no dispute that Mr. Kelerchian timely

made an application for relief[2] and that ATF has yet to issue a final determination on that

application.[3] In what can only be described as smoke-and-mirrors, the Defendants, after

admitting that Mr. Kelerchian timely filed the requisite application for relief and that they

are in possession of it,[4] attempt to confuse this Court regarding the application of Section

925(b) allegedly automatically voiding his license without *any* action on their part – an

argument the Third Circuit declared "also fails."[5] Perhaps most disconcerting is the

lengths the Government goes to in misleading this Court regarding the current status of

---

[1] Def. Brief in Supp. of Mtn. to Dismiss at 1.

[2] *See, Kelerchian v. Bureau of Alcohol Tobacco Firearms & Explosives*, 2021 WL 2910934, at *1 (3d Cir. July 12, 2021)(declaring "[o]n March 2, 2018—within 30 days of his sentencing—Kelerchian mailed an 'Application for Restoration of Firearms Privileges' to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).") 2910934, at *1 (3d Cir. July 12, 2021)(declaring "[o]n March 2, 2018—within 30 days of his sentencing—Kelerchian mailed an 'Application for Restoration of Firearms Privileges' to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).")

[3] *Id.* at *3 (declaring that "ATF may neither grant nor deny applications.")

[4] Def. Brief in Supp. of Mtn. to Dismiss at 8-9.

[5] *Kelerchian*, 2021 WL 2910934, at *3; *see also*, *id.* at fn. 4.

Section 925(c) [6] – even after the Third Circuit's binding decision in this matter that held

that 925(c) has *not* been repealed by the Congress and that the Congress' appropriation

has no bearing on an individual's ability to file an application for relief and the automatic

protections afforded therefrom. [7] Contrary to Defendants' contention, as affirmed by the

Third Circuit, Section 925(c) has not been revoked or repealed, nor is it a nullity. Even

more telling and disconcerting, the Government continues to contend that Mr. Kelerchian

is seeking declaratory judgment on his application for relief from his federal firearm

disability,[8] even after the Third Circuit explicitly acknowledged that Mr. Kelerchian "is

not seeking a decision on his § 925(c) application… Kelerchian seeks something less than

relief from federal firearms disabilities. Kelerchian seeks the "protection" of § 925(c)." [9]

This Court should not countenance these types of false and misleading statements by the

Defendants.

I.    **Factual Background**

*Facts Relative to Mr. Kelerchian's Licensing*

In or about January of 2006, Mr. Kelerchian obtained an FFL, as a dealer, with a

current number of 8-23-017-01-5A-02276. [10] Mr. Kelerchian's FFL no. 8-23-017-01-5A-

---

[6] Def. Brief in Supp. of Mtn. to Dismiss at 2 (declaring "Congress' repeal of § 925(c) precludes any claims under its terms and any of the relief Plaintiff seeks.)
[7] *See, Kelerchian*, 2021 WL 2910934, at *3 (declaring "The appropriations ban only prohibits ATF from 'investigat[ing] or act[ing] upon applications for relief.' ATF provides no support for a reading of 'investigate or act upon' that includes the mere recognition of the fact that an application for relief has been filed or the legal effect of such a filing. The most 'obvious' interpretation of 'act upon' in the appropriations ban is that it means that ATF 'may neither grant nor deny applications.' Because Kelerchian's requested relief does not require ATF to grant or deny his application, the appropriations ban did not deprive the District Court of subject matter jurisdiction.")
[8] Def. Brief in Supp. of Mtn. to Dismiss at 1.
[9] *Kelerchian*, 2021 WL 2910934, at *3.
[10] First Amended Compl. (Doc. 22) at ¶ 23.

02276 has been timely renewed, every three years, as required by 18 U.S.C. § 923 and 27

C.F.R.§ 478.45, 478.49. [11] Although Mr. Kelerchian timely submitted a renewal of his

dealer license in December of 2014 and again on or about December 21, 2017, in direct

defiance of 18 U.S.C. § 923(d)(2) and 27 C.F.R. §§ 478.47(c), (d) – which require a

determination approving or denying the license within 60 days – Defendants failed to

issue determinations on the renewal applications and instead issued numerous "letters of

authorization", referred to by Defendants as "LOAs", [12] purporting to extend his license

for limited periods of time. [13] At the time of filing of the original Complaint in this

matter, Defendants' most recent LOA purported to authorize Mr. Kelerchian to continue

business until July 7, 2020, even though, his most recent renewal application, at that time,

of on or about December 21, 2017, if approved, would authorize him to continue business

through on or about January 1, 2021, absent revocation of the license. [14] On July 1, 2020,

Defendants updated the FFL eZCheck system, available at

https://fflezcheck.atf.gov/fflezcheck, to reflect that Mr. Kelerchian's FFL was no longer

active. [15] ATF further communicated to the undersigned via email on August 27, 2020,

that "ATF considers Mr. Kelerchian's discontinuance of his firearms business to be

absolute at this time," and directing the business records to be submitted to ATF

consistent with the provisions of the Gun Control Act ("GCA"). [16] On July 14, 2021,

following the Third Circuit Court of Appeals decision in this matter, Mr. Kelerchian,

---

[11] *Id*. at ¶ 25.

[12] Neither the Gun Control Act, 18 U.S.C. § 921, *et seq*., nor its implementing regulations mention or authorize "letters of authorization" or "LOAs."

[13] *Id*. at ¶ 25.

[14] *Id*. at ¶ 26.

[15] *Id*. at ¶ 29; Exhibit A; *see also*, Def. Brief in Supp. of Mtn. to Dismiss at 9 (declaring "ATF removed plaintiff's license from its online 'FFL eZ Check' system.")

[16] *Id*. at ¶ 30; Exhibit B.

through the undersigned, formally requested the 1) re-issuance/activiation of his FFL, 2)

return of his records, and 3) the approval of transfers back to his FFL of all previously

transferred firearms that ATF hand forced transfer of under threat of criminal charging if

he failed to do so. [17] Defendants' counsel directed the undersigned to communicate

directly with ATF, which denied all three requests. [18]

After the time tolled for a petition for certiorari to be filed with the U.S. Supreme

Court, Mr. Kelerchian filed the underlying Amended Complaint.[19]

*Facts Relative to Mr. Kelerchian's Chargings*

On May 17, 2013, Mr. Kelerchian was charged in a nine (9) count Indictment,

primarily related to the putative transfer of machineguns and laser-aiming devices, in the

U.S. District Court, Northern District of Indiana, docket no. 2:13-cr-00066. [20] On or

about October 15, 2015, the jury found Mr. Kelerchian guilty of some, but not all,

---

[17] *Id*. at ¶ 31.

[18] *Id*. at ¶ 32-33; Exhibit C.

[19] The Government, in several filings with this Court, most recently in its Brief in Support of Its Motion to Dismiss at 12, attempts to make this Court believe that Mr. Kelerchian let this matter stagnate before taking any action. What appears most interesting is that the Government seemingly purposely fails to mention to this Court the applicable timeframe that was in effect for petitioning for certiorari at the time of the Third Circuit's decision. The U.S. Supreme Court's Order of July 19, 2021 that was in effect at the time, provided, in pertinent part, that in relation to any decision "issued prior to July 19, 2021, the deadline to file a petition for a writ of certiorari remains extended to 150 days from the date of that judgment or order." *Available at*, https://www.supremecourt.gov/orders/courtorders/071921zr_4g15.pdf. The Third Circuit's decision in this matter was filed on July 12, 2021; thus, the applicable timeframe for petitioning for certiorari was through December 9, 2021. It was only after December 9th, when no petition for certiorari was filed, that this case would be returned back to this Court. After waiting approximately a month for a scheduling or status conference order to issue and none issuing, as Defendants acknowledged in their Motion for an Extension (Doc. 25, ¶ 4), the undersigned reached out to Defendants' counsel about jointly requesting a scheduling conference, which the Defendants' counsel refused. Within two days of Defendants' refusal, Plaintiff prepared and filed his Amended Complaint.

[20] *Id*. at ¶ 34.

charges. [21] After several motions, on February 5, 2018, Mr. Kelerchian was sentenced

and on June 1, 2020, the United States Supreme Court denied Mr. Kelerchian's petition

for certiorari. [22]

*Facts Relative to Mr Kelerchian's Application for Relief*

As a result of the Mr. Kelerchian's sentencing on February 5, 2018, within the 30

days as mandated by 27 C.F.R. § 478.144(i)(1), on March 2, 2018, [23] the undersigned

submitted one (1) day Priority Mail letters to then-ATF Acting Director Thomas

Brandon, Philadelphia Director of Industry Operations Juan Orellana, and ATF's NCETR

division with three copies of Mr. Kelerchian's Application for Restoration of Firearms

Privileges, pursuant to 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144, and requisite

documentation.[24] As set-forth in the letter, 27 C.F.R. § 478.11 requires three copies of the

application to be filed with the Director, but the application instructions only require one

copy to be filed with NCETR; thus, as a matter of precaution, the undersigned submitted

three copies of the executed Applications with the applicable documents (as contained in

Exhibit D to the Amended Complaint) to each: then-ATF Acting Director Thomas

Brandon, Philadelphia Director of Industry Operations Juan Orellana, and ATF's NCETR

division.[25]

---

[21] *Id*. at ¶ 35.

[22] *Id*. at ¶¶ 36-38.

[23] The Third Circuit found that "[o]n March 2, 2018—within 30 days of his sentencing—Kelerchian mailed an 'Application for Restoration of Firearms Privileges' to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)." *Kelerchian*, 2021 WL 2910934, at *1. The Government also admits that his relief application was submitted on March 2, 2018. *See*, Def. Brief in Supp. of Mtn. to Dismiss at 8.

[24] *Id*. at ¶ 39; Exhibit D.

[25] *Id*. at ¶ 40; Exhibit D.

The mailing to then-ATF Acting Director Brandon was received on March 7, 2018. [26] The mailing to Philadelphia Director of Industry Operations Orellana was received on March 6, 2018. [27] The mailing to ATF NCETR division was received on March 6, 2018. [28]

On April 3, 2018, the undersigned received a response dated March 27, 2018, from John R. Day, Chief, Explosives Enforcement and Training Division, acknowledging receipt of Mr. Kelerchian's Application for Restoration of Firearms Privileges, but stating that since ATF cannot, currently, act on applications for relief, the application was being returned to the undersigned. [29] On April 9, 2018, the undersigned responded by explaining that as the statutory and regulatory law only requires that an FFL "make" an application for relief, ATF is required to retain the application and process it, when, if ever, the Congress appropriates money for ATF to conduct federal firearms relief determinations, and resubmitted Mr. Kelerchian's Application for Restoration of Firearms Privileges with the applicable documents (as contained in Exhibit D to the First Amended Complaint). [30] The undersigned's April 9, 2018 letter with Mr. Kelerchian's Application for Restoration of Firearms Privileges and the applicable documents (as contained in Exhibit D) was received by ATF Chief John Day on April 12, 2018. [31] Neither Chief John Day, Acting Director Brandon, Director Orellana, NCETR nor anyone else acting as an employee or agent of the Defendants has sent any further correspondences regarding Mr. Kelerchian's Application for Restoration of Firearms

---

[26] *Id*. at ¶ 42; Exhibit E.
[27] *Id*. at ¶ 43; Exhibit F.
[28] *Id*. at ¶ 44; Exhibit G.
[29] *Id*. at ¶ 45; Exhibit H.
[30] *Id*. at ¶ 46; Exhibit I.
[31] *Id*. at ¶ 47; Exhibit J.

Privileges. [32] The Third Circuit Court of Appeals found that "[o]n March 2, 218—within 30 days of his sentencing—Kelerchian mailed an 'Application for Restoration of Firearms Privileges' to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)" and "ATF did not return the application again or send any other correspondence regarding the application." [33]  The Government concedes that it did not return the application for relief and that it is currently in possession of it. [34] While the Government seemingly continues to argue that Mr. Kelerchian did not "make" [35] or "file" [36] his relief application – even though it admits to receiving it, returning it, and then upon it re-receipt of it, retaining possession of it – as the Third Circuit declared, "ATF's practice of mailing back individuals' applications as unprocessed arguably requires ATF to recognize that an individual has filed an application for relief." [37]

*Facts Relative to Defendants' Refusal to Acknowledge*
*Mr. Kelerchian's Application for Restoration of Firearms Privileges*

On November 27, 2019, ATF Philadelphia Division Counsel Kevin White inquired as to whether Mr. Kelerchian had filed an appeal with the U.S. Supreme Court in relation to his criminal chargings, as ATF is taking the position, pursuant to an internal

---

[32] *Id*. at ¶ 48.

[33] *Kelerchian v. ATF*, 2021 WL 2910934, *1 (3d Cir. July 12, 2021).

[34] Def. Brief in Supp. of Mtn. to Dismiss at 8-9.

[35] *See*, Section 925(c) (declaring, in pertinent part, "A licensed importer, licensed manufacturer, licensed dealer, or licensed collector conducting operations under this chapter, *who makes application* for relief from the disabilities incurred under this chapter, shall not be barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section.")(emphasis added).

[36] *See*, 27 C.F.R. 478.144(i)(1) (declaring, in pertinent part, "if the licensee *files the application for relief* as provided by this section within such 30–day period, the licensee may further continue licensed operations during the pendency of the application.")(emphasis added).

[37] *Kelerchian v. ATF*, 2021 WL 2910934, *3, fn. 5.

policy (hereinafter "internal policy"), that although Mr. Kelerchian timely complied with 18 U.S.C. § 925(c) and 27 C.F.R. 478.144 by making and filing the application for relief with ATF, since ATF cannot adjudicate the application that it can immediately revoke his license if the U.S. Supreme Court denies certiorari. [38] Additionally, pursuant to this "internal policy", it is apparently ATF's position that the firearms held pursuant to the license are contraband and therefore subject to forfeiture, in addition to arguably contending that Mr. Kelerchian is a prohibited person in possession of each and every firearm, for which he could be separately charged and convicted. This "internal policy" has not been published anywhere, including, but not limited to, in the Federal Register, and it is unknown whether it exists in written form. [39] Regardless, in applying this "internal policy" to Mr. Kelerchian's license, and in consummation of the ATF's decision-making process, Defendants invalidated his license, which is reflected on the ATF's FFL eZCheck system,[40] and "threat[ened] criminal prosecution against Mr. Kelerchian if he did not (1) transfer his post-sample machineguns by July 1, 2020 and (2) turn in all of his business records to the ATF Out of Business Center by September 18, 2020;" [41] all thereby constituting final agency action.

As a result of Defendants' actions, Mr. Kelerchian brought the underlying action that is before this Court.

## II.   Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to

---

[38] Amended Compl ¶ 54.
[39] *Id*. at ¶ 55.
[40] *Id*. ¶¶ 29, 75, 82; Exhibit A; *see also*, Def. Brief in Supp. of Mtn. to Dismiss at 9 (declaring, "ATF removed plaintiff's license from its online 'FFL eZ Check' system."
[41] *Id*. at 75, 76, 80-81; Exhibits B, K.

relief that is plausible on its face."[42] Thus, when considering a motion to dismiss, the

Court must "accept all of the complaint's well-pleaded facts as true…" and "…then

determine whether the facts alleged in the complaint are sufficient to show that the

plaintiff has a 'plausible claim for relief.'"[43] *Fowler* makes it clear that while a court is

under no obligation to accept legal conclusions, it is under no duty to entirely disregard

them.[44] Dismissal pursuant to Rule 12(b)(6) is proper when the factual allegations,

accepted as true, are insufficient to "state a claim to relief that is plausible on its face."[45]

Unless it is a "certainty" that no relief could be granted under any set of facts which

could be proven, the motion to dismiss on the basis of failure to state a claim, must be

denied.[46]

Furthermore, the Third Circuit has held that where a district court dismisses a

case, the court must allow the plaintiff to file an amended complaint, "unless doing so

would be inequitable or futile."[47]The Third Circuit has defined futility as meaning "that

the complaint, as amended, would fail to state a claim upon which relief could be

granted."[48]

## III.   Statutory and Regulatory Provisions

The Gun Control Act ("GCA"), 18 U.S.C. § 921, *et seq.*, and its implementing

regulations, 27 C.F.R. § 478.1, *et seq.*, are part of the Crimes Code and have both

---

[42] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[43] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).
[44] *Id*.
[45] *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009).
[46] *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005).
[47] *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).
[48] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted).

criminal and civil penalties associated with violations thereof. 18 U.S.C. § 925(c)

provides, in pertinent part:

> A … *licensed dealer* … conducting operations under this chapter, who *makes* application for relief from the disabilities incurred under this chapter, *shall not be barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section*. (emphasis added)

27 C.F.R. § 478.144(i)(1) provides, in pertinent part:

> A licensee who incurs disabilities under the Act (see § 478.32(a)) during the term of a current license or while the licensee has pending a license renewal application, and *who files an application for removal of such disabilities*, shall not be barred from licensed operations for 30 days following the date on which the applicant was first subject to such disabilities (or 30 days after the date upon which the conviction for a crime punishable by imprisonment for a term exceeding 1 year becomes final), and *if the licensee files the application for relief as provided by this section within such 30–day period, the licensee may further continue licensed operations during the pendency of the application*. (emphasis added)

27 C.F.R. § 478.144(i)(2) goes on to provide, in pertinent part

> In the event the term of a license of a person expires … during the pendency of the application for relief, a timely application for renewal of the license must be *filed in order to continue licensed operations*. (emphasis added)

## IV.    Congressional Appropriation Rider on Section 925(c)

In 1993, pursuant to the Treasury, Postal Service, and General Government

Appropriations Act, 1993, Pub. L. 102-393, 106 Stat. 1732, the Congress included a *limited*

appropriations rider on ATF's ability, *only* in relation to individuals, to "investigate" or "act"

upon applications for relief, but which neither precludes individuals from making an

application nor precludes ATF from receiving such applications. Specifically, it provided:

> That none of the funds appropriated herein shall be available to *investigate* or *act upon* applications for relief from Federal firearms disabilities under section 925(c) of title 18, United States Code:  Provided further, That such funds shall be available to investigate and act upon applications filed by corporations for relief from Federal firearms disabilities under section 925(c) of title 18, United States Code. (emphasis added)

10

This rider has been included in the enacted appropriation bill every year, including in Consolidated Appropriations Act, 2018, Division B, P.L. 115-141 (2017-2018), Consolidated Appropriations Act, 2019, Division C, P.L. 116-6 (2019-2020), and FY 2020 Omnibus Bill (HR 1158).

## V.    Argument

### a.    Dispelling the Government's Smoke-And-Mirrors Attempt to Mislead this Court

In essence, the *entirety* of the Government's argument to dismiss this action – which was argued by the Government on appeal [49] and already held to be unavailing by the Third Circuit [50] – is that Mr. Kelerchian's "license became void by operation of law when the Supreme Court denied his petition for certiorari on June 1, 2022 18 U.S.C. § 925(b)." [51] What the Government fails to explain to this Court is that while such would be true if Mr. Kelerchian had not timely filed an application for relief pursuant to Section 925(c), as acknowledged by the Third Circuit in this matter "[o]n March 2, 2018—within 30 days of his sentencing—Kelerchian mailed an 'Application for Restoration of Firearms Privileges' to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)" [52] and as a result, Mr. Kelerchian is seeking the "the 'protection' provision of § 925(c)" [53], not that of Section 925(b).

---

[49] Brief of Appellees (Defendants), before the Third Circuit at 8, 15-16, 30-31, 52-53.
[50] In fact, the Third Circuit bluntly declared that this argument by the Government "also fails." *Kelerchian*, 2021 WL 2910934, at *3; *see also*, *id*. at fn. 4.
[51] Def. Brief in Supp. of Mtn. to Dismiss at 9.
[52] *Kelerchian*, 2021 WL 2910934, at *1.
[53] *Id*. at * 3.

As the Third Circuit addressed, "Section 925(b) allows a licensee who is under felony indictment—*i.e.*, incurs a disability under § 922(n)—to 'continue operation pursuant to his existing license ... until any conviction pursuant to the indictment becomes final.'" [54] Whereas, Section 925(c) "provides that a licensee 'shall not be barred by such disability from further operations under his license' if the licensee has filed an application for relief and final action on that application is pending." [55] Boiled down to their most simplistic terms, Section 925(b) is automatic – not requiring any action on the part of the person under criminal charging – in permitting him/her to continue operations of his/her business until the conviction becomes final; whereas, Section 925(c) requires that an individual, who desires to continue in "further operations under his license" after a conviction becomes final, must make "application for relief from the disabilities" within 30 days; [56] whereby, if the individual timely "makes" or "files" an application for relief, he/she "shall not be barred by such disability from further operations under his license pending final action on an application for relief." Consistent therewith, the Third Circuit declared that the "purpose of the 30-day period in § 478.144(i), however, is to

---

[54] *Id*.

[55] *Id*.

[56] 27 C.F.R. § 478.144(i)(1)(declaring, "A licensee who incurs disabilities under the Act (see § 478.32(a)) during the term of a current license or while the licensee has pending a license renewal application, and who files an application for removal of such disabilities, shall not be barred from licensed operations for 30 days following the date on which the applicant was first subject to such disabilities (*or 30 days after the date upon which the conviction for a crime punishable by imprisonment for a term exceeding 1 year becomes final*), and *if the licensee files the application for relief as provided by this section within such 30–day period, the licensee may further continue licensed operations during the pendency of the application*. A licensee who does not file such application within such 30–day period shall not continue licensed operations beyond 30 days following the date on which the licensee was first subject to such disabilities (or 30 days from the date the conviction for a crime punishable by imprisonment for a term exceeding 1 year becomes final)(emphasis added).

allow a licensee to "file[ ] the application for relief" from disabilities under § 925(c)." [57]

Furthermore, the Third Circuit, in dismissing the Defendants' argument that Mr.

Kelerchian had not "filed" an application for relief in this matter declared that "ATF's

practice of mailing back individuals' applications as unprocessed arguably requires ATF

to recognize that an individual has filed an application for relief." [58]

As there is no dispute that Mr. Kelerchian timely filed his application for relief

pursuant to Section 925(c),[59] the only applicable statutory and regulatory provisions to

this case are Section 925(c) and Section 478.144(i)(1), both of which provided that the

individual "shall not be barred by such disability from further operations under his

license pending final action on an application for relief."

### b.  Plaintiff has Stated a Claim Pursuant to the Declaratory Judgments Act Upon Which Relief May be Granted

As the Government contends – in direct defiance of Section 925(c) and Section

478.144(i)(1) – that Mr. Kelerchian's federal firearms license was automatically revoked

30 days after his conviction becomes final regardless of his timely application for relief,[60]

there is clearly a dispute over the application of Section 925(c) and Section 478.144(i)(1)

to which Mr. Kelerchian has a right to obtain declaratory and injunctive relief. In point of

fact, 28 U.S.C. § 2201 explicitly provides this Court with jurisdiction to "declare the

rights and other legal relations of any interested party seeking such declaration, whether

or not further relief is or could be sought" and thereafter, 28 U.S.C. § 2202 provides this

---

[57] *Kelerchian*, 2021 WL 2910934, at *3, fn 4.
[58] *Id.* at *3, fn 5.
[59] *Id.* at *1; Def. Brief in Supp. of Mtn. to Dismiss at 8.
[60] Def. Brief in Supp. of Mtn. to Dismiss at 9-10.

Court with authority to grant "[f]urther necessary or proper relief based on a declaratory judgment or decree."

In *Alexander v. Sandoval*, the Supreme Court of the United States stated that "[l]ike substantive federal law itself, private rights of actions to enforce federal law must be created by Congress." [61] The Court continued, "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." [62] In *Sandoval*, in determining that Title VI, § 602 of the Civil Rights Act did not create a private right of action, the Court began and ended its search with the text and structure of the law at issue and announced, "[s]tatutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer right on a particular class of persons.'" [63].

Like in *Sandoval*, the text and structure of section 925 clearly evidences Congress's intent. In this case, unlike in *Sandoval*, Section 925, including subsection (c), focuses almost entirely on the individuals protected, not the persons regulated, and thus the opposite conclusion is true here – Section 925 does provide a private right of action. Beginning with the title, "Exceptions: Relief from Disabilities," the tone is set for a statute *protecting* the rights of those to which it applies. Subsections (a)(1) – (5) all provide some measure of protection, via exception, from the provisions of 18 U.S.C. § 922. [64] Subsection (b), as discussed *supra*, similarly creates safe haven under which a

---

[61] 532 U.S. 275, 286 (2001).

[62] *Id*.

[63] *Id*. at 288.

[64] Subsection (a)(1) excepts firearms for import, sale, shipping, or issued for use of any agency or department of the U.S. or any state agency; subsection (a)(2) excepts firearms for certain uses by the Secretary of the Army; subsection (a)(3) excepts firearms licensees from export restrictions to export certain types of firearms to active duty Armed Services

federal firearms licensee who is indicted for a crime punishable by a term of imprisonment of more than one year to continue operation pursuant to his existing license during the term of the indictment and until any conviction thereto becomes final.

Subsection (c) in turn, as discussed *supra*, offers the relief in dispute and cause of action here. The first sentence creates an individual's right of application. The second, creates an individual's right of judicial review in the context of denied applications. The third, authorizes a reviewing court to admit additional evidence at its discretion. The fourth, which Mr. Kelerchian now asks this Court to enforce, authorizes and protects a licensee in his/her ability to continue operations pursuant to their license until such time as ATF acts on the application. Fifth and finally, it directs the Attorney General to publish notice of grants of relief and the reasons in the federal register. Thereafter, Subsections (d), (e), and (f) provide guidelines for certain circumstances in which the Attorney General shall authorize the importation of firearms and guidelines for the types of firearms.

Contrary to the Government's continued assertions that were already dispelled by the Third Circuit, the Congressional Appropriation Rider reproduced *supra* in Section IV has not repealed, revoked, or otherwise nullified Section 925(c). As the Third Circuit decisively found, "ATF insists that the District Court lacked subject matter jurisdiction by virtue of the annual appropriations ban… ATF advances three variations of this argument, none of which is persuasive." [65] Thereafter, the Third Circuit went on to hold:

---

members; subsection (a)(4) excepts certain active duty armed forces members from import restrictions with the authorization of the Attorney General; subsection (a)(5) simply defined the term "United States" for the purposes of subsection (a)(3) to include the "several states and District of Columbia."

[65] *Kelerchian*, 2021 WL 2910934 at *2.

The appropriations ban only prohibits ATF from "investigat[ing] or act[ing] upon applications for relief." ATF provides no support for a reading of "investigate or act upon" that includes the mere recognition of the fact that an application for relief has been filed or the legal effect of such a filing. The most "obvious" interpretation of "act upon" in the appropriations ban is that it means that ATF "may neither grant nor deny applications." Because Kelerchian's requested relief does not require ATF to grant or deny his application, the appropriations ban did not deprive the District Court of subject matter jurisdiction.[66]

As discussed extensively in Section I *supra*, Mr. Kelerchian has pled facts that, when accepted as true, as they must be at this stage, show a plausible claim for relief. As also discussed *supra*, there is no dispute that Mr. Kelerchian timely made the requisite application for relief, as required with Section 925(c), and in direct defiance of the statutory and regulatory language, as well as the Third Circuit's decision, the Government erroneously contends that his license was properly revoked/voided upon the U.S. Supreme Court denying certiorari. As a result pursuant to 28 U.S.C. §§ 2201, 2202, Mr. Kelerchian has a right to have his rights declared and for this Court to additionally grant such "necessary or proper relief based on a declaratory judgment or decree." Moreover, if there is any question as to the protections afforded to Mr. Kelerchian by Section 925(c) and its implementing regulation, consistent with the rule of lenity, those questions must be resolved in his favor.

c. Plaintiff has Stated a Claim Pursuant to the APA Upon Which Relief May be Granted

The Government claims that Mr. Kelerchian has failed to state a claim under the APA upon which relief can be granted and also questions his standing to establish such a claim on the basis that a "causal connection between the injury and the conduct complained of – the injury must be fairly traceable to the challenged action of the

---

[66] *Id.* at *3 (citations omitted).

defendant, and not the result of the independent action of some third party before the court." [67] The claim that Mr. Kelerchian has stated is discussed *infra*, but in relation to his standing, it defies reason and is beyond comprehension for ATF to suggest that the injury complained of – the invalidation, revocation, or voiding of his federal firearms license – is due to the action of some third party, especially when it acknowledges, as consummation of its decision-making process, it enforced its "internal policy" against Mr. Kelerchian by "remov[ing] plaintiff's license from its online 'FFL eZ Check' system," [68] and thereafter, "threat[ened] criminal prosecution against Mr. Kelerchian if he did not (1) transfer his post-sample machineguns by July 1, 2020 and (2) turn in all of his business records to the ATF Out of Business Center by September 18, 2020." [69]

> 1. *ATF's invalidation, voiding, and/or revocation of Mr.*
>    *Kelerchian's license constitutes a final agency action.*

Pursuant to 5 U.S.C. § 704, an agency action is considered final when it both "marks the 'consummation' of the agency's decision making process" and the action is "one by which 'rights or other obligations have been determined,' or from which 'legal consequences will flow.'" [70] The Government leans heavily on the law of the case and the Third Circuit's prior decision in this matter; however, the Third Circuit simply found that in his original Complaint,

> Nowhere does Kelerchian allege that the 'internal policy' is a 'final agency action.' The most Kelerchian alleges is that the 'internal policy' as communicated to Kelerchian's counsel by ATF Philadelphia Division Counsel Kevin White in a phone call." This allegation is insufficient to

---

[67] *See*, Def. Brief in Supp. of Mtn. to Dismiss at 19, fn. 11.
[68] Def. Brief in Supp. of Mtn. to Dismiss at 9.
[69] *Id.* at 75, 76, 80-81; Exhibits B, K; *see also*, Def. Brief in Supp. of Mtn. to Dismiss at 9-10.
[70] *Bennett v. Spear*, 520 U.S. 154, 177 (1977)(internal citations omitted).

establish that the 'internal policy' is a final agency action under the relevant legal standard. [71]

And of course, the reason for such was that when the original Complaint was filed, ATF had yet to act on what it relayed was its "internal policy," [72] as the original Complaint was filed on January 13, 2020 and the Government has always contended in these proceedings that Mr. Kelerchian's license was valid, at least until, July 1, 2020 (*i.e.* 30 days after his conviction became final).[73] Thus, his first opportunity to address ATF's consummation and enforcement of its "internal policy" was in his Amended Complaint. Therein, Mr. Kelerchian cured this defect and alleged in ¶¶ 54-57 and ¶¶ 73-77 that ATF's invalidation, voiding, and revocation of his license is a "consummation" of the agency's decision-making process and legal consequences flow from his inability to maintain the license – namely the transfer of firearms and surrender of business records compelled under threat of criminal prosecution. In support of this, Mr. Kelerchian's Amended Complaint pled in ¶¶ 28-33 that ATF acted against his license and compelled the business to transfer firearms under threat of prosecution. And it is not merely what Mr. Kelerchian has averred in his complaint; ATF acknowledges, as consummation of its decision-making process, it enforced its "internal policy" against Mr. Kelerchian by "remov[ing] plaintiff's license from its online 'FFL eZ Check' system," [74] and thereafter, "threat[ened] criminal prosecution against Mr. Kelerchian if he did not (1) transfer his post-sample machineguns by July 1, 2020

---

[71] *Kelerchian*, 2021 WL at *4.

[72] In ¶¶ 54-57, Mr. Kelerchian explained that ATF's "internal policy" has not been published and it is unknown whether it exists in written form.

[73] *Kelerchian*, 2021 WL 2910934 at fn 4.

[74] Def. Brief in Supp. of Mtn. to Dismiss at 9.

and (2) turn in all of his business records to the ATF Out of Business Center by September 18, 2020." [75]

Accordingly, the two prongs of the *Bennett* test are met and Mr. Kelerchian has stated facts that when taken as true, show his plausible claim for relief under section 704 of the APA.

2.   *ATF's conduct was arbitrary and capricious.*

ATF next claims that even if Mr. Kelerchian did state a claim under the APA, its conduct was not arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law, as required by 5 U.S.C. § 706(A)(2), because its conduct was congressionally mandated by falling back on its smoke-and-mirrors argument over the applicability of Section 925(b), as addressed *supra*. Here, once again and ignoring the Third Circuit's decision in this matter, ATF mistakes its interpretation of the Congress's intent as to Section 925(c) for "a statutory directive not to use its resources to process applications for relief, or to recognize any right on the part of a felon convicted of multiple firearms crimes to retain or regain his firearms privileges." [76]

As the Third Circuit found, "If allowing a licensee with a disability to continue licensed operations is the same as 'relief from firearm disabilities,' then ATF in fact afforded Kelerchian 'relief from firearm disabilities' by allowing him to continue licensed operations from his indictment in May 2013 until his conviction became final on June 1, 2020." [77] In its new Motion to Dismiss, ATF has replaced its prior use of the term "firearm disabilities," with "firearm privileges," but the effect is the same, and ATF

---

[75] *Id*. at 75, 76, 80-81; Exhibits B, K; *see also*, Def. Brief in Supp. of Mtn. to Dismiss at 9-10.

[76] *See*, Def. Brief in Supp. of Mtn. to Dismiss at 24-25.

[77] *Kelerchian*, 2021 WL 2910934 at *3.

declares that, "[w]hile 27 C.F.R. § 478.144(i) is now inoperative as to individuals by virtue of the appropriations ban, ATF still honors the 30-day wind down provision…" [78] Here, the contradictory nature of ATF's position is on display, claiming it is barred by a putative statutory directive from implementing any part of what it claims is an inoperative regulation – even though such was dispelled by the Third Circuit – and yet, still complying with the dictates of that regulation where convenient. The cases that ATF cites in support of this contention, *McHugh v. Rubin* [79], *United States v. Bean* [80], *Black v. Snow* [81], and *Mullis v. United States* [82], all turn on an argument that the Third Circuit has soundly rejected in this matter – that Mr. Kelerchian is seeking to compel ATF to act on his application. [83] Since the ATF cannot win on the merits, given the explicit statutory and regulatory text that mandates that Mr. Kelerchian's license is still valid, the Government resorts to attempting to pull the wool over the Court's eyes, no different than it attempted before, as well as, when before the Third Circuit.

As ATF acts in contradiction of itself on the applicability of the relevant statute and regulation and advances arguments the Third Circuit has directly disposed of in this matter, their "internal policy" and its apparent selective enforcement *is* arbitrary and capricious.

---

[78] *See*, Def. Brief in Supp. of Mtn. to Dismiss at 9, fn. 6.
[79] 220 F.3d 53 (2d Cir 2000).
[80] 537 U.S. 71 (2002).
[81] 272 F.Supp. 2d 21 (D.D.C. 2003).
[82] 230 F. 3d 215 (2d. Cir. 2000).
[83] *See Kelerchian*, 2021 WL at *2-3.

d. <u>Plaintiff has Stated a Claim Pursuant to the Due Process provisions of the Fifth Amendment</u>

The Fifth Amendment to the United States Constitution provides, in part, "No person shall be … deprived of life, liberty or property, without due process of the law." [84] It is well settled that individuals maintain interests in many different types of licenses subject to the protections of due process, which requires either pre-deprivation hearing or a prompt post-deprivation hearing for revocations or deprivations thereof. [85] Additionally, the Gun Control Act, pursuant to 18 U.S.C. § 923, *only* provides that ATF may deny the issuance of or revoke a federal firearms license; it does not provide that ATF may "void" such a license or "remov[e] [it] from its online 'FFL eZ Check' system." [86] When ATF denies the issuance of or revokes a license, pursuant to Section 923(f)(2), the applicant or license holder shall receive a written notice specifically stating the grounds for that denial or revocation, and the Attorney General is then required to "promptly" hold a hearing upon request of the aggrieved party.

As averred in his complaint, Mr. Kelerchian was informed by the Defendants that they would "void" his license 30 days after the denial of certiorari from the U.S. Supreme Court – the threat of which they carried out on July 1, 2020. [87] However, he was afforded no *pre-* or *post*-deprivation hearing relating to the invalidation, voiding, and/or revocation of his license, in violation of both the GCA and the due process protections of the Fifth Amendment. [88] The action to "void" his license was accompanied by threats of

---

[84] U.S. Const. amend. V.
[85] *See Barry v. Barchi*, 443 U.S. 55, 61 (1979); *see also*, *Bell v. Burson*, 402 U.S. 535 (1971).
[86] *See*, Def. Brief in Supp. of Mtn. to Dismiss at 9.
[87] Amended Compl. ¶ 82; Exhibit K.
[88] Amended Compl. ¶¶ 88-89.

prosecution should Mr. Kelerchian fail to transfer certain firearms out of his possession

and ownership and/or fail to turn over the certain business records as requested by ATF.[89]

Thus, Mr. Kelerchian was not only deprived of a hearing in relation to his license, but

also in relation to direct tangible property in which he maintained a direct ownership

interest.

      Defendants, once again unable to win on the merits, attempt to mislead this Court

into believing that he is requesting that the Court order a hearing on his application for

relief.[90] Mr. Kelerchian understands – and throughout these proceedings, including

before the Third Circuit, acknowledged – that he is not entitled to a hearing or decision

on his application for relief from his firearms disabilities under Section 925(c) and he has

not asked for one. Mr. Kelerchian has asked for declaratory and injunctive relief as a

result of his not being provided a pre- or post-deprivation hearing relating to the

"voiding" of his license.

      Accordingly, Mr. Kelerchian has pled sufficient facts to show that he has been

deprived of liberty and property interests without due process of law and has thus stated a

plausible claim for relief pursuant to the due process protections of the Fifth Amendment.

     e.  <u>Plaintiff has Stated a Claim Pursuant to the First Amendment by Which
          He is Entitled to Petition the Government for Redress of Grievances</u>

      The United States Constitution in Article III, Section 2, states in part, "The

Judicial power shall extend to all cases, in law and equity, arising under this Constitution,

the laws of the United States…" The First Amendment to the U.S. Constitution further

provides that "[t]he right of the people…to petition the Government for redress of

---

[89] Amended Compl. ¶¶ 80-82.
[90] *See*, Def. Brief in Supp. of Mtn. to Dismiss at 26. ("Plaintiff's suggestion that he is entitled to a hearing relating to his relief application is contrary to § 925(c) itself…")

grievances." [91] The U.S. Supreme Court has held that "[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government." [92] Then, in *California Motor Trans. Co. v. Trucking Unlimited*, the Court extended the right to petition to all departments of the Government, including administrative agencies. [93] As a result of the interplay between these constitutional provisions and Supreme Court jurisprudence, a person may not be denied the right to petition an administrative agency for redress of their grievances.

In this case, Petitioner has filed an Application for Restoration of Firearms Privileges pursuant to section 925(c) but ATF has refused to act on it, and disputes that it was "filed" at all. [94, 95] The result of ATF's position is that Mr. Kelerchian is unable to meaningfully petition the agency as required by the First Amendment; thus, making the Appropriations Rider itself unconstitutional. For comparison, if Congress chose to defund a permitting process in the national parks, resulting in an inability to obtain a permit to protest or hold other events in a national park, the courts would strike down that appropriations ban on the basis of the First Amendment. Even if, *arguendo*, ATF is

---

[91] U.S. Const. amend. I.
[92] *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011) (citation and quotation marks omitted).
[93] 404 U.S. 508, 510 (1972).
[94] Amended Compl. ¶ 95.
[95] The Third Circuit even expressed disbelief in ATF's contention that Mr. Kelerchian had not filed an Application for Relief in declaring, "ATF's practice of mailing back individuals' applications as unprocessed arguably requires ATF to recognize that an individual has filed an application for relief."

unable to hear Mr. Kelerchian's application, this Court would still have the power and obligation to do so. [96]

The Defendants argue that they are immune from suits alleging constitutional and civil rights violations, and while that may be true in some cases, it is not here. Sovereign immunity is waived by the APA at 5 U.S.C. § 702. [97]

Accordingly, this Court should find that Mr. Kelerchian' factual allegations clearly state a claim that is plausible on its face.

    f.   <u>The Rule of Lenity Requires Any Ambiguity to Inure to Mr. Kelerchian's Favor</u>

If there is any question regarding the language in Section 925(c), the implementing regulation, or the appropriations rider, because the Gun Control Act is a criminal statute with criminal and civil applications, the ambiguity must inure to Mr. Kelerchian's favor.

The "principle of legality," the "first principle" or otherwise known as the *nulla poena sine lege* of criminal law, requires that criminal laws be explicitly and unambiguously specified in advance by statute. [98] While "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law" [99], the rule of lenity – a compliment to the vagueness doctrine –

---

[96] *Cf. Arizona v. California*, 140 S.Ct. 684, 684 (2020) (Thomas, J. dissenting) (discussing discretion to decline review of cases.) and *Texas v. Pennsylvania, et al.*, 141 S. Ct. 1230 (2020).

[97] *Temple Univ. Hospital, Inc. v. Sec'y of the U.S. Dep't of Health & Hum. Servs.*, 2 F.4th 121, 132 (3d. Cir. 2021)

[98] *Liparota v. United States*, 471 U.S. 419, 424 (1985)

[99] *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926)

provides that when a criminal statute is ambiguous, rather than vague, courts are to resolve the ambiguity in the challenger's favor.

The U.S. Supreme Court has long held that "when there are two rational readings of a criminal statute, one harsher than the other, [the Court is] to choose the harsher only when Congress has spoken in clear and definite language." [100]

Perhaps more importantly to this matter, the rule of lenity applies equally to civil and criminal cases, where the applicable text is contained within a criminal statute. [101]In no better example, the U.S. Supreme Court, in addressing ATF's interpretation of the definition of "making" under the National Firearms Act, 26 U.S.C. § 5801, *et seq.*, held that the rule of lenity applied to the ambiguity in the statute because the it had "criminal applications." [102]

Accordingly, just as this Court is required to treat any well-pleaded facts as true, if there is any question regarding the language in Section 925(c), the implementing regulation, or the appropriations rider, the ambiguity must inure to Mr. Kelerchian's favor.

*          *          *          *

---

[100] *McNally* v. *United States*, 483 U.S. 350, 359-60 (1987); *see also*, *Yates* v. *United States*, 135 S. Ct. 1074, 1088 (2015) (declaring that any "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity."); *Skilling* v. *United States*, 561 U.S. 358, 410-11 (2010); *Scheidler* v. *NOW*, 537 U.S. 393, 409 (2003); *United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218, 221–22 (1952)

[101] *Leocal v. Ashcroft*, 543 U.S. 1, 12 (2004) (declaring "Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies."); *FCC v. Am. Broad. Co.*, 347 U.S. 284, 296 (1954) (declaring "There cannot be one construction for the Federal Communications Commission and another for the Department of Justice.")

[102] *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517-18 (1992).

For all these reasons, this Court should find that Mr. Kelerchian has pled facts sufficient to show that he has plausible claims for relief on each of the four counts in his Amended Complaint.

        g.  <u>In the alternative, Mr. Kelerchian should be granted leave to file an amended complaint</u>

Consistent with *Fletcher-Harlee Corp.*, 482 F.3d 247 at 251, if, *arguendo*, this Court finds that Mr. Kelerchian insufficiently pled his claims, Mr. Kelerchian respectfully requests an opportunity to file an amended complaint, guided by any decision rendered by this Court.

## VI.    Conclusion

For the foregoing reasons, the Defendant's Motion to Dismiss should be denied.

                                        Respectfully Submitted,

Dated: March 16, 2022

                                        Joshua Prince, Esq.
                                        Attorney Id. No. 306521
                                        Joshua@PrinceLaw.com

                                        Prince Law Offices, P.C.
                                        646 Lenape Road
                                        Bechtelsville, PA 19505
                                        888-313-0416
                                        610-845-3903 (fax)

                                        Attorney for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Brief was

filed electronically through the Eastern District of Pennsylvania Electronic Filing System.

Notice of this filing will be sent by operation of the court's Electronic Filing System to

all registered users in this case.

Joshua Prince, Esq.
Attorney Id. No. 306251

Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
610-313-0416
610-845-3903 (fax)

Attorney for Plaintiff