# Exhibit 1

Joshua Prince, Esq.
Attorney Id. No. 306521
Joshua@PrinceLaw.com

Dillon Harris, Esq.
Attorney Id. No. 329266
DHarris@PrinceLaw.com

Prince Law Offices, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(888) 313-0416 (t)
(610) 845-3903 (f)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VAHAN KELERCHIAN** | : | |
| | : | |
| **Plaintiff** | : | Civil Action No. 2:20-cv-00253-WB |
| | : | |
| **v.** | : | |
| | : | |
| **BUREAU OF ALCOHOL, TOBACCO,** | : | |
| **FIREARMS AND EXPLOSIVES,** an agency | : | Complaint – Violations of the |
| of the Department of Justice | : | First and Fifth Amendments, |
| | : | and the APA |
| **STEVEN DETTELBACH,** Director | : | |
| Bureau of Alcohol, Tobacco, Firearms, and | : | |
| Explosives[1] | : | |
| | : | |
| **MERRICK GARLAND,** Attorney General of | : | |
| the United States[2] | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Defendants** | : | |

---

[1] When this action was commenced, the Acting Director was Regina Lombardo. Thereafter, on June 4, 2021, as a result of the Vacancies Act, Marvin Richardson became the ATF Acting Director. More recently on July 13, 2022, Steven Dettelbach was confirmed as the Director. *See*, https://www.atf.gov/about-atf/executive-staff. As such, he is substituted as the current director.

[2] When this action was commenced, the Attorney General was William Barr. Thereafter, on March 11, 2021, Attorney General Merrick Garland was sworn in to Office. As such, he is substituted as the current Attorney General. *See*, https://www.justice.gov/ag/staff-profile/meet-attorney-general

## FIRST AMENDED COMPLAINT

COMES NOW, Plaintiff Vahan Kelerchian, by and through his attorneys, Joshua Prince, Esq., and Dillon Harris of Prince Law Offices, P.C., and complain of Defendants as follows:

## INTRODUCTION

1.   This is an action challenging the Bureau of Alcohol, Tobacco, Firearms and Explosives' ("ATF") implementation and enforcement of an unwritten policy that is contrary to the statutory language found in 18 U.S.C. § 925(c) and its own promulgated regulations found in 27 C.F.R. § 478.144(i).

2.   Specifically, ATF has taken the position, and acted consistent with that position, that where a licensed dealer, incurs disabilities under the Gun Control Act ("GCA"), 18 U.S.C. § 921, *et seq*., and timely makes and files an application for relief from those disabilities, ATF may ignore it and invalidate, void, and/or revoke the license, even though the Congress explicitly declared that a "licensed dealer … conducting operations under this chapter, who makes application for relief from the disabilities incurred under this chapter, shall not be barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section." 18 U.S.C. § 925(c).

3.   Furthermore, ATF's own promulgated regulation declares that where the licensed dealer timely files an application for relief, "the licensee may further continue licensed operations during the pendency of the application" and that "[i]n the event the term of a license of a person expires … during the pendency of the application for relief, a timely application for renewal of the license must be filed in order to continue licensed operations." 27 C.F.R. § 478.144(i).

2

4.     In absolute and direct defiance of the Congress' mandate and ATF's own regulation, and regardless of the fact that Mr. Kelerchian has made and filed an application for relief of disabilities, based on an "internal policy," ATF voided, invalidated and/or otherwise revoked his license, denied him any pre- or post-deprivation hearing, and further contended that fourteen (14) certain National Firearms Act ("NFA") firearms held pursuant to the license were contraband and subject to forfeiture if he did not immediately relinquish them, all in the absence of a determination on his application for relief, simply because the U.S. Supreme Court denied his petition for certiorari.

5.     Accordingly, the declaratory, preliminary and permanent injunctive, and other relief requested herein is necessary to prevent further enforcement of ATF's defiant policy that seeks to eviscerate the rights established by the Congress for individuals like Plaintiff and to restore Plaintiff's license.

## **PARTIES**

6.     Plaintiff Vahan Kelerchian ("Kelerchian") is a natural person, whose Federal Firearms License ("FFL"), no. 8-23-017-01-5A-02276, was based out of a premise in Warminster, Pennsylvania, and who lives in Richboro, Pennsylvania.

7.     Defendant ATF is the federal government agency responsible for enforcing the statutory laws and promulgating and enforcing regulations under the GCA and the National Firearms Act, 26 U.S.C. 5801, *et seq*.

8.     Defendant Steven Dettelbach ("ATF Director" or "Dettelbach") is the Director of the Bureau of ATF, and he is sued in that official capacity. ATF is responsible for, *inter alia*, regulating and licensing the sale, possession, transfer, and transportation of firearms and ammunition in interstate commerce, and conducting federal firearm relief determinations,

pursuant to 18 U.S.C. § 925(c). As Director of ATF, Defendant Dettelbach is responsible for the creation, implementation, execution, and administration of the laws, regulations, customs, practices, and policies of the ATF and the United States as they relate to the GCA and NFA, including implementation and enforcement of the policy complained of herein.

9.    Defendant Merrick Garland ("Attorney General" or "Garland") is the Attorney General of the United States, and he is sued in that official capacity. As Attorney General, Defendant Garland is responsible for executing and administering the laws, regulations, customs, practices, and policies of the United States including the implementation and enforcement of the policy complained of herein. As Attorney General, Defendant Garland is ultimately responsible for supervising the functions and actions of the United States Department of Justice, including the ATF, which is an arm of the Department of Justice.

10.   Defendant United States of America ("United States") is a proper party in this action pursuant to 5 U.S.C. §§ 702, 703.

## JURISDICTION AND VENUE

11.   This case concerns certain subject matter under the original and exclusive jurisdiction of the federal courts of the United States of America.

12.   This action seeks relief pursuant to 5 U.S.C. §§ 552, 702, 703, 704; and 28 U.S.C. §§ 1331, 1343, 1346, 2201, 2202, and 2412. Therefore, jurisdiction is founded on 5 U.S.C. §§ 702 and 704 and 28 U.S.C. §§ 1331 and 2201-2202, as this action arises under the Administrative Procedure Act and the Declaratory Judgment Act, as well as the Constitution and laws of the United States.

13.     This Court has authority to award costs and attorney fees pursuant to 18 U.S.C. § 924, 5

        U.S.C. § 552(a)(4)(E)(i), and 28 U.S.C. §§ 1920, 2412.

14.     Venue is proper in this district pursuant to 5 U.S.C. § 703 and 28 U.S.C. §§ 1391(b)(2),

        (e)(1)(B), as a substantial part of the events and omissions giving rise to the claims

        occurred in the Eastern District of Pennsylvania.

## CONSTITUTIONAL PROVISIONS

15.     The First Amendment to the United States Constitution provides, in the pertinent part:

        "The right of the people…to petition the Government for redress of grievances."

16.     The Fifth Amendment to the United States Constitution provides, in the pertinent part:

        "No person shall be … deprived of life, liberty or property, without due process of the

        law."

## STATUTORY AND REGULATORY FRAMEWORK

17.     The Gun Control Act ("GCA"), 18 U.S.C. § 921, *et seq*., and its implementing

        regulations, 27 C.F.R. § 478.1, *et seq*., are part of the Crimes Code and have both

        criminal and civil penalties associated with violations thereof.

18.     18 U.S.C. § 925(c) provides, in pertinent part:

>       A … *licensed dealer* … conducting operations under this chapter, who *makes*
>       application for relief from the disabilities incurred under this chapter, *shall not be
>       barred by such disability from further operations under his license pending final
>       action on an application for relief filed pursuant to this section*. (emphasis added).

19.     27 C.F.R. § 478.144(i)(1) provides, in pertinent part:

>       A licensee who incurs disabilities under the Act (see § 478.32(a)) during the term
>       of a current license or while the licensee has pending a license renewal
>       application, and *who files an application for removal of such disabilities*, shall not
>       be barred from licensed operations for 30 days following the date on which the
>       applicant was first subject to such disabilities (or 30 days after the date upon
>       which the conviction for a crime punishable by imprisonment for a term

exceeding 1 year becomes final), and *if the licensee files the application for relief as provided by this section within such 30–day period, the licensee may further continue licensed operations during the pendency of the application.* (emphasis added).

20.    27 C.F.R. § 478.144(i)(2) goes on to provide, in pertinent part

In the event the term of a license of a person expires … during the pendency of the application for relief, a timely application for renewal of the license must be *filed in order to continue licensed operations.*

21.    The Declaratory Judgment Act, 28 U.S.C. § 2201, provides, in the pertinent part:

In a case of actual controversy within its jurisdiction…as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

22.    28 U.S.C. § 2202 provides:

Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

## STATEMENT OF FACTS

*Facts Relative to Mr. Kelerchian's Licensing*

23.    In or about January of 2006, Mr. Kelerchian obtained an FFL, as a dealer, with a last known number of 8-23-017-01-5A-02276.

24.    Mr. Kelerchian's FFL no. 8-23-017-01-5A-02276 had been timely renewed, every three years, as required by 18 U.S.C. § 923 and 27 C.F.R.§ § 478.45, 478.49.

25.    Although Mr. Kelerchian timely submitted a renewal of his dealer license in December of 2014 and again on or about December 21, 2017, in direct defiance of 18 U.S.C. § 923(d)(2) and 27 C.F.R. §§ 478.47(c), (d) – which require a determination approving or denying the license within 60 days – Defendants failed to issue determinations on the

renewal applications and instead issued numerous "letters of authorization", referred to by Defendants as "LOAs", purporting to extend his license for limited periods of time.

26.     Defendants' most recent LOA purported to authorize Mr. Kelerchian to continue business until July 7, 2020, even though, his most recent renewal application of on or about December 21, 2017, if approved, would have authorized him to continue business through on or about January 1, 2021.

27.     Neither the GCA nor its implementing regulations mention "letters of authorization" or "LOAs."

28.     As of July 1, 2020, ATF took the position that Mr. Kelerchian's license was "void" due to the Supreme Court's denial of his petition for certiorari in his criminal matter and provided that all fourteen (14) post-sample machineguns were transferred by July 1, 2020, "there would be no violation of the law;" however, if Mr. Kelerchian failed to transfer these firearms by July 1, 2020, it was Defendants' position that he could be prosecuted for unlawful possession of these firearms, pursuant to 18 U.S.C. § 922(o) and 27 C.F.R. § 478.36, which, pursuant to 18 U.S.C. § 924(a)(2), could result in penalties of incarceration of up to ten years in jail and fines, per violation.

29.     On July 1, 2020, the Defendants updated the FFL eZCheck system - https://fflezcheck.atf.gov/fflezcheck/ - to reflect that Mr. Kelerchian's FFL was no longer valid. A screenshot of ATF's FFL eZCheck system reflecting Mr. Kelerchian's FFL is no longer valid is attached hereto and incorporated herein as Exhibit A.

30.     In further support that ATF invalidated, voided, and revoked Mr. Kelerchian's license, the undersigned received an email from counsel for the Defendants on August 27, 2020, which stated that "ATF considers Mr. Kelerchian's discontinuance of his firearms

7

business to be absolute at this time," and directing the business's records – required to be kept under the GCA and its regulations – to be submitted to the ATF's Out of Business Records Center and that his failure to comply is a "crime punishable as a felony, imprisonment for not more than 5 years and/or fine of not more than $250,000." A copy of the August 27, 2020 email and the ATF's Out of Business Records Request is attached hereto and incorporated herein as Exhibit B.

31.     On July 14, 2021, after the Third Circuit Court of Appeals issued its decision in this matter, the undersigned, on behalf of Mr. Kelerchian, reached out to counsel for the Defendants "formally requesting (1) re-issuance/activation of his FFL that ATF, over his objection, has listed as invalid and discontinued; (2) return of his acquisition and disposition records that ATF forced him to turn in to the out-of-business center under threat of charging if he failed to do so; and (3) approval of transfers back to his FFL of all previously transferred firearms that ATF forced him to transfer under threat of charging if he failed to do so."

32.     On August 2, 2021, counsel for Defendants directed the undersigned to communicate directly with ATF regarding this request.

33.     After doing so, the undersigned was informed by ATF Philadelphia Division Counsel Kevin White that the "three requests were denied." A copy of ATF Philadelphia Division Counsel Kevin White's response is attached hereto and incorporated herein as Exhibit C.

*Facts Relative to Mr. Kelerchian's Chargings*

34.     On May 17, 2013, Mr. Kelerchian was charged in a nine (9) count Indictment, primarily related to the putative transfer of machineguns and laser-aiming devices, in the U.S. District Court, Northern District of Indiana, docket no. 2:13-cr-00066.

35.   On or about October 15, 2015, the jury found Mr. Kelerchian guilty of some, but not all, charges.

36.   After several motions, on February 5, 2018, Mr. Kelerchian was sentenced.

37.   Mr. Kelerchian appealed his conviction and the filed a petition for certiorari before the U.S. Supreme Court.

38.   On June 1, 2020, the United States Supreme Court denied Mr. Kelerchian's petition for certiorari.

*Facts Relative to Mr Kelerchian's Application for Relief*

39.   As a result of the Mr. Kelerchian's sentencing on February 5, 2018, within the 30 days as mandated by 27 C.F.R. § 478.144(i)(1), on March 2, 2018, the undersigned submitted one (1) day Priority Mail letters to then-ATF Acting Director Thomas Brandon, Philadelphia Director of Industry Operations Juan Orellana, and ATF's NCETR division with three copies of Mr. Kelerchian's Application for Restoration of Firearms Privileges, pursuant to 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144, and requisite documentation. A copy of the letters to each entity and enclosed documents is attached hereto and incorporated herein as Exhibit D.

40.   As set-forth in the letter, 27 C.F.R. § 478.11 requires three copies of the application to be filed with the Director, but the application instructions only require one copy to be filed with NCETR; thus, as a matter of precaution, the undersigned submitted three copies of the executed Applications with the applicable documents (as contained in Exhibit D) to each: then-ATF Acting Director Thomas Brandon, Philadelphia Director of Industry Operations Juan Orellana, and ATF's NCETR division. *Id*.

41.     As further set-forth in the letter, the undersigned declared that "[p]ursuant to Sections 925(c) and 478.144(i), as Mr. Kelerchian is an FFL holder, who has continually and timely renewed his FFL, he shall not be 'barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section.'" *Id*.

42.     The mailing to then-ATF Acting Director Brandon was received on March 7, 2018. A copy of the mailing certificates is attached hereto and incorporated herein as Exhibit E.

43.     The mailing to Philadelphia Director of Industry Operations Orellana was received on March 6, 2018. A copy of the mailing certificates is attached hereto and incorporated herein as Exhibit F.

44.     The mailing to ATF NCETR division was received on March 6, 2018. A copy of the mailing certificates is attached hereto and incorporated herein as Exhibit G.

45.     On April 3, 2018, the undersigned received a response dated March 27, 2018, from John R. Day, Chief, Explosives Enforcement and Training Division, acknowledging receipt of Mr. Kelerchian's Application for Restoration of Firearms Privileges, but stating that since ATF cannot, currently, act on applications for relief, the application was being returned to the undersigned. A copy of ATF's March 27, 2018 letter is attached hereto and incorporated herein as Exhibit H.

46.     On April 9, 2018, the undersigned responded by explaining that as the statutory and regulatory law only requires that an FFL "make" and "file" an application for relief, ATF is required to retain the application and process it, when, if ever, the Congress appropriates money for ATF to conduct federal firearms relief determinations, and resubmitted Mr. Kelerchian's Application for Restoration of Firearms Privileges with the

applicable documents (as contained in Exhibit D). A copy of the letter is attached hereto and incorporated herein as Exhibit I.

47.     The undersigned's April 9, 2018 letter with Mr. Kelerchian's Application for Restoration of Firearms Privileges and the applicable documents (as contained in Exhibit D) was received by ATF Chief John Day on April 12, 2018. A copy of the certified return receipt reflecting receipt of the April 9, 2019 letter and enclosures is attached hereto and incorporated herein as Exhibit J.

48.     Neither Chief John Day nor anyone else acting as an employee or agent of the Defendants has sent any further correspondences regarding Mr. Kelerchian's Application for Restoration of Firearms Privileges.

49.     Neither then Acting Director Brandon, Director Orellana, nor NCETR returned Mr. Kelerchian's Application for Restoration of Firearms Privileges.

50.     Mr. Kelerchian's timely and properly filed Application for Restoration of Firearms Privileges is currently in the possession of Defendants.

51.     Defendants do not dispute that Mr. Kelerchian timely and properly filed his Application for Restoration of Firearms Privileges and that it is currently in their possession.

52.     Nor could the Defendants, as the Third Circuit Court of Appeals found that "[o]n March 2, 2018—within 30 days of his sentencing—Kelerchian mailed an 'Application for Restoration of Firearms Privileges' to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)" and "ATF did not return the application again or send any other correspondence regarding the application." *Kelerchian v. ATF*, 2021 WL 2910934, at *1 (3d Cir. July 12, 2021)

53.     Furthermore, the Third Circuit declared "ATF's practice of mailing back individuals'

        applications as unprocessed arguably requires ATF to recognize that an individual has

        filed an application for relief." *Id*. at *3, Fn. 5.

*Facts Relative to Defendants' Refusal to Acknowledge*
*Mr. Kelerchian's Application for Restoration of Firearms Privileges*

54.     On November 27, 2019, ATF Philadelphia Division Counsel Kevin White inquired as to

        whether Mr. Kelerchian had filed an appeal with the U.S. Supreme Court in relation to

        his criminal chargings, as ATF is taking the position, pursuant to an internal policy

        (hereinafter "internal policy"), that although Mr. Kelerchian timely complied with 18

        U.S.C. § 925(c) and 27 C.F.R. 478.144 by making and filing the application for relief

        with ATF, since ATF cannot adjudicate the application that it could immediately revoke

        his license if the U.S. Supreme Court denied certiorari – in direct defiance of the enacted

        statutory and regulatory text.

55.     This "internal policy", although a final agency action, has not been published anywhere,

        including, but not limited to, in the Federal Register, and it is unknown whether it exists

        in written form.

56.     This "internal policy" is the basis for Defendants' invalidation, voiding, and/or revoking

        of Mr. Kelerchian's FFL.

57.     The Defendants' invalidation, voiding, and/or revoking of Mr. Kelerchian's FFL is a final

        agency action, as additionally supported by ATF's threats of criminal prosecution against

        Mr. Kelerchian if he did not (1) transfer his post-sample machineguns by July 1, 2020

        and (2) turn in all of his business records to the ATF Out of Business Center by

        September 18, 2020, because if Mr. Kelerchian's FFL remained valid and intact, his

continued possession of his firearms and business records would continue to be lawful and there would be no basis under the law for criminal prosecution related thereto.

## COUNT I: DECLARATORY RELIEF
## PURSUANT TO 28 U.S.C. §§ 2201-2202

58.    The foregoing paragraphs are hereby incorporated herein as if set forth in full.

59.    28 U.S.C. § 2201 provides "In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

60.    28 U.S.C. § 2202 provides "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

61.    Pursuant to the Declaratory Judgement Act, Mr. Kelerchian seeks a declaration of his rights from this Court, including, but not limited to a declaration that he complied with 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144 and thus may continue to operate under the previously issued license, a declaration that Defendants' actions constitute a final agency action, and a declaration that Defendants have violated his First and Fifth Amendment rights.

62.    Additionally, pursuant to 28 U.S.C. § 2202, Mr. Kelerchian seeks an order from this Court returning his previously issued license to him, an injunction preventing Defendants from invalidating, voiding, and/or revoking his license based on their purported inability to process his Application for Restoration of Firearm Privileges, and attorneys fees and costs.

63.  There is no dispute that Mr. Kelerchian timely filed his Application for Restoration of Firearms Privileges, pursuant to 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144, and requisite documentation. *See*, *Kelerchian v. ATF*, 2021 WL 2910934, at *1.

64.  The Third Circuit recognized that "ATF's practice of mailing back individuals' applications as unprocessed arguably requires ATF to recognize that an individual has filed an application for relief." *Id*. at *3, Fn. 5.

65.  As a result, pursuant to Section 925(c), Mr. Kelerchian "shall not be barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section."

66.  Furthermore, pursuant to ATF's own promulgated regulation – 27 C.F.R. § 478.144(i) – Mr. Kelerchian "shall not be barred from licensed operations … [and] may further continue licensed operations during the pendency of the application."

67.  Although Mr. Kelerchian has timely made and filed his application for relief with ATF (*Id*. at *1), in direct defiance of the Congressional mandate in Section 925(c), and ATF's own promulgated regulation in 478.144(i), Defendants contend they can, and have since, invalidated, voided, and/or revoked his license despite Mr. Kelerchian's statutory and regulatory compliance.

68.  Specifically, Defendants contend pursuant to ATF's "internal policy" that even if a FFL licensee timely complies with 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144 by making and filing the application for relief with ATF, since ATF cannot adjudicate the application, ATF can immediately invalidate, void, and/or revoke the license upon a final determination on the criminal charges and thereafter threaten criminal prosecution if the

14

licensee does not immediately (1) transfer certain firearms held pursuant to the license and (2) turn in the licensee's business record to the ATF Out of Business Center..

69.     Moreover, while Congress has passed an appropriations bill that bans ATF's ability to investigate or act upon applications for relief from federal firearms disabilities, the Third Circuit declared "ATF provides no support for a reading of 'investigate or act upon' that includes the mere recognition of the fact that an application for relief has been filed or the legal effect of such a filing." *Id*. at *3

70.     Wherefore Mr. Kelerchian is entitled to, *inter alia*, preliminary and permanent injunctive, and declaratory relief, in addition to attorney fees and costs.

**COUNT II: ATF'S INVALIDATION, VOIDING, AND/OR REVOCATION OF MR. KELERCHIAN'S LICENSE CONSTITUTES A FINAL AGENCY ACTION PURSUANT TO 5 U.S.C. § 704**

71.     The foregoing paragraphs are hereby incorporated herein as if set forth in full.

72.     An agency action is considered final under 5 U.S.C. § 704 when the action "marks the 'consummation' of the agency's decision making process" and the action is "one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177 (1997) (internal citations omitted).

73.     Congress has clearly declared that if a "licensed dealer … makes application for relief from the disabilities…[he] shall not be barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section."

74.     Despite the timely filing of his Application for Restoration of Firearms Privileges, pursuant to 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144, along with the requisite documentation (Exhibit D), ATF not only has failed to acknowledge an application was

filed, but instead invalidated, voided, and/or revoked Mr. Kelerchian's license, in direct

contravention to the statutory text.

75.     ATF's invalidation, voiding, and revocation of Mr. Kelerchian's license can only be

interpreted as the "consummation" of the agency's decision-making process and as a

result of that invalidation, voiding, and/or revocation, have implicated Mr. Kelerchian's

rights and created legal consequences that flow from his inability to maintain a license.

76.     The Defendants' invalidation, voiding, and/or revoking of Mr. Kelerchian's FFL is a final

agency action, as additionally supported by ATF's threats of criminal prosecution against

Mr. Kelerchian if he did not (1) transfer his post-sample machineguns by July 1, 2020

and (2) turn in all of his business records to the ATF Out of Business Center by

September 18, 2020, because if Mr. Kelerchian's FFL remained valid and intact, his

continued possession of his firearms and business records would continue to be lawful

and there would be no basis under the law for criminal prosecution related thereto

77.     Accordingly, ATF's revocation of Mr. Kelerchian's FFL must be deemed a "final agency

action," and as such, Mr. Kelerchian is entitled to this Court's review of the agency's

action as well as preliminary and permanent injunctive, declaratory relief, and attorney

fees and costs.

## COUNT III: DEFENDANTS VIOLATED MR. KELERCHIAN'S RIGHT TO DUE PROCESS PURSUANT TO THE FIFTH AMENDMENT

78.     The foregoing paragraphs are hereby incorporated herein as if set forth in full.

79.     The Fifth Amendment to the United States Constitution provides, in part, "No person

shall be … deprived of life, liberty or property, without due process of the law." U.S.

Const. amend. V.

80.     Mr. Kelerchian has a liberty interest in being free from prosecution and further

        incarceration from Defendant's improper and unsupportable positions, specifically,

        Defendant's decision to invalidate, void, and/or revoke his license and their subsequent

        threats of prosecution for failure to transfer certain firearms out of his possession and

        ownership and turn in business records despite Mr. Kelerchian's compliance with 18

        U.S.C. § 925(c). *See* Exhibit K ("As long as the applicable transfer forms for these

        machineguns are submitted to ATF by July 1, 2020, there would be no violation of the

        law"); Exhibit B ("***WILLFULL FAILURE TO TURN IN YOUR OUT-OF-BUSINESS***

        ***RECORDS TO ATF…IS A CRIME PUNISHABLE AS A FELONY,***

        ***IMPRISONMENT FOR NOT MORE THAN 5 YEARS AND/OR A FINE OF NOT***

        ***MORE THAN $250,000.***") (emphasis original).

81.     Furthermore, Mr. Kelerchian maintains a property interest in his issued license, firearms

        and his business records, for which he was given no hearing or other form of due process

        prior to the invalidation, voiding, and/or revocation of his license by Defendants and

        subsequent forced dispossession of certain of his firearms and all of his business records

        under threat of prosecution, incarceration, and/or fines, despite being legally required to

        maintain them and retain possession of them on the business premises. *See* 18 U.S.C. §

        923(g)(1)(A) ("Each [licensee] shall maintain such records of…receipt, sale, or other

        disposition of firearms at his place of business…") and 27 C.F.R. § 478.121(a) ("The

        records pertaining to firearms transactions prescribed by this part shall be retained on the

        licensed premises…").

82.     In an email to the undersigned, Defendants stated that 30 days after the denial of

        certiorari they would "void" Mr. Kelerchian's issued license (*see* Exhibit K) and on July

1, 2020, ATF updated the FFL eZCheck system (*see* Exhibit A) to reflect that Mr. Kelerchian's FFL was "invalid".

83.   Notably, nothing in the GCA allows for the ATF to "void" or invalidate a licensed. 18 U.S.C. § 923 (stating procedures for *denial* or *revocation* of a license).

84.   Specifically, 18 U.S.C. § 923(f)(1) provides "Any person whose application for a license is denied and any holder of a license which is revoked shall receive a written notice from the Attorney General stating specifically the grounds upon which the application was denied or upon which the license was revoked."

85.   Furthermore, Section 923(f)(2) requires the Attorney General to "promptly" hold a hearing to review the denial or revocation upon request by the aggrieved party.

86.   The United States Supreme Court, in the context of the suspension of a horse trainer's license, found a New York statute to violate the individual's right to due process, as it did not provide a timeframe for which a post-deprivation hearing would occur. *Barry v. Barchi*, 443 U.S. 55, 61 (1979).

87.   While the Court did find a right to suspend the license without a pre-suspension hearing, the Court held "[I]t was necessary that Barchi be assured a prompt postsuspension hearing, one that would proceed and be concluded without appreciable delay. Because the statute as applied in this case was deficient in this respect, Barchi's suspension was constitutionally infirm under the Due Process Clause of the Fourteenth Amendment." *Barchi*, 443 U.S. at 66.

88.   In the instant matter, not only was Mr. Kelerchian not provided a pre-deprivation hearing, but he was also not offered any form of post deprivation hearing, let alone "written notice

from the Attorney General," in direct violation of 18 U.S.C. § 923(d) and in violation of his right to due process under the Fifth Amendment.

89.     Accordingly, ATF's violations of the Fifth Amendment result in Mr. Kelerchian being entitled to, *inter alia*, preliminary and permanent injunctive, and declaratory relief, in addition to attorney fees and costs.

## COUNT IV: RIGHT TO PETITION THE GOVERNMENT FOR REDRESS OF GRIEVANCES PURSUANT TO THE FIRST AMENDMENT

90.     The foregoing paragraphs are hereby incorporated herein as if set forth in full.

91.     Article III, Section 2 of the United States Constitution states, in part, "The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States…"

92.     The First Amendment to the United States Constitution provides, in part, "The right of the people…to petition the Government for redress of grievances." U.S. Const. amend. I.

93.     The right to petition extends to all departments of the Government including "administrative agencies," *California Motor Trans. Co., v. Trucking Unlimited*, 404 U.S. 508, 510 (1972), and encompasses formal and informal complaints, *McDonald v. Smith*, 472 U.S. 479, 484 (1985), about matters of public and private concern.

94.     "[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011) (citation and quotation marks omitted).

95.     Despite the timely filing of his Application for Restoration of Firearms Privileges, pursuant to 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144, along with the requisite documentation (Exhibit D), ATF has failed to take any action on the petition and claims

19

one was never filed, denying Mr. Kelerchian his First Amendment right to petition the government for redress of grievances.

96. While an appropriations ban for the processing of federal firearms relief determinations does exist, its existence does not inherently equate to constitutionality, particularly if it denies an individual the right to petition the government for grievances in violation of their First Amendment rights, nor does it alter the plain language of the statute which only requires that a licensee make application for relief in order to not be barred from operation under 18 U.S.C. § 923.

97. Had Congress, hypothetically, chosen to defund a permitting process in National Parks that allowed people to protest or otherwise hold events, such that the process itself existed, but the National Parks had no manner in which they could process permits since funds were not appropriated for that purpose, the Courts would strike down such an affront to the First Amendment.

98. Article III, Section 2 of the United States Constitution vests this Court with the power to hear all cases arising under the laws of the United States, which would include 18 U.S.C. § 925(c).

99. In the event, *arguendo*, ATF's position that it cannot act on Mr. Kelerchian's application for relief from federal firearms disabilities be accepted, this Court still has the power to hear Mr. Kelerchian's complaint and in fact, must do so. *Cf. Arizona v. California*, 140 S. Ct. 684, 684 (2020) (Thomas, J. dissenting) (discussing discretion to decline review of cases.) and *Texas v. Pennsylvania, et al.*, 141 S. Ct. 1230 (2020).

100.    For each day that has passed, there has been a final agency action and a continuous ongoing injury that has occurred, further solidifying this Courts ability to hear Mr. Kelerchian's complaint.

101.    Accordingly, ATF's violations of the First Amendment result in Mr. Kelerchian being entitled to, *inter alia*, preliminary and permanent injunctive, and declaratory relief, in addition to attorney fees and costs.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Mr. Kelerchian respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, as follows:

a)    Preliminarily and permanently enjoin Defendants, their officers, agents, servants, employees and all persons in active concert or participation with them from enforcing their "internal policy" that even if a FFL licensee timely complies with 18 U.S.C. § 925(c) and 27 C.F.R. 478.144 by making and filing the application for relief with ATF, since ATF cannot adjudicate the application, that ATF can immediately invalidate, void, and/or revoke the license upon a final determination on the criminal charges;

b)    Declare that Mr. Kelerchian timely complied with 18 U.S.C. § 925(c) and 27 C.F.R. 478.144 by making and filing the application for relief with ATF and was and continues to be entitled to continue operation under that license until such time ATF had taken a final action on his application for relief;

c)    Declare that Defendants are prohibited from implementing and enforcing their "internal policy" as it violates 18 U.S.C. § 925(c), 27 C.F.R. § 478.144, and their statutory authority.

d)      Declare that Defendants act of invalidating, voiding, and/or revoking Mr. Kerlerchian's

        license constitutes a final agency action under the Administrative Procedures Act;

e)      Order Defendants reinstate Mr. Kelerchian's prior federal firearms license;

f)      Declare that Defendants violated Mr. Kelerchian's Fifth Amendment right to due process;

g)      Declare that Defendants violated Mr. Kelerchian's First Amendment right to petition the

        government for grievances;

h)      Permanently enjoin Defendants, their officers, agents, servants, employees and all

        persons in active concert or participation with them from enforcing their "internal policy"

        that even if a FFL licensee timely complies with 18 U.S.C. § 925(c) and 27 C.F.R.

        478.144 by making and filing the application for relief with ATF, that ATF can

        immediately invalidate, void, and/or revoke the license upon a final determination on the

        criminal charges;

i)      Award Plaintiff costs and attorney fees and expenses to the extent permitted under 5

        U.S.C. § 552(a)(4)(E)(i), 18 U.S.C. § 924, and 28 U.S.C. §§ 1920, 2202, and 2412; and

j)      Grant any and all other equitable and/or legal remedies this Court may see fit.


                         Respectfully Submitted,




                         Joshua Prince, Esq.
                         Joshua@PrinceLaw.com

                         Dillon Harris, Esq.
                         DHarris@PrinceLaw.com

                         Prince Law Offices, P.C.
                         646 Lenape Road
                         Bechtelsville, PA 19505

22

(888) 313-0416 (t)
(610) 845-3903 (f)

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VAHAN KELERCHIAN** | : | |
| | : | |
| **Plaintiff** | : | Civil Action No. 2:20-cv-00253-WB |
| | : | |
| **v.** | : | |
| | : | |
| **BUREAU OF ALCOHOL,** | : | |
| **TOBACCO, FIREARMS AND** | : | |
| **EXPLOSIVES,** *et al.* | : | |
| | : | |
| **Defendants** | : | |

## Exhibit List to Complaint

**Exhibit A**:  ATF's FFL EzCheck Screenshot

**Exhibit B**:  August 27, 2020 email and ATF's Out of Business Records Request

**Exhibit C**:  August 18, 2020 email from ATF Philadelphia Division Counsel Kevin White

**Exhibit D**:  March 2, 2018 letter enclosing Mr. Kelerchian's Application for Restoration of Firearms Privileges, pursuant to 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144, and requisite documentation.

**Exhibit E**:  Mailing certificate to then-ATF Acting Director Thomas Brandon

**Exhibit F**:  Mailing certificate to Philadelphia Director of Operations Orellana

**Exhibit G**:  Mailing certificate to ATF NCETR

**Exhibit H**:  March 27, 2018 letter from ATF re: Mr. Kelerchian's Application for Restoration of Firearms Privileges

**Exhibit I**:  April 9, 2018 letter in response to ATF's March 27, 2018 letter

**Exhibit J**:  Mailing certificate to ATF Chief John Day

**Exhibit K**:  June 15, 2020 email from AUSA Lauren DeBruicker

Exhibit A



**ATF** Online
Bureau of Alcohol, Tobacco, Firearms and Explosives
U.S. Department of Justice



**FFL eZ Check** 3.1.2
Bureau of Alcohol, Tobacco, Firearms and Explosives

> FFL Search
> FFL Download

## Federal Firearms License Results

**You Entered FFL Number: 8-23-XXX-XX-XX-02276**

If you are certain you entered the correct license number, there is a strong possibility that the FFL you are attempting to verify is invalid and/or this may be an attempt at a fraudulent transaction.

**You should not complete the transaction without first contacting ATF at 1-877-560-2435 for assistance.**

If you only have general questions concerning this web site, or the information displayed above, please contact ATF using the Problem Report link provided at the end of this page.

Select **Problem Report** to Report errors to ATF.



If you have difficulty accessing any information in the site due to a disability, please contact us via email (webmaster@atf.gov) and we will do our best to make the information available to you.

This site is best viewed at 1024 x 768 screen resolution or higher using Internet Explorer 5.5 or higher.

ATTENTION: Users may experience compatibility problems when attempting to view PDF files using Internet Explorer browser version 5 and above and Adobe Acrobat Reader 4.0. If problems occur, consider the following options: Right-click on PDF link and save to local drive; Use an earlier version of Adobe Acrobat Reader; Use an earlier version of Internet Explorer; or convert PDF to text using ATF's PDF Conversion Engine.

WARNING! This computer system is the property of the United States Department of Justice. The Department may monitor any activity on the system and search and retrieve any information stored within the system. By accessing and using this computer, you are consenting to such monitoring and information retrieval for law enforcement and other purposes. Users should have no expectation of privacy as to any communication on or information stored within the system, including information stored on the network and stored locally on the hard drive or other media in use with this unit (e.g., floppy drives, CD-ROMS, etc.).

Exhibit B

From: **DeBruicker, Lauren (USAPAE)** Lauren.DeBruicker@usdoj.gov 
Subject: RE: Kelerchian Out of Business Record Request
Date: August 27, 2020 at 1:51 PM
To: Joshua Prince joshua@princelaw.com

LD

Dear Joshua,

Thank you for your patience on this. As I expect you are quite familiar with, 27 C.F.R. § 478.127 provides that where discontinuance of a firearms business is absolute, the business's records required by the Gun Control Act must be provided to ATF.  In light of his criminal conviction becoming final, as well as the recent decision of the U.S. District Court, ATF considers Mr. Kelerchian's discontinuance of his firearms business to be absolute at this time. While the government recognizes that Mr. Kelerchian may appeal the U.S. District Court's decision, the records must nonetheless be provided to ATF now, as ATF may need to access the records in question to conduct the vital work of firearms tracing while any such appeal is pending.

However, just as with the out of business letter a few months ago, I would think it possible for Mr. Kelerchian to submit the records to ATF with a cover letter (and perhaps a note in the comments section of the form ATF provided) noting the pending litigation, the claims he is asserting therein, and – if the outcome following all appeals is favorable to him – he will request that the records be returned to him. I also understand there is nothing preventing Mr. Kelerchian from keeping a copy of the records for future reference.

I am available to discuss further if that would be helpful.

Many thanks,

Lauren

Lauren DeBruicker
215.861.8492 | Lauren.DeBruicker@usdoj.gov

**From:** Joshua Prince <joshua@princelaw.com>
**Sent:** Wednesday, August 19, 2020 12:37 PM
**To:** DeBruicker, Lauren (USAPAE) <LDeBruicker@usa.doj.gov>
**Subject:** Kelerchian Out of Business Record Request

Good Afternoon Lauren,

I wanted to reach out, as my client just received the attached letter; however, no final determination has been rendered in the case, as there are 60 days from the denial of reconsideration of August 12, 2019 to appeal to the Third Circuit. As such, I just wanted to confirm with you that there is no dispute that my client may remain in possession of all records until a determination becomes final. Please let me know at your earliest convenience. Hope all is well

Joshua

Joshua Prince, Esq.

Joshua Prince, Esq.
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
888-313-0416 ext 81114
610-845-3903 (fax)
Joshua@PrinceLaw.com

The highest compliment we can receive is the referral of your friends, family and business associates. Thank you for your trust

****Email Confidentiality Note****

The information contained in this electronic message may contain attorney-client privileged and confidential information only for use of the owner of the email address listed as the recipient of this message. Further, this e-mail may contain information that is proprietary and/or constitutes a trade secret. This e-mail, including attachments, constitutes non-public information intended to be conveyed only to the designated recipient of this communication, please be advised that any disclosure, dissemination, distribution, copying, or use of this communication or any attached document is strictly prohibited. If you have received this communication in error, please immediately destroy the same and notify the sender by return email and by telephone at 888-313-0416.

# FFL Out-of-Business Records Request

Licensee:

Our records indicate that your licensed firearms business has been discontinued.  Please read the information below before completing the form on reverse.

***Was your firearms business permanently discontinued?***
If your firearms business was permanently discontinued, the Gun Control Act and its implementing regulations require that your firearms records be sent within 30 days to the ATF Out-of-Business Records Center, 244 Needy Road, Martinsburg, WV 25405, or to any ATF office in the division in which the business was located.  Licensed Collectors of Curios and Relics (Type 03) are NOT required to turn in their records.

***Did you maintain computerized records?***
If you maintained your firearms records in an electronic database pursuant to ATF Ruling 2016-1 (or a predecessor ruling), or an ATF approved variance , you must provide that data with column headings in an ASCII text file such as a CSV (comma separated value) file or other delimited file (tab delimited, pipe delimited, etc.) including a file description.  If this option is unavailable, the computerized database must be printed and sent to the Out-of-Business Records Center, or to any ATF office in the division in which the business was located with ALL of your federally required records.  The ASCII text file and print-out (if applicable) must contain the information perscribed in Subpart H of Title 27 CFR Part 478.

***Was your firearms business succeeded by a new licensee?***
If your firearms business was succeeded by a new licensee, the records required by 27 CFR 478.121-134 shall appropriately reflect such facts and shall be delivered to the successor.  Please note, however, the records may instead be delivered within 30 days following the business discontinuance to the ATF Out-of-Business Records Center or to any ATF office in the division in which the business was located.

| LICENSE NUMBER |
| --- |
| **8-23-017-01-DR-02276** |

| LICENSE NAME |
| --- |
| **KELERCHIAN, VAHAN S** |

| EXPIRATION DATE |
| --- |
| **January 1, 2015** |

| MAILING ADDRESS |
| --- |
| **KELERCHIAN, VAHAN S**<br>**PO BOX 226**<br>**RICHBORO, PA  18954-** |

*WILLFUL FAILURE TO TURN IN YOUR OUT-OF-BUSINESS RECORDS TO ATF OR TO A SUCCESSOR IS A CRIME PUNISHABLE AS A FELONY, IMPRISONMENT FOR NOT MORE THAN 5 YEARS AND/OR A FINE OF NOT MORE THAN $250,000.*

Your permanent acquistion and disposition (A&D) records must be complete, including: (a) An entry for EACH firearm acquired during the term of your firearms business; (b) An entry for each firearm sold or transferred *(including transactions with other licensees and firearms transferred to your personal possession)*; and (c) An entry showing the disposition of EACH of the firearms in your inventory when you discontinued your firearms operation.

***Questions concerning your firearms records:***
If you have any questions concerning your out-of-business firearms records, please contact ATF's Out-of-Business Records Center toll-free at 1-800-788-7133, ext. 03683.

***Questions concerning your firearms license:***
If you have any questions concerning your license, please contact ATF's Federal Firearms Licensing Center (FFLC) toll-free at 1-866-662-2750.

 **COMPLETE FORM ON REVERSE** 

ATF Form 5300.3A
Revised (Oct-2018)

COMPLETE THE BELOW INFORMATION IN INK AND PLACE A CHECK MARK IN THE APPROPRIATE BOXES THAT APPLY.

My complete firearms records, which included all acquisition and disposition books and ATF Forms 4473:

☐ WERE sent/delivered to ATF on _____.
                                         (date)

The firearms records were sent/delivered to: _____.
                                                          (location)

☐ WILL BE sent/delivered to ATF.  I anticipate sending the records to ATF on _____.
                                                                                        (date)

The firearms records will be sent/delivered to: _____.
                                                          (location)

☐ My firearms records were incomplete.
   (Please explain in the comments section below, or on a separate sheet of paper, why the records were incomplete.  Also, if you sent the
   incomplete records to ATF, please tell us the date they were sent and where they were sent to.  If you gave the incomplete records to the
   firearms business successor, please tell us the date the records were delivered, the successor's name, and license number; if known.  Finally,
   if you still have the records, please tell us the date they will be sent to ATF and the location they will be sent to.)

☐ ALL my firearms records were delivered to the firearms business successor *(If applicable)*.

Date records delivered: _____

Successor's Name: _____

License Number and License Name: _____

☐ No firearms business was conducted, therefore, I had no firearms records.

Comments _____
           _____
           _____
           _____
           _____

| Signature | Date | Printed Name |
|---|---|---|
| Telephone Number | Alternate Contact Number and/or E-mail Address | |

*RETURN COMPLETED FORM vua email, fax, or mail to:*
email: **NTC-OBRRReceivingSection@atf.gov**
Fax number:  1-877-283-0288
ATF OUT-OF- BUSINESS RECORDS CENTER
244 NEEDY ROAD
MARTINSBURG, WV 25405

**PAPERWORK REDUCTION ACT NOTICE**

The information required on this form is in accordance with the Paperwork Reduction Act of 1995.  The information is used to facilitate firearms tracing.  The information requested is required by 18 U.S.C. § 923. The estimated average burden associated with this collection is 5 minutes per respondent or recordkeeper, depending on individual circumstances.  Comments concerning the accuracy of this burden estimate and suggestions for reducing this burden should be directed to Reports Management Officer, Document Services Branch, Bureau of Alcohol, Tobacco, Firearms and Explosives, Washington, DC  20226. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

ATF Form 5300.3A
Revised (Oct-2018)

Exhibit C

From: **White, J. Kevin** John.K.White@usdoj.gov 🚩 
Subject: RE: Vahan Kelerchian v ATF
Date: August 18, 2021 at 9:23 AM
To: Civil Rights Defense Firm, P.C. Joshua@CivilRightsDefenseFirm.com
Cc: Cohen, Jeffrey A. Jeffrey.A.Cohen@usdoj.gov

Dear Joshua,

Jeff and I forwarded your email to the ATF Philadelphia Field Division for
consideration, and your three requests were denied. As you are aware, the
Third Circuit dismissed Mr. Kelerchian's complaint without prejudice for
failure to state a claim.  Accordingly, at this time Mr. Kelerchian has not
prevailed in his legal action.

Sincerely,

Kevin White
Division Counsel
ATF Philadelphia Field Division

---

**From:** Civil Rights Defense Firm, P.C. <Joshua@CivilRightsDefenseFirm.com>
**Sent:** Tuesday, August 17, 2021 2:17 PM
**To:** White, J. Kevin <John.White@atf.gov>
**Subject:** Vahan Kelerchian v ATF

Hi Kevin,

I previously reached out to AUSA Lauren DeBruicker in relation to the Third Circuit's
decision in the *Kelerchian* declaring that the three arguments advanced by ATF regarding the
inapplicability/invalidity of 925(c) were frivolous and in error and that I was, consistent with the
U.S. Government's and our agreement, formally requesting on behalf of my client (1) re-
issuance/activation of his FFL that ATF, over his objection, has listed as invalid and discontinued;
(2) return of his acquisition and disposition records that ATF forced him to turn in to the out-of-
business center under threat of charging if he failed to do so; and (3) approval of transfers back to
his FFL of all previously transferred firearms that ATF forced him to transfer under threat of
charging if he failed to do so. AUSA Debruicker responded back that I should address these issues
with you, as ATF Division Counsel that covers Mr. Kelerchian's FFL.

Can you kindly advise when Mr. Kelerchian's FFL will be reinstated and acquisition and
disposition records returned to him? Also, please advise as to which NFA Branch employee we
should deal with in having Mr. Kelerchian's NFA firearms transferred back to his license.

Thank you in advance and I hope this email finds you doing well.

Thank you in advance and I hope this email finds you doing well

Joshua

Joshua Prince, Esq.
Firearms Industry Consulting Group® (FICG®)
a Division of Civil Rights Defense Firm, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
888-202-9297 ext. 81114
610-400-8439 (fax)
Joshua@CivilRightsDefenseFirm.com

Your PA Firearms Lawyer® and PA Gun Attorney®, as well as, the home to armor piercing arguments®.  You can find our firearms-specific website at www.FirearmsIndustryConsultingGroup.com or our Firm's main website at www.CivilRightsDefenseFirm.com.


The highest compliment we can receive is the referral of your friends, family and business associates. Thank you for your trust


****Email Confidentiality Note****

The information contained in this electronic message may contain attorney-client privileged and confidential information only for use of the owner of the email address listed as the recipient of this message. Further, this e-mail may contain information that is proprietary and/or constitutes a trade secret. This e-mail, including attachments, constitutes non-public information intended to be conveyed only to the designated recipient of this communication, please be advised that any disclosure, dissemination, distribution, copying, or use of this communication or any attached document is strictly prohibited. If you have received this communication in error, please immediately destroy the same and notify the sender by return email and by telephone at 888-202-9297.

Exhibit D

# PRINCE LAW OFFICES, P.C.

Warren H. Prince
Karl P. Voigt IV
Joshua Prince
Eric E. Winter
Thomas H. Odom
Stanley J. Kuter
Jeffrey A Franklin
Adam J. Kraut
Jorge Pereira

| | |
|---|---|
| Bechtelsville | 1-610-845-3803 |
| Allentown | 1-610-770-1151 |
| Bethlehem | 1-610-814-0838 |
| Camp Hill | 1-717-731-0100 |
| Lancaster | 1-717-393-7002 |
| Lebanon | 1-717-274-9250 |
| North Wales | 1-215-412-0800 |
| Pottstown | 1-610-326-4200 |
| Pottsville | 1-570-621-8828 |
| Reading | 1-610-375-8425 |
| Toll Free | 1-888-313-0416 |
| Fax | 1-610-845-3903 |

March 02, 2018

U.S. Department of Justice - Bureau of Alcohol, Tobacco, Firearms and Explosives
Attention Bureau of Alcohol, Tobacco, Firearms and Explosives NCETR - Relief of Disabilities
Section
Corporal Road, Building 3750, Redstone Arsenal
Huntsville, AL 35898

RE:   Vahan Kelerchian Application for Restoration of Firearms Privileges
        FFL # 8-23-017-01-5A-02276

Dear Acting Director Brandon, DIO Orellana and ladies and gentlemen of the NCETR,

    Please be advised that I have been retained by Vahan Kelerchian, FFL no. 8-23-017-01-5A-02276, in relation to his timely Application for Restoration of Firearms Privileges, pursuant to 18 U.S.C. § 925(c) and 27 C.F.R. 478.144. As there is conflicting information between the information contained in the enclosed executed Applications and 27 C.F.R. 478.144, Mr. Kelerchian is filing this form in compliance with both the instructions on the application and Section 478.144.

    Specifically, as Section 478.144 requires three copies of the application to be filed with the Director, as defined in 27 C.F.R. § 478.11, but the application instructions only require one copy to be filed with NCETR, please find enclosed three copies of the executed Applications, which are being served on Acting Director Brandon, NCETR, and Phialdelphia Director of Industry Operations Juan Orellana. Please also find enclosed one copy of (1) an Authority for Release of Information, (2) Mr. Kelerchian's court documents, including the Indictment and Amended Judgement, (3) four letters of recommendation from references, who are not related to Mr. Kelerchian by blood or marriage and have known him for at least 3 years, and (4) a completed FD 258 fingerprint card.

    Pursuant to Sections 925(c) and 478.144(i), as Mr. Kelerchian is an FFL holder, who has continually and timely renewed his FFL, he shall not be "barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section."

Thanking you for your time and consideration in Mr. Kelerchian's request, I am

Yours truly,
Prince Law Offices, P.C.

Joshua Prince
joshua@princelaw.com
Extension: 81114

jp/web
Matter no. 37012
Enclosure

*Distribution*

**U.S. Department of Justice - Bureau of Alcohol, Tobacco, Firearms and Explosives**
Thomas E. Brandon
Mr. Juan F. Orellana

# PRINCE LAW OFFICES, P.C.



Warren H. Prince
Karl P. Voigt IV
Joshua Prince
Eric E. Winter
Thomas H. Odom
Stanley J. Kuter
Jeffrey A Franklin
Adam J. Kraut
Jorge Pereira

| | |
|---|---|
| Bechtelsville | 1-610-845-3803 |
| Allentown | 1-610-770-1151 |
| Bethlehem | 1-610-814-0838 |
| Camp Hill | 1-717-731-0100 |
| Lancaster | 1-717-393-7002 |
| Lebanon | 1-717-274-9250 |
| North Wales | 1-215-412-0800 |
| Pottstown | 1-610-326-4200 |
| Pottsville | 1-570-621-8828 |
| Reading | 1-610-375-8425 |
| Toll Free | 1-888-313-0416 |
| Fax | 1-610-845-3903 |

March 02, 2018

Thomas E. Brandon
Bureau of Alcohol, Tobacco, Firearms and Explosives
99 New York Avenue, N.E.,
Washington, DC 20226

RE:   Vahan Kelerchian Application for Restoration of Firearms Privileges
        FFL # 8-23-017-01-5A-02276

Dear Acting Director Brandon, DIO Orellana and ladies and gentlemen of the NCETR,

Please be advised that I have been retained by Vahan Kelerchian, FFL no. 8-23-017-01-5A-02276, in relation to his timely Application for Restoration of Firearms Privileges, pursuant to 18 U.S.C. § 925(c) and 27 C.F.R. 478.144. As there is conflicting information between the information contained in the enclosed executed Applications and 27 C.F.R. 478.144, Mr. Kelerchian is filing this form in compliance with both the instructions on the application and Section 478.144.

Specifically, as Section 478.144 requires three copies of the application to be filed with the Director, as defined in 27 C.F.R. § 478.11, but the application instructions only require one copy to be filed with NCETR, please find enclosed three copies of the executed Applications, which are being served on Acting Director Brandon, NCETR, and Phialdelphia Director of Industry Operations Juan Orellana. Please also find enclosed one copy of (1) an Authority for Release of Information, (2) Mr. Kelerchian's court documents, including the Indictment and Amended Judgement, (3) four letters of recommendation from references, who are not related to Mr. Kelerchian by blood or marriage and have known him for at least 3 years, and (4) a completed FD 258 fingerprint card.

Pursuant to Sections 925(c) and 478.144(i), as Mr. Kelerchian is an FFL holder, who has continually and timely renewed his FFL, he shall not be "barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section."

Thanking you for your time and consideration in Mr. Kelerchian's request, I am

<div align="right">

Yours truly,
Prince Law Offices, P.C.

Joshua Prince
joshua@princelaw.com
Extension: 81114

</div>

jp/web
Matter no. 37012
Enclosure

*Distribution*

U.S. Department of Justice - Bureau of Alcohol, Tobacco, Firearms and Explosives
**Thomas E. Brandon**
Mr. Juan F. Orellana

# PRINCE LAW OFFICES, P.C.



Warren H. Prince
Karl P. Voigt IV
Joshua Prince
Eric E. Winter
Thomas H. Odom
Stanley J. Kuter
Jeffrey A Franklin
Adam J. Kraut
Jorge Pereira

| | |
|---|---|
| Bechtelsville | 1-610-845-3803 |
| Allentown | 1-610-770-1151 |
| Bethlehem | 1-610-814-0838 |
| Camp Hill | 1-717-731-0100 |
| Lancaster | 1-717-393-7002 |
| Lebanon | 1-717-274-9250 |
| North Wales | 1-215-412-0800 |
| Pottstown | 1-610-326-4200 |
| Pottsville | 1-570-621-8828 |
| Reading | 1-610-375-8425 |
| Toll Free | 1-888-313-0416 |
| Fax | 1-610-845-3903 |

March 02, 2018

Mr. Juan F. Orellana
Curtis Center
Suite 1000E
601 Walnut Street
Philadelphia, PA 19106

RE:   Vahan Kelerchian Application for Restoration of Firearms Privileges
       FFL # 8-23-017-01-5A-02276

Dear Acting Director Brandon, DIO Orellana and ladies and gentlemen of the NCETR,

Please be advised that I have been retained by Vahan Kelerchian, FFL no. 8-23-017-01-5A-02276, in relation to his timely Application for Restoration of Firearms Privileges, pursuant to 18 U.S.C. § 925(c) and 27 C.F.R. 478.144. As there is conflicting information between the information contained in the enclosed executed Applications and 27 C.F.R. 478.144, Mr. Kelerchian is filing this form in compliance with both the instructions on the application and Section 478.144.

Specifically, as Section 478.144 requires three copies of the application to be filed with the Director, as defined in 27 C.F.R. § 478.11, but the application instructions only require one copy to be filed with NCETR, please find enclosed three copies of the executed Applications, which are being served on Acting Director Brandon, NCETR, and Phialdelphia Director of Industry Operations Juan Orellana. Please also find enclosed one copy of (1) an Authority for Release of Information, (2) Mr. Kelerchian's court documents, including the Indictment and Amended Judgement, (3) four letters of recommendation from references, who are not related to Mr. Kelerchian by blood or marriage and have known him for at least 3 years, and (4) a completed FD 258 fingerprint card.

Pursuant to Sections 925(c) and 478.144(i), as Mr. Kelerchian is an FFL holder, who has continually and timely renewed his FFL, he shall not be "barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section."

Thanking you for your time and consideration in Mr. Kelerchian's request, I am

Yours truly,
Prince Law Offices, P.C.

Joshua Prince
joshua@princelaw.com
Extension: 81114

jp/web
Matter no. 37012
Enclosure

*Distribution*

U.S. Department of Justice - Bureau of Alcohol, Tobacco, Firearms and Explosives
Thomas E. Brandon
**Mr. Juan F. Orellana**

OMB No. 1140-0002

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Application for Restoration of Firearms Privileges

| 1. Name *(Last, First, Middle)* | Kelerchian, Vahan, Steven | | | |
|---|---|---|---|---|
| 2. Birthplace *(City & State)* New York City, NY | 3. Date of Birth ▮▮▮ | 4. Aliases N/A | | 5. Social Security Number *(Voluntary)* |
| 6. Present Address *(No., Street, City, State, Zip Code)* ▮▮▮ | | | | 7. Telephone Number ▮▮▮ |

**8. Description**

| Sex M | Height 6'2" | Weight 280 | Hair Brown | Eyes Brown |
|---|---|---|---|---|

Ethnicity
☐ Hispanic or Latino
☑ Not Hispanic or Latino

Race *(Check one or more boxes)*
☐ American Indian or Alaska Native
☐ Asian
☐ Black or African American
☐ Native Hawaiian or Other Pacific Islander
☑ White

9. If you are not a citizen of the United States, what is your INS-issued alien number or admission number? _____

**10. Residences During Past Ten Years** *(In columns (b) and (c) enter the months and years of residence.)*

| Address *(Number, Street, City, State and Zip Code)* (a) | From (b) | To (c) |
|---|---|---|
| ▮▮▮ | 1997 | Present |
| | | |
| | | |
| | | |

**11. Employment Record** *(List present and prior employers and show month and year of employment.)*

| Name and Address of Employer (a) | Position (b) | From (c) | To (d) |
|---|---|---|---|
| Armament Services, Inc. 103 Camars Dr. Warminster PA 18974 | President | 2000 | 2013 |
| | | | |

**12. Convictions** *(If pardoned for a conviction, write "yes" in column (e) and attach a copy of the pardon.)*

| Specific Crime (a) | Name and Location of Court (b) | Sentence Received (c) | Conviction Date (d) | Pardoned (e) |
|---|---|---|---|---|
| See attached court records | | | | |
| | | | | |
| | | | | |
| | | | | |

**13. Other Arrests**

| Charge (a) | Date and Place of Arrest (b) | Disposition (c) |
|---|---|---|
| None | | |
| | | |
| | | |
| | | |

| 14. Probation Officer's Name, Address and Telephone Number N/A | 15. Parole Officer's Name, Address and Telephone Number N/A |
|---|---|

ATF Form 3210.1
Revised September 2014

16. Character References *(Three references are required. Please include a written statement from each of 3 references, who are not related to the applicant by blood or marriage and have known applicant for at least 3 years, recommending the granting of relief.)*

| Name and Address<br>*(a)* | Occupation<br>*(b)* | Telephone Number<br>*(c)* |
|---|---|---|
| John T. Conway, ███████████ | Funeral Director | ████████ |
| Anthony Baiamonte III, ██████████ | Attorney | ████████ |
| Christopher J. McLoughlin, ████████ | Retired | ████████ |

**17. Applicant Data** *(All questions must be answered by a "Yes" or "No")*

| | Yes | No | | | Yes | No |
|---|---|---|---|---|---|---|
| a. Are you a fugitive from justice? | | X | h. Have you served on active duty in the armed Forces? *(If "yes" check Branch and complete following)* ☐ Army ☐ Navy ☐ Marines ☐ Air Force ☐ Coast Guard | | | X |
| b. Are you an unlawful user of or addicted to marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled substance? | | X | Service Serial Number | | | |
| c. Have you ever been convicted in any court of a felony, or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence, including probation? *(If "yes," see Additional Information Request 1.)* | X | | Kind of Discharge | Date Entered Active Duty / Date of Discharge | | |
| d. Are you now on probation or parole? | | X | | | Yes | No |
| e. Are you under indictment or information in any court for a felony, or any other crime, for which the judge could imprison you for more than one year? *(An information is a formal accusation of a crime by a prosecutor.)* *(If "yes," see Additional Information Request 2.)* | X | | i. Are you subject to a court order restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner? *(If "yes," see Additional Information Request 5.)* | | | X |
| | | | j. Have you been convicted in any court of a misdemeanor crime of domestic violence? *(If "yes," see Additional Information Request 6.)* | | | X |
| f. Have you ever been adjudicated mentally defective *(which includes having been adjudicated incompetent to manage your own affairs)* or have you been committed to a mental institution? *(If "yes," see Additional Information Request 3.)* | | X | k. Have you ever renounced your United States citizenship? *(If "yes," see Additional Information Request 7.)* | | | X |
| | | | l. Are you an alien in the United States? *(If "yes," see Additional Information Request 8.)* | | | X |
| g. Have you ever been discharged from the armed forces under dishonorable conditions? *(If "yes," see Additional Information Request 4.)* | | X | m. Have you ever applied for a federal firearms license or a federal explosives license or Permit? *(If "yes" show date and with whom filed.)* | | X | |

**18. COMPLETE THIS ITEM ONLY IF APPLICANT WAS EVER ISSUED A FEDERAL FIREARMS LICENSE OR A FEDERAL EXPLOSIVES LICENSE OR PERMIT.**

| Business Name and Address *(License/Permit Issued Under)* | License or Permit Number | Expiration Date of Latest License or Permit |
|---|---|---|
| **Vahan S. Kelerchian** | 8-23-017-01-5A-02276 | *LOA Exp. 08/07/2018* |

The Business is *(Check one)*
■ Individually Owned   ☐ A Partnership   ☐ A Corporation   ☐ Other *(Specify)* _____

**19a. I believe I should be granted relief because:**
I am a good person, who has never acted nor will act in a manner dangerous to public safety and the granting of the relief to me would not be contrary to the public interest. Moreover, I am not a threat to the public in purchasing, possessing, transferring or selling firearms and ammunition. Furthermore, my FFL records have always been maintained meticulously and even the IOIs commented on my recordkeeping compliance.

**19b. Important:** Applicants filing for restoration privileges *(Relief From Disabilities)* under Chapter 44, Title 18 U.S.C. 925(c) must complete this item.

No application for restoration under 18 U.S.C. Chapter 44 will be considered unless the applicant acknowledges and agrees that a notice of approval will appear in the Federal Register, an official U.S. Government publication available to the general public, if and when the application is approved. The notice of approval will give all essential details including the applicant's name, address, the court and date of conviction.

**IN THE EVENT THIS APPLICATION IS APPROVED:**
■ I understand that a notice of approval will appear in the Federal Register immediately following the issuance of the approval, and
■ I hereby agree to publication of the notice of approval giving my name, address and the date of my conviction.

Under penalties imposed by 18 U.S.C. 924, I declare under penalties of perjury, that the answers in this application are true, correct, and complete.

| 20. Signature of Applicant *Vahan S. Kelerchian* | 21. Date 3/2/18 |
|---|---|

**Note: A Completed FD 258 (Fingerprint Identification Card) Must Accompany This Application.**

Mail Application Form To:   **Bureau of Alcohol, Tobacco, Firearms and Explosives**
**NCETR - Relief of Disabilities Section**
**Corporal Road, Building 3750**
**Redstone Arsenal**
**Huntsville, AL 35898**

ATF Form 3210.1
Revised September 2014

OMB No. 1140-0002

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Application for Restoration of Firearms Privileges**

| 1. Name *(Last, First, Middle)* | Kelerchian, Vahan, Steven |

| 2. Birthplace *(City & State)* New York City, NY | 3. Date of Birth ▮▮▮▮ | 4. Aliases N/A | 5. Social Security Number *(Voluntary)* |

| 6. Present Address *(No., Street, City, State, Zip Code)* ▮▮▮▮ | 7. Telephone Number ▮▮▮▮ |

**8. Description**

| Sex M | Height 6'2" | Weight 280 | Hair Brown | Eyes Brown |

Ethnicity
☐ Hispanic or Latino
☒ Not Hispanic or Latino

Race *(Check one or more boxes)*
☐ American Indian or Alaska Native
☐ Asian
☐ Black or African American
☐ Native Hawaiian or Other Pacific Islander
☒ White

9. If you are not a citizen of the United States, what is your INS-issued alien number or admission number? _____

**10. Residences During Past Ten Years** *(In columns (b) and (c) enter the months and years of residence.)*

| Address *(Number, Street, City, State and Zip Code)* (a) | From (b) | To (c) |
|---|---|---|
| ▮▮▮▮ | 1997 | Present |
| | | |
| | | |
| | | |

**11. Employment Record** *(List present and prior employers and show month and year of employment.)*

| Name and Address of Employer (a) | Position (b) | From (c) | To (d) |
|---|---|---|---|
| Armament Services, Inc. 103 Camars Dr. Warminster PA 18974 | President | 2000 | 2013 |
| | | | |

**12. Convictions** *(If pardoned for a conviction, write "yes" in column (e) and attach a copy of the pardon.)*

| Specific Crime (a) | Name and Location of Court (b) | Sentence Received (c) | Conviction Date (d) | Pardoned (e) |
|---|---|---|---|---|
| See attached court records | | | | |
| | | | | |
| | | | | |
| | | | | |

**13. Other Arrests**

| Charge (a) | Date and Place of Arrest (b) | Disposition (c) |
|---|---|---|
| None | | |
| | | |
| | | |
| | | |

| 14. Probation Officer's Name, Address and Telephone Number N/A | 15. Parole Officer's Name, Address and Telephone Number N/A |

ATF Form 3210.1
Revised September 2014

16. Character References *(Three references are required. Please include a written statement from each of 3 references, who are not related to the applicant by blood or marriage and have known applicant for at least 3 years, recommending the granting of relief.)*

| Name and Address *(a)* | Occupation *(b)* | Telephone Number *(c)* |
|---|---|---|
| John T. Conway, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | Funeral Director | ▓▓▓▓▓ |
| Anthony Baiamonte III, ▓▓▓▓▓▓▓▓ | Attorney | ▓▓▓▓▓ |
| Christopher J. McLoughlin, ▓▓▓▓▓▓ | Retired | ▓▓▓▓▓ |

**17. Applicant Data** *(All questions must be answered by a "Yes" or "No")*

| | Yes | No | | | Yes | No |
|---|---|---|---|---|---|---|
| a. Are you a fugitive from justice? | | X | h. Have you served on active duty in the armed Forces? *(If "yes" check Branch and complete following)* ☐ Army ☐ Navy ☐ Marines ☐ Air Force ☐ Coast Guard | | | X |
| b. Are you an unlawful user of or addicted to marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled substance? | | X | Service Serial Number | Date Entered Active Duty | | |
| c. Have you ever been convicted in any court of a felony, or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence, including probation? *(If "yes," see Additional Information Request 1.)* | X | | Kind of Discharge | Date of Discharge | | |
| d. Are you now on probation or parole? | | X | i. Are you subject to a court order restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner? *(If "yes," see Additional Information Request 5.)* | | | X |
| e. Are you under indictment or information in any court for a felony, or any other crime, for which the judge could imprison you for more than one year? *(An information is a formal accusation of a crime by a prosecutor.) (If "yes," see Additional Information Request 2.)* | X | | j. Have you been convicted in any court of a misdemeanor crime of domestic violence? *(If "yes," see Additional Information Request 6.)* | | | X |
| f. Have you ever been adjudicated mentally defective *(which includes having been adjudicated incompetent to manage your own affairs)* or have you been committed to a mental institution? *(If "yes," see Additional Information Request 3.)* | | X | k. Have you ever renounced your United States citizenship? *(If "yes," see Additional Information Request 7.)* | | | X |
| | | | l. Are you an alien in the United States? *(If "yes," see Additional Information Request 8.)* | | | X |
| g. Have you ever been discharged from the armed forces under dishonorable conditions? *(If "yes," see Additional Information Request 4.)* | | X | m. Have you ever applied for a federal firearms license or a federal explosives license or Permit? *(If "yes" show date and with whom filed.)* | | X | |

**18. COMPLETE THIS ITEM ONLY IF APPLICANT WAS EVER ISSUED A FEDERAL FIREARMS LICENSE OR A FEDERAL EXPLOSIVES LICENSE OR PERMIT.**

| Business Name and Address *(License/Permit Issued Under)* | License or Permit Number | Expiration Date of Latest License or Permit |
|---|---|---|
| **Vahan S. Kelerchian** | 8-23-017-01-5A-02276 | LOA Exp. 08/07/2018 |

The Business is *(Check one)*
■ Individually Owned   ☐ A Partnership   ☐ A Corporation   ☐ Other *(Specify)* _____

**19a. I believe I should be granted relief because:**
I am a good person, who has never acted nor will act in a manner dangerous to public safety and the granting of the relief to me would not be contrary to the public interest. Moreover, I am not a threat to the public in purchasing, possessing, transferring or selling firearms and ammunition. Furthermore, my FFL records have always been maintained meticulously and even the IOIs commented on my recordkeeping compliance.

**19b. Important:** Applicants filing for restoration privileges *(Relief From Disabilities)* under Chapter 44, Title 18 U.S.C. 925(c) must complete this item.

No application for restoration under 18 U.S.C. Chapter 44 will be considered unless the applicant acknowledges and agrees that a notice of approval will appear in the Federal Register, an official U.S. Government publication available to the general public, if and when the application is approved. The notice of approval will give all essential details including the applicant's name, address, the court and date of conviction.

**IN THE EVENT THIS APPLICATION IS APPROVED:**

■ I understand that a notice of approval will appear in the Federal Register immediately following the issuance of the approval, and

■ I hereby agree to publication of the notice of approval giving my name, address and the date of my conviction.

Under penalties imposed by 18 U.S.C. 924, I declare under penalties of perjury, that the answers in this application are true, correct, and complete.

| 20. Signature of Applicant *Vahan S. Kelerchian* | 21. Date 3/2/18 |
|---|---|

**Note: A Completed FD 258 (Fingerprint Identification Card) Must Accompany This Application.**

Mail Application Form To:   Bureau of Alcohol, Tobacco, Firearms and Explosives
NCETR - Relief of Disabilities Section
Corporal Road, Building 3750
Redstone Arsenal
Huntsville, AL 35898

ATF Form 3210.1
Revised September 2014

OMB No. 1140-0002

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

## Application for Restoration of Firearms Privileges

| 1. Name *(Last, First, Middle)* Kelerchian, Vahan, Steven |
|---|

| 2. Birthplace *(City & State)* New York City, NY | 3. Date of Birth ███ | 4. Aliases N/A | 5. Social Security Number *(Voluntary)* |
|---|---|---|---|

| 6. Present Address *(No., Street, City, State, Zip Code)* ███ | 7. Telephone Number ███ |
|---|---|

**8. Description**

| Sex M | Height 6'2" | Weight 280 | Hair Brown | Eyes Brown |
|---|---|---|---|---|

Ethnicity

☐ Hispanic or Latino
☑ Not Hispanic or Latino

Race *(Check one or more boxes)*

☐ American Indian or Alaska Native      ☐ Black or African American      ☑ White
☐ Asian      ☐ Native Hawaiian or Other Pacific Islander

9. If you are not a citizen of the United States, what is your INS-issued alien number or admission number? _____

10. Residences During Past Ten Years *(In columns (b) and (c) enter the months and years of residence.)*

| Address *(Number, Street, City, State and Zip Code)* (a) | From (b) | To (c) |
|---|---|---|
| ███ | 1997 | Present |
| | | |
| | | |
| | | |

11. Employment Record *(List present and prior employers and show month and year of employment.)*

| Name and Address of Employer (a) | Position (b) | From (c) | To (d) |
|---|---|---|---|
| Armament Services, Inc. 103 Camars Dr. Warminster PA 18974 | President | 2000 | 2013 |
| | | | |

12. Convictions *(If pardoned for a conviction, write "yes" in column (e) and attach a copy of the pardon.)*

| Specific Crime (a) | Name and Location of Court (b) | Sentence Received (c) | Conviction Date (d) | Pardoned (e) |
|---|---|---|---|---|
| See attached court records | | | | |
| | | | | |
| | | | | |
| | | | | |

13. Other Arrests

| Charge (a) | Date and Place of Arrest (b) | Disposition (c) |
|---|---|---|
| None | | |
| | | |
| | | |
| | | |

| 14. Probation Officer's Name, Address and Telephone Number N/A | 15. Parole Officer's Name, Address and Telephone Number N/A |
|---|---|

ATF Form 3210.1
Revised September 2014

16. Character References *(Three references are required. Please include a written statement from each of 3 references, who are not related to the applicant by blood or marriage and have known applicant for at least 3 years, recommending the granting of relief.)*

| Name and Address (a) | Occupation (b) | Telephone Number (c) |
|---|---|---|
| John T. Conway, | Funeral Director | |
| Anthony Baiamonte III, | Attorney | |
| Christopher J. McLoughlin, | Retired | |

**17. Applicant Data** *(All questions must be answered by a "Yes" or "No")*

| | Yes | No | | Yes | No |
|---|---|---|---|---|---|
| a. Are you a fugitive from justice? | | X | h. Have you served on active duty in the armed Forces? *(If "yes" check Branch and complete following)* ☐ Army ☐ Navy ☐ Marines ☐ Air Force ☐ Coast Guard | | X |
| b. Are you an unlawful user of or addicted to marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled substance? | | X | Service Serial Number / Date Entered Active Duty / Kind of Discharge / Date of Discharge | | |
| c. Have you ever been convicted in any court of a felony, or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence, including probation? *(If "yes," see Additional Information Request 1.)* | X | | | | |
| d. Are you now on probation or parole? | | X | | Yes | No |
| e. Are you under indictment or information in any court for a felony, or any other crime, for which the judge could imprison you for more than one year? *(An information is a formal accusation of a crime by a prosecutor.) (If "yes," see Additional Information Request 2.)* | X | | i. Are you subject to a court order restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner? *(If "yes," see Additional Information Request 5.)* | | X |
| | | | j. Have you been convicted in any court of a misdemeanor crime of domestic violence? *(If "yes," see Additional Information Request 6.)* | | X |
| f. Have you ever been adjudicated mentally defective *(which includes having been adjudicated incompetent to manage your own affairs)* or have you been committed to a mental institution? *(If "yes," see Additional Information Request 3.)* | | X | k. Have you ever renounced your United States citizenship? *(If "yes," see Additional Information Request 7.)* | | X |
| | | | l. Are you an alien in the United States? *(If "yes," see Additional Information Request 8.)* | | X |
| g. Have you ever been discharged from the armed forces under dishonorable conditions? *(If "yes," see Additional Information Request 4.)* | | X | m. Have you ever applied for a federal firearms license or a federal explosives license or Permit? *(If "yes" show date and with whom filed.)* | X | |

**18. COMPLETE THIS ITEM ONLY IF APPLICANT WAS EVER ISSUED A FEDERAL FIREARMS LICENSE OR A FEDERAL EXPLOSIVES LICENSE OR PERMIT.**

| Business Name and Address *(License/Permit Issued Under)* | License or Permit Number | Expiration Date of Latest License or Permit |
|---|---|---|
| **Vahan S. Kelerchian** | 8-23-017-01-5A-02276 | LOA Exp. 08/07/2018 |

The Business is *(Check one)*   ☑ Individually Owned   ☐ A Partnership   ☐ A Corporation   ☐ Other (Specify) _____

**19a. I believe I should be granted relief because:**
I am a good person, who has never acted nor will act in a manner dangerous to public safety and the granting of the relief to me would not be contrary to the public interest. Moreover, I am not a threat to the public in purchasing, possessing, transferring or selling firearms and ammunition. Furthermore, my FFL records have always been maintained meticulously and even the IOIs commented on my recordkeeping compliance.

**19b. Important: Applicants filing for restoration privileges *(Relief From Disabilities)* under Chapter 44, Title 18 U.S.C. 925(c) must complete this item.**

No application for restoration under 18 U.S.C. Chapter 44 will be considered unless the applicant acknowledges and agrees that a notice of approval will appear in the Federal Register, an official U.S. Government publication available to the general public, if and when the application is approved. The notice of approval will give all essential details including the applicant's name, address, the court and date of conviction.

**IN THE EVENT THIS APPLICATION IS APPROVED:**

☑ I understand that a notice of approval will appear in the Federal Register immediately following the issuance of the approval, and

☑ I hereby agree to publication of the notice of approval giving my name, address and the date of my conviction.

Under penalties imposed by 18 U.S.C. 924, I declare under penalties of perjury, that the answers in this application are true, correct, and complete.

| 20. Signature of Applicant | 21. Date 3/2/18 |
|---|---|

**Note: A Completed FD 258 (Fingerprint Identification Card) Must Accompany This Application.**

Mail Application Form To:   Bureau of Alcohol, Tobacco, Firearms and Explosives
NCETR - Relief of Disabilities Section
Corporal Road, Building 3750
Redstone Arsenal
Huntsville, AL 35898

ATF Form 3210.1
Revised September 2014

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Authority for Release of Information

**Authority for Release of Information**

THIS SHEET MUST ACCOMPANY ALL COPIES OF ATF FORM 3210.1, APPLICATION FOR RESTORATION OF FIREARMS PRIVILEGES

1. **Authority.** The authority to solicit information is stated in ATF Form 3210.1, Application for Restoration of Firearms Privileges. This form is in compliance with the Privacy Act of 1974.

2. **Purpose and Use.** The information you supply by signing this release of information form will be used principally to aid in the completion of a background investigation conducted by the Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), pursuant to 18 U.S.C. § 925(c), in conjunction with your Application for Restoration of Firearms Privileges.

3. **Effects of Nondisclosure.** Your signature on this Authority for Release of Information form is voluntary; however, your failure to complete this form may mean that the required information cannot be obtained to complete your investigation, and may result in the termination of your application.

| Name of Applicant *(Include Last, First, and Middle Name and all aliases used)* | Date of Birth |
|---|---|
| **Kelerchian, Vahan, Steven** |  |

| Present Address *(Number, Street, City, State, Zip Code)* | Telephone Number *(Include Area Code)* |
|---|---|
|  |  |

This release, when presented by a duly authorized representative of the Department of Justice, will constitute my consent and authority to examine and obtain copies and abstracts of records and to receive statements and information regarding my background. Specifically, I hereby authorize the release of the following data or records to the Department of Justice (ATF):

**Employment Information, Military Information/Records, Police and Criminal Records, Medical History**

**Medical Information Records**
*If You Answered "Yes" to Items 17(b) or (f) on ATF Form 3210.1, Complete the Following Section.*

| Name of Attending Physicians, Alcohol or Drug Abuse Rehabilitation Centers, or Mental Health Institutions | Address *(Including City, State and Zip Code)* | Area Code and Telephone Number |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

| Signature of Applicant | Date | Special Agent *(Signature)* | Date |
|---|---|---|---|
| *[signature]* | 3/2/18 |  |  |

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NUMBER: 2:13CR66-001** |
| **Plaintiff,** | **USM Number: 12810-027** |
| **vs.** | |
| **VAHAN KELERCHIAN** | **KERRY C CONNOR** |
| **Defendant.** | **P. JEFFREY SCHLESINGER**<br>**DEFENDANT'S ATTORNEYS** |

### AMENDED JUDGMENT IN A CRIMINAL CASE

**Date of Original Judgment Order: 2/7/2018.**
**Amended on 2/12/2018 to correct administrative error** on page 3, under C.R. 35(a): 2-7 is replaced by 3-7.
**THE DEFENDANT** was found guilty by Jury on counts 1, 2, 3, 4, 5, 6, 7, and 9 of the Indictment on October 15, 2015.

**ACCORDINGLY,** the court has adjudicated that the defendant is guilty of the following offenses:

| Title, Section & Nature of Offense | Date Offense Ended | Count Number(s) |
|---|---|---|
| 18: 371 CONSPIRACY TO PROVIDE FALSE INFORMATION TO A FEDERAL FIREARMS LICENSEE | January 2010 | 1 |
| 18:371 CONSPIRACY TO DEFRAUD FOOD AND DRUG ADMINISTRATION | September 2010 | 2 |
| 18:371 CONSPIRACY TO MAKE  FALSE STATEMENTS - DEMONSTRATION LETTERS | March 28, 2010 | 3 |
| 18:1001 MAKING FALSE STATEMENTS  TO A FEDERAL AGENCY | March 28, 2010 | 4-7 |
| 18:1956(h) CONSIPRACY TO LAUNDER MONETARY INSTRUMENTS AND FORFEITURE | January 2010 | 9 |

The defendant is sentenced as provided in pages 2 through 8 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.
The defendant has been found not guilty on count 8.

**IT IS ORDERED** that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States Attorney of any material change in economic circumstances.

February 5, 2018
Date of Imposition of Judgment

Case Number: 2:13CR66-001                                                    Page 2 of 8
Defendant: VAHAN KELERCHIAN

s/ Joseph S. Van Bokkelen
_____
Signature of Judge

Joseph S. Van Bokkelen, United States District Judge
_____
Name and Title of Judge

February 12, 2018
_____
Date

Case Number: 2:13CR66-001
Defendant: VAHAN KELERCHIAN                                                    Page 3 of 8

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **100 months.**

*       60-month term as to each of the following counts: Count 1, Count 3, Count 4, Count 5, Count 6, and Count 7. Each 60-month term for this group of counts is to be served concurrently with the other counts in this group.

*       A 60-month term as to Count 2: 40 of those months are to be served consecutively as to Count 1 and Counts 3–7, and 20 of those months are to be served concurrently with Count 1 and Counts 3–7.

*       A 40-month sentence as to Count 9, to be served consecutively as to Count 1 and Counts 3–7, but concurrently with Count 2.

The Court makes the following recommendations to the Bureau of Prisons:

        That the defendant be designated to serve his sentence at Fort Dix, NJ.

        That the defendant be given credit for time served while awaiting sentencing.


The defendant is placed into the custody of the United States Marshal.


## RETURN

I have executed this judgment as follows:

        Defendant delivered _____ to _____ at _____,
with a certified copy of this judgment.


                                                        _____
                                                        **UNITED STATES MARSHAL**

                                                        By: _____
                                                              **DEPUTY UNITED STATES MARSHAL**

## SUPERVISED RELEASE

After Mr. Kelerchian's incarceration is over, Mr. Kelerchian will be placed on supervised release for a period of **1 year**. His supervised release will have conditions of supervision as stated below, except that conditions 19, 20, 21 and 22 will cease to be in effect once all of Mr. Kelerchian's financial obligations as related to this case are fulfilled.

1. Mr. Kelerchian may not commit another federal, state, or local crime.

2. Mr. Kelerchian may not unlawfully use, possess, or distribute a controlled substance.

3. There's no evidence that Mr. Kelerchian is in danger of drug abuse. Accordingly, the mandatory drug testing condition is suspended.

4. Mr. Kelerchian must cooperate in the collection of his DNA sample as directed by the probation officer if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000.

5. Within 72 hours of release from the custody of the Bureau of Prisons, Mr. Kelerchian must report between the hours of 8:00 a.m. and 4:30 p.m. to the probation office in the district to which he is released.

6. Mr. Kelerchian may not knowingly be outside the judicial district between the hours of 10:00 p.m. and 6:00 a.m. without the Court's or probation officer's permission. In any case, Mr. Kelerchian may not knowingly travel more than 50 miles outside the judicial district without the Court's or probation officer's permission. The probation office will provide Mr. Kelerchian a map describing the boundaries of the judicial district at the start of supervision. After 12 months of Mr. Kelerchian being placed on supervision, the probation office must submit a report to the Court indicating whether the travel restrictions should be lifted or modified.

7. Mr. Kelerchian must report to the probation officer in the manner and frequency as reasonably directed by the probation officer. However, he may be required to report in person at the probation office only between 8:00 a.m. and 4:30 p.m. on the days the probation office is open for business.

8. In all matters relating to his conditions of supervision, Mr. Kelerchian must truthfully answer the probation officer's questions. This condition does not prevent Mr. Kelerchian from invoking his Fifth Amendment privilege against self-incrimination.

9. Mr. Kelerchian must follow the instructions of the probation officer as they relate to the conditions of supervision. Mr. Kelerchian may petition the Court for relief or clarification regarding a condition he believes has become unreasonable.

10. Mr. Kelerchian must live at a location approved by the probation officer.
11. If Mr. Kelerchian plans to change where he lives or anything about his living

arrangements (for example, the people he lives with), he must inform the probation officer at least 14 days before the change. If informing the probation officer in advance is not possible due to unexpected circumstances, Mr. Kelerchian must inform the probation officer as soon as possible, and no later than 72 hours after the change.

12. If Mr. Kelerchian plans to change where he works or anything about his work (for example, his position or his job responsibilities), Mr. Kelerchian must inform the probation officer at least 14 days before the change. If informing the probation officer in advance is not possible due to unexpected circumstances, Mr. Kelerchian must inform the probation officer within 72 hours after the change.

13. Mr. Kelerchian must notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer.

14. Mr. Kelerchian may not own or possess a firearm, ammunition, destructive device, or any other dangerous weapon. A dangerous weapon is an instrument that is specially designed as a weapon.

15. Mr. Kelerchian may not knowingly meet, communicate, or otherwise interact with a person whom he knows to be engaged, or planning to be engaged, in criminal activity.
16. Between the hours of 8:00 a.m. and 9:00 p.m., Mr. Kelerchian must permit a probation officer to visit him at home or any other reasonable location and must permit confiscation of any contraband observed in plain view by the probation officer. A visit between the hours of 9:00 p.m. and 8:00 a.m. may be conducted only when the probation officer has a reasonable belief that Mr. Kelerchian has violated a condition of supervision and that a visit during those hours would reveal information or contraband that would not be revealed by a visit at any other time.

17. If any portion of the special assessment remains unpaid when Mr. Kelerchian is released from prison, he must pay it within 12 weeks of his release, or, if financially unable to fulfill this requirement, he must arrange a payment schedule with the probation office.

18. If a fine is imposed, and if any portion of the fine remains unpaid when Mr. Kelerchian is released from prison, he must pay the fine in monthly installments of $1,000 until it is paid in full.

19. Mr. Kelerchian may not incur new credit charges or open additional lines of credit without the approval of the probation officer.

20. Upon the probation officer's request, Mr. Kelerchian must provide the officer with any financial information regarding Mr. Kelerchian's ability to pay a fine, and must authorize the release of any financial information. The request must be in writing and prompted by Mr. Kelerchian's failure to comply with a payment schedule ordered for a period of 60 consecutive days, and the request must describe the specific financial information needed for determining Mr. Kelerchian's current ability to pay. The probation office will share Mr. Kelerchian's financial information with the U.S. Attorney's Office.

Case Number: 2:13CR66-001
Defendant: VAHAN KELERCHIAN

21. Mr. Kelerchian must notify the probation officer within 72 hours of any material change in his economic circumstances that might affect his ability to pay any Court-ordered financial obligation.

22. Mr. Kelerchian may not transfer, give away, sell, or otherwise convey any asset $500 without the approval of the probation officer.

Case Number: 2:13CR66-001
Defendant: VAHAN KELERCHIAN                                                         Page 7 of 8

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth in this judgment.

| Total Assessment | Total Fine | Total Restitution |
|---|---|---|
| $800 | $100,000 | NONE |

The defendant shall make the special assessment payment payable to Clerk, U.S. District Court, 5400 Federal Plaza, Suite 2300, Hammond, IN 46320. The special assessment payment shall be due immediately.

## FINE

A fine in the amount of $100,000 is imposed.

## RESTITUTION

No restitution imposed.

Payments shall be applied in the following order:  (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

## FORFEITURE

The defendant shall forfeit **$28,200.00 in United States Currency.**

Case Number: 2:13CR66-001
Defendant: VAHAN KELERCHIAN

Name: <u>VAHAN KELERCHIAN</u>
Docket No.:<u>2:13CR66-001</u>

## ACKNOWLEDGMENT OF SUPERVISION CONDITIONS

Upon a finding of a violation of probation or supervised release, I understand that the Court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

I have reviewed the Judgment and Commitment Order in my case and the supervision conditions therein. These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed)

_____        _____
Defendant                                               Date

_____        _____
U.S. Probation Officer/Designated Witness        Date

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CAUSE NO: |
| v. | ) | |
| | ) | 18 U.S.C. § 2 |
| VAHAN KELERCHIAN | ) | 18 U.S.C. § 371 |
| | ) | 18 U.S.C. § 666(a)(2) |
| | ) | 18 U.S.C. § 924(a)(1)(A) |
| | ) | 18 U.S.C. § 924(d) |
| | ) | 18 U.S.C. § 1001 |
| | ) | 18 U.S.C. § 1956(h) |

2 : 1 3 C R   6 6

## I N D I C T M E N T

**THE GRAND JURY CHARGES:**

### COUNT 1
**(Conspiring to Provide False Information to a Federal Firearms Licensee)**

At all times material to this indictment:

### BACKGROUND

1. VAHAN KELERCHAIN (KELERCHIAN) was the principal owner and operator Armament Services International Inc., (ASI). ASI is engaged in the sale of firearms and related items primarily through internet sales.

2. ASI principal place of business is located in Warminster, Pennsylvania.

3. KELERCHIAN holds a Class 3 Federal Firearms License (FFL) allowing him to deal in fully automatic weapons. KELERCHIAN also holds licenses to manufacture firearms and sell destructive devices, (i.e. grenade launchers)

4. The Lake County Sheriff's Department was a law enforcement agency operating in Lake County, Indiana.

1

5. JOSEPH R. KUMSTAR was employed for approximately 17 years as a sworn law enforcement officer with the Lake County Sheriff's Department, and served as the Deputy Chief for the Lake County Sheriff's Department.

6. RONALD D. SLUSSER was employed for approximately ten (10) years as a sworn law enforcement officer with the Lake County Sheriff's Department, was a member of the Lake County Sheriff's Department Special Weapons and Tactics (SWAT) unit and a firearms instructor.

7. E & R Law Enforcement Sales was a Federal Firearms Licensee (FFL) based in Crown Point, Indiana, owned and operated in part by RONALD D. SLUSSER. RONALD D. SLUSSER previously held a Federal Firearms License while operating individually as "Ron's Gun Sales."

8. R & D Law Enforcement Sales was another Federal Firearms Licensee (FFL), based in Merrillville, Indiana, and owned and operated in part by RONALD D. SLUSSER.

9. PF Custom Guns was a Federal Firearms Licensee (FFL).

10. Heckler and Koch (hereinafter H&K) was a well know German based firearms manufacturer producing a wide assortment of handguns, rifles, machineguns, and submachineguns for both military and civilian use. H&K had numerous subsidiaries operating within the United States in Virginia, New Hampshire, and Georgia. H&K had served as a United States government contractor for the both the United States Military and United States civilian law enforcement agencies. H&K was a Federal Firearms Licensee (FFL).

2

10. Insight Technology Inc., (hereinafter Insight) located in Londonderry, New Hampshire, was a manufacturer of highly sophisticated laser aiming and illumination devices, night vision devices, laser range finding systems, computerized fire control systems, thermal imaging systems, and sensor fusion systems. Insight's products were, and are still are, used by the United States military, Federal law enforcement agencies, and allied nations. In addition, Insight Technology Inc. developed and maintained a line of tactical illuminators (laser aiming devices) restricted for use only by the military and Law Enforcement agencies, as well as products for sale to the general public.

11. Federal law restricted to law enforcement agencies or the military the sale and ownership of fully automatic machineguns manufactured after 1986. No individual law enforcement officer could purchase a post-1986 fully automatic machinegun. Possession of post-1986 fully automatic machineguns by a law enforcement officer could only be authorized by the officer's law enforcement agency and only for the law enforcement duties of that officer.

## OBJECT OF THE CONSPIRACY

12. Between on or about November 2008, and continuing through on or about January of 2010, in the Northern District of Indiana and elsewhere:

### VAHAN KELERCHIAN

defendant herein, together with Joseph Kumstar, and Ronald Slusser, did knowingly combine, conspire, confederate, and agree with each other, and with others known and unknown to the grand jury, to commit an offense against the United States, that is, to knowingly make false statements and representations with respect to information under Chapter 44, of Title 18 of the United States Code, required to be kept in the records of

3

individuals licensed under Chapter 44, relating to the acquisition of firearms, in violation

of Title 18 United States Code, Section 924(a)(1)(A).

## HOW THE CONSPIRACY OPERATED

13. It was part of the conspiracy that JOSEPH R. KUMSTAR, and RONALD D. SLUSSER

used their position as sworn law enforcement officers, and VAHAN KELERCHAIN used

his position as a Class 3 firearms dealer to acquire approximately 71 (Seventy-One) fully

automatic H&K machineguns in the name of the Lake County Sheriff's Department

knowing that the Lake County Sheriff's Department was not the true owner of these

machineguns.

14. It was further part of the conspiracy that when acquiring these machineguns, VAHAN

KELERCHAIN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER knew these H&K

machineguns were manufactured after 1986, and therefore could only be acquired by law

enforcement agencies and not individual law enforcement officers.

15. It was further part of the conspiracy that when acquiring the H&K machineguns, VAHAN

KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER caused false

entries listing the Lake County Sheriff's Department as the owner of these machineguns,

to be made by individuals and companies required to keep such records under Chapter 44,

of Title 18 of the United States Code.

16. It was further part of the conspiracy that when acquiring these machineguns, VAHAN

KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER, used Lake

County Sheriff's Department letterhead to create letters which falsely represented that the

4

H&K machineguns were being purchased by and were going to be used by, the Lake County Sheriff's Department in carrying out its law enforcement responsibilities.

17. It was further part of the conspiracy that when acquiring these machineguns, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER used the Lake County Sheriff's Department letterhead to create documents which falsely represented the H&K machineguns were to be used by the Lake County Sheriff's Department.

18. It was further part of the conspiracy that when acquiring these machineguns, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER created false and fictitious Lake County Sheriff's Department purchase orders to convince the suppliers of the H&K machineguns that the Lake County Sheriff's Department was the true purchaser of the H&K machineguns even though the defendants themselves provided the funds for the purchase of these H&K machineguns.

19. It was further part of the conspiracy that VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER acquired these H&K machineguns for a cost of between approximately $1200 and $1600 each.

20. It was further part of the conspiracy that when acquiring these machineguns, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER had all of the H&K machineguns shipped to the Lake County Sheriff's Department.

21. It was further part of the conspiracy that after acquiring these machineguns, all of the H&K machineguns were removed from the Lake County Sheriff's Department to the personal residence of RONALD D. SLUSSER.

22. It was further part of the conspiracy that after the H&K machineguns were at the personal residence of RONALD D. SLUSSER, he would remove the upper receivers (the barrel)

5

and any other additional parts that could be removed from the lower receiver (the firing mechanism of the H&K machinegun).

23. It was further part of the conspiracy that after removing the upper receivers and any other additional parts that could be removed from the lower receiver, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER would sell on the internet to any willing purchaser, all of these upper receivers and additional parts. The sale of these upper receivers and parts would range from approximately $2,500 to $3800 each.

24. It was further part of the conspiracy that after removing the upper receivers, RONALD D. SLUSSER would return some of the upper receivers to VAHAN KELERCHIAN.

25. At no time did VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER have proper authority from the Lake County Sheriff's Department to engage in any of the above mentioned purchases or sales of the H&K machineguns or their parts.

26. At no time were any of the H&K machineguns obtained by VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER listed in the property inventory of the Lake County Sheriff's Department.

27. In furtherance of the conspiracy and to effect its objects:

**VAHAN KELERCHIAN,**

Defendant herein, together with JOSEPH R. KUMSTAR, and RONALD D. SLUSSER, and others known and unknown to the grand jury performed the following:

<u>OVERT ACTS</u>

*First Machinegun Purchase*

a. On or about December 22, 2008, JOSEPH R. KUMSTAR issued a "Letter of Intent" on Lake County Sheriff's Department letterhead to H&K for (50)

6

additional H&K model 416 fully automatic machineguns. This letter of intent

stated these machineguns were for the "exclusive law enforcement use of the

Lake County Sheriff's Department" and that the "point of contact for all inquiries

in this matter will be Warrant Officer Ron Slusser." The letter then listed

RONALD D. SLUSSER'S home phone number. This letter was signed "Joseph

Kumstar, Chief of Police."

b. VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLSSER

used their personal funds to obtain these machineguns and did not have proper

authorization of the Lake County Sheriff's Department to purchase these

machineguns. These (50) machineguns were purchased for approximately $1650

each.

c. For this purchase, VAHAN KELERCHIAN provided payment to a third party

gun dealer in the amount of approximately $83,026.

d. Shortly after obtaining these (50) H&K fully automatic machineguns, RONALD

D. SLUSSER did cut up and remove the upper receiver barrels from these (50)

H&K fully automatic machineguns. Some of these upper barrels were sold on the

internet to any willing buyer with VAHAN KELERCHIAN, JOSEPH R.

KUMSTAR, and RONALD D. SLUSSER retaining the proceeds from this sale.

Some of the upper barrels were returned to KELERCHIAN.

e. In or about May of 2011, during the execution of an organized crime search

warrant by Montreal, Canada, gun and gang law enforcement officials, recovered

four upper barrels from this (50) H&K fully automatic machinegun purchase by

VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER.

7

The serial numbers on these upper receivers (barrels) listed the Lake County Sheriff's Department as the registered owner.

*Second Machinegun Purchase*

    f.  In or about February of 2009, JOSEPH R. KUMSTAR issued another "Letter of Intent" on Lake County Sheriff's Department letterhead to H&K for (9) H&K model MP5KN fully automatic machineguns. This letter of intent stated these machineguns were for the exclusive use of the Lake County Police Department.

    g.  In or about February of 2009, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR and RONALD D. SLUSSER did cause a false and fictitious Lake County Sheriff's Department purchase order to be mailed or faxed, which represented the Lake County Sheriff's Department to be the purchaser of these machineguns even though it was not the true purchaser as required by law.

    h.  For this purchase, VAHAN KELERCHIAN provided payment to H&K, the gun manufacturer /distributer in the amount of approximately $11,664.

    i.  Shortly after obtaining these (9) H&K fully automatic machineguns, RONALD D. SLUSSER did cut up and remove the upper receiver barrels from these fully automatic machineguns. These upper barrels were sold to Person A in Utah. Person A paid Slusser $18,900 for these H&K parts. Slusser then paid $9450 to Kumstar and $9450 to Kelerchian. These payments to Kelerchian and Kumstar were paid because Kelerchain and Kumstar had fronted money for this purchase.

*Third Machinegun Purchase*

    j.  In or about October 2009, JOSEPH R. KUMSTAR issued another "Letter of Intent" on Lake County Sheriff's Department letterhead for (12) H&K model

<div align="center">8</div>

53A3 fully automatic sub-machineguns. This letter of intent stated these sub-machineguns would be the property of the Lake County Sheriff's Department and would not be resold or transferred, and would be used to carry out the official duties of the Lake County Sheriff's Department.

k.  In or about October of 2009, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR and RONALD D. SLUSSER did cause another false and fictitious Lake County Sheriff's Department purchase order to be mailed or faxed, which represented the Lake County Sheriff's Department to be the purchaser of these sub-machineguns even though it was not the true purchaser as required by law.

l.  Shortly after obtaining these (12) H&K fully automatic sub-machineguns, RONALD D. SLUSSER did cut up and remove the upper receiver barrels from these fully automatic machineguns. These upper barrels were sold to Person A in Utah. Person A paid Slusser $31,200 for these H&K parts. Slusser then paid Kelerchian $28,200. This payment to Kelerchain was made because Kelerchian had fronted the money for this purchase.

m.  For this purchase, VAHAN KELERCHIAN provided payment to the H&K, the gun manufacturer/distributer, in the amount of approximately $16,800.

n.  At no time did VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER have the proper permission of the Lake County Sheriff's Department to engage in any of the above three purchases or subsequent sales of these H&K sub-machineguns.

28.  In the purchasing each of these (71) machineguns and sub-machineguns, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER knowingly caused

9

false entries to be made in the books and records of the companies supplying these

firearms, in that these records reflected the Lake County Sheriff's Department as the

registered owner of these (71) firearms when in fact, VAHAN KELERCHIAN, JOSEPH

R. KUMSTAR, and RONALD D. SLUSSER knew that to be false.

All in violation of Title 18, United States Code 371 and 924(a)(1)(A).

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 2

### (Conspiring to Defraud the Food and Drug Administration)

1. The Grand Jury realleges and reincorporates by reference paragraphs 1-11, of Count 1 as though fully set forth herein;

### OBJECT OF THE CONSPIRACY

2. Between on or about December 2008, and continuing through on or about September 2010, in the Northern District of Indiana and elsewhere:

### VAHAN KELERCHIAN,

defendants herein, did knowingly combine, conspire, confederate, and agree with JOSEPH KUMSTAR, RONALD D. SLUSSER, and with others known and unknown to the grand jury, to defraud the Food and Drug Administration (FDA), an agency of the United States, by interfering with and obstructing the lawful government functions of the FDA to:

    a. Limit the sale of various restricted laser aiming sight devices to the military and law enforcement agencies only;

    b. Correctly identify first line purchasers of various laser aiming sight devices which were restricted to military or law enforcement agency purchasers only.

All in violation of Title 18 United States Code, Section 371.

11

## HOW THE CONSPIRACY OPERATED

3.  It was part of the conspiracy that JOSEPH R. KUMSTAR, and RONALD D. SLUSSER
    used their position as sworn law enforcement officers, along with VAHAN
    KELERCHIAN, to acquire approximately 74 (Seventy-Four) restricted laser aiming sight
    devices by fraudulently using the name of the Lake County Sheriff's Department and The
    Lowell, Indiana, Police Department, knowing that the Lake County Sheriff's Department
    and the Lowell Police Department were not the true owners of these restricted laser
    aiming devices.

4.  It was further part of the conspiracy that when acquiring these restricted laser aiming
    sights, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER
    knew they could only be acquired by law enforcement agencies and not individual law
    enforcement officers.

5.  It was further part of the conspiracy that when acquiring these (74) restricted laser aiming
    sight devices, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D.
    SLUSSER caused false information to be recorded in the books and records of the Insight
    Technology, Inc., regarding who was the true first purchaser of these laser aiming sight
    devices.   Furthermore, by causing false information to be recorded in the books records of
    the Insight Technology, Inc., VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and
    RONALD D. SLUSSER interfered with and obstructed the lawful government functions
    of the FDA to (a) limit the sale of various restricted laser aiming sight devices to only the
    military and law enforcement agencies and (b) correctly identify first line purchasers of
    these (74) various laser aiming sight devices, the sale of which was restricted to military
    or law enforcement agency purchases only.

12

6.  It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER caused to be submitted to Insight Technology, Inc., a false and fictitious Lake County Sheriff's Department purchase order for the purpose of inducing Insight Technology, Inc., to believe that these restricted laser sights were being purchased by the Lake County Sheriff's Department, when in fact the defendants were acquiring these restricted laser sights with their own personal funds and for their personal use and resale.

7.  It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER caused to be submitted to Insight Technology, Inc., a false and fictitious Lowell Police Department documents for the purpose of inducing Insight Technology, Inc., to believe that these restricted laser sights were being purchased by the Lowell Police Department, when in fact the defendants were acquiring these restricted laser sights with their own personal funds and for their personal use and resale.

8.  It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER would submit to Insight Technology, Inc., a "IR Product Disclosure Agreement" signed by JOSPEH R. KUMSTAR which falsely represented that the restricted laser sights being purchased would "not be sold or transferred to individual law enforcement or civilian personnel."

9.  It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER would submit to Insight Technology, Inc., a "IR Product Disclosure Agreement" which purported

13

to be signed by the proper authorities at the Lowell Police Department but in fact, falsely represented that the restricted laser sights being purchased would "not be sold or transferred to individual law enforcement or civilian personnel."

10. It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER caused false and fictitious Lake County Sheriff's Department purchase orders to be created which falsely represented that the restricted laser sights were being purchased by the Lake County Sheriff's Department.

11. It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER would cause these restricted laser sights to be delivered to the Lake County Sheriff's Department or the Lowell Police Department rather than to their personal residences.

12. It was further part of the conspiracy that after acquiring these restricted laser sights, all of them were removed from the Lake County Sheriff's Department and the Lowell Police Department to the personal residence of either KUMSTAR or SLUSSER.

13. It was further part of the conspiracy that after these restricted laser sights were at the either KUMSTAR or SLUSSER's residence, RONALD D. SLUSSER would sell some these restricted laser sights on the internet to any willing purchaser. The sale of these restricted laser sights ranged from approximately $2,800 to $3000 each. Some of the restricted lasers aiming sights were retained by each of the defendants.

14. At no time did VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER have proper authority from the Lake County Sheriff's Department or the

Lowell Police Department to engage in any of the above mentioned purchases or sales of the restricted laser sights.

15. At no time were any of the restricted laser sights obtained by VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER listed in the property inventory of the Lake County Sheriff's Department or the Lowell Police Department.

16. In furtherance of the conspiracy and to effect its objects:

**VAHAN KELERCHIAN,**

Defendant herein, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER, and other conspirators, known and unknown to the grand jury performed the following:

<u>OVERT ACTS</u>

*First Laser Sight Purchase*

    a. In or about December 6, 2008, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER ordered from Insight Technology Inc., approximately 25 various restricted laser sights having a value of approximately $27,000.

    b. On or about December 6, 2008, JOSEPH R. KUMSTAR, submitted to Insight Technology, Inc., a "IR Product Disclosure Agreement" signed by JOSPEH R. KUMSTAR which represented that the restricted laser sights being purchased would "not be sold or transferred to individual law enforcement or civilian personnel."

    c. In or about December of 2008, JOSEPH R. KUMSTAR signed a false and fictitious Lake County Sheriff's Department purchase order inducing Insight Technology, Inc., to believe that the Lake County Sheriff's Department was the

15

true purchaser of these restricted laser sights even though the defendants
themselves provided the funds for the purchase of these restricted laser sights.

d.  In or about January of 2009, Insight Technology, Inc. shipped these restricted
laser sights to the Lake County Sheriff's Department.

e.  For this purchase, VAHAN KELERCHIAN provided payment to Insight
Technologies Inc., in excess of $17,000.

f.  After obtaining these restricted laser sights, RONALD D. SLUSSER sent back to
VAHAN KELERCHIAN approximately 12 of these restricted laser sights.

g.  After obtaining these restricted laser sights, VAHAN KELERCHIAN, JOSEPH
R. KUMSTAR, and RONALD D. SLUSSER sold via the internet some these
restricted laser sights to any and all willing purchasers, including Keith Mitts.

h.  On or about August 21, 2009, the Department of Defense Criminal Investigative
Service (DCIS) engaged in a successful undercover purchase of a restricted laser
sight being offered for sale on E-Bay by a Keith Mitts.  DCIS undercover agents
paid $4,200 for a restricted laser aiming sight which was traced back to the
December 6, 2008, laser sight order from Insight Technology, Inc., which was
sent to the Lake County Sheriff's Department.  Subsequent to this undercover
purchase, two additional restricted laser sights of the same model and type that
were part of the December 6, 2008, laser sight order from Insight Technology,
Inc., which was sent to the Lake County Sheriff's Department, were recovered
from Mitt's Mississippi residence during Mitt's shooting and standoff with local
police officers.

16

*Second Laser Sight Purchase*

    i. In or about December 2009, the defendants ordered from Insight Technology Inc., approximately 12 restricted laser sights having a value of approximately $15,000.

    j. On or about December 2009, RONALD R. SLUSSER submitted to Insight Technology Inc., an "IR Product Disclosure Agreement" which represented that the restricted laser sights being purchased would "not be sold or transferred to individual law enforcement or civilian personnel."

    k. In or about January of 2010, Insight Technology, Inc. shipped these restricted laser sights and RONALD D. SLUSSER obtained these restricted laser sights.

    l. For this purchase, VAHAN KELERCHIAN provided several payments to Insight Technologies Inc., totaling more than $15,000.

    m. After obtaining these restricted laser sights, RONALD D. SLUSSER sold via the internet these restricted laser sights to any willing purchaser.

*Third Laser Sight Purchase*

    n. In or about February 2010, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER ordered from Insight Technology Inc., approximately 22 various restricted laser sights having value of approximately $30,000.

    o. On or about February 23, 2010, JOSEPH R. KUMSTAR submitted to Insight Technology Inc., an "IR Product Disclosure Agreement" signed by JOSPEH R. KUMSTAR which represented that the restricted laser sights being purchased

would "not be sold or transferred to individual law enforcement or civilian personnel."

p.  In or about February 2010, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR and RONALD SLUSSER created a false and fictitious Lake County Sheriff's Department purchase order inducing Insight Technology, Inc., to believe that the Lake County Sheriff's Department was the true purchaser of these restricted laser sights even though the defendants themselves provided the funds for the purchase of these the restricted laser sights.

q.  In or about March 2010, Insight Technology, Inc. shipped these restricted laser sights to the Lake County Sheriff's Department.

r.  For this purchase, VAHAN KELERCHIAN provided several payments to Insight Technologies Inc., totaling more than $25,000.

s.  After obtaining these restricted laser sights, RONALD D. SLUSSER sold via the internet some of these restricted laser sights to any willing purchaser.

t.  Approximately 20 of these restricted laser sights were returned to VAHAN KELERCHIAN by RONALD D. SLUSSER.

*Fourth Laser Sight Purchase*

u.  In or about July 2010, RONALD D. SLUSSER ordered from Insight Technology, Inc., approximately 15 restricted laser sights from Insight Technology Inc., having a value of approximately $18,000.

v.  On or about July 6, 2010, RONALD R. SLUSSER submitted to Insight Technology, Inc., an "IR Product Disclosure Agreement" which represented that

the restricted laser sights being purchased would "not be sold or transferred to individual law enforcement or civilian personnel."

w. In or about August 2010, Insight Technology, Inc. shipped these restricted laser sights and RONALD D. SLUSSER subsequently retrieved them.

x. For this purchase, VAHAN KELERCHIAN provided payment to Insight Technologies Inc., in excess of $16,000.

y. After obtaining these restricted laser sights, RONALD D. SLUSSER sold via the internet these restricted laser sights to any willing purchaser and sent two of the sights back to VAHAN KELERCHIAN.

z. On August of 2010, a Special Agent of the FDA engaged in an undercover purchase of a restricted laser sight from RONDAL D. SLUSSER. This restricted laser sight was purchased by RONALD D. SLUSSER from Insight Technology, Inc., for approximately $1250.00 and sold to the FDA undercover agent for approximately $2900.00. An examination of the serial number for this sight revealed that it was part of the July 2010 order of 15 restricted laser sights that had been ordered by RONALD D. SLUSSER and paid for by VAHAN KELERCHIAN.

All in violation of Title 18 United States Code, Section 371.

**THE GRAND JURY FURTHER CHARGES:**

<u>**COUNT 3**</u>

**(Conspiracy to Make False Statements - Demonstration Letters)**

From on or about October 2007, and continuing to in or about March 28, 2010, both dates being approximate and inclusive, in the Northern District of Indiana and elsewhere,

**VAHAN KELERCHIAN**

defendant herein, and Joseph Kumstar, knowingly combined, conspired, confederated and agreed together and with each other, and with other persons known and unknown to the Grand Jury, to commit the following offenses against the United States: to willfully and knowingly make and cause to be made, and use and cause to be used, in a matter within the jurisdiction of a department or agency of the United States, to wit: the Bureau of Alcohol, Tobacco, Firearms, and Explosives, false writings and documents to wit: approximately (7) letters on Lake County Sheriff's Department letterhead requesting firearm demonstrations of machine guns (demonstration letters) from VAHAN KELERCHIAN, knowing the same to contain a materially false, fictitious, and fraudulent statement because VAHAN KELERCHIAN very well knew that in fact no demonstration was going to occur.

In furtherance of this scheme, false demonstration letters were sent from Lake County Indiana, VAHAN KELERCHIAN and to the National Firearms Branch of the Bureau of Alcohol, Tobacco, and Firearms located in Martinsburg, WV., on the following approximate days: October 4, 2007, February 13, 2009, February 16, 2009, June 29, 2009, March 28, 2010.

All in violation of Title 18, United States Code Section 1001, and 371.

**THE GRAND JURY FURTHER CHARGES:**

## COUNTS 4-7

### (False Statements - Demonstration Letters)

On or about the following dates in the Northern District of Indiana and elsewhere,

## VAHAN KELERCHIAN

defendant herein, and Joseph Kumstar did willfully and knowingly make and cause to be made, and use and cause to be used, in a matter within the jurisdiction of a department or agency of the United States, to wit: the Bureau of Alcohol, Tobacco, Firearms, and Explosives, false writings and documents to wit: approximately (4) letters on Lake County Sheriff's Department letterhead requesting firearm demonstrations of various machine guns (demonstration letters) from VAHAN KELERCHIAN, knowing the same to contain a materially false, fictitious, and fraudulent statement because VAHAN KELERCHIAN very well knew that in fact no demonstration was going to occur, said letters being mailed from Lake County Indiana, to VAHAN KELERCHIAN in Pennsylvania and the the National Firearms Branch of the Bureau of Alcohol, Tobacco, and Firearms located in Martinsburg, WV., on the following approximate days:

| COUNT | DATE |
|-------|------|
| 4 | February 13, 2009 |
| 5 | February 16, 2009 |
| 6 | June 29, 2009 |
| 7 | March 28, 2010 |

All in violation of Title 18, United States Code, Section 1001 and 2.

USDC IN/ND case 2:13-cr-00066-JVB-PRC   document 1   filed 05/17/13   page 22 of 26

**THE GRAND JURY FURTHER CHARGES:**

<u>COUNT 8</u>

**(Bribery)**

1. At all times material to this indictment, the Lake County Sheriff's Department was an agency of a local government entity to wit: Lake County, Indiana, that received federal assistance in excess of $10,000 during the one-year period beginning January 2, 2008 and ending December 31, 2008.

2. Joseph Kumstar was an agent of Lake County Sheriff's Department acting as its Deputy Chief, in charge of operations, whose duties included overseeing and managing the Lake County Sheriff's Department.

3. On or about July 31, 2008, in the District of Indiana, and elsewhere,

**VAHAN KELERCHIAN**

defendant herein, did corruptly give, offer, and agree to give a thing of value to wit: a Remington .12 Gauge short-barrel shotgun, to Joseph Kumstar, intending to influence and reward Joseph Kumstar in connection with a transaction and series of transactions of the Lake County Sheriff's Department  involving $5,000 or more.

All in violation of Title 18, United States Code, Section 666(a)(2) and 2.

**THE GRAND JURY FURTHER CHARGES:**

<u>**COUNT 9**</u>

**(Conspiracy to Launder Monetary Instruments: 1956 and 1957)**

Beginning in or about February 2009 and continuing through in or about January 2010, both dates being approximate and inclusive, in the District of Indiana and elsewhere,

**VAHAN KELECHIAN**

Defendant herein, Joseph Kumstar, and Ronald Slusser, willfully and knowingly conspired and agreed together and with each other, and with others known and unknown to the Grand Jury, to commit certain offenses:

1) Under Title 18, United States Code § 1956, to conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved proceeds of specified unlawful activity, that is mail and wire fraud, in violation of title 18  United States Code § 1341 and 1343: (1) with the intent to promote the carrying on of such specified unlawful activity and (2) knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and while conducting or attempting to conduct such financial transactions knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity,  and

2) Under Title 18, United States Code § 1957, to conduct and attempt to conduct monetary transactions affecting interstate commerce, in criminally derived property of a value greater than

$10,000, such property having been derived from a specified unlawful activity, that is, mail and wire fraud, in violation of Title 18 United States Code § 1341 and 1343.

All in violation of Title 18 United States Code 1956(h), 1956(a)(1)(B)(i), 1957, and 2.

## FIRST FORFEITURE ALLEGATION

1. The allegations of Count One of the Indictment are realleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America pursuant to the provisions of Title 18 United States Code, Section 924(d), and Title 28 United States Code, Section 2461(c).

2. Upon conviction of Count One of the Indictment, **Vahan Kelerchian**, defendant herein, shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 924(d), and Title 28, United States Code, Section 2461(c), any and all firearms involved in the commission of such offenses:

USDC IN/ND case 2:13-cr-00066-JVB-PRC   document 1   filed 05/17/13   page 26 of 26

## SECOND FORFEITURE ALLEGATION

1.     The allegations contained in Count 9 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture  pursuant to Title 18, United States Code, Sections 982(a)(1).

2.     Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Sections 1956 and 1957 , the defendant, VAHAN KELERCHIAN, shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property.

3.     If any of the property described above, as a result of any act or omission of the defendant:

a.     cannot be located upon the exercise of due diligence;
b.     has been transferred or sold to, or deposited with, a third party;
c.     has been placed beyond the jurisdiction of the court;
d.     has been substantially diminished in value; or
e.     has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

S/Foreperson
FOREPERSON

DAVID CAPP
UNITED STATES ATTORNEY

By:   S/Philip C. Benson
      Philip C. Benson
      Assistant United States Attorney

26

# Anthony Baiamonte III

February 28, 2018

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

RE:   **Character Reference for Vahan Steven Kelerchian** ████████████
████████████████████████████████████
      **Application for Restoration of Firearms Privileges**
      **License or Permit number 8-23-017-01-5A-02276**

Dear Sir/Madam:

I submit this Character Reference in support of, and granting relief to, Vahan Steven Kelerchian's Application for Restoration of Firearms Privileges.

I have personally known Mr. Kelerchian for more than ten (10) years as a personal friend. He is of high moral character and has proven to be a trustworthy and honorable man. I am proud to call Mr. Kelerchian my friend.

If you need any additional information, or have any questions of me in my support of Mr. Kelerchian, please contact me directly.

Thank you for your considerations. I remain,

Sincerely,

By: */s/ Anthony Baiamonte III*

# CHRISTOPHER J. McLOUGHLIN, PC

27 February 2018

Joshua Prince, Esq.
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505

RE: Vahan Kelerchian

Mr. Prince:

This letter is addressed to you in support of Vahan Kelerchian's request to BATF regarding his application for Federal Firearms relief, and I authorize you to make it available to anyone appropriate to this use. As a retired security consultant, I was self-employed in the varied aspects of that field for more than a quarter of a century, and I supported myself without incident or reprimand of any sort for my professional career.

My association and friendship with Mr. Kelerchian goes back a decade, probably more. During these years his expertise with acquisition and disposition of firearms has been invaluable to me and to my own friends and clients. He has with authority given advice on investment grade firearms and guided us through a maze of rules and regulations in order to insure that no paperwork was returned for further attention due to an omission or misstatement of description or condition. Perhaps presenting an aggravation to buyers or sellers, I've known him to strictly avoid any transaction that might bend rules effecting administrative procedure or record keeping. His advice has been given and taken in matters ranging from simple transfers to elaborate evaluations of inventory distributions in the dissolutions of estate assets.

Over time I have come to know Mr. Kelerchian on a personal level as well as a professional one. Apart from knowing firearms and the business of them, he is comfortable with the history of U.S. military hardware, and not only that, he knows more about the colonial geography of his part of the country than I do about the Confederate history of mine. He's shared this knowledge with his wife and their two daughters on weekend outings and summer vacations away

Mr. Prince
27 February
Page 02.

from his business. I know so because he's told me about them – in detail. He is
a family man and takes pride in talking to me about his eldest daughter's
passing her bar exam and her first date, just as he does about his youngest
daughter's birthday party stories and the things that hold her interests. And
when the time is right he and Maura take time together for a quick trip to New
York, and I hear about that too. Vahan and I have become more than just
business friends.

The business is operated meticulously and with an enviable sense of
responsibility and attention to detail. Recently the business records underwent
an intense scrutiny audit, and I understand that the books passed with praise
and not the usual criticisms of form, content, or carelessness.

His business is the support of himself, his wife and their two daughters. I know
of nothing that he might have knowingly done to put that in jeopardy and while
he does not now operate the business himself, there should be no impediment
to letting the business continue to function for their livelihood and well-being
by granting him Federal Firearms relief.

Sincerely,
CHRISTOPHER J. McLOUGHLIN, PC

Chris McLoughlin
(...\CJMcL LTR 2018\VK:ASI 27-02-18\CJMcL,PC)

# JOHN T. CONWAY



February 25, 2018

RE: Vahan S. Kelerchian, Applicant

To Whom This May Concern,

My name is John T. Conway. I am a New York State Licensed Funeral
Director. I am a United States Coast Guard Licensed Captain. I am 68 years
old and am a college graduate. I have known Vahan Kelerchian since 1975,
both on a personal level as well as on a professional level. I feel that I am a
good judge of one's character and I can speak of Mr. Kelerchian in an honest and
objective manner.

 For many years my wife's family and his wife's family lived across the street from each
other and both families were very close to each other. Coincidentally, when my wife and
I bought our first house, it was two houses away from Mr. Kelerchian's family home. We
could not have had better neighbors than the Kelerchians. Vahan and I saw each other
almost on a daily basis. I know him well. I know him to be a straight and honest man,
one who could be depended upon as a neighbor. He looked out for his family as well as
his neighbors. He was definitely an asset to the neighborhood.

I know him to be a very good businessman and an even better family man. There is
nothing more important to him than his family. I know him to be honest, perhaps to a
fault. He is dependable and his word is as good as gold.

It is my sincere hope that his application be given a fair and objective review.

Thank you for your time and consideration.

John T. Conway

Mr. Anthony DiGiovanni                                    February 23, 2018



U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

Re: Kelerchian, Vahan, Steven

To Whom It May Concern:

I am writing this letter on behalf of my dear friend, Vahan Steven Kelerchian.  I am a small business owner in Jackson Heights, NY.  My family has owned and operated a delicatessen for more than 58 years.  It's the quintessential neighborhood deli that everyone who went to school nearby patronized year after year, and many of our friends still live in the community.  I grew up in the neighborhood, along with Vahan and his wife Maura, and we have been friends for more than 46 years.  This is the place where we forged many of our lifelong friendships.  During the many years that I have known Vahan, I can attest to the fact that he has always conducted himself with both honor and integrity, and he has always been very well respected in the community.

Vahan formerly operated a car repair shop not too far away from my business, and everyone with whom he came into contact had nothing but praise for him.  He has always been kind, courteous, and willing to help anyone in need.  Whether it was family members, friends, customers, or even strangers that were in need of assistance, he always offered help and never turned his back on anyone, no matter the circumstance.  I can personally attest to this because I have witnessed his kindness on many occasions over the years.   It is because of these attributes that Vahan was very successful in the auto repair business for many years.   He ultimately moved to Pennsylvania in order to follow his lifelong passion of becoming a Federal Firearms dealer.  There, along with Maura, he built another successful business with an impeccable record.  For as long as I have known Vahan, he has always been driven to be the best at whatever pursuit he follows.  Vahan is a man who values honesty, morality, and strong principles, and he has been a man of the utmost character in all the years that we have been friends.   He is also a man who knows the importance of family, whereby he and Maura have raised two beautiful daughters and instilled within them the same core values.  I have always held Vahan in the highest regard; I never had a brother, but he is as close to one that I could have ever found.  We will always be friends and nothing can or will ever change that fact.

I am thankful for the opportunity to provide a testament on behalf of Vahan Kelerchian.  I hope that my words have served to paint a clear picture of the man and friend that I have had the privilege to know and admire for almost the entirety of my life.

Sincerely,

Anthony DiGiovanni



APPLICANT
* See Privacy Act Notice on Back

LEAVE BLANK

TYPE OR PRINT ALL INFORMATION IN BLACK

LAST NAME NAM  FIRST NAME  MIDDLE

FBI      LEAVE BLANK

FD-258 (REV.3-1-10)   1110-0046

KELERCHIAN, VAHAN STEVEN

SIGNATURE OF PERSON FINGERPRINTED

ALIASES  AKA

ORI

WVATF0800
ATF-NATL TRA CTR
MARTINSBURG, WV

DATE OF BIRTH      DOB
Month   Day    Year

RESIDENCE OF PERSON FINGERPRINTED

275 WORTHINGTON MILL RD
RICHBORO

CITIZENSHIP  CTZ

SEX | RACE | HGT. | WGT. | EYES | HAIR | PL

DATE    SIGNATURE OF OFFICIAL TAKING FINGERPRINTS

PA              18954

YOU NO.   OCA

US - UNITED STATES O | M | W | 600 | 290 | BRO | BAL | NY - NEW YORK

LEAVE BLANK

EMPLOYER AND ADDRESS

01-02-2018   ASHARP-ALEX, SHARP

FBI NO.  FBI

FEDERAL FIREARMS LICENSING CENTER
244 NEEDY RD
REASON MARTINSBURG
WV          25405

ARMED FORCES NO.   MNU

CLASS

SOCIAL SECURITY NO.   SOC

REF

OTHER

1110-0046

# FEDERAL BUREAU OF INVESTIGATION
## UNITED STATES DEPARTMENT OF JUSTICE
### CJIS DIVISION/CLARKSBURG, WV 26306

# APPLICANT

**1. LOOP**



CENTER OF LOOP

DELTA

THE LINES BETWEEN CENTER OF LOOP AND DELTA MUST SHOW

**2. WHORL**



DELTAS

THESE LINES RUNNING BETWEEN DELTAS MUST BE CLEAR

**3. ARCH**



ARCHES HAVE NO DELTAS

FD-258 (REV. 3-1-10)

**U.S. GOVERNMENT PUBLISHING OFFICE:**
10/22/2015 12:51:47

### THIS CARD FOR USE BY:

1. LAW ENFORCEMENT AGENCIES IN FINGERPRINTING APPLICANTS FOR LAW ENFORCEMENT POSITIONS.*

2. OFFICIALS OF STATE AND LOCAL GOVERNMENTS FOR PURPOSES OF EMPLOYMENT, LICENSING, AND PERMITS, AS AUTHORIZED BY STATE STATUTES AND APPROVED BY THE ATTORNEY GENERAL OF THE UNITED STATES. LOCAL AND COUNTY ORDINANCES, UNLESS SPECIFICALLY BASED ON APPLICABLE STATE STATUTES DO NOT SATISFY THIS REQUIREMENT.*

3. U.S. GOVERNMENT AGENCIES AND OTHER ENTITIES REQUIRED BY FEDERAL LAW.**

4. OFFICIALS OF FEDERALLY CHARTERED OR INSURED BANKING INSTITUTIONS TO PROMOTE OR MAINTAIN THE SECURITY OF THOSE INSTITUTIONS.

Please review this helpful information to aid in the successful processing of hard copy criminal and civil fingerprint submissions in order to prevent delays or rejections. Hard copy fingerprint submissions must meet specific criteria for processing by the Federal Bureau of Investigation.
**Ensure all information is typed or legibly printed using blue or black ink.**
**Enter data within the boundaries of the designated field or block.**
**Complete all required fields.** (If a required field is left blank, the fingerprint card may be immediately rejected without further processing.)
- The required fields for hard copy fingerprint cards are: originating agency identifier number - date of birth - place of birth - name - sex - fingerprint impressions - any applicable state stamp - Other (race, height, weight, eye color, hair color)

* criminal fingerprint cards also require an arrest charge and date of arrest.
* civil fingerprint cards also require a reason fingerprinted and date fingerprinted

**Do not use highlighters on fingerprint cards.**
**Do not enter data or labels within 'Leave Blank' areas.**
**Ensure the 'Reply Desired' field is checked when applicable (criminal only).**
**Ensure fingerprint impressions are rolled completely from nail to nail.**
**Ensure fingerprint impressions are in the correct sequence.**
**Ensure notations are made for any missing fingerprint impression (i.e. amputation).**
**Do not use more than two retabs per fingerprint impression block.**
**Ensure no stray marks are within the fingerprint impression blocks.**

Training aids can be ordered online via the Internet by accessing the FBI's website at: fbi.gov, click on 'Fingerprints', then click on 'Ordering Fingerprint Cards & Training Aids'. Direct questions to the Identification and Investigative Services Section's Customer Service Group at (304) 625-5590 or by e-mail at <liaison@leo.gov>.

### PRIVACY ACT STATEMENT

**Authority:** The FBI's acquisition, preservation, and exchange of information requested by this form is generally authorized under 28 U.S.C. 534. Depending on the nature of your application, supplemental authorities include numerous Federal statutes, hundreds of State statutes pursuant to Pub.L. 92-544, Presidential executive orders, regulations and/or orders of the Attorney General of the United States, or other authorized authorities. Examples include, but are not limited to: 5 U.S.C. 9101; Pub.L. 94-29; Pub.L. 101-604; and Executive Orders 10450 and 12968. Providing the requested information is voluntary; however, failure to furnish the information may affect timely completion or approval of your application.

**Social Security Account Number (SSAN).** Your SSAN is needed to keep records accurate because other people may have the same name and birth date. Pursuant to the Federal Privacy Act of 1974 (5 USC 552a), the requesting agency will inform you whether disclosure is mandatory or voluntary, by what statutory or other authority your SSAN is solicited, and what uses will be made of it. Executive Order 9397 also asks Federal agencies to use this number to help identify individuals in agency records.

**Principal Purpose:** Certain determinations, such as employment, security, licensing, and adoption, may be predicated on fingerprint-based checks. Your fingerprints and other information contained on (and along with) this form may be submitted to the requesting agency, the agency conducting the application investigation, and/or FBI for the purpose of comparing the submitted information to available records in order to identify other information that may be pertinent to the application. During the processing of this application, and for as long thereafter as may be relevant to the activity for which this application is being submitted, the FBI may disclose any potentially pertinent information to the requesting agency and/or to the agency conducting the investigation. The FBI may also retain the submitted information in the FBI's permanent collection of fingerprints and related information, where it will be subject to comparisons against other submissions received by the FBI. Depending on the nature of your application, the requesting agency and/or the agency conducting the application investigation may also retain the fingerprints and other submitted information for authorized purposes of such agency(ies).

**Routine Uses:** The fingerprints and information reported on this form may be disclosed pursuant to your consent, and may also be disclosed by the FBI without your consent as permitted by the Federal Privacy Act of 1974 (5 USC 552a(b)) and all applicable routine uses as may be published at any time in the Federal Register, including the routine uses for the FBI Fingerprint Identification Records System (Justice/FBI-009) and the FBI's Blanket Routine Uses (Justice/FBI-BRU). Routine uses include, but are not limited to, disclosures to: appropriate governmental authorities responsible for civil or criminal law enforcement, counterintelligence, national security or public safety matters to which the information may be relevant; to State and local governmental agencies and nongovernmental entities for application processing as authorized by Federal and State legislation, executive order, or regulation, including employment, security, licensing, and adoption checks; and as otherwise authorized by law, treaty, executive order, regulation, or other lawful authority. If other agencies are involved in processing this application, they may have additional routine uses.

**Additional Information:** The requesting agency and/or the agency conducting the application-investigation will provide you additional information pertinent to the specific circumstances of this application, which may include identification of other authorities, purposes, uses, and consequences of not providing requested information. In addition, any such agency in the Federal Executive Branch has also published notice in the Federal Register describing any system(s) of records in which that agency may also maintain your records, including the authorities, purposes, and routine uses for the system(s).

### INSTRUCTIONS:

* 1. PRINTS MUST GENERALLY BE CHECKED THROUGH THE APPROPRIATE STATE IDENTIFICATION BUREAU, AND ONLY THOSE FINGERPRINTS FOR WHICH NO DISQUALIFYING RECORD HAS BEEN FOUND LOCALLY SHOULD BE SUBMITTED FOR FBI SEARCH.

2. IDENTITY OF PRIVATE CONTRACTORS SHOULD BE SHOWN IN SPACE "EMPLOYER AND ADDRESS". THE CONTRIBUTOR IS THE NAME OF THE AGENCY SUBMITTING THE FINGERPRINT CARD TO THE FBI.

3. FBI NUMBER, IF KNOWN, SHOULD ALWAYS BE FURNISHED IN THE APPROPRIATE SPACE.

** MISCELLANEOUS NO. - RECORD: OTHER ARMED FORCES NO. PASSPORT NO. [FP], ALIEN REGISTRATION NO. (AR), PORT SECURITY CARD NO. (PS), SELECTIVE SERVICE NO. (SS) VETERANS' ADMINISTRATION CLAIM NO. (VA).

Exhibit E



**CUSTOMER USE ONLY**

**FROM:** (PLEASE PRINT) PHONE (610) 845-3803

Joshua Prince, Esq.
Prince Law Offices
646 Lenape Rd
Bechtelsville, PA 19505

**PAYMENT BY ACCOUNT (if applicable)**

USPS® Corporate Acct. No. | Federal Agency Acct. No. or Postal Service™ Acct. No.

**DELIVERY OPTIONS (Customer Use Only)**

☐ **SIGNATURE REQUIRED** *Note:* The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**

☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

**TO:** (PLEASE PRINT) PHONE ( )

Thomas E. Brandon
Bureau of ATF
99 New York Ave, N.E.
Washington, DC

ZIP + 4® (U.S. ADDRESSES ONLY)
20226

■ **For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.**
■ **$100.00 insurance included.**

EL 731611443 US

JP-37012 REC'D MAR 06 2018 DHE

UNITED STATES POSTAL SERVICE®

PRIORITY ★ MAIL ★ EXPRESS™

**ORIGIN (POSTAL SERVICE USE ONLY)**

☐ 1-Day ☒ 2-Day ☐ Military ☐ DPO

| | | | |
|---|---|---|---|
| PO ZIP Code<br>19504 | Scheduled Delivery Date (MM/DD/YY)<br>3/6/18 | Postage<br>$ 24.70 | |
| Date Accepted (MM/DD/YY)<br>3/5/16 | Scheduled Delivery Time<br>☐ 10:30 AM ☐ 3:00 PM<br>☐ 12 NOON | Insurance Fee<br>$ | COD Fee<br>$ |
| Time Accepted<br>3:17 ☐ AM ☒ PM | 10:30 AM Delivery Fee<br>$ | Return Receipt Fee<br>$ | Live Animal Transportation Fee<br>$ |
| Special Handling/Fragile<br>$ | Sunday/Holiday Premium Fee<br>$ | Total Postage & Fees<br>$ 24.70 | |
| Weight ☒ Flat Rate<br>lbs. ozs. | Acceptance Employee Initials | | |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | ☐ AM ☐ PM | |
| | ☐ AM ☐ PM | |

LABEL 11-B, OCTOBER 2016 PSN 7690-02-000-9996 **2-CUSTOMER COPY**

# USPS Tracking®

## Track Another Package  +

### Track Packages
### Anytime, Anywhere

Get the free Informed Delivery® feature to receive automated notifications on your packages

**Learn More**

(https://reg.usps.com

/xsell?app=UspsTools&ref=homepageBanner&appURL=https%3A%2F%2Finformeddelivery.usps.com/box/pages/intro/start.action)

**Tracking Number:** EL731611443US

Remove ✕

Feedback

## Scheduled Delivery by

# TUESDAY

# 6
### MARCH
### 2018 ⓘ

by

# 12:00pm ⓘ

 **Delivered**

March 7, 2018 at 5:38 am
Delivered
WASHINGTON, DC 20226

---

**Proof of Delivery**                                                    ⌃

To request a Proof of Delivery email with full details including a delivery address, **sign in to your USPS.com® account. ❯**

For a Proof of Delivery email without a delivery address, provide your name and email address below.

*Indicates a required field

*First Name

| First |

M.I.

| |

*Last Name

| Last |

*Email Proof of Delivery to up to three addresses

| email123@mail.com |

**Add Another Email +**

**Request Email**

---

## Tracking History ^

**March 7, 2018, 5:38 am**
Delivered
WASHINGTON, DC 20226
Your item was delivered at 5:38 am on March 7, 2018 in WASHINGTON, DC 20226 to ATF 20226 PU. The item was signed for by E ANDERSON.

**March 6, 2018, 10:46 am**
Available for Pickup
WASHINGTON, DC 20226

**March 6, 2018, 10:28 am**
Arrived at Post Office
WASHINGTON, DC 20018

**March 6, 2018, 5:30 am**
Departed USPS Regional Facility
LEHIGH VALLEY PA DISTRIBUTION CENTER

**March 5, 2018, 7:40 pm**

Feedback

Arrived at USPS Regional Origin Facility
LEHIGH VALLEY PA DISTRIBUTION CENTER

---

**March 5, 2018, 4:30 pm**
Departed Post Office
BARTO, PA 19504

---

**March 5, 2018, 3:17 pm**
USPS in possession of item
BARTO, PA 19504

---

**Product Information** ⌄

---

**See Less** ⌃

Feedback

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs**

Exhibit F



## CUSTOMER USE ONLY

**FROM:** (PLEASE PRINT)    PHONE ( 610 ) 845-3803

Joshua Prince, Esg.
646 Lenape Rd.
Bechtelsville, PA 19505

### PAYMENT BY ACCOUNT (if applicable)

USPS Corporate Acct. No.    Federal Agency Acct. No. or Postal Service™ Acct. No.

### DELIVERY OPTIONS (Customer Use Only)

☐ SIGNATURE REQUIRED *Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.*

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

**TO:** (PLEASE PRINT)    PHONE ( 215 ) 446-7800

Mr. Juan F. orellana
Curtis center
Suite 1000E.
601 Walnut St
Philadelphia, PA

ZIP + 4® (U.S. ADDRESSES ONLY)
1 9 1 0 6 -

For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
$100.00 insurance included.

---

USPS® Corporate Acct. No.

CP-371012   DHS

EL 731447 45MUSR 06 2018

### UNITED STATES POSTAL SERVICE ®   |   PRIORITY MAIL EXPRESS™

### ORIGIN (POSTAL SERVICE USE ONLY)

| ☐ 1-Day | ☐ 2-Day | ☐ Military | ☐ DPO |
|---|---|---|---|

**PO ZIP Code:** 19504
**Scheduled Delivery Date (MM/DD/YY):** 31618
**Postage:** $ 24.70

**Date Accepted (MM/DD/YY):** 31518
**Scheduled Delivery Time:** ☐ 10:30 AM  ☐ 3:00 PM  ☐ 12 NOON
**Insurance Fee:** $ | **COD Fee:** $

**Time Accepted:** 3:15  ☐ AM  ☑ PM
**10:30 AM Delivery Fee:** $
**Return Receipt Fee:** $ | **Live Animal Transportation Fee:** $

**Special Handling/Fragile:** $
**Sunday/Holiday Premium Fee:** $
**Total Postage & Fees:** $ 24.70

**Weight:** ☐ Flat Rate _____ lbs. _____ ozs.
**Acceptance Employee Initials:** KWB

### DELIVERY (POSTAL SERVICE USE ONLY)

**Delivery Attempt (MM/DD/YY):** Time ☐ AM ☐ PM
**Employee Signature**

**Delivery Attempt (MM/DD/YY):** Time ☐ AM ☐ PM
**Employee Signature**

LABEL 11-B, OCTOBER 2016      PSN 7690-02-000-9996      **2-CUSTOMER COPY**

# USPS Tracking®

FAQs >

## Track Another Package **+**

**Track Packages Anytime, Anywhere**

Get the free Informed Delivery® feature to receive automated notifications on your packages

**Learn More**

**(https://reg.usps.com**
/xsell?app=UspsTools&ref=homepageBanner&appURL=https%3A%2F%2Finformeddelivery.usps.com/box/pages/intro/start.action)

---

**Tracking Number:** EL731611465US

Remove ✕

Feedback

**Scheduled Delivery by**

# TUESDAY

# 6 MARCH 2018 ⓘ

by

## 12:00pm ⓘ

 **Delivered**

March 6, 2018 at 10:52 am
Delivered
PHILADELPHIA, PA 19106

---

**Proof of Delivery** ⌄

---

**Tracking History** ⌃

**March 6, 2018, 10:52 am**
Delivered

PHILADELPHIA, PA 19106
Your item was delivered at 10:52 am on March 6, 2018 in PHILADELPHIA, PA
19106. Waiver of signature was exercised at time of delivery.

**March 6, 2018, 6:00 am**
Arrived at Post Office
PHILADELPHIA, PA 19104

**March 6, 2018, 12:59 am**
Arrived at USPS Regional Facility
PHILADELPHIA PA DISTRIBUTION CENTER

**March 5, 2018, 7:40 pm**
Arrived at USPS Regional Facility
LEHIGH VALLEY PA DISTRIBUTION CENTER

**March 5, 2018, 4:30 pm**
Departed Post Office
BARTO, PA 19504

**March 5, 2018, 3:15 pm**
USPS in possession of item
BARTO, PA 19504

Feedback

**Product Information**    ⌄

See Less ︿

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

Exhibit G



# USPS PRIORITY MAIL EXPRESS

## CUSTOMER USE ONLY

**FROM:** (PLEASE PRINT)   **PHONE (** ___ **)** 845-38-03

Patricia Prince
c/o Genene Prince
Kortolville, PA 19505

## PAYMENT BY ACCOUNT (if applicable)

USPS Corporate Acct. No.

Federal Agency Acct. No. or Postal Service™ Acct. No.

## DELIVERY OPTIONS (Customer Use Only)

☐ SIGNATURE REQUIRED *Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.*

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

## TO: (PLEASE PRINT)   PHONE (**800**) 648-7080

US Dept. of Justice-Bureau of ATF
ATTN: ATF NCETR-Relief E
Disability Section
Corporal Rd, BLDG. 3750, Redstone Arsenal
Huntsville, AL

**ZIP + 4® (U.S. ADDRESSES ONLY)**

3 5 8 9 8

For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.

$100.00 insurance included.

LABEL 11-B, OCTOBER 2016     PSN 7690-02-000-9996

## ORIGIN (POSTAL SERVICE USE ONLY)

☐ 1-Day   ☐ 2-Day   ☐ Military   ☐ DPO

**PO ZIP Code:** 19504

**Scheduled Delivery Date (MM/DD/YY):** 3/6/18

**Postage:** $ 24.70

**Date Accepted (MM/DD/YY):** 3/5/18

**Scheduled Delivery Time:**
☐ 10:30 AM  ☐ 3:00 PM  ☐ 12 NOON

**Insurance Fee:** $

**COD Fee:** $

**Time Accepted:** 3:14  ☐ AM  ☑ PM

**10:30 AM Delivery Fee:** $

**Return Receipt Fee:** $

**Live Animal Transportation Fee:** $

**lbs.    ozs.**  ☑ Flat Rate

**Acceptance Employee Initials:** (illegible)

**Total Postage & Fees:** $ 24.70

## DELIVERY (POSTAL SERVICE USE ONLY)

**Delivery Attempt (MM/DD/YY):** Time  ☐ AM  ☐ PM   **Employee Signature**

**Delivery Attempt (MM/DD/YY):** Time  ☐ AM  ☐ PM   **Employee Signature**

**Special Handling/Fragile:** $

**Sunday/Holiday Premium Fee:** $

EL 731671143O US

RECD MAR 0 6 2018

3P-3701

2-CUSTOMER COPY

# USPS Tracking®

**FAQs** >

## Track Another Package +

### Track Packages
### Anytime, Anywhere

Get the free Informed Delivery® feature to receive
automated notifications on your packages

**Learn More**

(https://reg.usps.com

/xsell?app=UspsTools&ref=homepageBanner&appURL=https%3A%2F%2Finformeddelivery.usps.com/box/pages/intro/start.action)

---

**Tracking Number:** EL731611430US

Remove ✕

Feedback

**Scheduled Delivery by**

# TUESDAY

# 6   MARCH
     2018 ⓘ      by
             **12:00pm** ⓘ

 **Delivered**

March 6, 2018 at 10:45 am
Delivered
HUNTSVILLE, AL 35898

---

**Proof of Delivery**                                        ⌄

---

**Tracking History**                                         ⌃

**March 6, 2018, 10:45 am**
Delivered

HUNTSVILLE, AL 35898
Your item was delivered at 10:45 am on March 6, 2018 in HUNTSVILLE, AL
35898 to CENTRAL MAIL. The item was signed for by B MOORE.

**March 6, 2018, 10:43 am**
Available for Pickup
HUNTSVILLE, AL 35898

**March 6, 2018, 10:43 am**
Arrived at Post Office
HUNTSVILLE, AL 35808

**March 6, 2018, 8:51 am**
Arrived at USPS Regional Destination Facility
HUNTSVILLE AL DISTRIBUTION CENTER

**March 6, 2018, 5:30 am**
Departed USPS Regional Facility
LEHIGH VALLEY PA DISTRIBUTION CENTER

**March 5, 2018, 7:40 pm**
Arrived at USPS Regional Origin Facility
LEHIGH VALLEY PA DISTRIBUTION CENTER

**March 5, 2018, 4:30 pm**
Departed Post Office
BARTO, PA 19504

**March 5, 2018, 3:14 pm**
USPS in possession of item
BARTO, PA 19504

Feedback

**Product Information** ⌄

**See Less** ∧

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs**

Feedback

Exhibit H

REC'D APR 3 2018 37012
DH



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

Washington, DC 20226

www.atf.gov

March 27, 2018

752220: NRL
3320

Joshua Prince
646 Lenape Road
Bechtelsville, Pennsylvania 19505

Dear Mr. Prince:

This is in response to your submission to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) of an application for firearms relief from disabilities for Mr. Vahan Kelerchian.

Although Federal law provides a means for the relief of firearms disabilities, since October 1992, ATF's annual appropriation has prohibited the expending of any funds to investigate or act upon applications for relief from Federal firearms disabilities submitted by individuals. Accordingly, ATF cannot act upon these applications.

Since ATF cannot act upon applications for relief from Federal firearms disabilities submitted by individuals, Mr. Kelerchian's application is being returned unprocessed. Please let us know if we may be of further assistance.

Sincerely yours,

Digitally signed by
Kenneth C. Torres
Date: 2018.03.27 16:25:22
-05'00'

John R. Day
Chief, Explosives
Enforcement and Training Division

# PRINCE LAW OFFICES, P.C.



Warren H. Prince
Karl P. Voigt IV
Joshua Prince
Eric E. Winter
Thomas H. Odom
Stanley J. Kuter
Jeffrey A Franklin
Adam J. Kraut
Jorge Pereira

| | |
|---|---|
| Bechtelsville | 1-610-845-3803 |
| Allentown | 1-610-770-1151 |
| Bethlehem | 1-610-814-0838 |
| Camp Hill | 1-717-731-0100 |
| Lancaster | 1-717-393-7002 |
| Lebanon | 1-717-274-9250 |
| North Wales | 1-215-412-0800 |
| Pottstown | 1-610-326-4200 |
| Pottsville | 1-570-621-8828 |
| Reading | 1-610-375-8425 |
| Toll Free | 1-888-313-0416 |
| Fax | 1-610-845-3903 |

March 02, 2018

U.S. Department of Justice - Bureau of Alcohol, Tobacco, Firearms and Explosives
Attention Bureau of Alcohol, Tobacco, Firearms and Explosives NCETR - Relief of Disabilities
Section
Corporal Road, Building 3750, Redstone Arsenal
Huntsville, AL 35898

RE:   Vahan Kelerchian Application for Restoration of Firearms Privileges
       FFL # 8-23-017-01-5A-02276

Dear Acting Director Brandon, DIO Orellana and ladies and gentlemen of the NCETR,

    Please be advised that I have been retained by Vahan Kelerchian, FFL no. 8-23-017-01-5A-
02276, in relation to his timely Application for Restoration of Firearms Privileges, pursuant to 18
U.S.C. § 925(c) and 27 C.F.R. 478.144. As there is conflicting information between the
information contained in the enclosed executed Applications and 27 C.F.R. 478.144, Mr.
Kelerchian is filing this form in compliance with both the instructions on the application and
Section 478.144.

    Specifically, as Section 478.144 requires three copies of the application to be filed with the
Director, as defined in 27 C.F.R. § 478.11, but the application instructions only require one copy
to be filed with NCETR, please find enclosed three copies of the executed Applications, which
are being served on Acting Director Brandon, NCETR, and Phialadelphia Director of Industry
Operations Juan Orellana. Please also find enclosed one copy of (1) an Authority for Release of
Information, (2) Mr. Kelerchian's court documents, including the Indictment and Amended
Judgement, (3) four letters of recommendation from references, who are not related to Mr.
Kelerchian by blood or marriage and have known him for at least 3 years, and (4) a completed FD
258 fingerprint card.

    Pursuant to Sections 925(c) and 478.144(i), as Mr. Kelerchian is an FFL holder, who has
continually and timely renewed his FFL, he shall not be "barred by such disability from further
operations under his license pending final action on an application for relief filed pursuant to this
section."

Thanking you for your time and consideration in Mr. Kelerchian's request, I am

Yours truly,
Prince Law Offices, P.C.

Joshua Prince
joshua@princelaw.com
Extension: 81114

jp/web
Matter no. 37012
Enclosure

*Distribution*

**U.S. Department of Justice - Bureau of Alcohol, Tobacco, Firearms and Explosives**
Thomas E. Brandon
Mr. Juan F. Orellana

OMB No. 1140-0002

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Application for Restoration of Firearms Privileges

| 1. Name *(Last, First, Middle)* | Kelerchian, Vahan, Steven |
|---|---|

| 2. Birthplace *(City & State)* New York City, NY | 3. Date of Birth | 4. Aliases N/A | 5. Social Security Number *(Voluntary)* |
|---|---|---|---|

| 6. Present Address *(No., Street, City, State, Zip Code)* | 7. Telephone Number |
|---|---|

**8. Description**

| Sex M | Height 6'2" | Weight 280 | Hair Brown | Eyes Brown |
|---|---|---|---|---|

Ethnicity
☐ Hispanic or Latino
☑ Not Hispanic or Latino

Race *(Check one or more boxes)*
☐ American Indian or Alaska Native
☐ Asian
☐ Black or African American
☐ Native Hawaiian or Other Pacific Islander
☑ White

9. If you are not a citizen of the United States, what is your INS-issued alien number or admission number? _____

10. Residences During Past Ten Years *(In columns (b) and (c) enter the months and years of residence.)*

| Address *(Number, Street, City, State and Zip Code)* (a) | From (b) | To (c) |
|---|---|---|
| | 1997 | Present |
| | | |
| | | |
| | | |

11. Employment Record *(List present and prior employers and show month and year of employment.)*

| Name and Address of Employer (a) | Position (b) | From (c) | To (d) |
|---|---|---|---|
| Armament Services, Inc. 103 Camars Dr. Warminster PA 18974 | President | 2000 | 2013 |
| | | | |

12. Convictions *(If pardoned for a conviction, write "yes" in column (e) and attach a copy of the pardon.)*

| Specific Crime (a) | Name and Location of Court (b) | Sentence Received (c) | Conviction Date (d) | Pardoned (e) |
|---|---|---|---|---|
| See attached court records | | | | |
| | | | | |
| | | | | |

13. Other Arrests

| Charge (a) | Date and Place of Arrest (b) | Disposition (c) |
|---|---|---|
| None | | |
| | | |
| | | |

| 14. Probation Officer's Name, Address and Telephone Number N/A | 15. Parole Officer's Name, Address and Telephone Number N/A |
|---|---|

ATF Form 3210.1
Revised September 2014

16. Character References  *(Three references are required.  Please include a written statement from each of 3 references, who are not related to the applicant by blood or marriage and have known applicant for at least 3 years, recommending the granting of relief.)*

| Name and Address *(a)* | Occupation *(b)* | Telephone Number *(c)* |
|---|---|---|
| John T. Conway, ███████████████ | Funeral Director | ████████ |
| Anthony Baiamonte III, ████████████ | Attorney | ████████ |
| Christopher J. McLoughlin, ██████████ | Retired | ████████ |

17. **Applicant Data**  *(All questions must be answered by a "Yes" or "No")*

| | Yes | No | | Yes | No |
|---|---|---|---|---|---|
| a.  Are you a fugitive from justice? | | X | h.  Have you served on active duty in the armed Forces? *(If "yes" check Branch and complete following)* ☐ Army ☐ Navy ☐ Marines ☐ Air Force ☐ Coast Guard | | X |
| b.  Are you an unlawful user of or addicted to marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled substance? | | X | Service Serial Number | | |
| | | | Date Entered Active Duty | | |
| c.  Have you ever been convicted in any court of a felony, or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence, including probation?  *(If "yes," see Additional Information Request 1.)* | X | | Kind of Discharge | | |
| | | | Date of Discharge | | |
| d.  Are you now on probation or parole? | | X | | Yes | No |
| e.  Are you under indictment or information in any court for a felony, or any other crime, for which the judge could imprison you for more than one year?  *(An information is a formal accusation of a crime by a prosecutor.)  (If "yes," see Additional Information Request 2.)* | X | | i.  Are you subject to a court order restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner? *(If "yes," see Additional Information Request 5.)* | | X |
| | | | j.  Have you been convicted in any court of a misdemeanor crime of domestic violence? *(If "yes," see Additional Information Request 6.)* | | X |
| f.  Have you ever been adjudicated mentally defective *(which includes having been adjudicated incompetent to manage your own affairs)* or have you been committed to a mental institution? *(If "yes," see Additional Information Request 3.)* | | X | k.  Have you ever renounced your United States citizenship? *(If "yes," see Additional Information Request 7.)* | | X |
| | | | l.  Are you an alien in the United States? *(If "yes," see Additional Information Request 8.)* | | X |
| g.  Have you ever been discharged from the armed forces under dishonorable conditions? *(If "yes," see Additional Information Request 4.)* | | X | m.  Have you ever applied for a federal firearms license or a federal explosives license or Permit? *(If "yes" show date and with whom filed.)* | X | |

18.  COMPLETE THIS ITEM ONLY IF APPLICANT WAS EVER ISSUED A FEDERAL FIREARMS LICENSE OR A FEDERAL EXPLOSIVES LICENSE OR PERMIT.

| Business Name and Address  *(License/Permit Issued Under)* | License or Permit Number | Expiration Date of Latest License or Permit |
|---|---|---|
| **Vahan S. Kelerchian** | 8-23-017-01-5A-02276 | LOA Exp. 08/07/2018 |

The Business is  *(Check one)*
■ Individually Owned   ☐ A Partnership   ☐ A Corporation   ☐ Other *(Specify)* _____

19a.  I believe I should be granted relief because:
I am a good person, who has never acted nor will act in a manner dangerous to public safety and the granting of the relief to me would not be contrary to the public interest. Moreover, I am not a threat to the public in purchasing, possessing, transferring or selling firearms and ammunition. Furthermore, my FFL records have always been maintained meticulously and even the IOIs commented on my recordkeeping compliance.

19b.  Important:  Applicants filing for restoration privileges *(Relief From Disabilities)* under Chapter 44, Title 18 U.S.C. 925(c) must complete this item.

No application for restoration under 18 U.S.C. Chapter 44 will be considered unless the applicant acknowledges and agrees that a notice of approval will appear in the Federal Register, an official U.S. Government publication available to the general public, if and when the application is approved.  The notice of approval will give all essential details including the applicant's name, address, the court and date of conviction.

IN THE EVENT THIS APPLICATION IS APPROVED:

■ I understand that a notice of approval will appear in the Federal Register immediately following the issuance of the approval, and

■ I hereby agree to publication of the notice of approval giving my name, address and the date of my conviction.

Under penalties imposed by 18 U.S.C. 924, I declare under penalties of perjury, that the answers in this application are true, correct, and complete.

| 20.  Signature of Applicant *Vahan S. Kelerchian* | 21.  Date  3/2/18 |
|---|---|

**Note:  A Completed FD 258 (Fingerprint Identification Card) Must Accompany This Application.**

Mail Application Form To:   **Bureau of Alcohol, Tobacco, Firearms and Explosives
NCETR - Relief of Disabilities Section
Corporal Road, Building 3750
Redstone Arsenal
Huntsville, AL 35898**

ATF Form 3210.1
Revised September 2014

OMB No. 1140-0002

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Application for Restoration of Firearms Privileges**

| 1. Name *(Last, First, Middle)* | Kelerchian, Vahan, Steven |
|---|---|

| 2. Birthplace *(City & State)*  New York City, NY | 3. Date of Birth ███████ | 4. Aliases  N/A | 5. Social Security Number *(Voluntary)* |
|---|---|---|---|

| 6. Present Address *(No., Street, City, State, Zip Code)* ████████ | 7. Telephone Number ████ |
|---|---|

**8. Description**

| Sex  M | Height  6'2" | Weight  280 | Hair  Brown | Eyes  Brown |
|---|---|---|---|---|

Ethnicity

☐ Hispanic or Latino
☒ Not Hispanic or Latino

Race *(Check one or more boxes)*

☐ American Indian or Alaska Native
☐ Asian
☐ Black or African American
☐ Native Hawaiian or Other Pacific Islander
☒ White

9. If you are not a citizen of the United States, what is your INS-issued alien number or admission number? _____

10. Residences During Past Ten Years  *(In columns (b) and (c) enter the months and years of residence.)*

| Address *(Number, Street, City, State and Zip Code)* (a) | From (b) | To (c) |
|---|---|---|
| ████████████ | 1997 | Present |
|  |  |  |
|  |  |  |
|  |  |  |

11. Employment Record  *(List present and prior employers and show month and year of employment.)*

| Name and Address of Employer (a) | Position (b) | From (c) | To (d) |
|---|---|---|---|
| Armament Services, Inc. 103 Camars Dr. Warminster PA 18974 | President | 2000 | 2013 |
|  |  |  |  |

12. Convictions  *(If pardoned for a conviction, write "yes" in column (e) and attach a copy of the pardon.)*

| Specific Crime (a) | Name and Location of Court (b) | Sentence Received (c) | Conviction Date (d) | Pardoned (e) |
|---|---|---|---|---|
| See attached court records |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

13. Other Arrests

| Charge (a) | Date and Place of Arrest (b) | Disposition (c) |
|---|---|---|
| None |  |  |
|  |  |  |
|  |  |  |

| 14. Probation Officer's Name, Address and Telephone Number  N/A | 15. Parole Officer's Name, Address and Telephone Number  N/A |
|---|---|

ATF Form 3210.1
Revised September 2014

16. Character References *(Three references are required. Please include a written statement from each of 3 references, who are not related to the applicant by blood or marriage and have known applicant for at least 3 years, recommending the granting of relief.)*

| Name and Address (a) | Occupation (b) | Telephone Number (c) |
|---|---|---|
| John T. Conway, | Funeral Director | |
| Anthony Baiamonte III, | Attorney | |
| Christopher J. McLoughlin, | Retired | |

17. Applicant Data *(All questions must be answered by a "Yes" or "No")*

| | Yes | No |
|---|---|---|
| a. Are you a fugitive from justice? | | X |
| b. Are you an unlawful user of or addicted to marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled substance? | | X |
| c. Have you ever been convicted in any court of a felony, or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence, including probation? *(If "yes," see Additional Information Request 1.)* | X | |
| d. Are you now on probation or parole? | | X |
| e. Are you under indictment or information in any court for a felony, or any other crime, for which the judge could imprison you for more than one year? *(An information is a formal accusation of a crime by a prosecutor.) (If "yes," see Additional Information Request 2.)* | X | |
| f. Have you ever been adjudicated mentally defective *(which includes having been adjudicated incompetent to manage your own affairs)* or have you been committed to a mental institution? *(If "yes," see Additional Information Request 3.)* | | X |
| g. Have you ever been discharged from the armed forces under dishonorable conditions? *(If "yes," see Additional Information Request 4.)* | | X |

| | Yes | No |
|---|---|---|
| h. Have you served on active duty in the armed Forces? *(If "yes" check Branch and complete following)* ☐ Army ☐ Navy ☐ Marines ☐ Air Force ☐ Coast Guard | | X |
| i. Are you subject to a court order restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner? *(If "yes," see Additional Information Request 5.)* | | X |
| j. Have you been convicted in any court of a misdemeanor crime of domestic violence? *(If "yes," see Additional Information Request 6.)* | | X |
| k. Have you ever renounced your United States citizenship? *(If "yes," see Additional Information Request 7.)* | | X |
| l. Are you an alien in the United States? *(If "yes," see Additional Information Request 8.)* | | X |
| m. Have you ever applied for a federal firearms license or a federal explosives license or Permit? *(If "yes" show date and with whom filed.)* | X | |

Service Serial Number / Date Entered Active Duty / Kind of Discharge / Date of Discharge

18. COMPLETE THIS ITEM ONLY IF APPLICANT WAS EVER ISSUED A FEDERAL FIREARMS LICENSE OR A FEDERAL EXPLOSIVES LICENSE OR PERMIT.

Business Name and Address *(License/Permit Issued Under)*: **Vahan S. Kelerchian**

License or Permit Number: 8-23-017-01-5A-02276

Expiration Date of Latest License or Permit: LOA Exp. 08/07/2018

The Business is *(Check one)* ■ Individually Owned ☐ A Partnership ☐ A Corporation ☐ Other *(Specify)* _____

19a. I believe I should be granted relief because:
I am a good person, who has never acted nor will act in a manner dangerous to public safety and the granting of the relief to me would not be contrary to the public interest. Moreover, I am not a threat to the public in purchasing, possessing, transferring or selling firearms and ammunition. Furthermore, my FFL records have always been maintained meticulously and even the IOIs commented on my recordkeeping compliance.

19b. Important: Applicants filing for restoration privileges *(Relief From Disabilities)* under Chapter 44, Title 18 U.S.C. 925(c) must complete this item.

No application for restoration under 18 U.S.C. Chapter 44 will be considered unless the applicant acknowledges and agrees that a notice of approval will appear in the Federal Register, an official U.S. Government publication available to the general public, if and when the application is approved. The notice of approval will give all essential details including the applicant's name, address, the court and date of conviction.

IN THE EVENT THIS APPLICATION IS APPROVED:
■ I understand that a notice of approval will appear in the Federal Register immediately following the issuance of the approval, and
■ I hereby agree to publication of the notice of approval giving my name, address and the date of my conviction.

Under penalties imposed by 18 U.S.C. 924, I declare under penalties of perjury, that the answers in this application are true, correct, and complete.

20. Signature of Applicant *(signed)* / 21. Date 3/2/18

Note: A Completed FD 258 (Fingerprint Identification Card) Must Accompany This Application.

Mail Application Form To: Bureau of Alcohol, Tobacco, Firearms and Explosives / NCETR - Relief of Disabilities Section / Corporal Road, Building 3750 / Redstone Arsenal / Huntsville, AL 35898

ATF Form 3210.1 Revised September 2014

OMB No. 1140-0002

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Application for Restoration of Firearms Privileges**

| | |
|---|---|
| 1. Name *(Last, First, Middle)* | Kelerchian, Vahan, Steven |

| 2. Birthplace *(City & State)* | 3. Date of Birth | 4. Aliases | 5. Social Security Number *(Voluntary)* |
|---|---|---|---|
| New York City, NY | ▓▓▓▓▓ | N/A | |

| 6. Present Address *(No., Street, City, State, Zip Code)* | 7. Telephone Number |
|---|---|
| ▓▓▓▓▓▓▓▓▓ | ▓▓▓▓▓ |

8. Description

| Sex | Height | Weight | Hair | Eyes |
|---|---|---|---|---|
| M | 6'2" | 280 | Brown | Brown |

**Ethnicity**
- ☐ Hispanic or Latino
- ☒ Not Hispanic or Latino

**Race** *(Check one or more boxes)*
- ☐ American Indian or Alaska Native
- ☐ Asian
- ☐ Black or African American
- ☐ Native Hawaiian or Other Pacific Islander
- ☒ White

9. If you are not a citizen of the United States, what is your INS-issued alien number or admission number? _____

10. Residences During Past Ten Years *(In columns (b) and (c) enter the months and years of residence.)*

| Address *(Number, Street, City, State and Zip Code)* (a) | From (b) | To (c) |
|---|---|---|
| ▓▓▓▓▓▓▓ | 1997 | Present |
| | | |
| | | |
| | | |

11. Employment Record *(List present and prior employers and show month and year of employment.)*

| Name and Address of Employer (a) | Position (b) | From (c) | To (d) |
|---|---|---|---|
| Armament Services, Inc. 103 Camars Dr. Warminster PA 18974 | President | 2000 | 2013 |
| | | | |

12. Convictions *(If pardoned for a conviction, write "yes" in column (e) and attach a copy of the pardon.)*

| Specific Crime (a) | Name and Location of Court (b) | Sentence Received (c) | Conviction Date (d) | Pardoned (e) |
|---|---|---|---|---|
| See attached court records | | | | |
| | | | | |
| | | | | |
| | | | | |

13. Other Arrests

| Charge (a) | Date and Place of Arrest (b) | Disposition (c) |
|---|---|---|
| None | | |
| | | |
| | | |
| | | |

| 14. Probation Officer's Name, Address and Telephone Number | 15. Parole Officer's Name, Address and Telephone Number |
|---|---|
| N/A | N/A |

ATF Form 3210.1
Revised September 2014

16. Character References  *(Three references are required.  Please include a written statement from each of 3 references, who are not related to the applicant by blood or marriage and have known applicant for at least 3 years, recommending the granting of relief.)*

| Name and Address *(a)* | Occupation *(b)* | Telephone Number *(c)* |
|---|---|---|
| John T. Conway, ███████████ | Funeral Director | ████████ |
| Anthony Baiamonte III, ███████ | Attorney | ████████ |
| Christopher J. McLoughlin, ████████████ | Retired | ████████ |

17. Applicant Data  *(All questions must be answered by a "Yes" or "No")*

|  | Yes | No |  | Yes | No |
|---|---|---|---|---|---|
| a.  Are you a fugitive from justice? |  | X | h.  Have you served on active duty in the armed Forces?  *(If "yes" check Branch and complete following)*  ☐ Army  ☐ Navy  ☐ Marines  ☐ Air Force  ☐ Coast Guard |  | X |
| b.  Are you an unlawful user of or addicted  to marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled substance? |  | X | Service Serial Number | Date Entered Active Duty |  |
| c.  Have you ever been convicted in any court of a felony, or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence, including probation?  *(If "yes," see Additional Information Request 1.)* | X |  | Kind of Discharge | Date of Discharge |  |
| d.  Are you now on probation or parole? |  | X |  | Yes | No |
| e.  Are you under indictment or information in any court for a felony, or any other crime, for which the judge could imprison you for more than one year?  *(An information is a formal accusation of a crime by a prosecutor.)  (If "yes," see Additional Information Request 2.)* | X |  | i.  Are you subject  to a court order restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner?  *(If "yes," see Additional Information Request 5.)* |  | X |
| f.  Have you ever been adjudicated mentally defective *(which includes having been adjudicated incompetent to manage your own affairs)* or have you been committed to a mental institution?  *(If "yes," see Additional  Information Request 3.)* |  | X | j.  Have you been convicted in any court of a misdemeanor crime of domestic violence?  *(If "yes," see Additional Information Request 6.)* |  | X |
|  |  |  | k.  Have you ever renounced your United States citizenship?  *(If "yes," see Additional Information Request 7.)* |  | X |
|  |  |  | l.  Are you an alien in the United States?  *(If "yes," see Additional Information Request 8.)* |  | X |
| g.  Have you ever been discharged from the armed forces under dishonorable conditions?  *(If "yes," see Additional Information Request 4.)* |  | X | m.  Have you ever applied for a federal firearms license or a federal explosives license or Permit?  *(If "yes" show date and with whom filed.)* | X |  |

18.  COMPLETE THIS ITEM ONLY IF APPLICANT WAS EVER ISSUED A FEDERAL FIREARMS LICENSE OR A FEDERAL EXPLOSIVES LICENSE OR PERMIT.

| Business Name and Address  *(License/Permit Issued Under)* | License or Permit Number | Expiration Date of Latest License or Permit |
|---|---|---|
| **Vahan S. Kelerchian** | 8-23-017-01-5A-02276 | LOA Exp. 08/07/2018 |

The Business is  *(Check one)*
■ Individually Owned    ☐ A Partnership    ☐ A Corporation    ☐ Other *(Specify)* _____

19a.  I believe I should be granted relief because:
I am a good person, who has never acted nor will act in a manner dangerous to public safety and the granting of the relief to me would not be contrary to the public interest. Moreover, I am not a threat to the public in purchasing, possessing, transferring or selling firearms and ammunition. Furthermore, my FFL records have always been maintained meticulously and even the IOIs commented on my recordkeeping compliance.

19b.  Important:  Applicants filing for restoration privileges *(Relief From Disabilities)* under Chapter 44, Title 18 U.S.C. 925(c) must complete this item.

No application for restoration under 18 U.S.C. Chapter 44 will be considered unless the applicant acknowledges and agrees that a notice of approval will appear in the Federal Register, an official U.S. Government publication available to the general public, if and when the application is approved.  The notice of approval will give all essential details including the applicant's name, address, the court and date of conviction.

IN THE EVENT THIS APPLICATION IS APPROVED:

■  I understand that a notice of approval will appear in the Federal Register immediately following the issuance of the approval, and

■  I hereby agree to publication of the notice of approval giving my name, address and the date of my conviction.

Under penalties imposed by 18 U.S.C. 924, I declare under penalties of perjury, that the answers in this application are true, correct, and complete.

| 20.  Signature of Applicant  *Vahan S. Kelerchian* | 21.  Date  3/2/18 |
|---|---|

Note:  A Completed FD 258 (Fingerprint Identification Card) Must Accompany This Application.

Mail Application Form To:    Bureau of Alcohol, Tobacco, Firearms and Explosives
NCETR - Relief of Disabilities Section
Corporal Road, Building 3750
Redstone Arsenal
Huntsville, AL 35898

ATF Form 3210.1
Revised September 2014

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Authority for Release of Information

---

**Authority for Release of Information**

THIS SHEET MUST ACCOMPANY ALL COPIES OF ATF FORM 3210.1, APPLICATION FOR RESTORATION OF FIREARMS PRIVILEGES

1. **Authority.** The authority to solicit information is stated in ATF Form 3210.1, Application for Restoration of Firearms Privileges. This form is in compliance with the Privacy Act of 1974.

2. **Purpose and Use.** The information you supply by signing this release of information form will be used principally to aid in the completion of a background investigation conducted by the Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), pursuant to 18 U.S.C. § 925(c), in conjunction with your Application for Restoration of Firearms Privileges.

3. **Effects of Nondisclosure.** Your signature on this Authority for Release of Information form is voluntary; however, your failure to complete this form may mean that the required information cannot be obtained to complete your investigation, and may result in the termination of your application.

| Name of Applicant *(Include Last, First, and Middle Name and all aliases used)* | Date of Birth |
|---|---|
| **Kelerchian, Vahan, Steven** | ███████ |
| Present Address *(Number, Street, City, State, Zip Code)* | Telephone Number *(Include Area Code)* |
| ████████████████████████ | ███████ |

This release, when presented by a duly authorized representative of the Department of Justice, will constitute my consent and authority to examine and obtain copies and abstracts of records and to receive statements and information regarding my background. Specifically, I hereby authorize the release of the following data or records to the Department of Justice (ATF):

**Employment Information, Military Information/Records, Police and Criminal Records, Medical History**

**Medical Information Records**
*If You Answered "Yes" to Items 17(b) or (f) on ATF Form 3210.1, Complete the Following Section.*

| Name of Attending Physicians, Alcohol or Drug Abuse Rehabilitation Centers, or Mental Health Institutions | Address *(Including City, State and Zip Code)* | Area Code and Telephone Number |
|---|---|---|
| | | |
| | | |
| | | |

| Signature of Applicant | Date | Special Agent *(Signature)* | Date |
|---|---|---|---|
| *[signature]* | 3/2/18 | | |

ATF Form 3210.1
Revised September 2014

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NUMBER: 2:13CR66-001** |
| **Plaintiff,** | **USM Number: 12810-027** |
| **vs.** | |
| **VAHAN KELERCHIAN** | **KERRY C CONNOR** |
| **Defendant.** | **P. JEFFREY SCHLESINGER** |
| | **DEFENDANT'S ATTORNEYS** |

## AMENDED JUDGMENT IN A CRIMINAL CASE

**Date of Original Judgment Order: 2/7/2018.**
**Amended on 2/12/2018 to correct administrative error** on page 3, under C.R. 35(a):  2-7 is replaced by 3-7.
**THE DEFENDANT** was found guilty by Jury on counts 1, 2, 3, 4, 5, 6, 7, and 9 of the Indictment on October 15, 2015.

**ACCORDINGLY,** the court has adjudicated that the defendant is guilty of the following offenses:

| Title, Section & Nature of Offense | Date Offense Ended | Count Number(s) |
|---|---|---|
| 18: 371 CONSPIRACY TO PROVIDE FALSE INFORMATION TO A FEDERAL FIREARMS LICENSEE | January 2010 | 1 |
| 18:371 CONSPIRACY TO DEFRAUD FOOD AND DRUG ADMINISTRATION | September 2010 | 2 |
| 18:371 CONSPIRACY TO MAKE  FALSE STATEMENTS - DEMONSTRATION LETTERS | March 28, 2010 | 3 |
| 18:1001 MAKING FALSE STATEMENTS  TO A FEDERAL AGENCY | March 28, 2010 | 4-7 |
| 18:1956(h) CONSPIRACY TO LAUNDER MONETARY INSTRUMENTS AND FORFEITURE | January 2010 | 9 |

The defendant is sentenced as provided in pages 2 through 8 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.
The defendant has been found not guilty on count 8.

**IT IS ORDERED** that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States Attorney of any material change in economic circumstances.

February 5, 2018
Date of Imposition of Judgment

s/ Joseph S. Van Bokkelen
_____
Signature of Judge

Joseph S. Van Bokkelen, United States District Judge
_____
Name and Title of Judge

February 12, 2018
_____
Date

Case Number: 2:13CR66-001
Defendant: VAHAN KELERCHIAN

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **100 months.**

\*      60-month term as to each of the following counts: Count 1, Count 3, Count 4, Count 5, Count 6, and Count 7. Each 60-month term for this group of counts is to be served concurrently with the other counts in this group.

\*      A 60-month term as to Count 2: 40 of those months are to be served consecutively as to Count 1 and Counts 3–7, and 20 of those months are to be served concurrently with Count 1 and Counts 3–7.

\*      A 40-month sentence as to Count 9, to be served consecutively as to Count 1 and Counts 3–7, but concurrently with Count 2.

The Court makes the following recommendations to the Bureau of Prisons:

That the defendant be designated to serve his sentence at Fort Dix, NJ.

That the defendant be given credit for time served while awaiting sentencing.

The defendant is placed into the custody of the United States Marshal.

## RETURN

I have executed this judgment as follows:

Defendant delivered _____ to _____ at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By: _____
DEPUTY UNITED STATES MARSHAL

Case 2:20-cv-00253-WB   Document 31-1   Filed 08/03/22   Page 119 of 168

USDC IN/ND case 2:13-cr-00066-JVB-JEM   document 251   filed 02/12/18   page 4 of 8
Case Number: 2:13CR66-001                                                    Page 4 of 8
Defendant: VAHAN KELERCHIAN

## SUPERVISED RELEASE

After Mr. Kelerchian's incarceration is over, Mr. Kelerchian will be placed on supervised release for a period of **1 year**. His supervised release will have conditions of supervision as stated below, except that conditions 19, 20, 21 and 22 will cease to be in effect once all of Mr. Kelerchian's financial obligations as related to this case are fulfilled.

1. Mr. Kelerchian may not commit another federal, state, or local crime.

2. Mr. Kelerchian may not unlawfully use, possess, or distribute a controlled substance.

3. There's no evidence that Mr. Kelerchian is in danger of drug abuse. Accordingly, the mandatory drug testing condition is suspended.

4. Mr. Kelerchian must cooperate in the collection of his DNA sample as directed by the probation officer if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000.

5. Within 72 hours of release from the custody of the Bureau of Prisons, Mr. Kelerchian must report between the hours of 8:00 a.m. and 4:30 p.m. to the probation office in the district to which he is released.

6. Mr. Kelerchian may not knowingly be outside the judicial district between the hours of 10:00 p.m. and 6:00 a.m. without the Court's or probation officer's permission. In any case, Mr. Kelerchian may not knowingly travel more than 50 miles outside the judicial district without the Court's or probation officer's permission. The probation office will provide Mr. Kelerchian a map describing the boundaries of the judicial district at the start of supervision. After 12 months of Mr. Kelerchian being placed on supervision, the probation office must submit a report to the Court indicating whether the travel restrictions should be lifted or modified.

7. Mr. Kelerchian must report to the probation officer in the manner and frequency as reasonably directed by the probation officer. However, he may be required to report in person at the probation office only between 8:00 a.m. and 4:30 p.m. on the days the probation office is open for business.

8. In all matters relating to his conditions of supervision, Mr. Kelerchian must truthfully answer the probation officer's questions. This condition does not prevent Mr. Kelerchian from invoking his Fifth Amendment privilege against self-incrimination.

9. Mr. Kelerchian must follow the instructions of the probation officer as they relate to the conditions of supervision. Mr. Kelerchian may petition the Court for relief or clarification regarding a condition he believes has become unreasonable.

10. Mr. Kelerchian must live at a location approved by the probation officer.
11. If Mr. Kelerchian plans to change where he lives or anything about his living

arrangements (for example, the people he lives with), he must inform the probation officer at least 14 days before the change. If informing the probation officer in advance is not possible due to unexpected circumstances, Mr. Kelerchian must inform the probation officer as soon as possible, and no later than 72 hours after the change.

12. If Mr. Kelerchian plans to change where he works or anything about his work (for example, his position or his job responsibilities), Mr. Kelerchian must inform the probation officer at least 14 days before the change. If informing the probation officer in advance is not possible due to unexpected circumstances, Mr. Kelerchian must inform the probation officer within 72 hours after the change.

13. Mr. Kelerchian must notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer.

14. Mr. Kelerchian may not own or possess a firearm, ammunition, destructive device, or any other dangerous weapon. A dangerous weapon is an instrument that is specially designed as a weapon.

15. Mr. Kelerchian may not knowingly meet, communicate, or otherwise interact with a person whom he knows to be engaged, or planning to be engaged, in criminal activity.
16. Between the hours of 8:00 a.m. and 9:00 p.m., Mr. Kelerchian must permit a probation officer to visit him at home or any other reasonable location and must permit confiscation of any contraband observed in plain view by the probation officer. A visit between the hours of 9:00 p.m. and 8:00 a.m. may be conducted only when the probation officer has a reasonable belief that Mr. Kelerchian has violated a condition of supervision and that a visit during those hours would reveal information or contraband that would not be revealed by a visit at any other time.

17. If any portion of the special assessment remains unpaid when Mr. Kelerchian is released from prison, he must pay it within 12 weeks of his release, or, if financially unable to fulfill this requirement, he must arrange a payment schedule with the probation office.

18. If a fine is imposed, and if any portion of the fine remains unpaid when Mr. Kelerchian is released from prison, he must pay the fine in monthly installments of $1,000 until it is paid in full.

19. Mr. Kelerchian may not incur new credit charges or open additional lines of credit without the approval of the probation officer.

20. Upon the probation officer's request, Mr. Kelerchian must provide the officer with any financial information regarding Mr. Kelerchian's ability to pay a fine, and must authorize the release of any financial information. The request must be in writing and prompted by Mr. Kelerchian's failure to comply with a payment schedule ordered for a period of 60 consecutive days, and the request must describe the specific financial information needed for determining Mr. Kelerchian's current ability to pay. The probation office will share Mr. Kelerchian's financial information with the U.S. Attorney's Office.

Case Number: 2:13CR66-001
Defendant: VAHAN KELERCHIAN

21. Mr. Kelerchian must notify the probation officer within 72 hours of any material change in his economic circumstances that might affect his ability to pay any Court-ordered financial obligation.

22. Mr. Kelerchian may not transfer, give away, sell, or otherwise convey any asset $500 without the approval of the probation officer.

Case Number: 2:13CR66-001
Defendant: VAHAN KELERCHIAN                                                              Page 7 of 8

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth in this judgment.

| Total Assessment | Total Fine | Total Restitution |
|---|---|---|
| $800 | $100,000 | NONE |

The defendant shall make the special assessment payment payable to Clerk, U.S. District Court, 5400 Federal Plaza, Suite 2300, Hammond, IN 46320. The special assessment payment shall be due immediately.

## FINE

A fine in the amount of $100,000 is imposed.

## RESTITUTION

No restitution imposed.

Payments shall be applied in the following order:  (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

## FORFEITURE

The defendant shall forfeit **$28,200.00 in United States Currency.**

Case Number: 2:13CR66-001
Defendant: VAHAN KELERCHIAN

Name: <u>VAHAN KELERCHIAN</u>
Docket No.:<u>2:13CR66-001</u>

## ACKNOWLEDGMENT OF SUPERVISION CONDITIONS

Upon a finding of a violation of probation or supervised release, I understand that the Court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

I have reviewed the Judgment and Commitment Order in my case and the supervision conditions therein. These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed)

_____          _____
Defendant                                Date


_____          _____
U.S. Probation Officer/Designated Witness          Date

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CAUSE NO: |
| v. | ) | |
| | ) | 18 U.S.C. § 2 |
| VAHAN KELERCHIAN | ) | 18 U.S.C. § 371 |
| | ) | 18 U.S.C. § 666(a)(2) |
| | ) | 18 U.S.C. § 924(a)(1)(A) |
| | ) | 18 U.S.C. § 924(d) |
| | ) | 18 U.S.C. § 1001 |
| | ) | 18 U.S.C. § 1956(h) |

2 : 1 3 C R   6 6

## I N D I C T M E N T

**THE GRAND JURY CHARGES:**

### COUNT 1
### (Conspiring to Provide False Information to a Federal Firearms Licensee)

At all times material to this indictment:

### BACKGROUND

1.  VAHAN KELERCHAIN (KELERCHIAN) was the principal owner and operator Armament Services International Inc., (ASI). ASI is engaged in the sale of firearms and related items primarily through internet sales.

2.  ASI principal place of business is located in Warminster, Pennsylvania.

3.  KELERCHIAN holds a Class 3 Federal Firearms License (FFL) allowing him to deal in fully automatic weapons. KELERCHIAN also holds licenses to manufacture firearms and sell destructive devices, (i.e. grenade launchers)

4.  The Lake County Sheriff's Department was a law enforcement agency operating in Lake County, Indiana.

1

5.  JOSEPH R. KUMSTAR was employed for approximately 17 years as a sworn law enforcement officer with the Lake County Sheriff's Department, and served as the Deputy Chief for the Lake County Sheriff's Department.

6.  RONALD D. SLUSSER was employed for approximately ten (10) years as a sworn law enforcement officer with the Lake County Sheriff's Department, was a member of the Lake County Sheriff's Department Special Weapons and Tactics (SWAT) unit and a firearms instructor.

7.  E & R Law Enforcement Sales was a Federal Firearms Licensee (FFL) based in Crown Point, Indiana, owned and operated in part by RONALD D. SLUSSER.  RONALD D. SLUSSER previously held a Federal Firearms License while operating individually as "Ron's Gun Sales."

8.  R & D Law Enforcement Sales was another Federal Firearms Licensee (FFL), based in Merrillville, Indiana, and owned and operated in part by RONALD D. SLUSSER.

9.  PF Custom Guns was a Federal Firearms Licensee (FFL).

10. Heckler and Koch (hereinafter H&K) was a well know German based firearms manufacturer producing a wide assortment of handguns, rifles, machineguns, and submachineguns for both military and civilian use.  H&K had numerous subsidiaries operating within the United States in Virginia, New Hampshire, and Georgia.  H&K had served as a United States government contractor for the both the United States Military and United States civilian law enforcement agencies.  H&K was a Federal Firearms Licensee (FFL).

2

10. Insight Technology Inc., (hereinafter Insight) located in Londonderry, New Hampshire, was a manufacturer of highly sophisticated laser aiming and illumination devices, night vision devices, laser range finding systems, computerized fire control systems, thermal imaging systems, and sensor fusion systems. Insight's products were, and are still are, used by the United States military, Federal law enforcement agencies, and allied nations. In addition, Insight Technology Inc. developed and maintained a line of tactical illuminators (laser aiming devices) restricted for use only by the military and Law Enforcement agencies, as well as products for sale to the general public.

11. Federal law restricted to law enforcement agencies or the military the sale and ownership of fully automatic machineguns manufactured after 1986. No individual law enforcement officer could purchase a post-1986 fully automatic machinegun. Possession of post-1986 fully automatic machineguns by a law enforcement officer could only be authorized by the officer's law enforcement agency and only for the law enforcement duties of that officer.

## OBJECT OF THE CONSPIRACY

12. Between on or about November 2008, and continuing through on or about January of 2010, in the Northern District of Indiana and elsewhere:

### VAHAN KELERCHIAN

defendant herein, together with Joseph Kumstar, and Ronald Slusser, did knowingly combine, conspire, confederate, and agree with each other, and with others known and unknown to the grand jury, to commit an offense against the United States, that is, to knowingly make false statements and representations with respect to information under Chapter 44, of Title 18 of the United States Code, required to be kept in the records of

3

individuals licensed under Chapter 44, relating to the acquisition of firearms, in violation of Title 18 United States Code, Section 924(a)(1)(A).

## HOW THE CONSPIRACY OPERATED

13. It was part of the conspiracy that JOSEPH R. KUMSTAR, and RONALD D. SLUSSER used their position as sworn law enforcement officers, and VAHAN KELERCHAIN used his position as a Class 3 firearms dealer to acquire approximately 71 (Seventy-One) fully automatic H&K machineguns in the name of the Lake County Sheriff's Department knowing that the Lake County Sheriff's Department was not the true owner of these machineguns.

14. It was further part of the conspiracy that when acquiring these machineguns, VAHAN KELERCHAIN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER knew these H&K machineguns were manufactured after 1986, and therefore could only be acquired by law enforcement agencies and not individual law enforcement officers.

15. It was further part of the conspiracy that when acquiring the H&K machineguns, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER caused false entries listing the Lake County Sheriff's Department as the owner of these machineguns, to be made by individuals and companies required to keep such records under Chapter 44, of Title 18 of the United States Code.

16. It was further part of the conspiracy that when acquiring these machineguns, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER, used Lake County Sheriff's Department letterhead to create letters which falsely represented that the

4

H&K machineguns were being purchased by and were going to be used by, the Lake County Sheriff's Department in carrying out its law enforcement responsibilities.

17. It was further part of the conspiracy that when acquiring these machineguns, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER used the Lake County Sheriff's Department letterhead to create documents which falsely represented the H&K machineguns were to be used by the Lake County Sheriff's Department.

18. It was further part of the conspiracy that when acquiring these machineguns, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER created false and fictitious Lake County Sheriff's Department purchase orders to convince the suppliers of the H&K machineguns that the Lake County Sheriff's Department was the true purchaser of the H&K machineguns even though the defendants themselves provided the funds for the purchase of these H&K machineguns.

19. It was further part of the conspiracy that VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER acquired these H&K machineguns for a cost of between approximately $1200 and $1600 each.

20. It was further part of the conspiracy that when acquiring these machineguns, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER had all of the H&K machineguns shipped to the Lake County Sheriff's Department.

21. It was further part of the conspiracy that after acquiring these machineguns, all of the H&K machineguns were removed from the Lake County Sheriff's Department to the personal residence of RONALD D. SLUSSER.

22. It was further part of the conspiracy that after the H&K machineguns were at the personal residence of RONALD D. SLUSSER, he would remove the upper receivers (the barrel)

and any other additional parts that could be removed from the lower receiver (the firing mechanism of the H&K machinegun).

23. It was further part of the conspiracy that after removing the upper receivers and any other additional parts that could be removed from the lower receiver, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER would sell on the internet to any willing purchaser, all of these upper receivers and additional parts. The sale of these upper receivers and parts would range from approximately $2,500 to $3800 each.

24. It was further part of the conspiracy that after removing the upper receivers, RONALD D. SLUSSER would return some of the upper receivers to VAHAN KELERCHIAN.

25. At no time did VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER have proper authority from the Lake County Sheriff's Department to engage in any of the above mentioned purchases or sales of the H&K machineguns or their parts.

26. At no time were any of the H&K machineguns obtained by VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER listed in the property inventory of the Lake County Sheriff's Department.

27. In furtherance of the conspiracy and to effect its objects:

**VAHAN KELERCHIAN,**

Defendant herein, together with JOSEPH R. KUMSTAR, and RONALD D. SLUSSER, and others known and unknown to the grand jury performed the following:

<u>OVERT ACTS</u>

*First Machinegun Purchase*

a. On or about December 22, 2008, JOSEPH R. KUMSTAR issued a "Letter of Intent" on Lake County Sheriff's Department letterhead to H&K for (50)

6

additional H&K model 416 fully automatic machineguns. This letter of intent

stated these machineguns were for the "exclusive law enforcement use of the

Lake County Sheriff's Department" and that the "point of contact for all inquiries

in this matter will be Warrant Officer Ron Slusser." The letter then listed

RONALD D. SLUSSER'S home phone number. This letter was signed "Joseph

Kumstar, Chief of Police."

b. VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLSSER

used their personal funds to obtain these machineguns and did not have proper

authorization of the Lake County Sheriff's Department to purchase these

machineguns. These (50) machineguns were purchased for approximately $1650

each.

c. For this purchase, VAHAN KELERCHIAN provided payment to a third party

gun dealer in the amount of approximately $83,026.

d. Shortly after obtaining these (50) H&K fully automatic machineguns, RONALD

D. SLUSSER did cut up and remove the upper receiver barrels from these (50)

H&K fully automatic machineguns. Some of these upper barrels were sold on the

internet to any willing buyer with VAHAN KELERCHIAN, JOSEPH R.

KUMSTAR, and RONALD D. SLUSSER retaining the proceeds from this sale.

Some of the upper barrels were returned to KELERCHIAN.

e. In or about May of 2011, during the execution of an organized crime search

warrant by Montreal, Canada, gun and gang law enforcement officials, recovered

four upper barrels from this (50) H&K fully automatic machinegun purchase by

VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER.

7

The serial numbers on these upper receivers (barrels) listed the Lake County Sheriff's Department as the registered owner.

*Second Machinegun Purchase*

f.   In or about February of 2009, JOSEPH R. KUMSTAR issued another "Letter of Intent" on Lake County Sheriff's Department letterhead to H&K for (9) H&K model MP5KN fully automatic machineguns. This letter of intent stated these machineguns were for the exclusive use of the Lake County Police Department.

g.   In or about February of 2009, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR and RONALD D. SLUSSER did cause a false and fictitious Lake County Sheriff's Department purchase order to be mailed or faxed, which represented the Lake County Sheriff's Department to be the purchaser of these machineguns even though it was not the true purchaser as required by law.

h.   For this purchase, VAHAN KELERCHIAN provided payment to H&K, the gun manufacturer /distributer in the amount of approximately $11,664.

i.   Shortly after obtaining these (9) H&K fully automatic machineguns, RONALD D. SLUSSER did cut up and remove the upper receiver barrels from these fully automatic machineguns.  These upper barrels were sold to Person A in Utah. Person A paid Slusser $18,900 for these H&K parts.  Slusser then paid $9450 to Kumstar and $9450 to Kelerchian.  These payments to Kelerchian and Kumstar were paid because Kelerchain and Kumstar had fronted money for this purchase.

*Third Machinegun Purchase*

j.   In or about October 2009, JOSEPH R. KUMSTAR issued another "Letter of Intent" on Lake County Sheriff's Department letterhead for (12) H&K model

8

53A3 fully automatic sub-machineguns. This letter of intent stated these sub-machineguns would be the property of the Lake County Sheriff's Department and would not be resold or transferred, and would be used to carry out the official duties of the Lake County Sheriff's Department.

k. In or about October of 2009, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR and RONALD D. SLUSSER did cause another false and fictitious Lake County Sheriff's Department purchase order to be mailed or faxed, which represented the Lake County Sheriff's Department to be the purchaser of these sub-machineguns even though it was not the true purchaser as required by law.

l. Shortly after obtaining these (12) H&K fully automatic sub-machineguns, RONALD D. SLUSSER did cut up and remove the upper receiver barrels from these fully automatic machineguns. These upper barrels were sold to Person A in Utah. Person A paid Slusser $31,200 for these H&K parts. Slusser then paid Kelerchian $28,200. This payment to Kelerchain was made because Kelerchian had fronted the money for this purchase.

m. For this purchase, VAHAN KELERCHIAN provided payment to the H&K, the gun manufacturer/distributer, in the amount of approximately $16,800.

n. At no time did VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER have the proper permission of the Lake County Sheriff's Department to engage in any of the above three purchases or subsequent sales of these H&K sub-machineguns.

28. In the purchasing each of these (71) machineguns and sub-machineguns, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER knowingly caused

9

false entries to be made in the books and records of the companies supplying these firearms, in that these records reflected the Lake County Sheriff's Department as the registered owner of these (71) firearms when in fact, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER knew that to be false.

All in violation of Title 18, United States Code 371 and 924(a)(1)(A).

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 2

### (Conspiring to Defraud the Food and Drug Administration)

1. The Grand Jury realleges and reincorporates by reference paragraphs 1-11, of Count 1 as though fully set forth herein;

### OBJECT OF THE CONSPIRACY

2. Between on or about December 2008, and continuing through on or about September 2010, in the Northern District of Indiana and elsewhere:

### VAHAN KELERCHIAN,

defendants herein, did knowingly combine, conspire, confederate, and agree with JOSEPH KUMSTAR, RONALD D. SLUSSER, and with others known and unknown to the grand jury, to defraud the Food and Drug Administration (FDA), an agency of the United States, by interfering with and obstructing the lawful government functions of the FDA to:

    a. Limit the sale of various restricted laser aiming sight devices to the military and law enforcement agencies only;

    b. Correctly identify first line purchasers of various laser aiming sight devices which were restricted to military or law enforcement agency purchasers only.

All in violation of Title 18 United States Code, Section 371.

<u>HOW THE CONSPIRACY OPERATED</u>

3.  It was part of the conspiracy that JOSEPH R. KUMSTAR, and RONALD D. SLUSSER used their position as sworn law enforcement officers, along with VAHAN KELERCHIAN, to acquire approximately 74 (Seventy-Four) restricted laser aiming sight devices by fraudulently using the name of the Lake County Sheriff's Department and The Lowell, Indiana, Police Department, knowing that the Lake County Sheriff's Department and the Lowell Police Department were not the true owners of these restricted laser aiming devices.

4.  It was further part of the conspiracy that when acquiring these restricted laser aiming sights, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER knew they could only be acquired by law enforcement agencies and not individual law enforcement officers.

5.  It was further part of the conspiracy that when acquiring these (74) restricted laser aiming sight devices, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER caused false information to be recorded in the books and records of the Insight Technology, Inc., regarding who was the true first purchaser of these laser aiming sight devices.   Furthermore, by causing false information to be recorded in the books records of the Insight Technology, Inc., VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER interfered with and obstructed the lawful government functions of the FDA to (a) limit the sale of various restricted laser aiming sight devices to only the military and law enforcement agencies and (b) correctly identify first line purchasers of these (74) various laser aiming sight devices, the sale of which was restricted to military or law enforcement agency purchases only.

12

6. It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER caused to be submitted to Insight Technology, Inc., a false and fictitious Lake County Sheriff's Department purchase order for the purpose of inducing Insight Technology, Inc., to believe that these restricted laser sights were being purchased by the Lake County Sheriff's Department, when in fact the defendants were acquiring these restricted laser sights with their own personal funds and for their personal use and resale.

7. It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER caused to be submitted to Insight Technology, Inc., a false and fictitious Lowell Police Department documents for the purpose of inducing Insight Technology, Inc., to believe that these restricted laser sights were being purchased by the Lowell Police Department, when in fact the defendants were acquiring these restricted laser sights with their own personal funds and for their personal use and resale.

8. It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER would submit to Insight Technology, Inc., a "IR Product Disclosure Agreement" signed by JOSPEH R. KUMSTAR which falsely represented that the restricted laser sights being purchased would "not be sold or transferred to individual law enforcement or civilian personnel."

9. It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER would submit to Insight Technology, Inc., a "IR Product Disclosure Agreement" which purported

to be signed by the proper authorities at the Lowell Police Department but in fact, falsely represented that the restricted laser sights being purchased would "not be sold or transferred to individual law enforcement or civilian personnel."

10. It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER caused false and fictitious Lake County Sheriff's Department purchase orders to be created which falsely represented that the restricted laser sights were being purchased by the Lake County Sheriff's Department.

11. It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER would cause these restricted laser sights to be delivered to the Lake County Sheriff's Department or the Lowell Police Department rather than to their personal residences.

12. It was further part of the conspiracy that after acquiring these restricted laser sights, all of them were removed from the Lake County Sheriff's Department and the Lowell Police Department to the personal residence of either KUMSTAR or SLUSSER.

13. It was further part of the conspiracy that after these restricted laser sights were at the either KUMSTAR or SLUSSER's residence, RONALD D. SLUSSER would sell some these restricted laser sights on the internet to any willing purchaser. The sale of these restricted laser sights ranged from approximately $2,800 to $3000 each. Some of the restricted lasers aiming sights were retained by each of the defendants.

14. At no time did VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER have proper authority from the Lake County Sheriff's Department or the

14

Lowell Police Department to engage in any of the above mentioned purchases or sales of the restricted laser sights.

15. At no time were any of the restricted laser sights obtained by VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER listed in the property inventory of the Lake County Sheriff's Department or the Lowell Police Department.

16. In furtherance of the conspiracy and to effect its objects:

## VAHAN KELERCHIAN,

Defendant herein, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER, and other conspirators, known and unknown to the grand jury performed the following:

## OVERT ACTS

*First Laser Sight Purchase*

a. In or about December 6, 2008, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER ordered from Insight Technology Inc., approximately 25 various restricted laser sights having a value of approximately $27,000.

b. On or about December 6, 2008, JOSEPH R. KUMSTAR, submitted to Insight Technology, Inc., a "IR Product Disclosure Agreement" signed by JOSPEH R. KUMSTAR which represented that the restricted laser sights being purchased would "not be sold or transferred to individual law enforcement or civilian personnel."

c. In or about December of 2008, JOSEPH R. KUMSTAR signed a false and fictitious Lake County Sheriff's Department purchase order inducing Insight Technology, Inc., to believe that the Lake County Sheriff's Department was the

true purchaser of these restricted laser sights even though the defendants themselves provided the funds for the purchase of these restricted laser sights.

d. In or about January of 2009, Insight Technology, Inc. shipped these restricted laser sights to the Lake County Sheriff's Department.

e. For this purchase, VAHAN KELERCHIAN provided payment to Insight Technologies Inc., in excess of $17,000.

f. After obtaining these restricted laser sights, RONALD D. SLUSSER sent back to VAHAN KELERCHIAN approximately 12 of these restricted laser sights.

g. After obtaining these restricted laser sights, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER sold via the internet some these restricted laser sights to any and all willing purchasers, including Keith Mitts.

h. On or about August 21, 2009, the Department of Defense Criminal Investigative Service (DCIS) engaged in a successful undercover purchase of a restricted laser sight being offered for sale on E-Bay by a Keith Mitts. DCIS undercover agents paid $4,200 for a restricted laser aiming sight which was traced back to the December 6, 2008, laser sight order from Insight Technology, Inc., which was sent to the Lake County Sheriff's Department. Subsequent to this undercover purchase, two additional restricted laser sights of the same model and type that were part of the December 6, 2008, laser sight order from Insight Technology, Inc., which was sent to the Lake County Sheriff's Department, were recovered from Mitt's Mississippi residence during Mitt's shooting and standoff with local police officers.

16

*Second Laser Sight Purchase*

    i.   In or about December 2009, the defendants ordered from Insight Technology Inc., approximately 12 restricted laser sights having a value of approximately $15,000.

    j.   On or about December 2009, RONALD R. SLUSSER submitted to Insight Technology Inc., an "IR Product Disclosure Agreement" which represented that the restricted laser sights being purchased would "not be sold or transferred to individual law enforcement or civilian personnel."

    k.   In or about January of 2010, Insight Technology, Inc. shipped these restricted laser sights and RONALD D. SLUSSER obtained these restricted laser sights.

    l.   For this purchase, VAHAN KELERCHIAN provided several payments to Insight Technologies Inc., totaling more than $15,000.

    m.   After obtaining these restricted laser sights, RONALD D. SLUSSER sold via the internet these restricted laser sights to any willing purchaser.

*Third Laser Sight Purchase*

    n.   In or about February 2010, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER ordered from Insight Technology Inc., approximately 22 various restricted laser sights having value of approximately $30,000.

    o.   On or about February 23, 2010, JOSEPH R. KUMSTAR submitted to Insight Technology Inc., an "IR Product Disclosure Agreement" signed by JOSPEH R. KUMSTAR which represented that the restricted laser sights being purchased

17

would "not be sold or transferred to individual law enforcement or civilian personnel."

p.  In or about February 2010, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR and RONALD SLUSSER created a false and fictitious Lake County Sheriff's Department purchase order inducing Insight Technology, Inc., to believe that the Lake County Sheriff's Department was the true purchaser of these restricted laser sights even though the defendants themselves provided the funds for the purchase of these the restricted laser sights.

q.  In or about March 2010, Insight Technology, Inc. shipped these restricted laser sights to the Lake County Sheriff's Department.

r.  For this purchase, VAHAN KELERCHIAN provided several payments to Insight Technologies Inc., totaling more than $25,000.

s.  After obtaining these restricted laser sights, RONALD D. SLUSSER sold via the internet some of these restricted laser sights to any willing purchaser.

t.  Approximately 20 of these restricted laser sights were returned to VAHAN KELERCHIAN by RONALD D. SLUSSER.

*Fourth Laser Sight Purchase*

u.  In or about July 2010, RONALD D. SLUSSER ordered from Insight Technology, Inc., approximately 15 restricted laser sights from Insight Technology Inc., having a value of approximately $18,000.

v.  On or about July 6, 2010, RONALD R. SLUSSER submitted to Insight Technology, Inc., an "IR Product Disclosure Agreement" which represented that

the restricted laser sights being purchased would "not be sold or transferred to individual law enforcement or civilian personnel."

w. In or about August 2010, Insight Technology, Inc. shipped these restricted laser sights and RONALD D. SLUSSER subsequently retrieved them.

x. For this purchase, VAHAN KELERCHIAN provided payment to Insight Technologies Inc., in excess of $16,000.

y. After obtaining these restricted laser sights, RONALD D. SLUSSER sold via the internet these restricted laser sights to any willing purchaser and sent two of the sights back to VAHAN KELERCHIAN.

z. On August of 2010, a Special Agent of the FDA engaged in an undercover purchase of a restricted laser sight from RONDAL D. SLUSSER. This restricted laser sight was purchased by RONALD D. SLUSSER from Insight Technology, Inc., for approximately $1250.00 and sold to the FDA undercover agent for approximately $2900.00. An examination of the serial number for this sight revealed that it was part of the July 2010 order of 15 restricted laser sights that had been ordered by RONALD D. SLUSSER and paid for by VAHAN KELERCHIAN.

All in violation of Title 18 United States Code, Section 371.

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 3

**(Conspiracy to Make False Statements - Demonstration Letters)**

From on or about October 2007, and continuing to in or about March 28, 2010, both dates being approximate and inclusive, in the Northern District of Indiana and elsewhere,

### VAHAN KELERCHIAN

defendant herein, and Joseph Kumstar, knowingly combined, conspired, confederated and agreed together and with each other, and with other persons known and unknown to the Grand Jury, to commit the following offenses against the United States: to willfully and knowingly make and cause to be made, and use and cause to be used, in a matter within the jurisdiction of a department or agency of the United States, to wit: the Bureau of Alcohol, Tobacco, Firearms, and Explosives, false writings and documents to wit: approximately (7) letters on Lake County Sheriff's Department letterhead requesting firearm demonstrations of machine guns (demonstration letters) from VAHAN KELERCHIAN, knowing the same to contain a materially false, fictitious, and fraudulent statement because VAHAN KELERCHIAN very well knew that in fact no demonstration was going to occur.

In furtherance of this scheme, false demonstration letters were sent from Lake County Indiana, VAHAN KELERCHIAN and to the National Firearms Branch of the Bureau of Alcohol, Tobacco, and Firearms located in Martinsburg, WV., on the following approximate days: October 4, 2007, February 13, 2009, February 16, 2009, June 29, 2009, March 28, 2010.

All in violation of Title 18, United States Code Section 1001, and 371.

20

**THE GRAND JURY FURTHER CHARGES:**

<u>COUNTS 4-7</u>

**(False Statements - Demonstration Letters)**

On or about the following dates in the Northern District of Indiana and elsewhere,

**VAHAN KELERCHIAN**

defendant herein, and Joseph Kumstar did willfully and knowingly make and cause to be made, and use and cause to be used, in a matter within the jurisdiction of a department or agency of the United States, to wit: the Bureau of Alcohol, Tobacco, Firearms, and Explosives, false writings and documents to wit: approximately (4) letters on Lake County Sheriff's Department letterhead requesting firearm demonstrations of various machine guns (demonstration letters) from VAHAN KELERCHIAN, knowing the same to contain a materially false, fictitious, and fraudulent statement because VAHAN KELERCHIAN very well knew that in fact no demonstration was going to occur, said letters being mailed from Lake County Indiana, to VAHAN KELERCHIAN in Pennsylvania and the the National Firearms Branch of the Bureau of Alcohol, Tobacco, and Firearms located in Martinsburg, WV., on the following approximate days:

| COUNT | DATE |
|-------|------|
| 4 | February 13, 2009 |
| 5 | February 16, 2009 |
| 6 | June 29, 2009 |
| 7 | March 28, 2010 |

All in violation of Title 18, United States Code, Section 1001 and 2.

**THE GRAND JURY FURTHER CHARGES:**

<p align="center"><u>COUNT 8</u></p>

<p align="center">(Bribery)</p>

1. At all times material to this indictment, the Lake County Sheriff's Department was an agency of a local government entity to wit: Lake County, Indiana, that received federal assistance in excess of $10,000 during the one-year period beginning January 2, 2008 and ending December 31, 2008.

2. Joseph Kumstar was an agent of Lake County Sheriff's Department acting as its Deputy Chief, in charge of operations, whose duties included overseeing and managing the Lake County Sheriff's Department.

3. On or about July 31, 2008, in the District of Indiana, and elsewhere,

<p align="center"><b>VAHAN KELERCHIAN</b></p>

defendant herein, did corruptly give, offer, and agree to give a thing of value to wit: a Remington .12 Gauge short-barrel shotgun, to Joseph Kumstar, intending to influence and reward Joseph Kumstar in connection with a transaction and series of transactions of the Lake County Sheriff's Department  involving $5,000 or more.

All in violation of Title 18, United States Code, Section 666(a)(2) and 2.

<p align="center">22</p>

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 9

**(Conspiracy to Launder Monetary Instruments: 1956 and 1957)**

Beginning in or about February 2009 and continuing through in or about January 2010, both dates being approximate and inclusive, in the District of Indiana and elsewhere,

### VAHAN KELECHIAN

Defendant herein, Joseph Kumstar, and Ronald Slusser, willfully and knowingly conspired and agreed together and with each other, and with others known and unknown to the Grand Jury, to commit certain offenses:

1) Under Title 18, United States Code § 1956, to conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved proceeds of specified unlawful activity, that is mail and wire fraud, in violation of title 18  United States Code § 1341 and 1343: (1) with the intent to promote the carrying on of such specified unlawful activity and (2) knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and while conducting or attempting to conduct such financial transactions knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity,  and

2) Under Title 18, United States Code § 1957, to conduct and attempt to conduct monetary transactions affecting interstate commerce, in criminally derived property of a value greater than

$10,000, such property having been derived from a specified unlawful activity, that is, mail and wire fraud, in violation of Title 18 United States Code § 1341 and 1343.

All in violation of Title 18 United States Code 1956(h), 1956(a)(1)(B)(i), 1957, and 2.

## FIRST FORFEITURE ALLEGATION

1. The allegations of Count One of the Indictment are realleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America pursuant to the provisions of Title 18 United States Code, Section 924(d), and Title 28 United States Code, Section 2461(c).

2. Upon conviction of Count One of the Indictment, **Vahan Kelerchian**, defendant herein, shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 924(d), and Title 28, United States Code, Section 2461(c), any and all firearms involved in the commission of such offenses:

## SECOND FORFEITURE ALLEGATION

1.     The allegations contained in Count 9 of this Indictment are hereby re-alleged and

incorporated by reference for the purpose of alleging forfeiture  pursuant to Title 18, United

States Code, Sections 982(a)(1).

2.     Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an

offense in violation of Title 18, United States Code, Sections 1956 and 1957 , the defendant,

VAHAN KELERCHIAN, shall forfeit to the United States of America any property, real or

personal, involved in such offense, and any property traceable to such property.

3.     If any of the property described above, as a result of any act or omission

of the defendant:

a.     cannot be located upon the exercise of due diligence;
b.     has been transferred or sold to, or deposited with, a third party;
c.     has been placed beyond the jurisdiction of the court;
d.     has been substantially diminished in value; or
e.     has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section

982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

S/Foreperson
FOREPERSON

DAVID CAPP
UNITED STATES ATTORNEY

By:   S/Philip C. Benson
Philip C. Benson
Assistant United States Attorney

26

# Anthony Baiamonte III

February 28, 2018

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

RE:   **Character Reference for Vahan Steven Kelerchian** ▮▮▮▮▮▮▮▮

**Application for Restoration of Firearms Privileges**
**License or Permit number 8-23-017-01-5A-02276**

Dear Sir/Madam:

I submit this Character Reference in support of, and granting relief to, Vahan Steven Kelerchian's Application for Restoration of Firearms Privileges.

I have personally known Mr. Kelerchian for more than ten (10) years as a personal friend. He is of high moral character and has proven to be a trustworthy and honorable man. I am proud to call Mr. Kelerchian my friend.

If you need any additional information, or have any questions of me in my support of Mr. Kelerchian, please contact me directly.

Thank you for your considerations. I remain,

Sincerely,

By: */s/ Anthony Baiamonte III*

# CHRISTOPHER J. McLOUGHLIN, PC



27 February 2018

Joshua Prince, Esq.
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505

RE: Vahan Kelerchian

Mr. Prince:

This letter is addressed to you in support of Vahan Kelerchian's request to BATF regarding his application for Federal Firearms relief, and I authorize you to make it available to anyone appropriate to this use. As a retired security consultant, I was self-employed in the varied aspects of that field for more than a quarter of a century, and I supported myself without incident or reprimand of any sort for my professional career.

My association and friendship with Mr. Kelerchian goes back a decade, probably more. During these years his expertise with acquisition and disposition of firearms has been invaluable to me and to my own friends and clients. He has with authority given advice on investment grade firearms and guided us through a maze of rules and regulations in order to insure that no paperwork was returned for further attention due to an omission or misstatement of description or condition. Perhaps presenting an aggravation to buyers or sellers, I've known him to strictly avoid any transaction that might bend rules effecting administrative procedure or record keeping. His advice has been given and taken in matters ranging from simple transfers to elaborate evaluations of inventory distributions in the dissolutions of estate assets.

Over time I have come to know Mr. Kelerchian on a personal level as well as a professional one. Apart from knowing firearms and the business of them, he is comfortable with the history of U.S. military hardware, and not only that, he knows more about the colonial geography of his part of the country than I do about the Confederate history of mine. He's shared this knowledge with his wife and their two daughters on weekend outings and summer vacations away

Mr. Prince
27 February
Page 02.

from his business. I know so because he's told me about them — in detail. He is a family man and takes pride in talking to me about his eldest daughter's passing her bar exam and her first date, just as he does about his youngest daughter's birthday party stories and the things that hold her interests. And when the time is right he and Maura take time together for a quick trip to New York, and I hear about that too. Vahan and I have become more than just business friends.

The business is operated meticulously and with an enviable sense of responsibility and attention to detail. Recently the business records underwent an intense scrutiny audit, and I understand that the books passed with praise and not the usual criticisms of form, content, or carelessness.

His business is the support of himself, his wife and their two daughters. I know of nothing that he might have knowingly done to put that in jeopardy and while he does not now operate the business himself, there should be no impediment to letting the business continue to function for their livelihood and well-being by granting him Federal Firearms relief.

Sincerely,
CHRISTOPHER J. McLOUGHLIN, PC

Chris McLoughlin
(...\CJMcL LTR 2018\VK:ASI 27-02-18\CJMcL,PC)

# JOHN T. CONWAY



February 25, 2018

RE: Vahan S. Kelerchian, Applicant

To Whom This May Concern,

My name is John T. Conway. I am a New York State Licensed Funeral
Director. I am a United States Coast Guard Licensed Captain. I am 68 years
old and am a college graduate. I have known Vahan Kelerchian since 1975,
both on a personal level as well as on a professional level. I feel that I am a
good judge of one's character and I can speak of Mr. Kelerchian in an honest and
objective manner.

 For many years my wife's family and his wife's family lived across the street from each
other and both families were very close to each other. Coincidentally, when my wife and
I bought our first house, it was two houses away from Mr. Kelerchian's family home. We
could not have had better neighbors than the Kelerchians. Vahan and I saw each other
almost on a daily basis. I know him well. I know him to be a straight and honest man,
one who could be depended upon as a neighbor. He looked out for his family as well as
his neighbors. He was definitely an asset to the neighborhood.

I know him to be a very good businessman and an even better family man. There is
nothing more important to him than his family. I know him to be honest, perhaps to a
fault. He is dependable and his word is as good as gold.

It is my sincere hope that his application be given a fair and objective review.

Thank you for your time and consideration.

John T. Conway

Mr. Anthony DiGiovanni                                    February 23, 2018



U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

Re: Kelerchian, Vahan, Steven

To Whom It May Concern:

I am writing this letter on behalf of my dear friend, Vahan Steven Kelerchian.  I am a small business owner in Jackson Heights, NY.  My family has owned and operated a delicatessen for more than 58 years.  It's the quintessential neighborhood deli that everyone who went to school nearby patronized year after year, and many of our friends still live in the community.  I grew up in the neighborhood, along with Vahan and his wife Maura, and we have been friends for more than 46 years.  This is the place where we forged many of our lifelong friendships.  During the many years that I have known Vahan, I can attest to the fact that he has always conducted himself with both honor and integrity, and he has always been very well respected in the community.

Vahan formerly operated a car repair shop not too far away from my business, and everyone with whom he came into contact had nothing but praise for him.  He has always been kind, courteous, and willing to help anyone in need.  Whether it was family members, friends, customers, or even strangers that were in need of assistance, he always offered help and never turned his back on anyone, no matter the circumstance.  I can personally attest to this because I have witnessed his kindness on many occasions over the years.   It is because of these attributes that Vahan was very successful in the auto repair business for many years.   He ultimately moved to Pennsylvania in order to follow his lifelong passion of becoming a Federal Firearms dealer.  There, along with Maura, he built another successful business with an impeccable record.  For as long as I have known Vahan, he has always been driven to be the best at whatever pursuit he follows.  Vahan is a man who values honesty, morality, and strong principles, and he has been a man of the utmost character in all the years that we have been friends.   He is also a man who knows the importance of family, whereby he and Maura have raised two beautiful daughters and instilled within them the same core values.  I have always held Vahan in the highest regard; I never had a brother, but he is as close to one that I could have ever found.  We will always be friends and nothing can or will ever change that fact.

I am thankful for the opportunity to provide a testament on behalf of Vahan Kelerchian.  I hope that my words have served to paint a clear picture of the man and friend that I have had the privilege to know and admire for almost the entirety of my life.

Sincerely,

Anthony DiGiovanni



APPLICANT
* See Privacy Act Notice on Back

LEAVE BLANK          TYPE OR PRINT ALL INFORMATION IN BLACK          FBI          LEAVE BLANK

FD-258 (REV.3-1-10)   1110-0046

SIGNATURE OF PERSON FINGERPRINTED

RESIDENCE OF PERSON FINGERPRINTED

275 WORTHINGTON MILL RD
RICHBORO
PA                    18954

DATE          SIGNATURE OF OFFICIAL TAKING FINGERPRINTS

01-02-2018   ASHARP-ALEX, SHARP

EMPLOYER AND ADDRESS

FEDERAL FIREARMS LICENSING CENTER
244 NEEDY RD
MARTINSBURG
WV                    25405

OTHER

KELERCHIAN, VAHAN STEVEN

ALIASES  AKA

O
R
I

WVATF0800
ATF-NATL TRA CTR
MARTINSBURG, WV

DATE OF BIRTH   DOB
Month   Day   Year

CITIZENSHIP  CTZ

SEX | RACE | HGT. | WGT. | EYES | HAIR | PL

YOUR NO.  OCA

US - UNITED STATES O | M | W | 600 | 290 | BRO | BAL | NY - NEW YORK

LEAVE BLANK

FBI NO.  FBI

ARMED FORCES NO.  MNU          CLASS

SOCIAL SECURITY NO.  SOC          REF

1110-0046

# FEDERAL BUREAU OF INVESTIGATION
## UNITED STATES DEPARTMENT OF JUSTICE
## CJIS DIVISION/CLARKSBURG, WV 26306

# APPLICANT

## 1. LOOP



CENTER OF LOOP

DELTA

THE LINES BETWEEN CENTER OF LOOP AND DELTA MUST SHOW

## 2. WHORL



DELTAS

THESE LINES RUNNING BETWEEN DELTAS MUST BE CLEAR

## 3. ARCH



ARCHES HAVE NO DELTAS

FD-258 (REV. 3-1-10)

GPO U.S. GOVERNMENT PUBLISHING OFFICE:
10/22/2015 12:51:47

### THIS CARD FOR USE BY:

1. LAW ENFORCEMENT AGENCIES IN FINGERPRINTING APPLICANTS FOR LAW ENFORCEMENT POSITIONS.*

2. OFFICIALS OF STATE AND LOCAL GOVERNMENTS FOR PURPOSES OF EMPLOYMENT, LICENSING, AND PERMITS, AS AUTHORIZED BY STATE STATUTES AND APPROVED BY THE ATTORNEY GENERAL OF THE UNITED STATES. LOCAL AND COUNTY ORDINANCES, UNLESS SPECIFICALLY BASED ON APPLICABLE STATE STATUTES DO NOT SATISFY THIS REQUIREMENT.*

3. U.S. GOVERNMENT AGENCIES AND OTHER ENTITIES REQUIRED BY FEDERAL LAW.**

4. OFFICIALS OF FEDERALLY CHARTERED OR INSURED BANKING INSTITUTIONS TO PROMOTE OR MAINTAIN THE SECURITY OF THOSE INSTITUTIONS.

Please review this helpful information to aid in the successful processing of hard copy criminal and civil fingerprint submissions in order to prevent delays or rejections. Hard copy fingerprint submissions must meet specific criteria for processing by the Federal Bureau of Investigation.
**Ensure all information is typed or legibly printed using blue or black ink.**
**Enter data within the boundaries of the designated field or block.**
**Complete all required fields.** (If a required field is left blank, the fingerprint card may be immediately rejected without further processing.)
• The required fields for hard copy fingerprint cards are: originating agency identifier number - date of birth - place of birth - name - sex - fingerprint impressions - any applicable state stamp - Other (race, height, weight, eye color, hair color)

* criminal fingerprint cards also require an arrest charge and date of arrest.
* civil fingerprint cards also require a reason fingerprinted and date fingerprinted

**Do not use highlighters on fingerprint cards.**
**Do not enter data or labels within 'Leave Blank' areas.**
**Ensure the 'Reply Desired' field is checked when applicable** (criminal only)**.**
**Ensure fingerprint impressions are rolled completely from nail to nail.**
**Ensure fingerprint impressions are in the correct sequence.**
**Ensure notations are made for any missing fingerprint impression (i.e. amputation).**
**Do not use more than two retabs per fingerprint impression block.**
**Ensure no stray marks are within the fingerprint impression blocks.**

Training aids can be ordered online via the Internet by accessing the FBI's website at: fbi.gov, click on 'Fingerprints', then click on 'Ordering Fingerprint Cards & Training Aids'. Direct questions to the Identification and Investigative Services Section's Customer Service Group at (304) 625-5590 or by e-mail at <liaison@leo.gov>.

### PRIVACY ACT STATEMENT

**Authority:** The FBI's acquisition, preservation, and exchange of information requested by this form is generally authorized under 28 U.S.C. 534. Depending on the nature of your application, supplemental authorities include numerous Federal statutes, hundreds of State statutes pursuant to Pub.L. 92-544, Presidential executive orders, regulations and/or orders of the Attorney General of the United States, or other authorized authorities. Examples include, but are not limited to: 5 U.S.C. 9101; Pub.L. 94-29; Pub.L. 101-604; and Executive Orders 10450 and 12968. Providing the requested information is voluntary; however, failure to furnish the information may affect timely completion or approval of your application.

**Social Security Account Number (SSAN).** Your SSAN is needed to keep records accurate because other people may have the same name and birth date. Pursuant to the Federal Privacy Act of 1974 (5 USC 552a), the requesting agency requires you whether disclosure is mandatory or voluntary, by what statutory or other authority your SSAN is solicited, and what uses will be made of it. Executive Order 9397 also asks Federal agencies to use this number to help identify individuals in agency records.

**Principal Purpose:** Certain determinations, such as employment, security, licensing, and adoption, may be predicated on fingerprint-based checks. Your fingerprints and other information contained on (and along with) this form may be submitted to the requesting agency, the agency conducting the application investigation, and/or FBI for the purpose of comparing the submitted information to available records in order to identify other information that may be pertinent to the application. During the processing of this application, and for as long hereafter as may be relevant to the activity for which this application is being submitted, the FBI may disclose any potentially pertinent information to the requesting agency and/or to the agency conducting the investigation. The FBI may also retain the submitted information in the FBI's permanent collection of fingerprints and related information, where it will be subject to comparisons against other submissions received by the FBI. Depending on the nature of your application, the requesting agency and/or the agency conducting the application investigation may also retain the fingerprints and other submitted information for authorized purposes of such agency(ies).

**Routine Uses:** The fingerprints and information reported on this form may be disclosed pursuant to your consent, and may also be disclosed by the FBI without your consent as permitted by the Federal Privacy Act of 1974 (5 USC 552a(b)) and all applicable routine uses as may be published at any time in the Federal Register, including the routine uses for the FBI Fingerprint Identification Records System (Justice/FBI-009) and the FBI's Blanket Routine Uses (Justice/FBI-BRU). Routine uses include, but are not limited to, disclosures to: appropriate governmental authorities responsible for civil or criminal law enforcement, counterintelligence, national security or public safety matters to which the information may be relevant; to State and local governmental agencies and nongovernmental entities for application processing as authorized by Federal and State legislation, executive order, or regulation, including employment, security, licensing, and adoption checks; and as otherwise authorized by law, treaty, executive order, regulation, or other lawful authority. If other agencies are involved in processing this application, they may have additional routine uses.

**Additional Information:** The requesting agency and/or the agency conducting the application-investigation will provide you additional information pertinent to the specific circumstances of this application, which may include identification of other authorities, purposes, uses, and consequences of not providing requested information. In addition, any such agency in the Federal Executive Branch has also published notice in the Federal Register describing any system(s) of records in which that agency may also maintain your records, including the authorities, purposes, and routine uses for the system(s).

### INSTRUCTIONS:

* 1. PRINTS MUST GENERALLY BE CHECKED THROUGH THE APPROPRIATE STATE IDENTIFICATION BUREAU, AND ONLY THOSE FINGERPRINTS FOR WHICH NO DISQUALIFYING RECORD HAS BEEN FOUND LOCALLY SHOULD BE SUBMITTED FOR FBI SEARCH.

2. IDENTITY OF PRIVATE CONTRACTORS SHOULD BE SHOWN IN SPACE "EMPLOYER AND ADDRESS". THE CONTRIBUTOR IS THE NAME OF THE AGENCY SUBMITTING THE FINGERPRINT CARD TO THE FBI.

3. FBI NUMBER, IF KNOWN, SHOULD ALWAYS BE FURNISHED IN THE APPROPRIATE SPACE.

** MISCELLANEOUS NO. - RECORD: OTHER ARMED FORCES NO. PASSPORT NO. [FP], ALIEN REGISTRATION NO. (AR), PORT SECURITY CARD NO. (PS), SELECTIVE SERVICE NO. (SS) VETERANS' ADMINISTRATION CLAIM NO. (VA).

Exhibit I

# PRINCE LAW OFFICES, P.C.

Warren H. Prince
Karl P. Voigt IV
Joshua Prince
Eric E. Winter
Thomas H. Odom
Stanley J. Kuter
Jeffrey A Franklin
Adam J. Kraut
Jorge Pereira

| | |
|---|---|
| Bechtelsville | 1-610-845-3803 |
| Allentown | 1-610-770-1151 |
| Bethlehem | 1-610-814-0838 |
| Camp Hill | 1-717-731-0100 |
| Lancaster | 1-717-393-7002 |
| Lebanon | 1-717-274-9250 |
| North Wales | 1-215-412-0800 |
| Pottstown | 1-610-326-4200 |
| Pottsville | 1-570-621-8828 |
| Reading | 1-610-375-8425 |
| Toll Free | 1-888-313-0416 |
| Fax | 1-610-845-3903 |

April 09, 2018

U.S. Department of Justice - Bureau of Alcohol, Tobacco, Firearms and Explosives
Attention Bureau of Alcohol, Tobacco, Firearms and Explosives NCETR - Relief of Disabilities
Section
Corporal Road, Building 3750, Redstone Arsenal
Huntsville, AL 35898

RE:   Vahan Kelerchian Application for Restoration of Firearms Privileges
      FFL # 8-23-017-01-5A-02276

Dear Chief Day,

   I am in receipt of your March 27, 2018 letter and the enclosures, wherein you returned Mr.
Kelerchian's application for federal firearms relief.

   As you should be aware and as I explained in my original letter of March 02, 2018, pursuant
to 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144(i), as Mr. Kelerchian is an FFL holder, who has
continually and timely renewed his FFL, provided he files an application for federal firearms
relief, he shall not be "barred by such disability from further operations under his license **pending
final action** on an application for  relief filed pursuant to this section." Although I am acutely
aware that since 1992 the Congress has precluded ATF from conducting federal firearms relief
determinations through the ATF's annual appropriation bill, in this situation, because Mr.
Kelerchian is an FFL, ATF is required to retain the application and process it, when, if ever, the
Congress appropriates money for ATF to conduct federal firearms relief determinations. It is for
that reason that I am returning Mr. Kelerchian's entire application packet to you.

   I also note in passing that you and other employees of ATF would seemingly be barred from
issuing letters such as your March 27, 2018 letter and returning applications, as the language in
the annual appropriation bill, as has existed since 1992, provides, in pertinent part, that "none of
the funds appropriated herein shall be available to investigate or act upon an application for relief
from Federal firearms disabilities under Section 925(c)." As all employees of ATF are paid through
the annual appropriations bill and you are taking action by returning an application, including
incurring printing, mailing and other costs, such action would seemingly be in violation of the

Congressional mandate.

      If you have any further questions or concerns, please do not hesitate to contact me. Thanking you for your time and assistance in this matter, I am

                             Respectfully Yours,
                             Prince Law Offices, P.C.

                             Joshua Prince
                             joshua@princelaw.com
                             Extension: 81114

jp/web
Matter no. 37012
Enclosure

Exhibit J

4-9

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

■ Complete items 1, 2, and 3. ̄JD37012
■ Print your name and address on the reverse
   so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
   or on the front if space permits.

A. Signature
X _____ ☐ Agent
                          ☐ Addresse

B. Received by *(Printed Name)*   C. Date of Deliver
                                   4/12/18

delivery address different from item 1?   ☐ Yes
enter delivery address below?             ☑ No

Chief John R. Day
U.S. Department of Justice - Bureau of Alcohol, Tobacco,
   Firearms and Explosives
Attention Bureau of Alcohol, Tobacco, Firearms and Explosives NCETR
- Relief of Disabilities Section
Corporal Road, Building 3750, Redstone Arsenal
Huntsville, AL 35898

9590 9403 0554 5173 4793 97

2. Article Number *(Transfer from service label)*

7016 0910 0000 6749 1887

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
   Mail
   'ail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restric
   Delivery
☐ Return Receipt for
   Merchandise
☐ Signature Confirmation
☐ Signature Confirmation
   Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053

Domestic Return Receip

Exhibit K

From: **DeBruicker, Lauren (USAPAE)** Lauren.DeBruicker@usdoj.gov 📎 🚩
Subject: Kelerchian v. US: Response to proposals regarding Mr. Kelerchian's firearms
Date: June 15, 2020 at 4:36 PM
To: Joshua Prince joshua@princelaw.com
Cc: Adam Kraut akraut@princelaw.com



Dear Joshua,

ATF has considered your proposals in your email of June 9, and responds as follows:

1. Post-1986 machineguns:
   a.   In light of the Supreme Court's denial of Mr. Kelerchian's petition for certiorari on June 1, Mr. Kelerchian should transfer his post-86 machineguns to another Federal Firearms Licensee ("FFL") before July 1. He need not transfer other firearms at this time.
   b.   If Mr. Kelerchian transfers his post-1986 machineguns to a qualified importer or manufacturer by July 1, no LE letter would be necessary. A letter would only be required if he transfers these machineguns to a dealer. 27 C.F.R. § 479.105(f).
   c.   ATF understands that Mr. Kelerchian may seek to transfer these machineguns to another FFL pursuant to an arrangement whereby the transferee FFL would transfer the machineguns back to Mr. Kelerchian if the current civil action concludes in Mr. Kelerchian's favor. In the event that the litigation concludes with a final judgment in Mr. Kelerchian's favor (following any appeals), ATF would waive the demonstration letter requirement with respect to the transfer of these machineguns from the transferee FFL back to Mr. Kelerchian.
   d.   As long as the applicable transfer forms for these machineguns are submitted to ATF by July 1, 2020, there would be no violation of the law. ATF will work with you to expedite the processing of forms submitted to ATF by July 1, 2020.

2. National Firearms Act firearms:
   a.   Other than the post-86 machineguns, Mr. Kelerchian's firearms can continue to be stored securely in the Kelerchians' warehouse.
   b.   In light of Mr. Kelerchian's prohibited status, ATF recognizes that in order to effectuate a transfer of NFA firearms after July 1, Mrs. Kelerchian may have to possess them incidentally in the course of transferring them.  As this would be a matter of practical necessity, ATF is not going to consider such limited possession a violation of 26 U.S.C. § 5861(d) under the circumstances.

3. Transfers of firearms, generally
   a.   Please see the attached guidance on how to dispose of remaining business inventory in a manner which does not constitute engaging in business without a license. While this guidance generally speaks to instances in which licenses have been revoked, ATF will apply these standards in considering any disposition of Mr. Kelerchian's firearms.

It is my understanding that the above addresses and should resolve the issues you raised below. If you believe otherwise, please let me know – I would be happy to discuss any remaining issues or differences and to see if we are able to resolve them.

Many thanks,

Lauren


Lauren DeBruicker
215.861.8492 | Lauren.DeBruicker@usdoj.gov

---

**From:** Joshua Prince <joshua@princelaw.com>
**Sent:** Tuesday, June 09, 2020 10:53 AM
**To:** DeBruicker, Lauren (USAPAE) <LDeBruicker@usa.doj.gov>
**Cc:** Adam Kraut <akraut@princelaw.com>
**Subject:** Re: Kelerchian v. US: Rule 26(f) Joint Report w USAO revisions 06.05.2020.docx

Hi Lauren,

It was a pleasure speaking with you this morning regarding my clients concerns relative to the denial of certiorari and ATF's position that his license will automatically be void within 30 days of the denial of cert (i.e. July 1, 2020). As you know, while we disagree with ATF's contention and are prepared to file a motion with the court if necessary, it is my hope that we can come to an agreement that is palatable by all the parties. As we discussed, the issues as I see them are:

1. Whether ATF is only going to require all post-86 machineguns to be transferred by July 1, 2020 or whether ATF contends that all post-86 and pre-86 (i.e. imported between 68 and 86) must be transferred by July 1, 2020. I would assume, consistent with 27 CFR 479.105(f), ATF will NOT require the receiving FFL to produce a demonstration letter. Further, as we discussed, if my client is to transfer post and/or pre 86 guns to another FFL for holding, we would require the agreement between the parties to explicitly provide that in the event a final determination is rendered in Mr. Kelerchian's favor, those machineguns will be transferred back to his license without requirement of a PD/Mil demonstration letter as generally required by 27 CFR 478.105(d). ATF has the authority to waive the requirement, pursuant to 27 CFR 479.26.

A related sub-issue is the timing it takes to find a buyer or FFL willing to hold the firearm, the ATF approval of the forms, and transfer (i.e. shipment) of those weapons. I would assume ATF would agree to expedite any such applications and that as long as the applicable transfer forms are submitted to ATF (not necessarily approved) by July 1, 2020, there would be no violation of the law in this situation.

2. Whether ATF agrees that Mrs. Kelerchian can continue in possession of any National Firearms Act weapons, registered to Mr. Kelerchian, after July 1, 2020, provided that she will not permit him access to them.

3. Whether we can agree that any firearms currently held by Mr. Kelerchian, regardless of whether Gun Control Act or National Firearms Act firearms, can be sold on behalf of Mr. Kelerchian without such constituting him or those acting on his behalf to be engaged in the business of selling firearms without a license.

Please let me know, as soon as you can so that we can either prepare an agreement of the parties or prepare a motion to be filed with the court. Thanks!

Joshua

Joshua Prince, Esq.
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
888-313-0416 ext 81114
610-845-3903 (fax)
Joshua@PrinceLaw.com


The highest compliment we can receive is the referral of your friends, family and business associates. Thank you for your trust


****Email Confidentiality Note****

The information contained in this electronic message may contain attorney-client privileged and confidential information only for use of the owner of the email address listed as the recipient of this message. Further, this e-mail may contain information that is proprietary and/or constitutes a trade secret. This e-mail, including attachments, constitutes non-public information intended to be conveyed only to the designated recipient of this communication, please be advised that any disclosure, dissemination, distribution, copying, or use of this communication or any attached document is strictly prohibited. If you have received this communication in error, please immediately destroy the same and notify the sender by return email and by telephone at 888-313-0416.


On Jun 9, 2020, at 8:58 AM, DeBruicker, Lauren (USAPAE) <Lauren.DeBruicker@usdoj.gov> wrote:

Thanks, Joshua. Yes, 10 a.m. should work fine.  You can reach me at 215.764.2231.

Lauren DeBruicker
215.861.8492 | Lauren.DeBruicker@usdoj.gov

**From:** Joshua Prince <joshua@princelaw.com>

**From:** Joshua Prince <joshua@princelaw.com>
**Sent:** Monday, June 08, 2020 4:47 PM
**To:** DeBruicker, Lauren (USAPAE) <LDeBruicker@usa.doj.gov>
**Cc:** Adam Kraut <akraut@princelaw.com>
**Subject:** Re: Kelerchian v. US: Rule 26(f) Joint Report w USAO revisions 06.05.2020.docx

Hi Lauren,

     I've been in the mountains since Friday without any cell or internet coverage and am just getting back into covered territory. Would tomorrow morning at 10am work? Please let me know. Thanks!

Joshua

Sent from my iPhone

Joshua Prince, Esq.
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
888-313-0416 ext 81114
610-845-3903 (fax)
Joshua@PrinceLaw.com


The highest compliment we can receive is the referral of your friends, family and business associates. Thank you for your trust


****Email Confidentiality Note****

The information contained in this electronic message may contain attorney-client privileged and confidential information only for use of the owner of the email address listed as the recipient of this message. Further, this e-mail may contain information that is proprietary and/or constitutes a trade secret. This e-mail, including attachments, constitutes non-public information intended to be conveyed only to the designated recipient of this communication, please be advised that any disclosure, dissemination, distribution, copying, or use of this communication or any attached document is strictly prohibited. If you have received this communication in error, please immediately destroy the same and notify the sender by return email and by telephone at 888-313-0416.


On Jun 8, 2020, at 3:22 PM, DeBruicker, Lauren (USAPAE) <Lauren.DeBruicker@usdoj.gov> wrote:

Dear Joshua,

Just following up on this. I am available to speak this afternoon if
you like; I am also available tomorrow until about 2:00 pm.  (I do
not mean to be a pest; I just recall you wanting to discuss your
possible motion).

Thanks,

Lauren

Lauren DeBruicker
215.861.8492 | Lauren.DeBruicker@usdoj.gov

---

**From:** DeBruicker, Lauren (USAPAE)
**Sent:** Friday, June 05, 2020 9:42 AM
**To:** Joshua Prince <joshua@princelaw.com>
**Subject:** Kelerchian v. US: Rule 26(f) Joint Report w USAO revisions
06.05.2020.docx

Dear Joshua,

Attached please find our proposed additions and revisions to the
Rule 26(f) report. As you will see, I have added an introductory
section up front to help frame the issues and inform the Court that
we believe that her decision on the Motion to Dismiss will very
likely dispose of the case in its entirety. We have done this in
previous cases with Judge Beetlestone and have found it helpful.

We have also added some language that we think will help the
Court to see that we are not ignoring her standard guidelines
(including her strong stance that discovery begin immediately).

Let us know what you think.

As to the topic of the impact of the denial of Mr. Kelerchian's
petition for certiorari, I think that may be best discussed by phone.
I am generally available today if you have time to talk, and can be
reached at 215.764.2231.

Thanks,

Lauren
<Rule 26(f) Joint Report w USAO revisions 06.05.2020.docx>



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Washington, DC*

www.atf.gov

### IMPORTANT NOTICE

### Selling Firearms AFTER Revocation, Expiration, or Surrender of an FFL

Former Federal Firearms licensees (FFL's) who continue to sell firearms after the revocation, expiration, or surrender of their license are subject to the same rules as persons who have never been licensed in determining whether they are "engaged in the business" of selling firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A). Accordingly, former licensees who wish to dispose of any remaining business inventory must adhere to the following guidance:

Business inventory must be disposed of by the former FFL in a manner that, objectively, does not constitute being engaged in the business of dealing in firearms using the same facts and circumstances test that would apply to persons who have never been licensed.

The preferred manner of disposition is for the former licensee to:

- Arrange for another FFL to purchase the business inventory (and other assets) of the business; or
- Consign the inventory to another FFL to sell on consignment, or at auction.

Should a former FFL decide against those options, he/she should be aware that future sales – whether from his/her personal firearms collection or otherwise – will be evaluated for a potential violation of 18 U.S.C. § 922(a)(1)(A), just as would occur with a person who had never been licensed.

If a former FFL is disposing of business inventory, the fact that no purchases are made after the date of license revocation, expiration, or surrender does not immunize him/her from potential violations of 18 U.S.C. § 922(a)(1)(A). Instead, business inventory acquired through repetitive purchases while licensed are attributed to the former FFL when evaluating whether subsequent sales constitute engaging in the business of dealing in firearms without a license.

ATF remains committed to assisting former licensees in complying with Federal firearms laws. If you have questions, please contact your local ATF office.

Andy R. Graham
Deputy Assistant Director (Industry Operations)
Field Operations