## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

VAHAN KELERCHIAN,                          :
                                           :
             Plaintiff,                    :
                                           :
        v.                                 :        CIVIL ACTION NO. 20-253
                                           :
BUREAU OF ALCOHOL, TOBACCO,                :
FIREARMS AND EXPLOSIVES, *et al.*,         :
                                           :
             Defendants.                   :
_____:

## ORDER

AND NOW, this _____ day of _____, 2022, upon consideration of defendants' Motion to Dismiss the First Amended Complaint and any opposition thereto, it is hereby ORDERED that the motion is GRANTED. IT IS FURTHER ORDERED that the First Amended Complaint is DISMISSED with prejudice and this matter is CLOSED.

BY THE COURT:

_____
WENDY BEETLESTONE, J.
*United States District Court*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| VAHAN KELERCHIAN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 20-253 |
| | : | |
| BUREAU OF ALCOHOL, TOBACCO, | : | |
| FIREARMS AND EXPLOSIVES, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANTS' MOTION TO DISMISS THE
FIRST AMENDED COMPLAINT**

Defendants respectfully move this Honorable Court to dismiss the First

Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

The bases for this motion are set forth fully in the accompanying

memorandum of law. A proposed form of order is enclosed.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

*/s/ Susan R. Becker for GBD*
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

*/s/ Lauren DeBruicker*
LAUREN DeBRUICKER
Assistant United States Attorneys
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Tel:  215.861.8492
Lauren.DeBruicker@usdoj.gov

Of Counsel:

Jeffrey A. Cohen
ATF Associate Chief Counsel
601 Walnut Street, Suite 1000E
Philadelphia, PA 19106

Dated:  August 12, 2022

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

VAHAN KELERCHIAN,                          :
                                           :
                    Plaintiff,             :
                                           :
        v.                                 :         CIVIL ACTION NO. 20-253
                                           :
BUREAU OF ALCOHOL, TOBACCO,                :
FIREARMS AND EXPLOSIVES, *et al.*,         :
                                           :
                    Defendants.            :
_____   :


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

JACQUELINE C. ROMERO
United States Attorney

GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

LAUREN DeBRUICKER
Assistant United States Attorneys
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Tel:  215.861.8492
Lauren.DeBruicker@usdoj.gov

Of Counsel:

Jeffrey A. Cohen
ATF Associate Chief Counsel
601 Walnut Street, Suite 1000E
Philadelphia, PA 19106

# **TABLE OF CONTENTS**

I.    OVERVIEW OF THE GUN CONTROL ACT ................................................... 3

    A.    The Gun Control Act strips convicted felons of their federal firearms privileges, including federal firearms licenses. ................................................ 3

    B.    Section 925(c) of the Gun Control Act once provided a path for felons to seek relief from their federal firearms disabilities. ....................................... 3

    C.    Congress revoked § 925(c) in 1992 through a ban on ATF appropriations to prevent felons from regaining their federal firearms privileges. ................. 4

II.    FACTUAL AND PROCEDURAL HISTORY ..................................................... 6

    A.    Plaintiff's Federal Firearms License ............................................................. 6

    B.    Plaintiff's Criminal Conviction ..................................................................... 7

    C.    The impact of plaintiff's criminal conviction on his license .......................... 8

        1.    Plaintiff is prohibited from possessing firearms. ................................... 8

        2.    Plaintiff mailed an application for restoration of his firearm privileges under § 925(c) to ATF in 2018. ...................................................... 8

        3.    As a result of his criminal convictions, plaintiff's federal firearms license is now void. ......................................................................... 9

    D.    Procedural History ...................................................................................... 10

III.    LEGAL STANDARDS AND OTHER APPLICABLE LAW ............................ 12

IV.    LEGAL ARGUMENT .................................................................................... 13

    A.    Plaintiff has no cause of action for declaratory or injunctive relief under § 925(c). ...................................................................................................... 13

    B.    Even if plaintiff could state a claim to have his purported rights under § 925(c) declared by the Court, he has none. ................................................ 15

C.     Plaintiff fails to state a claim under the APA upon which relief may be granted. ................................................................................................ 19

1.     Plaintiff fails to allege any "final agency action" subject to the APA. ...... 19

a)     The alleged "internal policy" is not a "final agency action." ................ 20

b)     ATF's actions with respect to plaintiff's license are not "final agency actions." ............................................................................................... 21

2.     Even if reviewable, ATF's conduct with respect to plaintiff's relief application is neither arbitrary nor capricious; it is mandated by Congress. ....................................................................................... 24

D.     Plaintiff states no due process claim upon which relief may be granted.... 26

E.     Plaintiff states no First Amendment claim upon which relief may be granted. ............................................................................................ 28

V.     CONCLUSION ............................................................................. 30

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................ 12

*Beers v. AG of the United States,*
    927 F.3d 150 (3d Cir. 2019) .................................. 17

*Bennett v. Spear,*
    520 U.S. 154 (1997) .................................................... *passim*

*Binderup v. AG of United States,*
    836 F.3d 336 (3d Cir. 2016) .................................. 27

*Black v. Snow,*
    272 F. Supp. 2d 21 (D.D.C. 2003) ......................... 16, 25, 27

*Borough of Duryea v. Guarnieri,*
    564 U.S. 379 (2011) ................................................ 29-30

*Cal. Motor Transp. Co. v. Trucking Unlimited,*
    404 U.S. 508 (1972) ................................................ 29

*Carino v. Stefan,*
    376 F.3d 156 (3d Cir. 2004) .................................. 12

*CEC Energy Co., Inc. v. Public Service Comm'n of V.I.,*
    891 F.2d 1107 (3d Cir. 1989) ................................ 11, 23

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
    467 U.S. 837 (1984) ................................................ 24

*Conley v. Gibson,*
    355 U.S. 41 (1957) ................................................ 12

*Ctr. for Biological Diversity v. United States Forest Serv.,*
    No. EDCV 15-2098-JGB (DTBx), 2016 U.S. Dist. LEXIS 139309 (C.D. Cal. Sep. 20, 2016) ................................................ 21

*District of Columbia v. Heller,*
    554 U.S. 570 (2008) ........................................................................ 28, 29

*FDIC v. Meyer,*
    510 U.S. 471 (1994) ............................................................................ 29

*Folajtar v. AG of the United States,*
    980 F.3d 897 n.10 (3d Cir. 2020) ........................................... 16, 17, 27

*Franklin v. Lynch,*
    No. 3:16-cv-36, 2016 U.S. Dist. LEXIS 160759 (W.D. Pa. Nov. 18, 2016) ..... 16-17

*Gary v. N.J. Dep't of Consumer Affairs Office of Consumer Prot.,*
    No. 10-3686, 2012 U.S. Dist. LEXIS 40661 (E.D. Pa. Mar. 26, 2012) ................. 29

*Golden & Zimmerman, LLC v. Domenech,*
    599 F.3d 426 (4th Cir. 2010) ............................................. 19, 20-21, 23

*Hormel Foods Corp. v. United States Dep't of Agric.,*
    808 F. Supp. 2d 234 (D.D.C. 2011) ...................................................... 21

*Kelerchian v. Bureau of Alcohol Tobacco Firearms & Explosives,*
    No. 20-3065, 2021 U.S. App. LEXIS 20531 (3d Cir. July 12, 2021) ............ *passim*

*Logan v. United States,*
    552 U.S. 23 (2007) ............................................................................ 15

*Lujan v. Nat'l Wildlife Fed'n,*
    497 U.S. 871 (1990) ........................................................................... 20

*Mayer v. Belichick,*
    605 F.3d 223 (3d Cir. 2010) ............................................................... 12

*McDonald v. Smith,*
    472 U.S. 479 (1985) ........................................................................... 29

*McHugh v. Rubin,*
    220 F.3d 53 (2d Cir. 2000) ..................................................... 15, 25, 26

*Mont. Shooting Sports Ass'n v. Holder,*

    No. CV-09-147-DWM-JCL, 2010 U.S. Dist. LEXIS 104301 (D. Mont. Aug. 31, 2010) ............................................................................................................ 23

*Mullis v. United States,*

    230 F.3d 215 (6th Cir. 2000) ..................................................... 16, 22, 25

*New Jersey v. United States HHS,*

    Civ. No. 07-4698, 2008 U.S. Dist. LEXIS 93310 (D.N.J. Nov. 17, 2008) ........... 21

*Owen v. Magaw,*

    936 F. Supp. 1568 (D. Kan. 1996) ........................................................ 16

*Phillips v. Cnty of Allegheny,*

    515 F.3d 224 (3d Cir. 2008) ............................................................... 12

*Pickering-George v. BATFE,*

    Civ. No. 07-0899, 2008 U.S. Dist. LEXIS 12938 (D.D.C. Feb. 21, 2008) ........... 27

*Pontarelli v. United States Dep't of the Treasury,*

    285 F.3d 216 (3d Cir. 2002) ......................................................... *passim*

*Public Citizen, Inc. v. FERC,*

    839 F.3d 1165 (D.C. Cir. 2016) ....................................................... 21-22

*Tyler v. Hillsdale Cty. Sheriff's Dep't,*

    837 F.3d 678 (6th Cir. 2016) .......................................................... 15-16

*United States v. Bean,*

    537 U.S. 71 (2002) ................................................................ 4, 5, 14, 25

*United States v. Hart,*

    359 F. Supp. 835 (D. Del 1973) ...................................................... 21, 27

*United States v. Kelerchian,*

    937 F.3d 895 (7th Cir. 2019) ............................................................... 7

*United States v. McGill,*

    74 F.3d 64 (5th Cir. 1996) ................................................................ 16

*United States v. Wiggins,*

50 F. Supp. 2d 512 ................................................................ 17

*Util. Workers Union of Am. Local 464 v. FERC,*
896 F.3d 573 (D.C. Cir. 2018) ............................................ 22

*Yox v. Lynch, No. 1:15-cv-457,*
2015 U.S. Dist. LEXIS 196962 (M.D. Pa. Nov. 9, 2015) ................................ 26-27

## Constitution, Statutes, and Regulations

5 U.S.C. § 704 ................................................................ 19

5 U.S.C. § 706 ................................................................ 24

18 U.S.C. § 921 ................................................................ 3, 28

18 U.S.C. § 922 ................................................................ *passim*

18 U.S.C. § 923 ................................................................ 3, 28

18 U.S.C. § 925 ................................................................ *passim*

28 U.S.C. § 1331 ................................................................ 13, 15

28 U.S.C. § 2201 ................................................................ 13, 14

28 U.S.C. § 2202 ................................................................ 13, 14

28 U.S.C. § 2412 ................................................................ 13

Pub. L. 102-393, 106 Stat. 1732 (1993) ...................................... 5

Pub. L. 103-123, 107 Stat. 1228 (1994) ...................................... 5

Pub. L. 115-141, 132 Stat. 348 (2018) ...................................... 5

Pub. L. 116-6, 133 Stat. 13 (2019) ...................................... 5

Pub. L. 116-93, 133 Stat. 2317 (2020) ...................................... 5

Pub. L. 116-260, 134 Stat. 1182 (2021) ...................................... 5

Pub. L. 117-103, 136 Stat. 49 (2022) ...................................... 5

27 C.F.R. § 478.144 ................................................................ *passim*

28 C.F.R. § 0.130 .......................................................................................... 4

## **Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................... 10, 14

Fed. R. Civ. P. 12(b)(6) .................................................................................. *passim*

Fed. R. Civ. P. 15 ........................................................................................ 12

## **Other Authorities**

S. Rep. No. 102-353 (1992) ........................................................................... 5

H.R. Rep. No. 104-183 (1995) ....................................................................... 5-6

The Gun Control Act protects the public by categorically barring felons from possessing firearms and obtaining or holding federal firearms licenses. 18 U.S.C. §§ 922(g)(1), 925(b). While the Gun Control Act originally provided a mechanism by which individual felons could apply to maintain their federal firearms license, 18 U.S.C. § 925(c), Congress repealed that provision in 1992 in the interest of protecting the public and keeping firearms out of the hands of dangerous criminals.

Plaintiff, a convicted felon found guilty of multiple violations of the Gun Control Act, contends that § 925(c) still somehow entitles him to maintain his license to possess and deal in firearms, notwithstanding Congress's effective repeal of that provision and the strict terms of the Gun Control Act that prohibit him from possessing firearms or participating in the firearms industry.

In an attempt to resurrect his federal firearms license – which became void by operation of law in June 2020 when his multiple federal felony convictions became final, *see* 18 U.S.C. § 925(b) – plaintiff again asks the Court to declare his rights under 18 U.S.C. § 925(c). In so doing, plaintiff asks the Court to find a cause of action where both Congress and courts across the country – including the Third Circuit Court of Appeals on plaintiff's appeal – have said there is none. As the Court found in considering plaintiff's complaint, and the Court of Appeals affirmed, there is no right to – or a cause of action for – declaratory judgment relating to plaintiff's application for relief from his federal firearms disabilities under § 925(c) (his "relief application"). To the extent that plaintiff could plausibly state a cause of action

under § 925(c), which he cannot, Congress's repeal of § 925(c) precludes any claims under its terms and any of the relief plaintiff seeks.

In the remainder of his First Amended Complaint ("amended complaint"), plaintiff proceeds from the erroneous premise that ATF has "voided, invalidated, and/or revoked" his license. *See* 1st Am. Compl., Dkt. No. 31-1, *passim*. Plaintiff argues that ATF has thus now taken a "final agency action" sufficient to give rise to a cause of action under the Administrative Procedures Act ("APA"). To the contrary, ATF has taken no action with respect to plaintiff's license or his relief application that is reviewable under the APA, and even if it had, plaintiff cannot meet his heavy burden of proving ATF's conduct was arbitrary and capricious: ATF's only actions (or inactions) with respect to plaintiff's license or his relief application have been those mandated by Congress.

Lastly, in contending that the First and Fifth Amendments somehow provide him a cause of action, plaintiff asks the Court to turn the terms of the Gun Control Act, the appropriations ban (and the extensive Congressional record supporting its annual renewal), and established gun rights jurisprudence on their head.

To the extent plaintiff asserts any new cause of action in his amended complaint that has not already been rejected by the Court of Appeals, he still fails to state a claim upon which relief may be granted, and the Court should dismiss the amended complaint with prejudice under Federal Rule of Civil Procedure ("Rule") 12(b)(6).

## I.    OVERVIEW OF THE GUN CONTROL ACT

### A.    The Gun Control Act strips convicted felons of their federal firearms privileges, including federal firearms licenses.

The Gun Control Act, 18 U.S.C. § 921 *et seq.*, bans certain classes of persons from possessing, receiving, or transporting firearms, including felons. 18 U.S.C. § 922(g). These persons are also ineligible for federal firearms licenses. 18 U.S.C. § 923(d)(1)(B). The Gun Control Act further provides that any federal firearms license held by a convicted felon becomes void when the conviction becomes final. 18 U.S.C. § 925(b).[1]

These "federal firearms disabilities" are imposed by operation of law; no action by ATF is required to implement them. Most relevant here, no action is required by ATF to "revoke" a felon's federal firearms license. The license becomes void thirty days after the felon's conviction becomes final. 18 U.S.C. § 925(b).

### B.    Section 925(c) of the Gun Control Act once provided a path for felons to seek relief from their federal firearms disabilities.

The Gun Control Act once provided a mechanism for relief from the above federal firearms disabilities. As enacted, the Gun Control Act authorized the Secretary of the Treasury (and, after a 2002 amendment, the Attorney General) to grant a felon relief from his or her federal firearms disabilities if it was established to the Secretary's satisfaction that certain preconditions were met – including that the felon no longer posed a danger to the public and granting the relief would be in

---

[1]     ATF's supporting regulation, 27 C.F.R. § 478.144(i), allows a 30-day period for licensees subsequently convicted of felonies to wind down their business and transfer prohibited firearms to a valid licensee in an orderly fashion.

the public's interest. *See* 18 U.S.C. § 925(c). Authority to administer the § 925(c)

relief-from-disabilities program was delegated to the director of the ATF. 28 C.F.R.

§ 0.130(a)(1); *see also Pontarelli v. United States Dep't of the Treasury*, 285 F.3d 216,

217 n.2 (3d Cir. 2002) (*en banc*). Judicial review was available in the federal district

court of appropriate jurisdiction to "[a]ny person whose application for relief… is

denied by the [ATF]." 18 U.S.C. § 925(c). ATF's decision was reviewed under an

arbitrary and capricious standard. *United States v. Bean*, 537 U.S. 71, 77-78 (2002).

In enacting this relief provision, Congress provided that if an applicant held a

federal firearms license, that applicant would not be barred from further operations

under the license "pending final action" on the application for relief. 18 U.S.C.

§ 925(c); *see also* 27 C.F.R. § 478.144(i)(1) (if application was timely filed, licensee

could continue licensed operations "during the pendency of the application.").

## C. Congress revoked § 925(c) in 1992 through a ban on ATF appropriations to prevent felons from regaining their federal firearms privileges.

By 1992, Congress determined that the relief provision of § 925(c) was

unworkable, costly, and dangerous. ATF agents were spending inordinate hours and

resources evaluating applications for relief, and guns were getting back into the

hands of dangerous criminals.

After observing these negative impacts of the § 925(c) relief-from-disabilities

program, in 1992 Congress defunded the program entirely, providing in its

appropriations bill that year that "none of the funds appropriated herein shall be

available to investigate or act upon applications for relief from Federal firearms

disabilities under section 925(c) of title 18, United States Code." Treasury, Postal Service, and General Government Appropriations Act, 1993, Pub. L. 102-393, 106 Stat. 1732 (the "appropriations ban"). Congress has retained and reaffirmed the ban on the use of appropriated funds to process applications for relief filed by individuals every year since.[2] (It has reinstated the relief program for corporations).

The Senate Report accompanying the first appropriations ban in 1992 explained the purposes of the ban:

> After ATF agents spend many hours investigating a particular applicant they must determine whether or not that applicant is still a danger to public safety. This is a very difficult and subjective task which could have devastating consequences for innocent citizens if the wrong decision is made. The Committee believes that the approximately 40 man-years spent annually to investigate and act upon these investigations and applications would be better utilized to crack down on violent crime.

S. Rep. No. 102-353, at 19-20 (1992).

The House Report accompanying the renewal of the appropriations ban in 1995 reiterated those reasons three years later:

> For the fourth consecutive year, the Committee has added bill language prohibiting the use of Federal funds to process applications for relief from Federal firearms disabilities… . Those who commit felonies should not be allowed to have their right to own a firearm restored. We have learned sadly that too many of these felons whose gun ownership rights were restored went on to commit violent crimes

---

[2]     *See Bean*, 537 U.S. at 75 n.3 (listing subsequent appropriations decisions); *see also*, *e.g.*, Consolidated Appropriations Act, 2018, Division B, Pub. L. 115-141 (2017-2018); Consolidated Appropriations Act, 2019, Division C, Pub. L. 116-6 (2019-2020); Consolidated Appropriations Act, 2020, Division B, Pub. L. 116-93 (2020); Consolidated Appropriations Act, 2021, Division B, Pub. L. 116-260 (2021); and Consolidated Appropriations Act, 2022, Division B, Pub. L. 117-103 (2022) (applicable at the time plaintiff filed his application and thereafter).

> with firearms. There is no reason to spend the Government's time or
> taxpayer's money to restore a convicted felon's right to own a firearm.

H.R. Rep. No. 104-183, at 15 (1995). As the Third Circuit has found, "[t]he

legislative history of the appropriations ban confirms that Congress intended to

prevent individual felons from regaining firearms privileges." *Pontarelli*, 285 F.3d

at 231; *see also id.* at 230 ("[C]ongressional intent to prohibit any Federal relief –

either through ATF or the courts – is clear… . [T]he appropriations ban

demonstrates that Congress wanted to suspend felons' ability to regain their

firearms privileges under § 925(c).").

Pursuant to Congress's mandate in enacting the appropriations ban, ATF is

prohibited from taking any action at all regarding – including considering or even

acknowledging – applications for federal firearms relief under § 925(c).[3]

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Plaintiff's Federal Firearms License

Plaintiff obtained a federal firearms license as a dealer in or around 2006.

*See* 1st Am. Compl., Dkt. No. 31-1, at ¶ 23. For many years, he and his wife owned

---

[3]    On appeal, the Court of Appeals noted that the appropriations ban only
prohibits ATF from "investigat[ing] or act[ing] upon applications for relief," and that
"ATF provide[d] no support for a reading of 'investigate or act upon' that includes
the mere recognition of the fact that an application for relief has been filed or the
legal effect of such a filing." *Kelerchian v. Bureau of Alcohol Tobacco Firearms &
Explosives*, No. 20-3065, 2021 U.S. App. LEXIS 20531, at *9 (3d Cir. July 12, 2021).
For the reasons discussed in their motion to dismiss the complaint (Dkt. No. 7) and
herein, defendants respectfully submit that the weight of authority – including the
extensive Congressional record the Court of Appeals appears not to have considered
– is to the contrary, and, in any event, the Court of Appeals made no ruling on this
issue that would prohibit the Court from granting this motion.

and operated Armament Services International, Inc. ("ASI"), a firearms business in Warminster, Pennsylvania.

### B.    Plaintiff's Criminal Conviction

In 2015, a jury in the Northern District of Indiana convicted plaintiff of multiple felony violations of federal gun laws, including using his federal firearms license to conspire and make false statements to illegally obtain highly-restricted weapons, including military-style, belt-fed machine guns only legal for military and law enforcement use. *See U.S. v. Kelerchian*, 2:13-CR-66, N.D. Ind. (the "Criminal Action") at Am. Jgt., Ex. D to 1st Am. Compl., at 50 of 168.[4, 5]

On February 5, 2018, the court in the Criminal Action sentenced plaintiff to a term of 100 months in prison, fined him $100,000, and, among other terms of his eventual release, ordered that he "may not own or possess a firearm, ammunition, destructive device, or any other dangerous weapon." Ex. D at 54 of 168. The Seventh Circuit affirmed plaintiff's convictions, and the Supreme Court denied his petition for certiorari. *United States v. Kelerchian*, 937 F.3d 895, 903-904, (7th Cir. 2019), *cert. denied*, 140 S. Ct. 2825 (2020). Plaintiff is incarcerated at FCI Fort Dix in New Jersey, with an anticipated release date of May 2025.

---

[4]    Unless otherwise noted, all references are to the exhibits to the First Amended Complaint and, for clarity and precision, their ECF pagination.

[5]    For further details of plaintiff's criminal activity and convictions, and ASI and Mrs. Kelerchian's own willful violations of the Gun Control Act that deprived them of licenses of their own, *see* Defendants' Amended Motion to Dismiss, Dkt. No. 7, at 5 n. 1-2, and citations therein.

### C.    The impact of plaintiff's criminal conviction on his license

#### 1.    *Plaintiff is prohibited from possessing firearms.*

As a result of his eight felony convictions, plaintiff is prohibited from possessing, receiving, or transporting firearms. 18 U.S.C. § 922(g)(1). This prohibition became effective upon plaintiff's sentencing in February 2018.

#### 2.    *Plaintiff mailed an application for restoration of his firearm privileges under § 925(c) to ATF in 2018.*

Recognizing that these same firearms disabilities would void his federal firearms license once his convictions became final (i.e., after all appeals had been exhausted), on March 2, 2018, through his counsel, plaintiff mailed a relief application to ATF seeking relief from his prohibiting federal disabilities pursuant to the long-defunct 18 U.S.C. § 925(c) and 27 C.F.R. § 478.144(i). Because of the appropriations ban, on March 27, 2018, ATF returned plaintiff's relief application to his counsel with the following explanation:

> Although Federal law provides a means for the relief of firearms disabilities, since October 1992, ATF's annual appropriation has prohibited the expending of any funds to investigate or act upon applications for relief from Federal firearms disabilities submitted by individuals. Accordingly, ATF cannot act upon these applications.

*See* Ex. H.

On April 9, 2018, plaintiff re-sent his petition to ATF accompanied by a letter stating his position that the law "requires ATF to retain plaintiff's application and process it, when, *if ever*, the Congress appropriates money for ATF to conduct Federal firearms relief determinations." 1st Am. Compl. ¶ 46 and Ex. I (emphasis

added). ATF did not respond to this letter and has taken no other action on plaintiff's Relief Application since. 1st Am. Compl. ¶ 48.

### 3. As a result of his criminal convictions, plaintiff's federal firearms license is now void.

Pursuant to the Gun Control Act, plaintiff's license became void by operation of law when the Supreme Court denied his petition for certiorari on June 1, 2020. 18 U.S.C. § 925(b). Plaintiff was able to continue to operate under his federal firearms license until thirty days after his conviction became final. *Id; see also* 27 C.F.R. § 478.144(i).[6]

Consistent with the provisions of the Gun Control Act and its directive from Congress in the appropriations ban, once plaintiff's license became void, ATF removed plaintiff's license from its online "FFL eZ Check" system. *See* 1st Am. Compl. at ¶ 29 and Ex. A. ATF also sent plaintiff its standard "FFL Out-of-Business Records Request" Form 5300.3A informing him of his duties and obligations under the Gun Control Act as a former licensee. *See* Ex. B at 31 of 168 ("If your firearms business was permanently discontinued, the Gun Control Act and its implementing regulations require that your firearms records be sent within 30 days to… ATF."). ATF also responded, either directly or through counsel, to plaintiff's inquiries regarding the process for transferring any machineguns manufactured after 1986, which may only lawfully be held by a federal firearms licensee. *See* Ex. K. Other

---

[6]    While 27 C.F.R. § 478.144(i) is now inoperative as to individuals by virtue of the appropriations ban, ATF still honors the 30-day wind-down provision to ensure, among other things, an orderly, safe, and legal transfer of restricted firearms that may only be held by federal firearms licensees.

than these ministerial actions, ATF has taken no action regarding plaintiff's (now former) license.

### D.    Procedural History

On January 12, 2020, plaintiff filed this suit seeking: (1) a declaration that because he submitted a relief application under § 925(c), his license must remain in force indefinitely; and (2) an order enjoining ATF from taking any actions to the contrary. Asserting claims under the Gun Control Act, the Declaratory Judgment Act, the APA, and the U.S. Constitution, *see* Compl., Dkt. No. 1, at ¶ 12, plaintiff sought an order declaring that notwithstanding his eight felony convictions, his federal firearms license is and must remain valid and in force until such time as ATF decides his relief application (which he recognizes could be never, due to the appropriations ban) and enjoining ATF from taking any actions relating to his license – including as a result of its expiration under § 925(b) – in the interim.

Defendants moved to dismiss the complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim upon which relief could be granted under Rule 12(b)(6). Dkt. No. 7. In an opinion and order dated July 17, 2020, the Court determined that, under § 925(c), it did not have subject matter jurisdiction over plaintiff's claims and dismissed the complaint with prejudice. Dkt. Nos. 14-15. Having found that plaintiff failed to meet his burden of establishing jurisdiction, the Court did not address the sufficiency of plaintiff's claims under Rule 12(b)(6), other than noting that the relief plaintiff sought was "impossible" (Dkt. No. 14 at 5 n.4) and denying his motion to amend his complaint. Dkt. No. 18.

On plaintiff's appeal, the Court of Appeals affirmed the dismissal of his complaint. *Kelerchian*, 2021 U.S. App. LEXIS 20531, at \*9-11. While the Court of Appeals found the appropriations ban did not deprive this court of subject matter jurisdiction (in that "plaintiff's requested relief did not require ATF to grant or deny his application"), the Court of Appeals found that plaintiff nonetheless failed to state a claim upon which relief may be granted. *Id*. at \*9. The Court of Appeals dismissed Count I for "Declaratory and Injunctive Relief Pursuant To 18 U.S.C. § 925(c) and 27 C.F.R. § 478.11(i)[sic]" (Compl. ¶ 43-49), finding that "§ 925(c) does not contain an express right of action to enforce the protection provision and we do not read the statute to imply a private right of action." *Id*. at \*10, citing *Alexander v. Sandoval*, 532 U.S. 275. Count II, the Court of Appeals found, alleged plaintiff "has a federal right under § 925(c) but does not identify a cause of action. So it fails to state a claim." *Id*. Finally, the Court of Appeals found that plaintiff failed to identify any final agency action by ATF so as to be able to state a claim under the APA upon which relief could be granted:

> Nowhere does Kelerchian allege that the "internal policy" is a "final agency action." The most Kelerchian alleges is that the "internal policy" was communicated to Kelerchian's counsel by ATF Philadelphia Division Counsel Kevin White in a phone call. This allegation is insufficient to establish that the "internal policy" is a final agency action under the relevant legal standard.

*Id*. at \*10-11, *citing Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); *CEC Energy Co., Inc. v. Public Service Comm'n of V.I.*, 891 F.2d 1107, 1110 (3d Cir. 1989) (other internal citations omitted). The Court of Appeals therefore affirmed dismissal of the

complaint without prejudice to plaintiff amending his complaint, recognizing (without deciding) that amendment may be futile. *Id*. at 11.

After a series of pleadings prompted by his failure to comply with Rule 15, *see* Dkt. Nos. 22-30, plaintiff has now amended his complaint, reasserting the same claims for declaratory and injunctive relief the Court of Appeals has ruled are insufficient, and repackaging the same requests for relief into "new" causes of action that similarly fail to state a claim upon which relief may be granted.

## III.   LEGAL STANDARDS AND OTHER APPLICABLE LAW

The Court must grant a motion to dismiss pursuant to Rule 12(b)(6) where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Carino v. Stefan*, 376 F.3d 156, 159 (3d Cir. 2004), *quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation, citation omitted). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."

*Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The extensive congressional record confirming the scope, rationale, and intended impact of the 1992 appropriations ban falls squarely within these permitted materials.

## IV.   LEGAL ARGUMENT

Plaintiff again asks the Court to find that because he mailed a relief application to ATF under 18 U.S.C. § 925(c) and related portions of 27 C.F.R. § 478.144(i), these defunct provisions somehow still permit him to operate as a federal firearms licensee until such time as ATF acts on his application, *i.e.*, until Congress repeals the appropriations ban that has been in place for decades. Such a ruling would have the incongruous and dangerous effect of permitting felons to operate under their licenses indefinitely *because of* the appropriations ban expressly intended to deny them from ever obtaining such relief. Setting aside this direct contravention of a clear congressional mandate, plaintiff fails to state a claim upon which relief may be granted and his amended complaint should be dismissed.

### A.   Plaintiff has no cause of action for declaratory or injunctive relief under § 925(c).

In his original complaint and on appeal, plaintiff sought a declaration of the legal effect of his relief application under § 925(c), contending that the provisions of 28 U.S.C. § 1331 and the Declaratory Judgment Act, 28 U.S.C. § § 2201-02, among others, provided him causes of action for such relief. Compl., Dkt. No. 1, ¶ 12 (asserting claims for relief under "28 U.S.C. §§ 1331, 1343, 1346, 2201, 2202, and 2412," in addition to the APA).

The Court of Appeals fully considered plaintiff's assertions, and found that plaintiff stated no claim for declaratory or injunctive relief upon which relief could be granted.

> Count I of the complaint [for "Declaratory and Injunctive Relief"] names § 925(c) and its implementing regulation as a cause of action. But § 925(c) does not contain an express right of action to enforce the protection provision and we do not read the statute to imply a private right of action. *See generally Alexander v. Sandoval*, 532 U.S. 275 [] (2001). So Count I also fails to state a claim.

*Kelerchian*, 2021 U.S. App. LEXIS 20531, at *10. In so finding, the Court of Appeals expressly rejected plaintiff's contention that a federal court's general jurisdiction to hear causes of action under federal law provided him with a cause of action. *Id.* (noting 28 U.S.C. § 1331 "does not provide a cause of action for all alleged violations of a federal right or immunity."). While the Court of Appeals did not discuss the Declaratory Judgment Act by name in its opinion, it considered plaintiff's case for declaratory relief (*id.* at *4-5, 9-10), and conclusively determined that plaintiff's Count I for Declaratory Relief under 28 U.S.C. §§ 2021 and 2022 failed to state a claim and was properly dismissed pursuant to Rule 12(b)(6).[7]

As Courts of Appeals (and this Court) have consistently found, § 925(c) "is not written so as to create a freestanding opportunity for relief from federal firearms

---

[7]     Defendants submit that ATF's nonaction on plaintiff's relief application is not reviewable under the express terms of § 925(c), as ATF has not denied plaintiff's application. *See Bean*, 537 U.S. at 78 ("the absence of an actual denial of [a] respondent's [relief application] by ATF precludes judicial review under § 925(c)"); *see also id.* at 76 (explaining that "[o]nly" when a 925(c) applicant is denied relief can an applicant seek federal court review). The Court of Appeals found *Bean* distinguishable. *Kelerchian*, 2021 U.S. App. LEXIS 20531, at *6.

- 14 -

disabilities which might be vindicated pursuant to 28 U.S.C. § 1331… ." *See* Dkt. No. 14 at 4, citing *McHugh v. Rubin*, 220 F.3d 53, 59 (2d Cir. 2000); *see also Pontarelli*, 285 F.3d at 222 (§ 925(c) "does not 'create a freestanding opportunity for relief' that district courts may grant pursuant to their jurisdiction over federal questions or commerce regulations," citing *McHugh*, 220 F.3d at 59).

Plaintiff did not appeal the Court of Appeals' ruling. In his amended complaint, he offers no new factual or legal basis upon which the Court might declare his alleged rights under § 925(c) or award him any injunctive relief. For the same reasons the Court of Appeals has already held, these claims should be dismissed.

### B.   Even if plaintiff could state a claim to have his purported rights under § 925(c) declared by the Court, he has none.

Plaintiff's claims are based entirely on rights he contends are afforded him under § 925(c) and its implementing regulations. As courts have unanimously held, § 925(c) is no longer a valid statute. As a result, even if § 925(c) provided plaintiff with a cause of action, which it doesn't, it provides him no basis for any form of relief – whether in declaratory or injunctive form, under the APA or otherwise.

As courts across the country have consistently confirmed, by virtue of the appropriations ban, Congress has effectively repealed § 925(c), along with any rights and privileges it once conferred. *See Logan v. United States*, 552 U.S. 23, 28 n.1 (2007) (by virtue of the appropriations ban, § 925(c) "has been rendered inoperative"). *See also*, *e.g.*, *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 682

(6th Cir. 2016) (*en banc*) (by virtue of the appropriations ban, § 925(c) "is currently a nullity"); *Mullis v. United States*, 230 F.3d 215, 218, 221 (6th Cir. 2000) (through the appropriations ban, "Congress intended to suspend all relief available through the ATF," and "suspend[ed] the operation of § 925(c) in its entirety"); *Folajtar v. AG of the United States*, 980 F.3d 897 n.10 (3d Cir. 2020) ("Congress effectively wrote § 925(c) out of the statute books") (citation, internal punctuation omitted); *Pontarelli*, 285 F.3d at 230 ("[C]ongressional intent to prohibit any Federal relief – either through ATF or the courts – is clear… . [T]he appropriations ban demonstrates that Congress wanted to suspend felons' ability to regain their firearms privileges under § 925(c).");[8] *Owen v. Magaw*, 936 F. Supp. 1568, 1571 (D. Kan. 1996), *aff'd*, 122 F.3d 1350 (10th Cir. 1997) ("Thus, while § 925(c) remains on the books and has not been repealed, Congress has effectively suspended its operation."); *United States v. McGill*, 74 F.3d 64, 67 (5th Cir. 1996) ("By withdrawing funds to the ATF to process these applications under these circumstances and with this explanation by the appropriations committee, it is clear to us that Congress intended to suspend the relief provided by § 925(c)."); *Black v. Snow*, 272 F. Supp. 2d 21, 27 (D.D.C. 2003), *aff'd*, 110 Fed. App'x 130 (D.C. Cir. 2004) ("In enacting the restriction each year since 1992, Congress has sent a clear signal that it wished to disable the firearms relief provision."); *Franklin v. Lynch*, No. 3:16-cv-36, 2016 U.S. Dist. LEXIS 160759,

---

[8]      While the Court of Appeals found *Pontarelli* distinguishable on the basis of the relief sought, the Court of Appeals did not address the *en banc* court's findings on the continuing viability of § 925(c) following the appropriations ban, or Congress's intent in effectively repealing the provision. *Kelerchian*, 2021 U.S. App. LEXIS 20531, at *6.

at *4-5 n.2 (W.D. Pa. Nov. 18, 2016) ("In practice, …both 18 U.S.C. § 925(c) and 27

C.F.R. § 478.144 are meaningless; Congress has denied any funding 'to investigate

or act upon applications for relief from Federal firearms disabilities under 18 U.S.C.

925(c).' … Thus, 18 U.S.C. § 925(c) does not provide an actual avenue of relief.").

Even if it provided for a private cause of action, plaintiff has no enforceable rights

under § 925(c) upon which this Court can grant relief.

As the Third Circuit has recently noted, "to the extent such a restoration

remedy was available, it was a matter of congressional grace" that has since been

withdrawn. *Beers v. AG of the United States*, 927 F.3d 150, 156 (3d Cir. 2019); *see*

*also Folajtar*, 980 F.3d at 897 n.10 (any relief available under § 925(c) is a "matter

of legislative grace."). As another court has noted in rejecting a claim under § 925(c):

> The judicial function… does not encompass the power to enforce
> legislation suspended by Congress. The judicial branch is constrained
> by well-delineated powers of separated government. This Court will
> not intrude on the legislative power and command the [then Secretary
> of the Treasury, now director of the ATF] to act when, by passage of a
> series of appropriations acts, Congress has clearly indicated that the
> law provides no relief for restoration of firearms privileges.

*United States v. Wiggins*, 50 F. Supp. 2d 512, 516 and n.2 (E.D. Va. 1999) (further

noting that "Congress has not expressly and specifically waived sovereign immunity

over suits arising from applications for restoration of civil rights under 18 U.S.C. §

925(c)."). By asking the Court to declare his application timely "made," "filed," and

"pending" sufficient to trigger the safeguards of § 925(c) and 27 C.F.R. §

478.144(i)(1) – and compelling ATF to consider it as such – plaintiff asks the Court

to defy Congress and create a cause of action where Congress has said there is none.[9]

In considering plaintiff's original complaint, the Court correctly found that "the provision under which [p]laintiff seeks relief has been amended by Congress to effectively be written off the books as it applies to individual applicants," Dkt. No. 14 at 4, and as such, the relief he seeks is "impossible." *Id*. at 5 n.4. Even with the benefit of two additional years to come up with a viable cause of action, plaintiff has failed to state a claim upon which relief is possible.

As the Court properly held, awarding plaintiff the injunctive relief he seeks would "subvert legislative fiat" and require ATF "to directly contravene the law." Dkt. No. 14 at 4. It also would grant plaintiff the outcome that Congress passed the appropriations ban "to *specifically avoid*" – "allow[ing] convicted felons to retain their firearms licenses." *Id*. at 3 (emphasis in original). Plaintiff states no claim for relief that can be granted in connection with § 925(c), under the Declaratory Judgment Act, the APA, the Constitution, or otherwise. This Court should dismiss the amended complaint for failure to state a claim upon which relief can be granted.

---

[9]     As a part of his strained argument, plaintiff asks the Court to declare that he timely and properly "filed" his application, such that he is entitled to § 925(c)'s protections, suggesting that the Court of Appeals' opinion precludes any other result. *See* 1st Am. Compl. ¶¶ 51-53, 63-65, citing *Kelerchian*, 2021 U.S. App. LEXIS 20531, at *9 n.5 (noting that "ATF's practice of mailing back individuals' applications as unprocessed *arguably* requires ATF to recognize that an individual has *filed* an application for relief.") (emphasis added). To the contrary, the Court of Appeals warned against that very presumption: "We neither endorse nor discredit Kelerchian's characterizations that he has filed an application for relief and that final action on his application is pending." 2021 U.S. App. LEXIS 20531, at *7 n.3.

**C.      Plaintiff fails to state a claim under the APA upon which relief may be granted.**

The Court of Appeals found plaintiff failed to state an APA claim upon which relief may be granted, as he failed to allege any "final agency action" that could be subject to APA review. *Kelerchian,* 2021 U.S. App. LEXIS 20531, at *10-11, *citing, inter alia, Bennett*, 520 U.S. at 177-78.[10] His amended claim under the APA suffers from the same dispositive infirmities and must be dismissed.

The expiration of plaintiff's license is not the result of any act by ATF, but by acts of Congress, and plaintiff's own criminal conduct. Presuming *arguendo* that plaintiff has standing to bring his APA claim,[11] he fails to state such a claim upon which relief may be granted.

### 1.      Plaintiff fails to allege any "final agency action" subject to the APA.

By its terms, the APA limits this right of judicial review to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. In other words, the APA provides for judicial review of agency action, but only if that action is final. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990).

---

[10]      Some courts consider the "final agency action" requirement to be jurisdictional. *See, e.g., Golden & Zimmerman, LLC v. Domenech*, 599 F.3d 426, 433 (4th Cir. 2010) (as ATF's actions did not constitute "final agency action," affirming dismissal for lack of subject matter jurisdiction). Defendants submit that whether considered under Rule 12(b)(6) or 12(b)(1), plaintiff's APA claim must be dismissed.

[11]      To have standing to bring an APA claim, a plaintiff must establish, among other things, "a causal connection between the injury and the conduct complained of – the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Bennett*, 520 U.S. at 167.

For an agency action to be considered final for purposes of the APA, it must satisfy two criteria: (1) "the action must mark the consummation of the agency's decisionmaking process — it must not be of a merely tentative or interlocutory nature;" and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 177-78. As plaintiff fails to allege any act by ATF that meets both *Bennett* criteria, his claim must be dismissed.

### a)   The alleged "internal policy" is not a "final agency action."

The Court of Appeals rejected plaintiff's APA claim, which is based entirely on an alleged ATF "internal policy" expressed nowhere but in an alleged statement during a telephone call with ATF counsel. "Nowhere does [plaintiff] allege that the 'internal policy' is a 'final agency action.' The most [he] alleges is that the 'internal policy' was communicated to [his] counsel by ATF Philadelphia Division Counsel [] in a phone call. This allegation is insufficient to establish that the 'internal policy' is a final agency action under the relevant legal standard." *Kelerchian*, 2021 U.S. App. LEXIS 20531, at *10-11, *citing*, *inter alia*, *Bennett*, 520 U.S. 154.

In his amended complaint, plaintiff alleges – without any additional factual support – that this unwritten "internal policy" *is* a final agency action, the Third Circuit's ruling notwithstanding. Am. Compl. ¶ 55. Alleging it does not make it so, nor does plaintiff's empty allegation spare his claim from the law of the case. *Kelerchian*, 2021 U.S. App. LEXIS 20531, at *10-11; *see also*, *e.g.*, *Golden*, 599 F.3d

at 432; *New Jersey v. United States HHS*, Civ. No. 07-4698, 2008 U.S. Dist. LEXIS 93310, at *32 (D.N.J. Nov. 17, 2008) (agency letter stating policy guidelines was not final agency action; dismissing complaint); *Hormel Foods Corp. v. United States Dep't of Agric.*, 808 F. Supp. 2d 234, 246-47 (D.D.C. 2011) (where plaintiff failed to allege facts that demonstrate that agency letter is a final agency action, plaintiff failed state a claim for relief under the APA).

> **b)   ATF's actions with respect to plaintiff's license are not "final agency actions."**

In an attempt to salvage his claim, plaintiff now alleges that the ministerial actions ATF has taken since his license terminated by operation of law in June 2020 are "final agency actions" sufficient to state a claim under the APA. They are not.

Contrary to plaintiff's allegations, ATF did not "void, invalidate, and/or revoke" his license. His license became inoperative as a matter of law when his conviction became final. *See* 18 U.S.C. §§ 922(g)(1) and 925(b); *see also United States v. Hart*, 359 F. Supp. 835 (D. Del 1973) (confirming a felon's existing license "expired by its terms" at the time of his felony conviction, and "was not revoked."). The termination of plaintiff's license was not a "final agency action;" indeed, it was not an agency action at all. *See, e.g., Ctr. for Biological Diversity v. United States Forest Serv.*, No. EDCV 15-2098-JGB (DTBx), 2016 U.S. Dist. LEXIS 139309, at *27 (C.D. Cal. Sep. 20, 2016) (where permit was validated by operation of law, agency's conduct consistent with that operation of law, including collection of permit fees, was not "final agency decision" subject to APA review); *see also Public Citizen, Inc.*

*v. FERC*, 839 F.3d 1165, 1172-73 (D.C. Cir. 2016) and *Util. Workers Union of Am. Local 464 v. FERC*, 896 F.3d 573, 574 (D.C. Cir. 2018) (results that take effect by operation of law are not "agency action" subject to review).

Plaintiff now alleges that ATF's removal of his license from the FFL eZ Check system and ATF's communications informing him of his duties and obligations as a former licensee, such as the need for him to surrender his firearms records and to not possess machineguns manufactured after 1986, either are themselves, or are reflective of, final agency action. Neither of these actions satisfy either of the *Bennett* criteria for a "final agency action" sufficient to state an APA claim.

First, there is nothing to suggest these acts resulted from ATF's decisionmaking process. Indeed, plaintiff concedes that ATF has made no decision (and, due to the appropriations ban, can make no decision) regarding his relief application or its impact on his license, and that due to the appropriations ban, it has been (and remains) unable to. As such, "there is no agency action for a federal court to compel or review." *Mullis*, 230 F.3d at 212 (rejecting contention that 5 U.S.C. § 706 provides a basis for relief under § 925(c)).

Second, plaintiff cannot establish that any legal consequences flow from ATF's removal of his license from the eZ Check system or ATF's communications reminding him of his obligations as a former licensee. Even if ATF had not changed plaintiff's license's listing on eZ Check, nor communicated with him regarding his obligations as a former licensee, his license would still be void by operation of law and he would still be required to comply with the recited federal firearms laws. *See*,

*e.g.*, *Golden*, 599 F.3d at 433 (finding ATF communications were not "final agency action"; "if the ATF had never published the Reference Guide and FAQ F13, the ATF would still have had the authority to prosecute licensees for engaging in the conduct described in FAQ F13 because legal consequences do not emanate from FAQ F13 but from the Gun Control Act and its implementing regulations."); *Mont. Shooting Sports Ass'n v. Holder*, No. CV-09-147-DWM-JCL, 2010 U.S. Dist. LEXIS 104301, at \*21-22 (D. Mont. Aug. 31, 2010) (letter from ATF outlining obligations under Gun Control Act "did not impose any new obligations on [plaintiff], deny him a right, or otherwise fix some legal relationship. The letter simply restated [plaintiff's] obligations under longstanding federal firearms laws."). *Compare CEC Energy Co.*, 891 F.2d at 1110 (judicial review is appropriate where the impact of the agency action was "direct and immediate," requiring "an immediate and substantial change in the plaintiffs' conduct of their affairs… .").

Contrary to plaintiff's characterizations, ATF's communications with plaintiff simply stated – and in the case of the FFL eZ Check system, reflected – plaintiff's obligations under existing law. Even if the ATF had not communicated to plaintiff his obligations under the Gun Control Act, or changed his eZ Check status, plaintiff "would still have been required to comply with those federal firearms laws. In other words, any legal consequences in this case emanate not from the ATF's letter [or other alleged conduct], but from applicable federal firearms laws and their implementing regulations." *Id*. at \*22 (citing cases). The measures ATF took were not actions "from which the legal consequences [to plaintiff] would flow," *Bennett*,

520 U.S. at 178. Instead, they are the ministerial consequences that flowed to plaintiff by virtue of his own criminal convictions, the Gun Control Act, and the appropriations ban – not any decision by ATF. ATF's alleged conduct was ministerial in nature, did not involve discretionary decision making by ATF officials, and therefore do not constitute final agency action.

To be clear, ATF's only "internal policy" regarding relief applications is to follow the law. Even accepting plaintiff's allegations as true, plaintiff states no claim under the APA.

### 2. *Even if reviewable, ATF's conduct with respect to plaintiff's relief application is neither arbitrary nor capricious; it is mandated by Congress.*

As plaintiff acknowledged in his original complaint, in assessing the sufficiency of an APA claim, "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Compl. ¶ 51 (*citing Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-843 (1984)).

As such, ATF could be subject to liability only if its actions in returning plaintiff's relief application, and not allowing him to operate his license indefinitely despite felony convictions and the mandates of the Gun Control Act, was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). ATF's compliance with a statutory directive not to use its resources to process applications for relief, or to recognize any right on the part of a felon

convicted of multiple firearms crimes to retain or regain his firearms privileges, is none of those things.

As courts considering the appropriations ban and its impact on felons' rights under § 925(c) have consistently held, "ATF's decision to comply with a congressional directive cannot be said to meet" the arbitrary and capricious standard. *McHugh*, 220 F.3d at 61 ("We are aware of no alchemy capable of transforming review of the ATF's decision under [5 U.S.C.] § 706 into the relief the plaintiff seeks – plenary adjudication of his application by the district court."). *See also Bean*, 537 U.S. at 75-78 (rejecting felon's contention that the ATF's inaction on a request for relief under § 925(c) by virtue of the appropriations ban invoked district court jurisdiction under the APA); and *Black*, 272 F. Supp. 2d at 27 (finding § 925(c) leaves the district court with no power under the APA to compel agency action). "Given Congress's explicit instruction that the ATF should not spend any appropriated funds to process applications for the removal of firearm disabilities, [an applicant] could hardly argue that the ATF has acted unlawfully or unreasonably in failing to process his application." *Mullis*, 230 F.3d at 219.

Here, Congress's intent was clear. ATF's return of plaintiff's relief application, and its inability to consider it "made," "filed," and "pending" such as to allow him to circumvent the Gun Control Act and its plain prohibitions, was not some action by ATF in violation of its regulatory duties, as plaintiff asks the Court to find. It was an act AFT considers to have been mandated by Congress itself, and courts around the country have agreed. *See*, *e.g.*, *Bean*, 537 U.S. at 75-76 (noting the

appropriations ban has prevented ATF from using funds to investigate or act upon relief applications under 18 U.S.C. § 925(c); "[a]ccordingly, ATF, upon receipt of respondent's petition, returned it.").

Following the appropriations ban, "ATF owes the plaintiff no duty under § 925(c)[.]" *McHugh*, 220 F.3d at 58. If ATF had acknowledged plaintiff's relief application as entitling him to relief from his federal firearms disabilities simply by virtue of "making" and "filing" it, ATF would have violated its duty to act "in accordance with law." 5 U.S.C. § 706(2)(A). Thus, a court reviewing ATF's failure to respond to plaintiff's relief application would be required to sustain ATF's refusal to act on the ground that the appropriations ban mandated the refusal. As the Court has already correctly found, because ATF "'is under a statutory duty not to' implement Section 925(c) in any form, it follows that this Court could not subvert legislative fiat and declare that it must so do, thereby requiring the agency to directly contravene the law." Dkt. No. 14 at 4 (citing *McHugh*, 220 F.3d at 58). To the extent the Court of Appeals disagreed with ATF as to its obligations following the appropriations ban, *Kelerchian*, 2021 U.S. App. LEXIS 20531, at *8-9, such disagreements do not make ATF's actions arbitrary or capricious so as to state a claim under the APA.

### D. Plaintiff states no due process claim upon which relief may be granted.

Plaintiff's suggestion that he is entitled to a hearing relating to his relief application is contrary to § 925(c) itself, which provides for judicial review only if

and when his application for relief is denied. And courts to have considered the issue have ruled there is no violation of the due process clause stemming from "the absence of a mechanism for the restoration of federal firearms privileges" following the appropriations ban. *See Black* 272 F.Supp.2d at 28, 35 ("due process does not entitle [a felon] to a hearing to determine whether he is currently dangerous because the results of such a hearing would have no bearing on whether he is subject to the disability imposed by § 922(g)(1)."). *See also Pickering-George v. BATFE*, Civ. No. 07-0899, 2008 U.S. Dist. LEXIS 12938, at *3 (D.D.C. Feb. 21, 2008) (finding plaintiff's allegations arising from ATF's refusal to act on his application for gun restoration privileges – including alleged violations of the First, Fifth and Fourteenth Amendments to the Constitution – failed to state a claim upon which relief may be granted).

As the Third Circuit and its district courts have consistently held, the § 925(c) relief program, prior to being deemed "unworkable" and effectively written "out of the statute books" by Congress, was "a matter of legislative grace." *Folajtar*, 980 F.3d 897, 906 n. 10, citing *Binderup v. AG of United States*, 836 F.3d 336 (3d Cir. 2016). Even "the Second Amendment does not require that those who commit serious crimes be given an opportunity to regain their right to keep and bear arms in that fashion." *Id. See also Hart*, 359 F. Supp. at 839 ("The procedural requirement for a hearing in the event of *revocation* of an existing license is inapplicable since Hart's license had *expired* by its terms on May 19, 1972 [upon his felony conviction].") (emphasis added). *Compare Yox v. Lynch*, No. 1:15-cv-457, 2015

U.S. Dist. LEXIS 196962, at *24-25 (M.D. Pa. Nov. 9, 2015) (while noting the "conundrum" presented by Congress's defunding of the § 925(c) relief program, it is a "red herring" in considering required due process under § 922(g)). The practice of barring convicted felons from possessing firearms is a "presumptively lawful regulatory measure[]." *District of Columbia v. Heller*, 554 U.S. 570, 627 n.26 (2008).

Plaintiff's firearms disabilities are the result of his own felonious conduct. He received whatever process he was due from the jury that convicted him, and the Seventh Circuit and Supreme Court in considering his appeals. Other avenues of relief are also available to him: aside from the procedure set forth in § 925(c), a convicted felon can regain his firearms privileges if the jurisdiction in which he was convicted expunges the conviction, pardons him, or restores his civil rights. 18 U.S.C. § 921(a)(20); *Pontarelli*, 285 F.3d at 217 n.1. He is also free to apply for a new federal firearms license; if his application is denied, he will be entitled to a hearing to determine if he satisfies the Gun Control Act's licensing criteria. 18 U.S.C. §§ 923(d)(1), 923(f)(2). As plaintiff has had all the process that Congress, the Supreme Court, and Third Circuit courts have determined he is due, his claim for violation of his due process rights must be dismissed for failure to state a claim upon which relief may be granted.

###        E.        Plaintiff states no First Amendment claim upon which relief may be granted.

Plaintiff alleges no fact supporting his contention that ATF has violated his First Amendment rights to petition the government for grievances. To the extent

that the Gun Control Act originally provided a mechanism for petitioning for relief from federal firearms disabilities, Congress has nullified it. To the extent that plaintiff alleges the First Amendment provides him a cause of action to have rights under § 925(c) declared by this Court, he is similarly incorrect. As made clear by the very cases plaintiff relies on in his amended complaint, the right of access to courts for the redress of wrongs does not create a federal cause of action. Indeed, "baseless litigation is not immunized by the First Amendment right to petition." *McDonald v. Smith*, 472 U.S. 479, 484 (1985) (1st Am. Compl. ¶ 93) (citations omitted).

"First Amendment rights are not immunized from regulation when they are used as an integral part of conduct which violates a valid statute." *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 514 (1972) (1st Am. Compl. ¶ 93). Similarly, "First Amendment rights may not be used as the means or the pretext for achieving 'substantive evils' which the legislature has the power to control." *Id.* at 515 (citation omitted). The practice of barring convicted felons from possessing firearms is a "presumptively lawful regulatory measure[]." *Heller*, 554 U.S. at 627 n.26. Congress has determined that felons are categorically excluded from any rights to a firearm or federal firearms license. As Congress's right to regulate firearms and firearms licenses is not subject to dispute, the First Amendment provides plaintiff no means to circumvent this established regulatory framework.

Plaintiff's interpretation of his right to petition would eviscerate established principles of federal law (including sovereign immunity, for example[12]), and the limited relief and recourse provided under the Gun Control Act. *See Borough of Duryea v. Guarnieri*, 564 U.S. 379, 392 (2011) (1st Am. Compl. ¶ 94) (finding the Petition Clause is not an instrument to circumvent legislative enactments). Plaintiff fails to state a First Amendment claim upon which relief may be granted.

## V.   CONCLUSION

Regardless of how he styles his claims, plaintiff seeks one result: an order declaring that his license remains valid under § 925(c) despite his multiple federal felony convictions, and enjoining ATF from taking any action to the contrary. Such an order would effectively grant him relief from his federal firearms disabilities under § 925(c). As the Court of Appeals held, there is no right to such relief under § 925(c); to the extent plaintiff is aggrieved by that circumstance, his recourse is with Congress – not ATF, and not the Court. As plaintiff fails to state a claim upon which relief may be granted, the Court must dismiss his amended complaint.

---

[12]   *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *see also Gary v. N.J. Dep't of Consumer Affairs Office of Consumer Prot.*, No. 10-3686, 2012 U.S. Dist. LEXIS 40661, at *12 (E.D. Pa. Mar. 26, 2012) (noting the United States has retained its sovereign immunity against suits alleging constitutional and civil rights violations, citing cases); *aff'd*, 526 Fed. App'x 146 (3d Cir. 2013).

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

*/s/ Susan R. Becker for GBD*
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

*/s/ Lauren DeBruicker*
LAUREN DeBRUICKER
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Tel:  215.861.8492
Lauren.DeBruicker@usdoj.gov

Of Counsel:

Jeffrey A. Cohen
ATF Associate Chief Counsel
601 Walnut Street, Suite 1000E
Philadelphia, PA 19106

Dated:  August 12, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of August, 2022, I served a true and

correct copy of the foregoing Motion to Dismiss the First Amended Complaint

via ECF on the following counsel of record:


Joshua Prince, Esq.
Dillon Harris, Esq.
Prince Law Offices, P.C.
646 Lenape Road
Bechtelsville, PA 1950


*Attorneys for Plaintiff*


 /s/ Lauren DeBruicker
LAUREN DeBRUICKER
Assistant United States Attorney