**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **VAHAN KELERCHIAN**<br>　　　　　**Plaintiff,** | **CIVIL ACTION** |
| **v.** | **NO.  20-0253** |
| **BUREAU OF ALCOHOL, TOBACCO,<br>FIREARMS AND EXPLOSIVES AND<br>UNITED STATES OF AMERICA,**<br>　　　　　**Defendants.** | |

## OPINION

Plaintiff Vahan Kelerchian seeks in his Amended Complaint to assert claims against Defendants Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the United States of America under the Declaratory Judgment Act, the Administrative Procedure Act, Fifth Amendment, and First Amendment.  Defendants now move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the case for failure to state a claim.  For the reasons that follow, Defendants' motion will be granted.

### I.    BACKGROUND

The facts of this case and the relevant statutes have been detailed at length.  *See Kelerchian v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 2021 WL 2910934, at *1-2 (3d Cir. July 12, 2021); *Kelerchian v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 2020 WL 4039056, at *1-2 (E.D. Pa. July 17, 2020).  In brief, Kelerchian, formerly a federally licensed firearms dealer, was convicted of violating federal firearms law, among other counts.  *See generally United States v. Kelerchian*, 937 F.3d 895 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 2825 (2020).  Kelerchian sought to appeal his conviction by way of a writ of certiorari to the U.S. Supreme Court.  The Supreme Court denied the writ upon which denial his conviction

became final.  ATF then informed him by letter that, pursuant to Sections 922(g) and 925(b) of the Gun Control Act and its implementing regulation, his firearms license would be revoked after thirty days.  *Id.*; 18 U.S.C. §§ 922(g), 925(b); 27 C.F.R. § 478.144(i)(1).

The Gun Control Act of 1968 bans certain classes of persons, including felons, from possessing, receiving, or transporting firearms.  *See* 18 U.S.C. § 922(g).  These persons are also ineligible for federal firearms licenses.  *See* 18 U.S.C. § 923(d)(1)(B).  The Gun Control Act further provides that any federal firearms license held by a convicted felon becomes void when the conviction becomes final.  18 U.S.C. § 925(b).  These federal firearms disabilities are imposed by operation of law; no action by ATF is required to implement them.  *Id.*  The implementing regulation requires no action by ATF to revoke a felon's federal firearms license. 27 C.F.R. § 478.144(i)(1).  The license becomes void thirty days after the felon's conviction becomes final.  *Id.* (allowing a thirty-day period for licensees subsequently convicted of felonies to wind down their business and transfer prohibited firearms to a valid licensee in an orderly fashion).

ATF informed Kelerchian by letter that he must transfer to ATF machine guns in his possession manufactured after 1986 and his firearms records, or risk criminal liability.  ATF also removed Kelerchian from the FFL eZ Check system, the online system listing those with federal firearms licenses.  Before his license was revoked Kelerchian applied for relief from his firearms disabilities pursuant to Section 925(c) of the Gun Control Act.  18 U.S.C. § 925(c).  This provision as originally written and enacted permits those barred from federal firearms privileges, like felons, to apply to ATF for relief and, while their application is pending, permits applicants to continue operating under their prior firearms license until the U.S. Attorney General[1] decides

---

[1] As enacted, the Gun Control Act initially authorized the Secretary of the Treasury to grant a felon relief from

on the application.  *Id.*  Relief could be granted if applicants established, to the Attorney General's satisfaction, that certain preconditions were met—including that the applicant no longer posed a danger to the public and that granting relief would be in the public's interest.  *Id*.  Authority to administer the § 925(c) relief-from-disabilities program was delegated to the director of the ATF.  28 C.F.R. § 0.130(a)(1); *see also Pontarelli v. U.S. Dep't of the Treasury*, 285 F.3d 216, 217 n.2 (3d Cir. 2002) (*en banc*).  Judicial review was available in the federal district court of appropriate jurisdiction only to a "person whose application for relief from disabilities is denied by the Attorney General."  18 U.S.C. § 925(c).  In enacting this relief provision, Congress provided that if an applicant held a federal firearms license, that applicant would not be barred from further operations under the license "pending final action" on their application for relief.  *Id*.; *see also* 27 C.F.R. § 478.144(i)(1) (if an application were timely filed, licensee could continue licensed operations "during the pendency of the application.").

From 1992 onwards, however, Congress consistently used appropriation acts to prohibit funding to act on or investigate Section 925(c) applications.  *See e.g.,* Consolidated Appropriations Act of 2020, Division B, P.L. 116-93, 133 Stat. 2317, 2401 (2020) (applicable at the time Plaintiff filed his Section 925(c) application and thereafter); *see also e.g.*, Consolidated Appropriations Act of 2019, Division C, P.L. 116-6, 133 Stat. 13, 107 (2019); *United States v. Bean*, 537 U.S. 71, 75, 75 n.3 (2002) (summarizing appropriation acts every year from 1993 to 2002 preventing funding of act or investigation pursuant to Section 925(c)) (collectively the "Appropriations Ban").  After observing negative impacts of the § 925(c) relief-from-disabilities program, in 1992 Congress set out to defund the program entirely, providing in its appropriations

---

federal firearms disabilities, but later versions of the statute—including the version currently in effect—shifted authorization to the Attorney General.  18 U.S.C. § 925(c) (amending from the Oct. 11, 1996 version authorizing the Secretary to the Dec. 8, 2003 version authorizing the Attorney General, current version effective Feb. 1, 2019).

bill that year, becoming effective the year after, "[t]hat none of the funds appropriated herein shall be available to investigate or act upon applications for relief from Federal firearms disabilities under 18 U.S.C. [§] 925(c)."  Treasury, Postal Service, and General Government Appropriations Act of 1993, Pub. L. 102-393, 106 Stat. 1729, 1732 (1993).  Congress has retained and reaffirmed the ban on the use of appropriated funds to process applications for relief filed by individuals every year since.  *See e.g.,* Consolidated Appropriations Act of 2020, Division B, P.L. 116-93, 133 Stat. 2317, 2401 (2020); *see also Bean*, 537 U.S. 71, 75 n.3 (2002). The Senate Report accompanying the first appropriations ban in 1992 explained the purposes of the ban:

> After ATF agents spend many hours investigating a particular applicant they must determine whether or not that applicant is still a danger to public safety. This is a very difficult and subjective task which could have devastating consequences for innocent citizens if the wrong decision is made.  The Committee believes that the approximately 40 man-years spent annually to investigate and act upon these investigations and applications would be better utilized to crack down on violent crime.

S. Rep. No. 102-353, at 8 (1992).  The House Report accompanying the renewal of the appropriations ban in 1995 reiterated those reasons three years later:

> For the fourth consecutive year, the Committee has added bill language prohibiting the use of Federal funds to process applications for relief from Federal firearms disabilities . . .. [T]hose who commit felonies should not be allowed to have their right to own a firearm restored.  We have learned sadly that too many of these felons whose gun ownership rights were restored went on to commit violent crimes with firearms.  There is no reason to spend the Government['s] time or taxpayer's money to restore a convicted felon's right to own a firearm.

H.R. Rep. No. 104-183, at 15 (1995).  As the Third Circuit has found, "[t]he legislative history of the appropriations ban confirms that Congress intended to prevent individual felons from regaining firearms privileges."  *Pontarelli*, 285 F.3d at 231.  It was in the context of this

background that ATF returned Kelerchian's Section 925(c) application having taken no action on it.  Kelerchian submitted a second application, on which ATF took no action and which it did not return.  Kelerchian sued to enforce what he alleges are his rights under Section 925(c) to continue operating under his license while his application is pending before ATF.

This Court dismissed the suit for lack of subject matter jurisdiction.  Plaintiff moved for reconsideration of the dismissal or to amend his complaint, and this Court denied that motion. Kelerchian then appealed to the Third Circuit which affirmed the dismissal but on different grounds and vacated as moot the prior order denying reconsideration or leave to amend. Specifically, the Third Circuit found subject matter jurisdiction was not foreclosed for three reasons.  First, the Third Circuit noted, *Bean*, 537 U.S. 71, and *Pontarelli*, 285 F.3d 216, found subject matter jurisdiction lacking in specific circumstances and their holdings "are limited to cases where a district court is asked to review an application and decide whether an applicant is 'likely to act in a manner dangerous to public safety,' § 925(c), without the benefit of a prior ATF decision."  *Kelerchian*, 2021 WL 2910934, at *2.  This case, however, the Court of Appeals distinguished: "Kelerchian does not ask the District Court to decide the merits of his § 925(c) application."  *Id*.  Second, the Third Circuit noted Kelerchian is not seeking a determination on his Section 925(c) application itself, but rather "protection" under Section 925(c) that prevents applicants from being barred by firearms disabilities by permitting them to operate under their license while their application is pending.  *Id.* at 3.  The Third Circuit highlighted differences between being permitted to continue under a prior license, pursuant to Section 925(c), and obtaining relief from firearm disabilities—for example, the inability to obtain a license as a firearms importer or manufacturer under the former but not the latter.  *Id.*  Third, the Third Circuit noted that the Appropriations Ban "only prohibits ATF from 'investigat[ing] or act[ing]

upon applications for relief.'" *Id.* (quotations omitted). Yet, "[b]ecause Kelerchian's requested relief does not require ATF to grant or deny his application, the [A]ppropriations [B]an did not deprive the District Court of subject matter jurisdiction." *Id*. The Third Circuit did, however, determine that Kelerchian's then operative complaint failed to state a claim, addressing arguments remarkably similar to those now before this Court. *Id*. at 4.

Following the Third Circuit's decision, Kelerchian submitted an Amended Complaint, which Defendants moved to dismiss. Kelerchian's Amended Complaint was dismissed in July 2022 without prejudice as improperly filed. Kelerchian then filed a motion to amend or correct his Amended Complaint, which was granted after which his Amended Complaint was properly filed. The core of Kelerchian's argument revolves around his Section 925(c) application and, because he argues that application is pending, he is entitled to continue under his prior license until ATF issues a decision on his application. Plaintiff clarifies he is not asking for relief pursuant to Section 925(c) or for Defendants to act on his application. Rather, he wants this Court to recognize that by filing his application, regardless of ATF's actions, he should get the benefit of Section 925(c), namely that his license not be barred while his application is pending.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) provides that a party may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Yet, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id*. at 663. "In light of *Twombly*, it is no

longer sufficient to allege mere elements of a cause of action; instead a complaint must allege

facts suggestive of [the proscribed] conduct." *Great W. Mining & Mineral Co. v. Fox Rothschild*

*LLP*, 615 F.3d 159, 177 (3d Cir. 2010) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224,

233 (3d Cir. 2008)) (internal quotation marks omitted).  "In other words, 'there must be some

showing sufficient to justify moving the case beyond the pleadings to the next stage of

litigation.'"  *Id.* (quoting *Phillips*, 515 F.3d at 234-35).

### III.   DISCUSSION

#### A.  Threshold "Pending" Question

For Section 925(c) of the Gun Control Act to apply, the statute first requires an

application to be "pending" before ATF.  18 U.S.C. § 925(c) ("[S]hall not be barred by such

disability from further operations under his license pending final action.").  The Third Circuit

"neither endorse[d] nor discredit[ed] Kelerchian's characterizations that he has filed an

application for relief and that final action on his application is pending."  *Kelerchian*, 2021 WL

2910934, at *3 n.3.  The Court noted, however, that "ATF's practice of mailing back individuals'

applications as unprocessed arguably requires ATF to recognize that an individual has filed an

application for relief."  *Id.* at n.5.  Assuming, *arguendo*, that Kelerchian's application was filed,

the question is whether a filed application, given Congress' consistent use of appropriations acts

to prohibit funding for ATF to act or to investigate Section 925(c) applications, is "pending"

within the meaning of Section 925(c).

"As in any statutory construction case, '[w]e start, of course, with the statutory text,' and

proceed from the understanding that ' [u]nless otherwise defined, statutory terms are generally

interpreted in accordance with their ordinary meaning[,]'"  *Sebelius v. Cloer*, 569 U.S. 369, 376

(2013) (quoting *BP Am. Production Co. v. Burton*, 549 U.S. 84, 91 (2006)), as determined by

dictionary definitions, as well as reference to "the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." See *United States v. Geiser*, 527 F.3d 288, 294 (3d Cir. 2008) (citing *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006)).

Here the word "pending" is not a defined term in the Gun Control Act.  Accordingly, one looks to the term's ordinary meaning.  The year the Gun Control Act was passed, 1968, "pending" was defined as "[b]egun, but not yet completed; during; before the conclusion of;" such that something is pending "from its inception until the rendition of final judgment." *Pending*, Black's Law Dictionary, 1291 (4th ed. 1968); *see also Pending*, Webster's New World Dictionary of the American Language, 1081 (1968) (defining "pending" when used as a preposition, as here, as "throughout the course or process of; during" or "while awaiting; until[.]").  Thus, under a plain reading of Section 925(c), the provision applies when final action on an application has "begun, but [is] not yet completed[.]"  Here, Congress through the Appropriations Bans prevents ATF starting any investigation or taking any action in response to Section 925(c) applications.  *See e.g.,* Consolidated Appropriations Act of 2020, Division B, P.L. 116-93, 133 Stat. 2317, 2401 (2020).  As such, ATF cannot even begin the process of determining Section 925(c) applications.  It follows, then, that these applications cannot be pending.  While Kelerchian, by his own account, is simply asking for recognition that by making and filing his application, regardless of whether ATF may or may not use money appropriated to it to process and decide those applications, he has certain statutory rights; he is not afforded such recognition under the ordinary meaning of the language in the statute.

Legislative history supports this conclusion.  In enacting the Appropriations Ban year after year, Congress specifically removed funding from Section 925(c) with the intention that

"those who commit felonies should not be allowed to have their right to own a firearm restored. We have learned sadly that too many of these felons whose gun ownership rights were restored went on to commit violent crimes with firearms."  H.R. Rep. No. 104-183, at 15 (1995).  It turns this intent on its head to interpret Congress as meaning that while it sought to take away the possibility of relief from firearm disabilities it also intended to leave open the possibility that if a felon submits a Section 925(c) application, their application may be deemed pending, permitting the applicant to operate under their prior license.  The purpose was to prevent felons from owning firearms at all and committing violent acts.  Moreover, Congress stated felons should not be able to "own a firearm" which applies equally to relief from firearm disabilities generally and operating under a prior license, pursuant to Section 925(c).  As such, Section 925(c) applications cannot, by definition and legislative history, be pending such that Kelerchian nay continue to operate under his former licenses.  Accordingly, the case shall be dismissed because Kelerchian has failed to establish that his application was pending.  However, for the sake of thoroughness, each of Kelerchian's arguments will be addressed below and, for the reasons set forth below, are in any event not viable.

### B.  Section 925(c) and the Declaratory Judgment Act

Plaintiff first seeks, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, a declaration that he complied with Section 925(c) of the Gun Control Act and its implementing regulations, and thus may continue to operate under his previously issued license, and, further, that ATF's actions constitute final agency action.  In addition, he seeks an order returning his previously issued license to him and an injunction preventing ATF from invalidating, voiding and/or revoking his license based on their inability to process his application.

As a preliminary matter, it is the law of the case that "§ 925(c) does not contain an

express right of action to enforce the protection provision and we do not read the statute to imply a private right of action." *Kelerchian*, 2021 WL 2910934, at *4 (citing *Alexander v. Sandoval*, 532 U.S. 275 (2001))[2].   "[Section] 925(c) gives only 'the Secretary' the authority to receive applications and grant relief; it does not 'create a freestanding opportunity for relief[.]'" *Pontarelli*, 285 F.3d at 222 (referencing the then effective version of Section 925(c) where the Secretary made final application determinations); *see also e.g.*, *McHugh v. Rubin*, 220 F.3d 53, 59 (2d Cir. 2000) ("[Section] 925(c) is not written so as to create a freestanding opportunity for relief from federal firearms disabilities[.]"); *Mullis v. U.S.*, 230 F.3d 215, 220 (6th Cir. 2000) (accord).

Neither does Section 925(c) imply a right of action.   "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290.   "Section 925(c) gives district courts jurisdiction to review applications only after a 'denial'[.]"  *Pontarelli*, 285 F.3d at 231.  In so doing, Congress created an explicit right of action—for review of decided Section 925(c) applications—thereby intending to preclude any otherwise implied right of action for undecided Section 925(c) applications.  As such, Plaintiff failed to state cause of action for declaratory relief under Section 925(c).

That determination takes center stage when considering the Declaratory Judgment Act which "does not itself create an independent basis for federal jurisdiction[.]"  *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 394 (3d Cir. 2016) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950)).  To seek a remedy under the Declaratory Judgment Act, Kelerchian must point to a distinct cause of action created by Congress.  *See*

---

[2] *See Deisler v. McCormack Aggregates, Co.*, 54 F.3d 1074, 1086 (3d Cir. 1995) (relying on *Arizona v. California*, 460 U.S. 605, 618 (1983)) ("The doctrine of the law of the case dictates that 'when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the litigation.'").

*Kelerchian*, 2021 WL 2910934, at *4; *Sandoval*, 532 U.S. at 286 ("Like substantive federal law

itself, private rights of action to enforce federal law must be created by Congress.").  The Gun

Control Act does not satisfy that requirement which conclusion does not change by resort to the

Declaratory Judgment Act, "no matter how desirable [he may find it] as a policy matter, or how

compatible with the statute."  *Id*. at 286-87.  As such, Count I of the Amended Complaint under

the Declaratory Judgment Act and Section 925(c) of the Gun Control Act fails to state a claim

and shall be dismissed.[3]

### C.  Administrative Procedure Act

Next, Plaintiff argues the Administrative Procedure Act ("APA") provides him a cause of

action.  The APA "provide[s] a limited cause of action for parties adversely affected by agency

action," *Chehazeh v. Att'y Gen. of U.S.*, 666 F.3d 118, 125 n.11 (3d Cir. 2012) (internal

quotation omitted), specifically by a "final agency action for which there is no other adequate

remedy in a court" and without which a plaintiff "cannot state a claim under the APA[.]"  5

U.S.C. § 704 (1966); *Chehazeh*, 666 F.3d at 125 n.11; *see also Hoxha v. Levi*, 465 F.3d 554, 564

(3d Cir. 2006).  "[T]wo conditions must be satisfied" to establish a final agency action:

> First, the action must mark the "consummation" of the agency's
> decisionmaking process—it must not be of a merely tentative or
> interlocutory nature.  And second, the action must be one by which
> "rights or obligations have been determined," or from which "legal
> consequences will flow[.]"

*Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citations omitted) (quoting *Chi. &*

*Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948) and *Bos. Marine*

---

[3] For the reasons set forth below, Kelerchian's request for a declaratory judgment that ATF violated his rights under the Administrative Procedure Act, First Amendment, and Fifth Amendment is also not viable.  Kelerchian's rights under the Administrative Procedure Act and First Amendment were not violated and he has no rights under the Fifth Amendment in this action.

*Terminal Assn. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)).

### i.   *Final Agency Action: Consummation of Decisionmaking Process*

"Final agency actions bear certain 'traditional hallmarks' that demonstrate '[t]here is nothing left for the agency to do[.]'" *T Mobile Ne. LLC v. City of Wilmington, Del.*, 913 F.3d 311, 318 (3d Cir. 2019) (quoting *Del. Riverkeeper Network v. Sec'y of Pa. Dep't of Env't. Prot., (Riverkeeper II)*, 870 F.3d 171, 178 (3d Cir. 2017)).  "Intermediate decisions made in the course of determining what position will ultimately be taken are not 'determinative' in the appropriate sense." *Univ. of Med. & Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 69-70 (3d Cir. 2003) (finding no final agency action where "[t]he decision [was] only to investigate, which is by nature a preliminary one.  It is the initiation of a process."); *see also Aerosource, Inc. v. Slater*, 142 F.3d 572, 579-80 (3d Cir. 1998) (finding no final agency action "because their conclusions were tentative and indicative of an on-going investigation."); *CEC Energy Co. v. Pub. Serv. Comm'n of V.I.*, 891 F.2d 1107, 1110 (3d Cir. 1989) ("Its decision constitutes no more than a determination that an investigation will commence, a prerequisite to definitive agency action."). "An important but not dispositive factor is an agency's classification of its order as final." *In re Matter of Seidman*, 37 F.3d 911, 923 (3d Cir. 1994).

### a.   "Internal Policy"

Under the first condition required by *Bennett v. Spear*—whether the act is the consummation of the agency's decisionmaking process—Kelerchian's argument is that ATF has an "internal policy" that warrants a finding that there has been final agency action.  520 U.S. at 177-78.  This "internal policy" is a shifting target in Kelerchian's briefing but taken all together it appears to be the product of an alleged telephone conversation between Kelerchian's attorney and ATF Philadelphia Division Counsel.  Kelerchian argues the "internal policy" is ATF's

practice of immediately revoking licenses, even if license holders file timely Section 925(c) applications. The "internal policy" is a final agency action, he contends, even when it has not been published anywhere including the Federal Register, and Kelerchian does not know whether it exists in written form. The effect of this "internal policy," he maintains, is the revocation of his license despite his Section 925(c) application, his removal from the FFL eZ Check system, and a letter from ATF listing the consequences of the revocation (including the threat of criminal prosecution if he failed to transfer certain machineguns and business records to ATF).

In determining that Kelerchian failed to state a claim under the APA, the Third Circuit previously found in this case that "[t]he most Kelerchian alleges is that the 'internal policy' was communicated to Kelerchian's counsel by ATF Philadelphia Division Counsel Kevin White in a phone call. This allegation is insufficient to establish that the 'internal policy' is a final agency action under the relevant legal standard." *Kelerchian*, 2021 WL 2910934, at *4. This remains true, although Kelerchian now asserts additional facts, namely removal from the FFL eZ Check system and ATF's letter.

Congress, through the Appropriations Ban, for over thirty years in no uncertain terms has directed ATF not to act on Section 925(c) applications and precluded relief that would otherwise be available under Section 925(c).[4] While the Appropriations Ban continues, ATF cannot

---

[4] Kelerchian asserts on multiple occasions that the Appropriations Ban has not repealed, revoked, or otherwise nullified Section 925(c). This is incorrect. Congress may amend statutory provisions through an appropriations law, as here. *Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 440 (1992) (explaining Congress may "amend substantive law in an appropriations statute, as long as it does so clearly."). The Supreme Court, Third Circuit, and other appeals courts across the country recognize that the Appropriations Ban did indeed amend Section 925(c) in clear and unequivocal language rendering the provision inoperative. *See Logan v. United States*, 552 U.S. 23, 28 n.1 (2007) (finding Section 925(c) "has been rendered inoperative, however, for Congress has repeatedly barred the Attorney General from using appropriated funds 'to investigate or act upon [relief] applications.'") (citing *Bean*, 537 U.S. at 74-75); *Pontarelli*, 285 F.3d at 230 (overruling prior Third Circuit precedent *Rice v. United States, Dep't of Alcohol, Tobacco & Firearms*, 68 F.3d 702, 704 (3d Cir. 1995), the Third Circuit found "the legislative history of the appropriations ban demonstrates that Congress wanted to suspend felons' ability to regain their firearms privileges under § 925(c)."); *see also e.g., McHugh*, 220 F.3d at 58 ("Thus, while the annual appropriations statutes speak in terms of the ATF's ability to spend appropriated funds, their effect on the agency is obvious: It may neither

13

investigate or act on Section 925(c) applications.  Accordingly, there is currently no ultimate

decision on Kelerchian's application pursuant to Section 925(c).  To the extent that Kelerchian is

arguing that inaction by the ATF (ATF has not even considered Kelerchian's application)

amounts to final agency action, "[i]naction by ATF does not amount to a 'denial' within the

meaning of § 925(c)[,]".  ATF's actions, or lack thereof, here do not qualify as a final agency

action.  *Bean*, 537 U.S. at 75-76.  Far from final, ATF's actions are, at best, the preliminary

stages of a process that cannot (if it is to be in compliance with specific congressional

instruction) move forward much less begin in earnest.  And such a preliminary stage of an

agency's process cannot satisfy the consummation of decisionmaking standard.  *See e.g.*,

*Corrigan*, 347 F.3d at 69-70.

The posited "internal policy's" informality further underscores its lack of finality.  The

"internal policy" is not written anywhere and a single phone conversation does not final agency

action make.  *See e.g.*, *Telford Borough Auth. v. U.S. E.P.A.*, 2013 WL 6047569, at *8 (E.D. Pa.

Nov. 15, 2013) (finding communications, especially informal ones, from an agency to plaintiff's

counsel are not representative of formal agency actions).  ATF does not consider this informal

"internal policy" to be a final agency action.  *In re Matter of Seidman*, 37 F.3d at 923 (reasoning

that an agency's classification of its own action as not final is an important but not dispositive

fact).  As such, the "internal policy's" informality further indicates it is far from final.

---

grant nor deny applications falling within the scope of the funding restriction. We therefore conclude that
Congress's intent to suspend the ATF's ability to act on applications submitted by individuals pursuant to § 925(c) is
'clear and manifest.'"); *Mullis*, 230 F.3d at 221 ("Accordingly, we join with the Second, Fifth, Ninth, and Tenth
Circuits in concluding that Congress, through its appropriations act, has chosen to at least temporarily suspend the
operation of § 925(c) in its entirety[.]"); *United States v. Chavez*, 204 F.3d 1305, 1314, n.6 (11th Cir. 2000)
(accord); *Burtch v. U.S. Dep't of the Treasury*, 120 F.3d 1087, 1090 (9th Cir. 1997) (citing *Robertson*, 503 U.S. at
440) (accord); *United States v. McGill*, 74 F.3d 64, 68 (5th Cir. 1996) (accord).  This amendment to the Gun Control
Act is the reason for ATF's failure to act on or investigate Kelerchian's application. *Bean*, 537 U.S. at 75-76.

b.  <u>Thirty-Day Delay</u>

Kelerchian also argues that the fact that ATF waited until thirty days after his conviction was final to revoke his license, when the original purpose of those thirty days was to allow for filing Section 925(c) applications, indicates he should not be barred from benefits under Section 925(c) and should be permitted to use his firearms license while his application is pending.  Yet, Defendants acted pursuant to the laws and regulations that were in effect and which governed their actions: the Gun Control Act, the Appropriations Ban, and the implementing regulation.  18 U.S.C. § 925(c); *see e.g.*, Consolidated Appropriations Act of 2020, Division B, P.L. 116-93, 133 Stat. 2317, 2401 (2020); 27 C.F.R. § 478.144.  The implementing regulation, 27 C.F.R. § 478.144, proscribes the thirty-day delay for revoking firearm licenses if a licensee files a Section 925(c) application.  *Id*. ("A licensee who incurs disabilities under the [Gun Control ]Act . . . shall not be barred from licensed operations for . . . [thirty] days after the date upon which the conviction for a crime . . . becomes final.").  While the Appropriations Ban renders Section 925(c) inoperative, the implementing regulation is still in effect, as Congress has not clearly amended it.[5]  As such, ATF adhered to the still effective thirty-day delay after Kelerchian's conviction was final before his license was revoked.  ATF abides by this procedural timeline laid out without investigating or acting on applications pursuant to Section 925(c).  ATF does not, and cannot, pick and choose which portions of the law to follow.  This is precisely why ATF's thirty-day delay does not implicate the finality analysis.  Procedural aspects of the Gun Control Act, in light of the Appropriations Ban, may no longer serve their original purpose, but nevertheless ATF must abide by the law and implementing regulations still in effect until Congress changes the law or ATF the regulation.  Although ATF is the agency responsible for

---

[5] *See supra* note 4.

writing the relevant regulation, it cannot simply stop adhering to a regulation without a formal

process changing the rule. Indeed, doing so would more than likely be an APA violation in and

of itself. Therefore, ATF's thirty-day delay before revoking Kelerchian's license does not lean

in favor of finality and does not change the conclusion that the "internal policy" as described by

Kelerchian is not final agency action.

### ii.       *Final Agency Action: Legal Consequences*

Even if ATF's actions satisfied the first *Bennett* condition—which they do not—

Kelerchian must also prove that its actions satisfy the second, that legal consequences flow from

the agency's actions. 520 U.S. at 177-78. If an agency action "does not of itself adversely affect

complainant but only affects his rights adversely on the contingency of future administrative

action[,]" then it is not final. *Fed. Power Comm'n v. Hope Nat. Gas Co.*, 320 U.S. 591, 619

(1944) (citing *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939)). Kelerchian

argues that legal consequences flow from the revocation of his license following his conviction

and ATF's failure to act on his application under its "internal policy" that included sending him

the letter. Namely, Kelerchian maintains that these consequences include his inability to operate

under his firearms license while his Section 925(c) application is pending—as he would

otherwise be permitted to do before the Appropriations Ban—and his removal from the FFL eZ

Check system. Yet, the benefits of a pending Section 925(c) application are non-existent;

Congress rendered them inoperative.[6] No legal consequences can flow from a provision no

longer in effect. As such, Kelerchian may be deprived of continuing to operate under his license,

may have received ATF's letter, and may have been removed from the eZ Check system. But

---

[6] *See supra* note 4.

these consequences do not flow from Defendant's final agency actions.  As such, ATF's failure to act is not final under the second *Bennett* condition.

Kelerchian's arguments are not saved by his reliance on ATF's letter warning of criminal liability if Kelerchian failed to transfer certain machine guns and firearms records to ATF. "[D]emand letters, although harsh in their terms and probably unsettling to their recipients" do not automatically imbue legal consequences, thereby constituting final agency actions. *Fanning v. United States*, 346 F.3d 386, 401 (3d Cir. 2003).  Letters in which the "burden certainly is substantial[ are] different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action." *F.T.C. v. Standard Oil Co. of Cal.*, 449 U.S. 232, 242 (1980); *see also Golden & Zimmerman, LLC v. Domenech*, 599 F.3d 426, 432 (4th Cir. 2010) (finding no final agency action where the document "merely restates . . . the product of that prior decisionmaking, and it does so only to provide[ ] information designed to help [licensees] comply with all of the laws and regulations.") (quotation marks omitted).  ATF's letter is analogous to one in *Solar Turbines Inc. v. Seif*, where the Third Circuit found an Environmental Protection Agency letter was not a final agency action because "even though the . . . letter seems to threaten civil and criminal liability upon noncompliance, no civil or criminal liabilities accrue." 879 F.2d 1073, 1081 (3d Cir. 1989); *see also Not an LLC v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 2022 WL 2073340, at *7 (W.D. Pa. June 9, 2022) (relying on *Solar Turbines Inc.* to find an ATF cease-and-desist letter was not a final agency action, noting the letter "doesn't give ATF any new rights . . . and it doesn't impose any new obligations on the recipient of the letter.  There's no separate legal violation or cause of action that ATF can bring for failure to comply with the [letter] because it doesn't have any legal effect. Its purpose is one of notice and one of restatement and reminder of what the law is.").  ATF's

letter in this case is similar: it notifies Kelerchian of legal obligations connected to

Section 922(g)(1) of the Gun Control Act. As in *Solar Turbines Inc.*, ATF's letter does not

impose additional criminal liabilities. 879 F.2d at 1081. Rather, it similarly informs Kelerchian

of what will happen if he fails to comply. *Id.* Even if ATF had not communicated to Kelerchian

his obligations under the Gun Control Act or removed him from the eZ Check system,

Kelerchian would still have been required to comply with applicable federal firearms law. As

such, legal consequences flow from Kelerchian's actions, applicable federal firearms law, their

implementing regulations, but not from ATF's letter. *See e.g.*, *Golden & Zimmerman, LLC*, 599

F.3d at 433; *see also e.g.*, *Mont. Shooting Sports Ass'n v. Holder*, 2010 WL 3926029, at *6 (D.

Mont. Aug. 31, 2010) ("[A]ny legal consequences in this case emanate not from the ATF's letter,

but from applicable federal firearms laws and their implementing regulations."). As such,

neither ATF's letter nor removal from the eZ Check System indicates ATF's actions are final

under the second *Bennett* condition. Thus, ATF's actions are not a final agency action because

they satisfy neither *Bennett* condition and as such Kelerchian has no valid cause of action under

the APA. Therefore, Count II of the Amended Complaint under the Administrative Procedure

Act fails to state a claim and shall be dismissed.[7]

---

[7] Even if ATF's actions were deemed final agency actions, ATF's actions are not arbitrary and capricious because Defendants are simply following congressional instruction by not acting on Kelerchian's application. Final agency actions may be reviewed, deemed unlawful, and set aside if they are "arbitrary and capricious." 5 U.S.C. § 706; *see e.g.*, *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 730 F.3d 291, 305 (3d Cir. 2013). "An agency action may be arbitrary and capricious 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Id.* ((citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "If Congress' intent is clear from the plain language of the statute, then our inquiry ends there." *Tate & Lyle, Inc. v. Comm'r*, 87 F.3d 99, 104 (3d Cir. 1996) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)). As set forth *supra* in note four, congressional intent to abrogate Section 925(c) is clear. Thus, even if ATF's actions were *arguendo* final, they are not arbitrary and capricious.

**D.  Fifth Amendment**

Plaintiff next argues his Fifth Amendment rights were violated when ATF revoked his license and failed to give him a hearing.  To state a Fifth Amendment Due Process Clause claim, a plaintiff must show that he was deprived of a cognizable property interest, *see Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) (applying Fourteenth Amendment Due Process Clause)[8], and that the process afforded him in connection with the deprivation was constitutionally deficient.  *See Simmerman v. Corino*, 27 F.3d 58, 64 (3d Cir. 1994).

While Kelerchian acknowledges he is not entitled to a hearing under Section 925(c) and does not now seek one, he nevertheless seeks declaratory and injunctive relief because he was not provided an evidentiary hearing pursuant to Section 923(f)(2).  Yet, Section 923(f)(2) bears only on license applications that have been denied by the Attorney General.  Since Kelerchian's license was revoked under Section 922(g), not Section 923(f)(2), and there is no decision on his application at all, he is not owed protections pursuant to Section 923(f)(2), including a deprivation hearing.  *See e.g.*, *Doe I v. Evanchick*, 355 F. Supp.3d 197, 220-21 (E.D. Pa. 2019), *aff'd sub nom*. *Doe I v. Governor of Pennsylvania*, 977 F.3d 270 (3d Cir. 2020) (quoting prior Third Circuit and district court opinions that a hearing is not required when it would have no bearing on whether an individual "is subject to the disability imposed by § 922(g)."); *see also e.g.*, *United States v. Hart*, 359 F. Supp. 835, 836, 839 (D. Del. 1973) ("The procedural requirement for a hearing in the event of revocation of an existing license is inapplicable since Hart's license had expired [pursuant to a similar provision of the Gun Control Act following his federal conviction.]").  As such, Kelerchian's reliance on Section 923(f)(2) is misplaced and his

---

[8] *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'").

Fifth Amendment claim cannot be premised on that provision.

### E.  First Amendment

Finally, Plaintiff avers his First Amendment rights are violated because he is unable to meaningfully petition the government for redress of his grievance.  "[T]he right[] . . . to petition [the government] for a redress of grievances [is] among the most precious of the liberties safeguarded by the Bill of Rights."  *United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967).  "[T]he Petition Clause [of the First Amendment] protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes."  *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011); U.S. Const. amend. I; *see also e.g.*, *Mirabella v. Villard*, 853 F.3d 641, 653 (3d Cir. 2017) (citing *United States v. Cruikshank*, 92 U.S. 542, 552 (1875)).  Yet, "the right to petition is not '[u]nrestrained' or 'absolute'."  *Mirabella*, 853 F.3d at 654 (citing *Guarnieri*, 564 U.S. at 390 & *McDonald v. Smith*, 472 U.S. 479, 484 (1985)).  The Petition Clause does not guarantee a remedy and "[n]othing in the First Amendment or in [the Supreme Court's] case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues."  *Minn. State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 285 (1984); *see also e.g.*, *Am. Bus Ass'n v. Rogoff*, 649 F.3d 734, 739 (D.C. Cir. 2011) ("Far from holding that the Petition Clause requires the possibility of a remedy, . . . the clause does not even 'guarantee[ ] a citizen's right to receive a government response to or official consideration of a petition for redress of grievances.'").  In short, Kelerchian may petition ATF or the courts, but ATF and the courts need not "listen or respond".  *Kerchner v. Obama*, 612 F.3d 204, 209 (3d Cir. 2010) (citing *Knight*, 465 U.S. at 285).

Kelerchian goes on to argue that because ATF fails to act on or investigate his Section

925(c) application pursuant to the Appropriations Ban, thereby violating his First Amendment rights, the Appropriations Ban itself is unconstitutional.  The constitutionality of the Appropriations Ban has been upheld on multiple occasions[9] and the Supreme Court has specifically upheld laws and regulations depriving felons from possessing firearms.  *See e.g.*, *Bean*, 537 U.S. at 75-76; *see also District of Columbia v. Heller*, 554 U.S. 570, 626-27, 627 n.26 (2008) (clarifying that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons" which the Court deemed to be a "presumptively lawful regulatory measure[.]").

Accordingly, Kelerchian fails to state a claim under the First Amendment and as such it will be dismissed.[10]

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion shall be granted, and Plaintiff's Amended Complaint shall be dismissed with prejudice.

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**



**WENDY BEETLESTONE, J.**

---

[9] *See supra* note 4.

[10] Lastly, Kelerchian claims that the "rule of lenity" applies if there is any question of ambiguity in the language of Section 925(c).  "T[his] rule applies primarily to the interpretation of criminal statutes . . . [but,] can apply when a statute with criminal sanctions is applied in a noncriminal context."  *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 16 (2011).  Here, as in *Kasten*, however, there is no ambiguity in the language of Section 925(c) or the Appropriations Ban and, as such, the "rule of lenity" does not apply.  *Id.*; *Pontarelli*, 285 F.3d at 226 (stating Section 925(c)'s "statutory text[] [is] clear."); *see also e.g.*, *Bean*, 537 U.S. at 75-76 (accord); *McHugh*, 220 F.3d at 59 ("The statutory scheme set forth in Section 925(c) . . . [is] not only 'fairly discernible' but abundantly clear . . . ."); *Burtch*, 120 F.3d at 1090 ("[Section 925(c)] is clear on its face[.]").